1  JEFFREY C. KRAUSE (State Bar No. 94053),
   jkrause@stutman.com
2  CHRISTINE M. PAJAK (State Bar No. 217173), and
   cpajak@stutman.com
3  NEETA MENON (State Bar No. 254736), Members of
   nmenon@stutman.com
4  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
5  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA 90067
6  Telephone:  (310) 228-5600
   Telecopy:   (310) 228-5788
7
   [Proposed] Reorganization Counsel for
8  Debtor and Debtor in Possession

9  Debtor's Mailing Address:
   1880 Century Park East, Suite 810
10 Los Angeles, CA  90067

11              **UNITED STATES BANKRUPTCY COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                   **LOS ANGELES DIVISION**

14  In re                              )  Chapter 11
                                       )
15  LITTLE TOKYO PARTNERS, L.P.,       )  Case No. 2:10-_____-__
    a Delaware limited partnership,    )
16                                     )  (Jointly administered)
                 Debtor.              )
17                                     )  **EMERGENCY MOTION OF DEBTOR IN**
                                       )  **POSSESSION FOR ORDERS:**
18                                     )  **(1) AUTHORIZING THE DEBTOR TO USE**
                                       )  **CASH COLLATERAL AND PROVIDE**
19                                     )  **ADEQUATE PROTECTION TO FIRST**
                                       )  **CITIZENS BANK AND TRUST COMPANY**
20                                     )  **AND EXCELL INVESTMENT GROUP,**
                                       )  **LLC PURSUANT TO 11 U.S.C. §§ 361 AND**
21                                     )  **363; (2) SCHEDULING FINAL HEARING**
                                       )  **ON CONTINUED USE OF CASH**
22                                     )  **COLLATERAL; AND (3) AUTHORIZING**
                                       )  **CONTINUED USE OF CASH**
23                                     )  **COLLATERAL**
                                       )
24                                     )  [Hearing to be set by Court]
                                       )
25  _____)

26

27

28

542250v1

# **TABLE OF CONTENTS**

**Page(s)**

I.   STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(b) ...................................... 3

    A.   Entities With An Interest In Cash Collateral ............................................. 3

    B.   Purpose ............................................................................................... 4

    C.   Duration and Material Terms ................................................................. 4

    D.   Adequate Protection ............................................................................ 4

II.   STATEMENT OF FACTS ............................................................................... 4

    A.   Petition Date and Jurisdiction. .............................................................. 4

    B.   General Background of the Debtor. ........................................................ 5

        1.   Business Operations. ................................................................. 5

        2.   The Debtor's Secured Debt. ....................................................... 6

        3.   Events Leading To The Chapter 11 Filing. .................................... 8

    C.   The Debtor's Cash Needs. ..................................................................... 8

III.   ARGUMENT ............................................................................................ 10

    A.   The Secured Lenders' Security Interests Do Not Extend To The Rents
        The Debtor Seeks To Use. ................................................................... 10

    B.   The Secured Lenders' Liens Are Adequately Protected. ......................... 11

        1.   The Secured Lenders' Liens Are Adequately Protected By The
            Preservation Of The Debtor's Going Concern Value................................ 12

        2.   The Secured Lenders's Liens Are Adequately Protected By
            Replacement Liens.................................................................... 14

    C.   The Debtor Should Be Authorized To Use Cash Collateral Because
        The Costs And Expenses Of Operating and Maintaining The Secured
        Lenders' Collateral Are Chargeable To The Collateral Under
        Bankruptcy Code Section 506(c). ........................................................ 14

    D.   The Debtor Should Be Authorized To Use Cash Collateral To Operate
        And Maintain The Properties Based Upon The Equities Of This Case.................. 16

IV.   CONCLUSION ......................................................................................... 18

542250v.1

## TABLE OF AUTHORITIES

**CASES**

*In re AFCO Enters., Inc.*,
    35 B.R. 512 (Bankr. D. Utah 1983) ...........................................................15

*In re Cafeteria Operators, L.P.*,
    299 B.R. 400 (Bankr. N.D. Tex. 2003) ......................................................17

*In re Cann & Saul Steel Co.*,
    76 B.R. 479 (Bankr. E.D. Pa. 1987) ..........................................................13

*Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*,
    727 F.2d 1017 (11th Cir. 1984) ..................................................................9

*In re Coody*,
    59 B.R. 164 (Bankr. M.D. Ga. 1986) .........................................................13

*In re Dynaco Corp.*,
    162 B.R. at 394 ......................................................................................12, 13

*Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.)*,
    799 F.2d 91 (3d Cir. 1986)..........................................................................15

*Estate of Toler*,
    174 Cal. App. 2d 764 (1959) .......................................................................11

*Federal Nat'l Mortgage Assoc. v. Dacon Bolingbrook Assoc. Ltd. Partnership*,
    153 B.R. 204 (Bankr. N.D. Ill. 1993) ...................................................13, 15

*Ford Motor Credit Co. v. Jim Kelly Ford, Ltd. (In re Jim Kelly Ford, Ltd.)*,
    14 B.R. 812 (N.D. Ill. 1980) .......................................................................15

*In re Heatron Inc.*,
    6 B.R. 493 (Bankr. W.D. Mo. 1980)............................................................12

*In re Lawrence*,
    41 B.R. 36 (Bankr. D. Minn. 1984),
    *aff'd*, 56 B.R. 727 (D. Minn. 1984)............................................................17

*Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*,
    808 F.2d 1393 (10th Cir. 1987) ..................................................................12

*McCombs Properties VI*,
    88 B.R. at 267 ...............................................................................................13

*Murdoch v. Clarke*,
    90 Cal. 427 (1891) .......................................................................................11

542250v.1

*Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.),*
    54 F.3d 722 (11th Cir. 1995) ................................................................13

*People v. Gustafson,*
    53 Cal. App. 2d 230 (1942) ................................................................11

*Santa Fe Fed. Sav. & Loan Ass'n. v. Oak Glen R-Vee (In re Oak Glen R-Vee),*
    8 B.R. 213 (Bankr. C.D. Cal. 1981) ....................................................11

*Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC),*
    314 B.R. 436 (B.A.P. 9th Cir. 2004) ..................................................11

*In re Senior Care Properties,*
    137 B.R. at 520 ..................................................................................14

*Stein v. United States Farmers Home Admin. (In re Stein),*
    19 B.R. 458 (Bankr. E.D. Pa. 1982) ..................................................13

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.,*
    195 Cal. App. 3d 1032 (1987) ............................................................11

*Travelers Ins. Co. v. River Oaks Ltd. Partnership (In re River Oaks Ltd.*
    *Partnership),*
    166 B.R. 94 (E.D. Mich. 1994) ..........................................................16

*United Virginia Bank v. Slab Fork Coal Co. (In re Slab Fork Coal Co.),*
    784 F.2d 1188 (4th Cir. 1986) ............................................................16

*Westchase I Assoc. L.P. v. Lincoln Nat'l Life Ins. Co.,*
    126 B.R. 692 (Bankr. D.N.C. 1991) ..................................................13

**STATUTES**

11 U.S.C. § 361(2) ........................................................................................14
11 U.S.C. § 363 ..............................................................................11, 14, 16
11 U.S.C. § 363(a) ..........................................................................................1
11 U.S.C. § 363(c) ..................................................................3, 4, 9, 11, 16
11 U.S.C. § 363(p) ..........................................................................................3
11 U.S.C. § 506(c) ....................................................................14, 15, 16, 17
11 U.S.C. § 552(b) ............................................................................14, 16, 17
11 U.S.C. § 1107(a) ........................................................................................5
11 U.S.C. § 1108 ............................................................................................5
28 U.S.C. § 157(b) ........................................................................................5
28 U.S.C. § 1334 ............................................................................................5
28 U.S.C. § 1408 ............................................................................................5
H.R. 5116, 103rd Cong., 2d Sess., 140 Cong. Rec. H10768 ..................15, 16

542250v.1

**RULES**

Bankruptcy Rule 4001(b)..................................................................................3, 9

**OTHER AUTHORITIES**

4 B. E. Witkin, *Summary of California Law*, § 102 (10th ed. 2008).................................11
5 *Collier on Bankruptcy*, ¶ 552.02[5][a], at 552-14 (15th ed. Rev. 1997)........................15

542250v.1

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE SECURED CREDITORS OF THE DEBTOR, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTOR AND OTHER PARTIES IN INTEREST:**

Little Tokyo Partners, L.P., the debtor and debtor in possession in the above captioned case (the "Debtor"), hereby moves the Court for the entry of an interim order, substantially in the form annexed hereto as Exhibit "1" (the "Interim Order"), approving the use of cash collateral for approximately fifteen days, and, following a final hearing (the "Final Hearing"), the entry of a final order authorizing the use of cash collateral through October 15, 2010.

The Debtor requests, pursuant to Local Bankruptcy Rules 2081-1(a) and 9075-1(a), that the Court schedule a hearing on this Motion on less than 2 court days notice, upon timely notice to the Office of the United States Trustee ("UST"), the Debtor's secured lenders, the twenty largest unsecured creditors, and other interested parties, if any (collectively, the "Interested Parties"). A copy of this Motion was served, concurrent with the filing hereof with the Court, on the Interested Parties by courier or overnight delivery.

## RELIEF REQUESTED

The Debtor requests that the Court enter orders:

a.    authorizing the Debtor to use cash, negotiable instruments, deposit accounts, and other cash equivalents within the scope of section 363(a) of the Bankruptcy Code, whenever acquired, and wherever located, including cash and cash equivalents in escrow, in which the Debtor's estate (the "Estate") and an entity other than the Estate have an interest ("Cash Collateral"), on an interim basis for the period through the Final Hearing, to enable the Debtor to operate its businesses so as to avoid immediate and irreparable harm pending the Final Hearing;

b.    establishing the schedule, notice procedure, and response procedure for the Final Hearing to consider the continued use of Cash Collateral; and

c.    following the Final Hearing, authorizing the Debtor to use Cash Collateral in the ordinary course of its business through October 15, 2010.

1

1      As set forth in further detail below, it is imperative that the Debtor maintain its

2   operations as a going concern to maximize the value of the Estate.  The budget attached hereto as

3   Exhibit "2" (the "Budget") demonstrates that: (a) the Debtor cannot operate unless it is authorized to

4   use Cash Collateral; (b) can operate if it is granted authority to use Cash Collateral; and (c) the value

5   of the assets subject to claimed liens does not decrease during the period set forth in the Budget.  The

6   terms of the proposed use of Cash Collateral are fair and reasonable, and adequately protect those

7   parties known to assert an interest in Cash Collateral.  The Debtor reserves the right to seek to

8   modify the Budget and to seek authority to use Cash Collateral for periods extending beyond the

9   period covered by the Budget.

10      This Motion is based on the following memorandum of points and authorities, the

11   "Declaration Of David Goddard in Support of First Day Motions" (the "Goddard Declaration"), filed

12   concurrently herewith, the record in this case, and the arguments, evidence, and representations that

13   may be presented at or prior to the interim hearing on this Motion, if any, and the Final Hearing.

14      **PLEASE TAKE NOTICE THAT any response, written, or oral, to the Motion**

15   **may be presented at the time of the hearing on the Motion.** *See* **LRB 9075-1(a)(7).**

16      **WHEREFORE**, the Debtor respectfully requests that the Court enter the Interim

17   Order authorizing the use of Cash Collateral and, following the Final Hearing, enter a final order

18   authorizing such use.

19

20   DATED:  July 15, 2010

21                                        */s/  Neeta Menon*
                                         JEFFREY C. KRAUSE,
22                                        CHRISTINE M. PAJAK and
                                         NEETA MENON, Members of
23                                        STUTMAN, TREISTER & GLATT
                                         PROFESSIONAL CORPORATION
24                                        [Proposed] Reorganization Counsel for Debtor and
                                         Debtor in Possession

25

26

27

28

-2-

542250v.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(b)

By this Motion, the Debtor hereby requests that the Court to authorize the use of Cash Collateral under Bankruptcy Code section 363(c)(2)(B).  As required by Bankruptcy Rule 4001(b), set forth below are the material provisions regarding the proposed use of Cash Collateral.

**A.    Entities With An Interest In Cash Collateral:**[1]

The entities with an interest in Cash Collateral are:

(1)    First-Citizens Bank & Trust Company (the "Bank"), as successor in interest to First Regional Bank.  The Bank is a beneficiary under:

(i)    that certain Promissory Note ("Note 1")[2], dated as of August 10, 2007, in the principal amount of $10,400,000, which it asserts is secured by a first priority lien on Weller Court ("Weller Court"), a mall located in the "Little Tokyo" area of Downtown Los Angeles.  As of the Petition Date, the outstanding principal amount due and owing under Note 1 was $10,400,000.

(ii)    that certain Promissory Note ("Note 2"), dated as of November 25, 2009, in the principal amount of $33,600,000, which it asserts is secured by a first priority lien on the Kyoto Grand Hotel and Gardens (the "Hotel"), also located in Little Tokyo.  As of

---

[1]    The Debtor has not completed analyzing the validity, perfection, avoidability, amount, extent, or priority of the Bank's claims or liens.  Solely for the purposes of this Motion, the Debtor assumes, without conceding, that the Bank holds allowable claims not subject to subordination, and validly perfected and unavoidable security interests in the assets described in this Motion.  The Debtor reserves all rights and defenses with respect to the Bank's claims, liens, and interests, and nothing contained in this Motion is intended or should be construed as:  (a) an admission by the Debtor as to the nature, extent, amount, validity, perfection, or priority of the claims or liens of the Bank; (b) a waiver by the Bank of any rights, claims (including claims to avoid any such interests), or defenses it has or may have with respect to the claims, liens, and interests of the Bank, whether arising under the Bankruptcy Code or otherwise; or (c) a modification or reallocation of the burdens of proof assigned by Bankruptcy Code section 363(p).

[2]    Note 1 was originally issued in the principal amount of $44,000,000, but was subsequently amended and reduced to $10,400,000, when the Debtor paid off $33.6 million of the Original Loan in August 2009, as discussed in Section II.B.2 below.

3

the Petition Date, the outstanding principal amount due and owing under Note 2 was $33,580,415.83.

(2)    Excell Investment Group, LLC ("Excell").  On July 14, 2010, Excell funded a $300,000 loan to the Debtor, pursuant to a secured loan transaction, in order to fund the chapter 11 retainer payable to the Debtor's insolvency counsel.  The Excell loan is secured by a second priority deed of trust on the Hotel and Weller Court, which is subordinate to the Bank's first priority deed of trust on the Hotel and Weller Court.

**B.**    **Purpose:**

The Debtor seeks to use Cash Collateral to continue to market, lease, manage and operate the Hotel and Weller Court (hereinafter, collectively referred to as the "Properties"), in the ordinary course of business, to ensure that the transition into bankruptcy is seamless for the guests, customers, employees and lessees of the Properties.

**C.**    **Duration and Material Terms:**

The Debtor seeks to use Cash Collateral until the confirmation of its plan.  However, this Motion only seeks authority to use Cash Collateral on an interim basis, through the Final Hearing and, following a Final Hearing, through October 15, 2010.  If no agreement is reached with the Bank and/or Excell, as described below, the Debtor intends to seek authorization to use Cash Collateral under Bankruptcy Code § 363(c)(2)(B) for the entire period set forth in the Budget.

**D.**    **Adequate Protection:**

The Bank's and Excell's lien interests will be adequately protected by:  (1) the maintenance and preservation of the going concern value of their respective collateral, as described and discussed in section III-B-1 below; and (2) replacement liens in any proceeds generated from the postpetition use of the Properties.

## II.

### STATEMENT OF FACTS

**A.**    **Petition Date and Jurisdiction.**

On July 15, 2010 (the "Petition Date"), the Debtor commenced this chapter 11 case.

-4-

542250v.1

Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is continuing to manage its financial affairs as a debtor in possession.

This Court has jurisdiction over this chapter 11 case and this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b), and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    General Background of the Debtor.**

**1.    Business Operations.**

Little Tokyo Partners, L.P., a Delaware limited partnership (the "Debtor"), is a startup company that owns the Hotel and Weller Court in the "Little Tokyo"[3] area of Downtown Los Angeles.

Built in 1977, the Hotel is the centerpiece building and the only large, full-service hotel in Little Tokyo.  The 21-story hotel was purchased by the Debtor in 2007 and features 434 guest rooms, meeting rooms and a hotel restaurant.

The Hotel is managed by Crestline Hotels & Resorts Inc. ("Crestline"), an independent hospitality management company headquartered in Fairfax, Virginia.  Crestline provides hospitality management services to the Hotel through a management agreement with the Debtor and is paid a monthly management fee of 2.5% of the Hotel's revenues.  Under the management agreement, Crestline is appointed as the Debtor's exclusive agent to supervise, direct, and control the management and operation of the Hotel.  As the Debtor's agent, Crestline contracts with third party vendors on behalf of the Hotel, and the Hotel's pre-petition bank accounts were in the name of Crestline.  Notwithstanding that certain business transactions took place in the name of Crestline, all obligations were incurred on behalf of the Hotel and all cash in the Hotel's bank accounts constitutes revenue from the Hotel's business operations.

With respect to the Hotel, the Debtor has no employees of its own.  The 175 employees who work at the Hotel (including full-time, part-time, and on-call employees) are all

---

[3]    The Hotel is located at 204 East First Street, and Weller Court is located at 120 South Los Angeles Street and 227 East Second Street (together, the "Subject Properties").

employees of Crestline. The Debtor reimburses Crestline for all services, wages, and benefits of these employees on a bi-weekly basis. In addition to the services provided to the Hotel by Crestline, the Hotel also subcontracts out with third parties for a variety of other services, including those related to parking, security, and engineering.

Immediately adjacent to the Hotel is Weller Court, a three-story outdoor mall. Weller Court has approximately 30 tenants, including retailers, restaurants, and a supermarket. Weller Court is managed by Everest IV, LLC ("Everest IV"), an affiliated company that shares some of the same ultimate equity investors as the Debtor, through a management agreement and is paid a monthly fee of 5% of gross receipts, which is a fair market fee in the real property management industry.

Weller Court's day-to-day operations are maintained by the services of two employees, on a part-time basis, who provide basic janitorial and maintenance services. These employees are employed and paid by Center Medical Building, LLC ("CMB").[4] Although the Debtor has not entered into any formal agreement with CMB, the Debtor has historically reimbursed CMB for the Debtor's allocable share of the employment related expenses of these two employees, based on the services that these employees provide to Weller Court. This is projected to be approximately $34,500 during the first 13 weeks of the case. The Debtor's monthly payroll reimbursement expense for both the Hotel and Weller Court is approximately $450,000.

### 2.    The Debtor's Secured Debt.

Pursuant to that certain Business Loan Agreement dated as of August 10, 2007 (the "Original Loan"), First Regional Bank ("FRB") loaned to the Debtor the original principal sum of $44,000,000. The Original Loan was secured by a deed of trust on both the Hotel and Weller Court, which were part of a single legal lot at the time. The Original Loan was partially guaranteed by the equity owners of the Debtor (the "Guaranty").

---

[4]    CMB and the Debtor share some of the same ultimate equity investors.

542250v.1

1    Under the terms of the Guaranty, the obligations thereunder would be released upon

2    the Hotel and Weller Court achieving a debt service coverage ratio of not less than 1.25 to 1.0 for

3    two consecutive quarters.  The Debtor and the guarantors provided financial statements to FRB in

4    August 2008, demonstrating that the Debtor had met this ratio.  FRB conducted four months of

5    analysis of the financial information, including dozens of emails exchanges between the FRB bank

6    officer in charge of the Original Loan and the Debtor's accounting staff.  Ultimately, FRB agreed

7    that this ratio had been met and, in December 2008, FRB formally released all obligations under

8    each of the Guaranties.  As discussed further below, FRB's successor seeks to evade this release and

9    resurrect and transform these Guaranties, but since December 2008 these Guaranties have not been

10   in existence.

11   In August 2009, the Debtor divided the Subject Properties into two legal lots—one

12   for the Hotel and one for Weller Court—and refinanced its loan obligations.  In November 2009, the

13   Debtor entered into a new loan transaction with FRB under which the Debtor borrowed $33,600,000

14   and granted FRB a deed of trust on the Hotel to secure the new loan (the "Hotel Loan").  The

15   proceeds of the Hotel Loan were paid to FRB in partial satisfaction of the Original Loan, and FRB

16   released the deed of trust on the Hotel which secured the Original Loan.  The remaining balance

17   owing on the Original Loan in the amount of $10,400,000 is, therefore, now secured only by the

18   Weller Court property. This reduced loan shall be referred to herein as the "Remaining Original

19   Loan."  The two loans are not cross-collateralized but they do contain cross-default provisions.

20   On January 29, 2010, FRB was closed by the California Department of Institutions,

21   and the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver.  The Debtor

22   has been informed that the Bank acquired a majority of the assets and assumed a majority of the

23   liabilities of FRB, including the Hotel Loan and Remaining Original Loan from the FDIC.

24   As of the Petition Date, the outstanding amount due and owing under the Remaining

25   Original Loan is $10,400,000.00.  Likewise, as of the Petition Date, the outstanding principal

26   amount due and owing under the Hotel Loan is $33,580,415.83.

27   On July 14, 2010, Excell funded a $300,000 loan to the Debtor, pursuant to a secured

28   loan transaction, in order to fund the chapter 11 retainer payable to the Debtor's insolvency counsel.

-7-

1  The Excell loan is secured by a second priority deed of trust on the Hotel and Weller Court, which is

2  subordinate to the Bank's first priority deed of trust on the Hotel and Weller Court.

3  **3.     Events Leading To The Chapter 11 Filing.**

4          Starting in the last quarter of 2008, the Debtor's financial performance was materially

5  impacted by the continuing deterioration in the overall economy and the resulting decline in the

6  business and leisure travel market.  The Hotel experienced a precipitous drop in revenue starting in

7  the last quarter of 2008, which continued throughout 2009.

8          As a result the Debtor defaulted under the Hotel Loan in January 2010.  The Debtor,

9  however, has remained current on the Remaining Original Loan through the Petition Date.

10         The Bank commenced non-judicial foreclosure proceedings against both the Hotel

11  and Weller Court, relying on the cross-default provisions.  The Bank also filed a complaint (the

12  "Complaint") seeking, among other things, the appointment of a receiver for both the Hotel and

13  Weller Court.[5]  The parties continued to negotiate in an effort to reach a consensual resolution.  The

14  Bank scheduled a non-judicial foreclosure sale for the morning of July 16, 2010.  On July 12, 2010,

15  the Bank informed the Debtor that the Bank would not continue the foreclosure sale of the Hotel and

16  Weller Court to give the parties additional time to reach a consensual resolution.  The Debtor

17  commenced this chapter 11 case on July 15, 2010.

18  **C.     The Debtor's Cash Needs.**

19         As set forth in the Goddard Declaration, the Debtor proposes to use approximately

20  $271,508 during the approximately fifteen (15) days following the Petition Date for expenditures

21  necessary for the continued operation and management of Weller Court and the Hotel.  During this

22  same period, it is estimated that the rents collected from Weller Court and revenues from the Hotel

23  will be approximately $678,456.  Accordingly, the use of Cash Collateral will enable the aggregate

24

25  _____

26  [5]     The Complaint also seeks to void the releases of the Guarantors and to somehow transform those guaranties into guaranties of the Hotel Loan (which was entered into only after the Guaranties had been formally released).  The Debtor and the Guarantors contend that the Bank's effort to resuscitate the Guaranties and transform them into Guaranties of the Hotel Loan is entirely unfounded.

27

28

542250v.1

1    value of the Bank's and Excell's collateral to increase during the first two weeks, and thereafter to

2    increase by approximately $401,133 during the Budget period. *See* Exhibit "2".

3              Bankruptcy Rule 4001(b) and Bankruptcy Code section 363(c)(3) provide for the

4    Bankruptcy Court to hold a preliminary hearing on a motion to use cash collateral "scheduled in

5    accordance with the needs of the debtor" and to authorize the use of cash collateral as needed "to

6    avoid immediate and irreparable harm to the estate pending a final hearing."

7              The Debtor would suffer immediate and irreparable harm absent the interim relief

8    requested by this Motion. Without the use of the Cash Collateral, the Debtor will not be able to

9    continue to operate the Hotel or Weller Court, as the Debtor will have no money to pay management

10   fees or other essential operating costs of either of the Properties. Any interruption in the Debtor's

11   access to cash will prevent the Debtor from being able to provide the multitude of services to which

12   the Hotel guests are accustomed. As result, the Debtor would be forced to close the Hotel, thereby

13   displacing both current Hotel guests as well as guests who have not yet arrived (some of whom have

14   prepaid for their stay), and losing all of its revenue sources. Moreover, without the use of Cash

15   Collateral, the Debtor will be unable to provide the management, security, utilities, maintenance, and

16   other services for which the tenants at Weller Court have paid and require in order to continue

17   operating their businesses. If the Debtor breaches its landlord obligations under the Weller Court

18   leases, many of the tenants may seek early termination of their leases. Accordingly, if the Debtor is

19   not allowed to use the Cash Collateral, a further decline in the necessary cash flows will result, the

20   value of both Properties will suffer, and both businesses will be irreparably harmed. However, by

21   continuing to operate the Properties, the Debtor will be able to operate on a cash flow positive basis

22   to preserve the value of both of the Properties.

23              As with most debtors whose primary assets are subject to liens, the Debtor in the

24   present case has an exigent and compelling need to use Cash Collateral. As noted by the court in

25   *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017

26   (11th Cir. 1984):

27              A debtor, attempting to reorganize a business under Chapter 11,
              clearly has a compelling need to use "cash collateral" in its effort to
28              rebuild. Without the availability of cash to meet daily operating

-9-

> expenses such as rent, payroll, utilities, etc., the congressional policy
> favoring rehabilitation over economic failure would be frustrated.

*Id.* at 1019 (citation omitted)(upholding lower court's finding that, where secured lender's collateral was worth less than the amount of the secured lender's claims, lender would nevertheless be adequately protected even if debtor used gross profits obtained in the sale of debtor's vehicles for the operation of its business so long as debtor remitted the wholesale value of the vehicles to the lender, as the wholesale value is the amount lender would receive in an orderly disposition of its collateral).

### III.

### ARGUMENT

Excell has consented to the Debtor's use of Cash Collateral but, to date, the Bank has not consented. However, the Debtor contends that the Bank's interest in the Cash Collateral extends only to the net proceeds of the rents the Debtor will collect postpetition, after operating expenses are paid. Moreover, the Bank is adequately protected in at least the following ways:

- The use of Cash Collateral will preserve the going concern value of the Properties, which will inure to the benefit of all parties in interest, including the Bank and Excell.

- The Debtor will provide both the Bank and Excell (collectively, the "Secured Lenders"), with replacement liens, as described in the Interim Order.

**A.      The Secured Lenders' Security Interests Do Not Extend To The Rents The Debtor Seeks To Use.**

The threshold issue in determining whether the Secured Lenders have an interest in the cash that the Debtor seeks to use is whether their security documents, as interpreted in accordance with California law, provide the Secured Lenders with a security interest in that cash. Pursuant to this Motion, the Debtor seeks to use only those rents from the Properties that are necessary to preserve, operate and maintain the Properties. The Secured Lenders' security interests extend only to the net rents remaining <u>after</u> the satisfaction of such necessary amounts, so they have no interest in the rents the Debtor seeks to use.

Under California law, the term "rents, issues, and profits" refers to <u>net</u> rents only. *See, e.g.*, *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.,* 195 Cal. App. 3d 1032, 1069-70 (1987);

1   *Estate of Toler*, 174 Cal. App. 2d 764, 772 (1959) ("In our opinion, the terms 'rents, issues and

2   profits' . . . is substantially synonymous with the word 'income' . . . [which] has been construed to

3   mean the difference between gross operative income and gross operative expense."); *People v.*

4   *Gustafson*, 53 Cal. App. 2d 230, 239 (1942); *see also Santa Fe Fed. Sav. & Loan Ass'n. v. Oak Glen*

5   *R-Vee (In re Oak Glen R-Vee)*, 8 B.R. 213, 216 n.4 (Bankr. C.D. Cal. 1981) (secured lender entitled

6   to net rents only).  As applied to an assignment of rents, issues, and profits, this conclusion is

7   reinforced by the fact that under California law, a mortgagee's rights in rents are limited by its duty

8   as a mortgagee in possession to care for and preserve the property, *see, e.g.,* 4 B. E. Witkin,

9   *Summary of California Law*, § 102 (10th ed. 2008), and to make reasonable efforts to produce rental

10  profits.  *See Murdoch v. Clarke*, 90 Cal. 427, 438-39 (1891).

11                   Indeed, the Bank's deeds of trust themselves recognizes that only those rents

12  remaining after paying expenses of operating the Properties may be applied to payment of the Bank's

13  debt.  Specifically, the deeds of trust securing Note 1 and Note 2 both provide that, after an event of

14  default, the Bank "shall have the right . . .  to take possession of and manage the Property and collect

15  Rents . . . and apply the net proceeds, over and above Lender's costs, against the Indebtedness."  *See*

16  Deed of Trust, dated August 10, 2007, at pages 8-9, and Deed of Trust, dated November 25, 2009, at

17  page 9 (attached as Exhibits "1" and "2", respectively, to the Goddard  Declaration).  Accordingly,

18  the Secured Lenders are only entitled to adequate protection for the net portion of the rents and

19  profits collected from the Properties, after the operating expenses are paid.

20          **B.        The Secured Lenders' Liens Are Adequately Protected.**

21                   A debtor's use of estate property is governed by Bankruptcy Code section 363.

22  Section 363(c)(2) permits a debtor to use, sell, or lease cash collateral only if the entity with an

23  interest in the cash collateral consents or the Court authorizes such use.  Excell has consented to the

24  Debtor's use of Cash Collateral.  Although the Bank has not consented to the Debtor's use of Cash

25  Collateral, the use of Cash Collateral should be permitted because the Bank's liens are adequately

26  protected.  *See, e.g., Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R.

27  436, 444 (B.A.P. 9th Cir. 2004) ("The plain language of § 363 allows a debtor to use cash collateral if

28

-11-

1   the secured creditor's interest is adequately protected . . ."). As described below, both the Bank's and

2   Excell's liens are adequately protected.

3       **1.    The Secured Lenders' Liens Are Adequately Protected By The
             Preservation Of The Debtor's Going Concern Value.**

4

5           As noted above, any effort by the Secured Lenders to advocate foreclosure value or

6   bulk sale liquidation value as an appropriate method for determining adequate protection should be

7   rejected. However, any such argument would highlight the fact that the use of Cash Collateral for

8   continued operations maintains and increases the value of the Secured Lenders' collateral. In short,

9   allowing the use of Cash Collateral itself provides adequate protection.

10          As a preliminary matter, it is well established that a Bankruptcy Court, where

11  possible, should resolve issues in favor of reorganization:

12          Because the ultimate benefit to be achieved by a successful
            reorganization inures to all the creditors of the estate, a fair
13          opportunity must be given to the Debtors to achieve that end. Thus,
            while interests of the secured creditor . . . are of concern to the court,
14          the interests of all other creditors also have bearing upon the question
            of whether use of Cash Collateral shall be permitted during the early
15          stages of administration.

16          The first effort of the court must be to insure the value of the
            collateral will be preserved. Yet, prior to confirmation of a plan of
17          reorganization, the test of that protection is not by the same
            measurements applied to the treatment of a secured creditor in a
18          proposed plan. In order to encourage the Debtors' efforts in the
            formative period prior to the proposal of a reorganization, the court
19          must be flexible in applying the adequate protection standard.

20  *Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397-98 (10th Cir. 1987) (citation

21  omitted); *accord In re Dynaco Corp.*, 162 B.R. at 395 (cash collateral motion); *In re Heatron Inc.*, 6

22  B.R. 493, 496 (Bankr. W.D. Mo. 1980) (cash collateral motion). As the *Heatron* court noted in

23  granting a debtor's motion to use cash collateral:

24          At the beginning of the reorganization process, the Court must work
            with less evidence than might be desirable and should resolve issues in
25          favor of the reorganization, where the evidence is conflicting.

26  *Id.* at 496.

27          Courts have routinely allowed the use of cash collateral to enhance or preserve the

28  debtor's going concern value, even where the secured creditor was undersecured. For example, in

-12-

1    *Stein v. United States Farmers Home Admin. (In re Stein)*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982),

2    the court allowed a debtor to use cash collateral where the secured party was undersecured, finding

3    that the use of cash collateral was necessary to the debtor's continued operations and the creditor's

4    "secured position can only be enhanced by the continued operation of the [the debtors' business]";

5    *see also In re Dynaco Corp.*, 162 B.R. at 396 (finding that the alternative to the debtor's use of cash

6    collateral, termination of its business, would doom reorganization and any chance to maximize value

7    for all creditors); *In re Cann & Saul Steel Co.*, 76 B.R. 479, 487 (Bankr. E.D. Pa. 1987) (debtor

8    entitled to use cash collateral even though the creditor was undersecured and there was no value

9    cushion because there was "cautious optimism that the Debtor will be able to present a confirmable

10   Plan which will result in a betterment of the financial status of all of its creditors . . .").

11           Moreover, if the value of secured creditor's collateral is expected to remain relatively

12   constant, the secured creditor is deemed to be adequately protected.  *See, e.g., Orix Credit Alliance,*

13   *Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.)*, 54 F.3d 722, 730 (11th Cir. 1995)

14   (payment of "interest" not required);  *Federal Nat'l Mortgage Assoc. v. Dacon Bolingbrook Assoc.*

15   *Ltd. Partnership,* 153 B.R. 204, 210 (Bankr. N.D. Ill. 1993) (upholding bankruptcy court's allowance

16   of use of cash collateral despite findings that the "small amount of oversecurity, which was not

17   'obviously not enough in itself to provide any adequate protection for any substantial decline in the

18   value of the property'", where the bankruptcy court determined that the property value of debtor's

19   apartment building would not further decline during period in question); *Westchase I Assoc. L.P. v.*

20   *Lincoln Nat'l Life Ins. Co.*, 126 B.R. 692, 694 (Bankr. D.N.C. 1991).  This proposition of law is no

21   less true where the collateral to be used by the debtor in possession is comprised of cash or other

22   "soft" assets.  *See, e.g., Dynaco*, 162 B.R. at 394; *McCombs Properties VI,* 88 B.R. at 267.

23           Where, as in the present case, the continuation of a debtor's business achieves the

24   realization of the full value of the collateral, the debtor's continued operations constitute adequate

25   protection of the secured creditor's interests in that collateral.  *See, e.g., In re Coody*, 59 B.R. 164,

26   167 (Bankr. M.D. Ga. 1986).

27

28

-13-

2. **The Secured Lenders's Liens Are Adequately Protected By Replacement Liens.**

Bankruptcy Code section 361(2) specifically contemplates that adequate protection may be provided by way of additional or replacement liens to the extent that the use of property results in a decrease in the value of an entity's interest. Replacement liens are a judicially recognized form of adequate protection. *See, e.g., In re Senior Care Properties*, 137 B.R. at 520 ("The replacement lien on all of the furniture, fixtures, and equipment at the facility is sufficient protection of NBD's interests.").

In the present case, and as reflected in the Interim Order, the Debtor proposes that the Secured Lenders be granted replacement liens, subject to the same defenses and rights of avoidance as their liens in Cash Collateral, on any cash, receivables, or other rights created postpetition relating to the Properties, including all postpetition improvements to Secured Lenders's real property collateral, which replacement liens will be limited to any decrease in value caused by the Debtor's use of Cash Collateral. This grant of replacement liens is without prejudice to the Debtor's ability to seek to use any Cash Collateral subject to such replacement liens, or to surcharge such collateral under Bankruptcy Code section 506(c). Secured Lenders are not automatically entitled to a lien on such improvements and proceeds. As discussed in section III-C below, to the extent the Secured Lenders might claim a lien on postpetition improvements to their collateral or sale proceeds under Bankruptcy Code section 552(b)(1), such liens could and should be limited under Bankruptcy Code section 552(b)(2).

C. **The Debtor Should Be Authorized To Use Cash Collateral Because The Costs And Expenses Of Operating and Maintaining The Secured Lenders' Collateral Are Chargeable To The Collateral Under Bankruptcy Code Section 506(c).**

The costs and expenses associated with operating the Properties is absolutely necessary to preserve the value of the Secured Lenders' collateral. Therefore, independent of its right to use Cash Collateral under Bankruptcy Code section 363, the Debtor should be entitled under Bankruptcy Code section 506(c) to use Cash Collateral to pay the costs of operating and maintaining the Properties.

-14-

1        Section 506(c) provides that a debtor "may recover from property securing an

2  allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of,

3  such property to the extent of any benefit to the holder of such claim."  This is true "even if the

4  trustee's use of collateral results in a diminution in value of the collateral."  5 *Collier on Bankruptcy*,

5  ¶ 552.02[5][a], at 552-14 (15th ed. Rev. 1997).

6        The legislative history of section 506(c) clearly demonstrates that Congress

7  specifically intended that a debtor may use cash collateral to pay the operating expenses incident to

8  improving and disposing of a secured creditor's collateral:  "[T]he reference to section 506(c)

9  permits broad categories of operating expenses – such as the cost of cleaning and repair services,

10  utilities, employee payroll and the like -- to be charged against pledged revenues."  H.R. 5116, 103rd

11  Cong., 2d Sess., 140 Cong. Rec. H10768 (daily ed. Oct. 4, 1994).

12        Courts have authorized the use of cash collateral for a wide variety of direct or

13  indirect expenses under section 506(c).  *See, e.g. Federal Nat'l Mortgage Assoc. v. Dacon*

14  *Bolingbrook Assoc. Ltd. Partnership,* 153 B.R. 204, 214 (Bankr. N.D. Ill. 1993) (expenses of

15  operation, maintenance and repair of apartment complex authorized to be paid from rents collected,

16  despite debtor's inability to provide adequate protection for the rents);  *Equitable Gas Co. v.*

17  *Equibank N.A. (In re McKeesport Steel Castings Co.)*, 799 F.2d 91, 94 (3d Cir. 1986) (payment to

18  utility for postpetition gas services was an expense of preserving going concern value that directly

19  benefited secured creditor whose collateral was surcharged); *In re AFCO Enters., Inc.*, 35 B.R. 512,

20  515 (Bankr. D. Utah 1983) (expenses of maintaining a resort property authorized to be paid from the

21  receipts generated on that property because preserving the resort's going-concern value benefited the

22  secured creditor); *Ford Motor Credit Co. v. Jim Kelly Ford, Ltd. (In re Jim Kelly Ford, Ltd.)*, 14

23  B.R. 812, 816-817 (N.D. Ill. 1980) (overhead and operating expenses recoverable from proceeds of

24  creditor's collateral because the expenses facilitated sale of the inventory).

25        The Debtor's use of Cash Collateral to pay the costs of managing, maintaining and

26  marketing the Properties preserves the going concern value of the Secured Lenders' respective

27  collateral.  If the Debtor is unable to pay these expenses on a regular, uninterrupted basis, then the

28  panoply of functions performed by the Debtor would have to be fulfilled by another person, no doubt

1    at an increased cost.  The Debtor's use of Cash Collateral benefits the Secured Lenders' respective

2    collateral by not only preserving, but increasing the value of the collateral as the Properties will

3    continue to increase in value with time if Weller Court is properly maintained, marketed and leased

4    and the Hotel is properly marketed and operated.  The Debtor is therefore entitled to recover

5    expenses of such development under Bankruptcy Code section 506(c) without regard to whether the

6    Debtor can otherwise use Cash Collateral under section 363(c)(2).  *See, e.g., Travelers Ins. Co. v.*

7    *River Oaks Ltd. Partnership (In re River Oaks Ltd. Partnership)*, 166 B.R. 94, 100 (E.D. Mich.

8    1994)(a debtor may use cash collateral under section 506(c) even though the debtor failed to met its

9    burden under section 363); *cf. In re ProAlert*, 314 B.R. at 444-45 (a debtor may use cash collateral to

10   pay professional fees if the secured creditor is adequately protected, without regard to the

11   requirements of section 506(c)).

      **D.**    **The Debtor Should Be Authorized To Use Cash Collateral To Operate And Maintain The Properties Based Upon The Equities Of This Case.**

14         Under Bankruptcy Code section 552(b), a lender's security interest does not extend to

15   postpetition property if the Court so orders "based on the equities of the case."  In determining the

16   equities of the case, the Court has "broad discretion to balance the protection of secured creditors . . .

17   against the strong public policies favoring continuation of jobs, preservation of going concern values

18   and rehabilitation of distressed debtors, generally." H.R. 5116, 103rd Cong., 2nd Sess., 140 Cong.

19   Rec. H10768 (1994).

20         In *United Virginia Bank v. Slab Fork Coal Co. (In re Slab Fork Coal Co.)*, 784 F.2d

21   1188 (4th Cir. 1986), the court remanded the case to the bankruptcy court with instructions to

22   consider the application of section 552(b) and made the following observation:

> [I]t should be noted that § 552(b) gives the bankruptcy court
> considerable latitude in applying pre-petition security interests to post-
> petition proceeds.  As evidenced by the final clause in § 552(b), a
> bankruptcy court may choose not to apply a pre-petition security
> interest to post-petition proceeds "based on the equities of the case."  It
> appears clear from the legislative history related to § 552 that
> Congress undertook in that section to find an appropriate balance
> between the rights of secured creditors and the rehabilitative purposes
> of the Bankruptcy Code.  The latitude afforded to the bankruptcy court
> seems to this court to indicate that such a balancing of interests was
> intended in the framing of § 552.

-16-

784 F.2d at 1191.  *See also In re Lawrence*, 41 B.R. 36, 38 (Bankr. D. Minn. 1984) (in applying

section 552(b), "the court evaluates the expenditures of time, labor, and funds relating to the

collateral, the relative position of the secured party, and the overall rehabilitative theme of

bankruptcy law"), *aff'd*, 56 B.R. 727 (D. Minn. 1984).

   In the present case, the continued operation of the Properties will require the use of

the rents collected and the efforts of the Debtor.  Under those circumstances, limiting any lien on

revenues generated postpetition would be appropriate under section 552(b).  As was stated by the

court in *In re Cafeteria Operators, L.P.,* 299 B.R. 400 (Bankr. N.D. Tex. 2003):

> [T]he Court finds that the equities of this case warrant a finding that the
> Bank Group's security interest does not flow to all cash generated by
> Debtors, since all the cash is not proceeds of Bank Group's secured
> interest in inventory, but instead represents, in large part, the proceeds of
> Debtors' post-petition toil and effort.  Bank Group's pre-petition security
> interest continues in any cash realized by Debtors as the result of the sale
> of the inventory, but, based on this record, only to that extent.  To grant
> Bank Group a blanket lien on all of Debtors' cash generated post-petition
> would represent a windfall to Bank Group, in the face of Debtors'
> utilization of estate resources, *i.e.* the services of their employees, to
> increase the value of Bank Group's collateral, and would unfairly deplete
> the funds available for general unsecured creditors.

*Id.* at 410.

   The Court need not at this point make any determination with respect to the

applicability of section 552(b) in the present case.  Nonetheless, because this case exemplifies a

situation in which a creditor's collateral can be surcharged under section 506(c) and the equities

permit a restriction on the creditor's liens under section 552(b), the use of Cash Collateral is clearly

appropriate.

-17-

# IV.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully moves the Court for entry of orders granting the relief requested herein and such other relief as the Court deems just and proper.

DATED:  July 15, 2010

/s/  Neeta Menon
JEFFREY C. KRAUSE,
CHRISTINE M. PAJAK and
NEETA MENON, Members of
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION

[Proposed] Reorganization Counsel for Debtor and
Debtor in Possession

542250v.1

# EXHIBIT "1"

1  JEFFREY C. KRAUSE (STATE BAR NO. 94053)
   jkrause@stutman.com
2  CHRISTINE M. PAJAK (STATE BAR NO. 217173), and
   cpajak@stutman.com
3  NEETA MENON (STATE BAR NO. 254736), Members of
   nmenon@stutman.com
4  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
5  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA 90067
6  Telephone:  (310) 228-5600
   Telecopy:   (310) 228-5788
7
   [Proposed] Reorganization Counsel
8  For Debtor and Debtor in Possession

9  Debtor's Mailing Address:
   1888 Century Park East, Suite 810
10 Los Angeles, CA 90067

11            **UNITED STATES BANKRUPTCY COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                 **LOS ANGELES DIVISION**

14 In re                              ) Case No. 2:10-_____-__
                                      )
15 LITTLE TOKYO PARTNERS, L.P.,       ) Chapter 11
   a Delaware limited partnership,    )
16                                    )
                    Debtor.           )
17                                    ) **[PROPOSED] ORDER (1) AUTHORIZING**
                                      ) **THE DEBTOR TO USE CASH**
18                                    ) **COLLATERAL AND PROVIDE**
                                      ) **ADEQUATE PROTECTION TO FIRST**
19                                    ) **CITIZENS BANK AND TRUST COMPANY**
                                      ) **AND EXCELL INVESTMENT GROUP,**
20                                    ) **LLC PURSUANT TO 11 U.S.C. §§ 361 AND**
                                      ) **363; AND (2) SCHEDULING FINAL**
21                                    ) **HEARING  ON CONTINUED USE OF**
                                      ) **CASH COLLATERAL**
22                                    )
                                      )
23                                    )
                                      )
24                                    )          Hearing
                                      )
25                                    ) Date:
                                      ) Time:
26                                    ) Ctrm:   Courtroom ___
                                      )          255 E. Temple St.
27                                    )          Los Angeles, CA  90012
                                      )
28 _____ )

542269v1

1    The "**Emergency Motion For Order (1) Authorizing The Debtor To Use Cash**

2    **Collateral And Provide Adequate Protection To First Citizens Bank And Trust Company and**

3    **Excell Investment Group, LLC Pursuant To 11 U.S.C. §§ 361 And 363; (2) Scheduling Final**

4    **Hearing On Continued Use Of Cash Collateral, And (3) Authorizing Continued Use Of Cash**

5    **Collateral**" (the "Emergency Cash Collateral Motion") came on for hearing before the undersigned

6    bankruptcy judge's Courtroom _____, ___ Floor, 255 East Temple Street, Los Angeles, California

7    90012, at __:__ _.m. on July __, 2010.  Jeffrey C. Krause and Christine M. Pajak, members of

8    Stutman, Treister & Glatt Professional Corporation, appeared on behalf of Little Tokyo, L.P., debtor

9    and debtor in possession in the above-captioned chapter 11 case (the "Debtor").  Other appearances

10    are as reflected in the record.

11    Having reviewed the Emergency Cash Collateral Motion, the Declaration of David

12    Goddard in Support of Emergency First Day Motions, and all matters brought to the Court's

13    attention at the hearing on July __, 2010, pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), and

14    after due deliberation and consideration, the Court makes the following findings of fact and

15    conclusions of law:

16    **THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS:**

17    A.    On July __, 2010 (the "Petition Date") the Debtor filed a voluntary petition

18    with this Court for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned

19    chapter 11 case (the "Chapter 11 Case").

20    B.    The Debtor has retained possession of its property, and continues the

21    operation and management of its business as debtor in possession pursuant to Bankruptcy Code

22    §§ 1107 and 1108.  No trustee, examiner, Official Committee of Unsecured Creditors or any other

23    committee has been appointed in the Chapter 11 Case.

24    C.    The Court has jurisdiction over the Chapter 11 Case, the parties and the

25    Debtor's property pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to

26    28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Case and the Emergency Cash Collateral Motion is

27    proper under 28 U.S.C. §§ 1408 and 1409.

28

1

542269v1

D.      Prior to the Petition Date, First Citizens Bank And Trust Company (the "Bank") and Excell Investment Group, LLC ("Excell") both became secured creditors of the Debtor with potential interest in cash generated from the Debtor's operations.

E.      The Debtor owns the Kyoto Grand Hotel and Gardens (the "Hotel") and Weller Court ("Weller Court") in Downtown Los Angeles.

F.      Pursuant to that certain Business Loan Agreement dated as of August 10, 2007 (the "Original Loan"), First Regional Bank ("FRB") loaned to the Debtor the original principal sum of $44,000,000.  The Original Loan was secured by a deed of trust on both the Hotel and Weller Court, which were part of a single legal lot at the time.

G.      In August 2009, the Debtor divided the Subject Properties into two legal lots—one for the Hotel and one for Weller Court—and refinanced its loan obligations.  In November 2009, the Debtor entered into a new loan transaction with FRB under which the Debtor borrowed $33,600,000 and granted FRB a deed of trust on the Hotel to secure the new loan (the "Hotel Loan").  The proceeds of the Hotel Loan were paid to FRB in partial satisfaction of the Original Loan, and FRB released the deed of trust on the Hotel which secured the Original Loan.  The remaining balance owing on the Original Loan in the amount of approximately $10,400,000 is, therefore, now secured only by the Weller Court property.  This reduced loan shall be referred to herein as the "Remaining Original Loan" and all of the operative documents with respect to both the Hotel Loan and the Remaining Original Loan shall be referred to herein as the "Pre-Petition Loan Documents."

H.      On January 29, 2010, FRB was closed by the California Department of Institutions, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver.  The Bank contends that it acquired from the FDIC the Hotel Loan and Remaining Original Loan.

I.      Without prejudice to the rights of any party to challenge the validity, amount or priority of the Bank's claims or liens under the Pre-Petition Loan Documents, the Bank contends that the following facts are true:

(1)      As of the close of business on the day before the Petition Date, the Debtor was indebted to the Bank under the Hotel Note in the amount of approximately

2

1    $33.6 million and under the Remaining Original Loan in the amount of approximately

2    $10.4 million (the "Pre-Petition Debt").

3                    (2)        As security for the Hotel Loan, the Bank asserts a first priority lien on

4    the Hotel, all personal property used at the Hotel and the rents generated by the Hotel (the

5    "Bank's Hotel Collateral").  As security for the Remaining Original Loan, the Bank asserts a

6    first priority lien on Weller Court, the personal property used at Weller Court and the rents

7    generated by Weller Court (the Weller Court collateral and the Bank's Hotel Collateral are

8    hereinafter collectively referred to as the "Bank's Collateral").  The Hotel Loan and the

9    Remaining Original Loan are not cross-collateralized.

10            J.        The Debtor is not aware of any liens or security interests having priority over

11    the Bank's liens on the Bank's Collateral (the "Bank's Liens").  On July 14, 2010, Excell funded a

12    $300,000 loan to the Debtor, pursuant to a secured loan transaction, in order to fund the chapter 11

13    retainer payable to the Debtor's insolvency counsel.  The Excell loan is secured by a second priority

14    deed of trust on the Hotel and Weller Court ("Excell's Collateral"), which is subordinate to the

15    Bank's first priority deed of trust on the Hotel and Weller Court.

16            K.        An immediate and ongoing need exists for the Debtor to obtain authority to

17    use the Cash Collateral, to continue the operation of its business as debtor-in-possession under

18    chapter 11 of the Bankruptcy Code, to minimize the disruption of its operations as a "going

19    concern," and to reassure its vendors, customers, the employees who operate the Hotel and other

20    constituents of the Debtor's continued viability until such time as the Final Hearing (as defined in the

21    Emergency Cash Collateral Motion) may be conducted.

22            L.        As a result of Debtor's use of Cash Collateral (as hereinafter defined) pursuant

23    to Bankruptcy Code § 363(c) and the imposition of the automatic stay pursuant to Bankruptcy Code

24    § 362(a), the Bank and Excell are entitled to adequate protection for any diminution in value of their

25    respective interests in the their collateral.

26            M.        A copy of the Emergency Cash Collateral Motion was served by electronic

27    mail, fax, overnight courier, hand delivery or U.S. first-class mail upon: (i) the United States Trustee

28    ("U.S. Trustee"); (ii) counsel for the Bank; (iii) the twenty (20) largest unsecured creditors of Debtor

3

1   for which Debtor has contact information; and (iv) all entities with liens or security interests of

2   record on the Debtor's property, including Excell (collectively, the "Noticed Parties").  In light of the

3   emergency nature of the relief granted in this Interim Cash Collateral Order pending the Final

4   Hearing (the "Interim Period"), under the circumstances, the notice provided complies with

5   Bankruptcy Code § 102(1), Bankruptcy Rules 2002, 4001(b), 4001(c) and 4001(d), and Local

6   Bankruptcy Rules 2081-1(9) and 9013-1, all as required by Bankruptcy Code § 363.

7           N.      To adequately protect the Bank's Liens and Excell's liens on Excell's

8   Collateral ("Excell's Liens") (assuming, without deciding, that the Bank's Liens are valid, first

9   priority, unavoidable encumbrances on the Bank's Collateral and Excell's Liens are valid, second

10  priority, unavoidable encumbrances on Excell's Collateral) the Debtor proposes (1) to grant the Bank

11  replacement liens on the Bank Replacement Collateral, as defined in Paragraph 2 of this Order,

12  solely to the extent of any decline in the value of  the Bank's interest in the Bank's Collateral, and (2)

13  to grant the Excell replacement liens on the Excell Replacement Collateral, as defined in Paragraph 3

14  of this Order, solely to the extent of any decline in the value of the Excell's interest in the Excell

15  Collateral.  The Debtor's projections attached to the Goddard Declaration show that the Cash

16  Collateral will not decline during the Projection Period and it appears that the value of the Hotel and

17  Weller Court will not decline and may marginally increase as the result of the Debtor's completion

18  of certain deferred maintenance.  Based on the foregoing facts, it appears that the aggregate value of

19  each secured creditor's collateral and the Bank Replacement Collateral and Excell Replacement

20  Collateral, should not decline during the Interim Period.

21          O.      Based upon the record presented, it appears that good cause has been shown

22  for the entry of this Interim Cash Collateral Order. The entry of this Interim Cash Collateral Order

23  will minimize disruption of the Debtor's business and operations and will preserve the assets of the

24  Debtor's estates for the benefit of the Debtor's creditors, and is in the best interests of the Debtor, its

25  creditors, and the Debtor's estates.  The terms of the proposed use of Cash Collateral appear fair and

26  reasonable.

27          **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND**

28  **DECREED, AS FOLLOWS**:

542269v1

1            1.      <u>Permitted Uses of Cash Collateral</u>.  Through the conclusion of the Final

2 Hearing, the Debtor shall continue to operate its business in the ordinary course of business and is

3 authorized to use cash collateral, as defined in Bankruptcy Code § 363, including without limitation

4 rents generated by the Bank's Collateral (such cash proceeds, whether arising or collected prior to or

5 after the Petition Date (including all cash on hand on the Petition Date) collectively referred to

6 herein as, "Cash Collateral") to pay obligations incurred in the ordinary course of the Debtor's

7 business or amounts authorized by order of this Court.  The authorization to use Cash Collateral

8 shall terminate at the conclusion of the Final Hearing and in no event later than close of business on

9 August ___, 2010, absent further order of this Court.  The maximum amount of Cash Collateral that

10 the Debtor shall spend during the Interim Period, absent further order of this Court, shall be

11 $271,508.

12            2.      <u>Adequate Protection of the Bank</u>.  As adequate protection for, and solely to

13 the extent of any diminution in value of its interest in the Bank's Collateral resulting from the use,

14 sale or lease of the Bank's Collateral, including without limitation, the Cash Collateral, pursuant to

15 Bankruptcy Code § 363 and Paragraph 1 of this Order and the imposition of the automatic stay

16 pursuant to Bankruptcy Code § 362(a), effective upon entry of this Interim Cash Collateral Order

17 and without the necessity of the execution of mortgages, security agreements, pledge agreements,

18 financing statements or otherwise, the Bank is hereby granted replacement security interests and

19 liens in and to the Cash Collateral received by the Debtor from and after the Petition Date

20 throughout the Interim Period (hereinafter referred to as the "Bank Replacement Collateral").  Such

21 liens are referred to herein, as the "Bank's Adequate Protection Liens."  During the Chapter 11 Case,

22 or in any successor case, there shall not be entered any order that authorizes the obtaining of credit

23 or the incurrence of indebtedness by the Debtor (or any trustee or examiner) that is secured by a

24 security, mortgage or collateral interest or lien on all or any part of the Bank Replacement Collateral,

25 that is equal or senior to the Bank's Adequate Protection Liens, unless the Bank is provided with

26 alternative adequate protection in connection therewith or this Court determines that the Bank's

27 Liens on the Bank's Collateral are avoidable, unperfected or subject to subordination.

28

542269v1

3. <u>Adequate Protection of Excell</u>. As adequate protection for and solely to the extent of any diminution in value of its interest in Excell's Collateral resulting from the use, sale or lease of Excell's Collateral, including without limitation, the Cash Collateral, pursuant to Bankruptcy Code § 363 and Paragraph 1 of this Order and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a), effective upon entry of this Interim Cash Collateral Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or otherwise, Excell is hereby granted replacement security interests and liens in and to the Cash Collateral received by the Debtor from and after the Petition Date throughout the Interim Period (hereinafter referred to as the "Excell Replacement Collateral"). Such liens are referred to herein, as the "Excell Adequate Protection Liens" and together with the Bank's Adequate Protection Liens, the "Adequate Protection Liens." During the Chapter 11 Case, or in any successor case, there shall not be entered any order that authorizes the obtaining of credit or the incurrence of indebtedness by the Debtor (or any trustee or examiner) that is secured by a security, mortgage or collateral interest or lien on all or any part of the Excell Replacement Collateral, that is equal to senior to the Excell Adequate Protection Liens, except the Bank's pre-petition liens and the Bank's Adequate Protection Liens, which shall both be senior to Excell's Adequate Protection Liens, unless (a) Excell is provided with alternative adequate protection in connection therewith, (b) Excell consents, or (c) this Court determines that Excell's Liens are avoidable, unperfected or subject to subordination.

4. <u>Automatic Perfection of Liens</u>. The Adequate Protection Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Interim Cash Collateral Order to the same extent as the Bank's Liens or the Excell Liens. Nothing contained in this Interim Order addresses the validity, priority or perfection of the Bank's Liens on the Bank's Collateral or Excell's Liens on Excell's Collateral. Neither the Bank nor Excell shall be required to file any UCC-1 financing statements, notices of lien or any similar document or take any other action (including possession of any of the or the Bank Replacement Collateral or the Excell Replacement Collateral) in order to perfect any of the Adequate Protection Liens. If the Bank or Excell chooses, in its discretion, to file any such UCC-1 financing statements, or take any other action to perfect any part

6

of the Adequate Protection Liens, the Debtor and its manager shall cooperate by executing any documents or instruments that the Bank or Excell shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Cash Collateral Order.  The Bank or Excell may, each in its sole discretion, file a certified copy of this Interim Cash Collateral Order in any filing office in each jurisdiction in which the Debtor is organized, has or maintains any Bank Replacement Collateral or Excell Replacement Collateral, or has an office, and each filing office is directed to accept such certified copy of this Interim Cash Collateral Order for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of Bankruptcy Code § 1146.

5.    <u>Successors and Assigns</u>.  The provisions of this Interim Cash Collateral Order shall be binding upon all parties-in-interest in the Chapter 11 Case, including, without limitation, the Bank, Excell, the Debtor and their successors and assigns, and shall inure to the benefit of the Bank, Excell, the Debtor and their successors and assigns, including, without limitation, any trustee, examiner, responsible officer, estate administrator or representative, or similar person appointed in any case for the Debtor under any chapter of the Bankruptcy Code or in any successor proceeding, whether under the Bankruptcy Code or otherwise.

6.    <u>Priority of Terms</u>.  To the extent of any conflict between or among the express terms or provisions of any of the Pre-Petition Loan Documents or Excell's note and deed of trust, the terms and provisions of this Interim Cash Collateral Order shall govern and control.

4.    <u>Interim Order.</u>  This is an Interim Order.  The Court shall conduct a hearing on the Debtor's request to continue using the Cash Collateral at ___ o'clock _.m., on August __, 2010.  Any opposition to the continued use of the Cash Collateral shall be filed and served not later than 5:00 p.m. on _____, 2010 and any reply thereto shall be filed and served not later than 5:00 p.m. on _____, 2010.

542269v1

5.    <u>Entry of Order</u>.  This Interim Cash Collateral Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Cash Collateral Order on the Court's docket in the Chapter 11 Case.

*/s/Christine M. Pajak*

CHRISTINE M. PAJAK
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
[Proposed] Reorganization Counsel
For Debtor and Debtor in Possession

8

| In re: | CHAPTER 11 |
| LITTLE TOKYO PARTNERS, a Delaware limited partnership,<br><br>Debtor(s). | CASE NUMBER 2:10-_____ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067.

The foregoing document described **[PROPOSED] ORDER (1) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO FIRST CITIZENS BANK AND TRUST COMPANY AND EXCELL INVESTMENT GROUP, LLC PURSUANT TO 11 U.S.C. §§ 361 AND 363; AND (2) SCHEDULING FINAL HEARING  ON CONTINUED USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>**(indicate method for each person or entity served)**:**
On **[Date]** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

*See Exhibit A, Attached Hereto and Incorporated Herein by Reference*

☒ Service information continued on attached page

**III.  <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____          _____
*Date*                          *Type Name*                                                    *Signature*

| In re: | | CHAPTER 11 |
|---|---|---|
| LITTLE TOKYO PARTNERS, a Delaware limited partnership, | | |
| | Debtor(s). | CASE NUMBER 2:10-_____ |

**Exhibit A**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
542269v1

**F 9013-3.1**

| In re: | | CHAPTER 11 |
|---|---|---|
| LITTLE TOKYO PARTNERS, a Delaware limited partnership, | | |
| | Debtor(s). | CASE NUMBER 2:10-_____ |

## NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.

**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.

**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.

**4) Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER (1) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO FIRST CITIZENS BANK AND TRUST COMPANY AND EXCELL INVESTMENT GROUP, LLC PURSUANT TO 11 U.S.C. §§ 361 AND 363; AND (2) SCHEDULING FINAL HEARING ON CONTINUED USE OF CASH COLLATERAL** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **[Date]**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☐  Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐  Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐  Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
542269v1                                                                    **F 9021-1.1**

**EXHIBIT "2"**

| WELLER + HOTEL ROLLUP Little Tokyo Partners, LP July 16 to Oct 15, 2010 13-Week Budget | WEEK 1 07/16/10 - 07/23/10 | WEEK 2 07/24/10 - 07/30/10 | WEEK 3 07/31/10 - 08/06/10 | WEEK 4 08/07/10 - 08/13/10 | WEEK 5 08/14/10 - 08/20/10 | WEEK 6 08/21/10 - 08/27/10 | WEEK 7 08/28/10 - 09/03/10 | WEEK 8 09/04/10 - 09/10/10 | WEEK 9 09/11/10 - 09/17/10 | WEEK 10 09/18/10 - 09/24/10 | WEEK 11 09/25/10 - 10/01/10 | WEEK 12 10/02/10 - 10/08/10 | WEEK 13 10/09/10 - 10/15/10 | TOTAL 13-WEEK PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Account Name | | | | | | | | | | | | | | |
| *REVENUE* | | | | | | | | | | | | | | |
| Weller Court | 5,400 | 16,200 | 116,900 | 27,000 | 10,800 | 10,800 | 116,900 | 27,000 | 5,400 | 5,400 | 13,500 | 116,900 | 24,300 | 496,500 |
| Kyoto Grand Hotel | 322,890 | 333,966 | 282,778 | 240,833 | 250,435 | 290,696 | 164,084 | 170,063 | 212,137 | 225,167 | 263,776 | 222,735 | 282,923 | 3,262,482 |
| TOTAL REVENUE | 328,290 | 350,166 | 399,678 | 267,833 | 261,235 | 301,496 | 280,984 | 197,063 | 217,537 | 230,567 | 277,276 | 339,635 | 307,223 | 3,758,982 |
| *EXPENSES* | | | | | | | | | | | | | | |
| Weller Court | 17,110 | 18,500 | 22,775 | 24,000 | 41,500 | 33,775 | 8,500 | - | 42,500 | 32,775 | 8,500 | 1,000 | 49,775 | 300,710 |
| Kyoto Grand Hotel | 102,369 | 133,529 | 303,999 | 252,941 | 323,537 | 231,851 | 276,374 | 55,119 | 429,943 | 169,383 | 303,989 | 46,354 | 427,751 | 3,057,139 |
| TOTAL EXPENSES | 119,479 | 152,029 | 326,774 | 276,941 | 365,037 | 265,626 | 284,874 | 55,119 | 472,443 | 202,158 | 312,489 | 47,354 | 477,526 | 3,357,849 |
| TOTAL NET OPERATING INCOME | 208,811 | 198,137 | 72,903 | (9,108) | (103,802) | 35,870 | (3,890) | 141,944 | (254,907) | 28,409 | (35,213) | 292,281 | (170,303) | 401,133 |
| Beginning Cash Balance | 1,123,650 | 1,332,462 | 1,530,599 | 1,603,502 | 1,594,394 | 1,490,592 | 1,526,463 | 1,522,572 | 1,664,517 | 1,409,610 | 1,438,019 | 1,402,806 | 1,695,087 | 1,123,650 |
| +/<-> Net Operating Cash | 208,811 | 198,137 | 72,903 | (9,108) | (103,802) | 35,870 | (3,890) | 141,944 | (254,907) | 28,409 | (35,213) | 292,281 | (170,303) | 401,133 |
| Ending Cash Balance | 1,332,462 | 1,530,599 | 1,603,502 | 1,594,394 | 1,490,592 | 1,526,463 | 1,522,572 | 1,664,517 | 1,409,610 | 1,438,019 | 1,402,806 | 1,695,087 | 1,524,784 | 1,524,784 |

Notes:
1.   The Budget reflects only essential capital expenditures required to maintain operations during the Budget period.
2.   The Budget does not include any payments under that certain parking agreement, pursuant to which the Hotel pays Weller Court $42,300 per month for the use of 66 parking spaces
      because the Debtor is the owner of both properties.
3.   The Budget does not include certain expenses such as real property taxes or insurance costs because they are not paid during this period.

| WELLER COURT<br>Little Tokyo Partners, LP<br>July 16 to Oct 15, 2010<br>13-Week Budget | WEEK 1<br>07/16/10 -<br>07/23/10 | WEEK 2<br>07/24/10 -<br>07/30/10 | WEEK 3<br>07/31/10 -<br>08/06/10 | WEEK 4<br>08/07/10 -<br>08/13/10 | WEEK 5<br>08/14/10 -<br>08/20/10 | WEEK 6<br>08/21/10 -<br>08/27/10 | WEEK 7<br>08/28/10 -<br>09/03/10 | WEEK 8<br>09/04/10 -<br>09/10/10 | WEEK 9<br>09/11/10 -<br>09/17/10 | WEEK 10<br>09/18/10 -<br>09/24/10 | WEEK 11<br>09/25/10 -<br>10/01/10 | WEEK 12<br>10/02/10 -<br>10/08/10 | WEEK 13<br>10/09/10 -<br>10/15/10 | TOTAL<br>13-WEEK<br>PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Account Name** | | | | | | | | | | | | | | |
| *REVENUE* | | | | | | | | | | | | | | |
| Rent | 4,120 | 12,360 | 65,920 | 20,600 | 8,240 | 8,240 | 65,920 | 20,600 | 4,120 | 4,120 | 10,300 | 65,920 | 18,540 | 309,000 |
| Rent Storage | | | 1,500 | | | | 1,500 | | | | | 1,500 | | 4,500 |
| Rent Parking Monthly | | | 9,500 | | | | 9,500 | | | | | 9,500 | | 28,500 |
| Rent Percentage | | | 8,000 | | | | 8,000 | | | | | 8,000 | | 24,000 |
| Income Other | | | 2,500 | | | | 2,500 | | | | | 2,500 | | 7,500 |
| Recov  Insurance | | | 1,000 | | | | 1,000 | | | | | 1,000 | | 3,000 |
| Recov Marketing | | | 1,500 | | | | 1,500 | | | | | 1,500 | | 4,500 |
| Recov Taxes Property | 320 | 960 | 5,120 | 1,600 | 640 | 640 | 5,120 | 1,600 | 320 | 320 | 800 | 5,120 | 1,440 | 24,000 |
| Recov Utilities | | | 2,500 | | | | 2,500 | | | | | 2,500 | | 7,500 |
| Recov CAM Actual | | | 4,000 | | | | 4,000 | | | | | 4,000 | | 12,000 |
| Recov CAM Est | 960 | 2,880 | 15,360 | 4,800 | 1,920 | 1,920 | 15,360 | 4,800 | 960 | 960 | 2,400 | 15,360 | 4,320 | 72,000 |
| TOTAL REVENUE | 5,400 | 16,200 | 116,900 | 27,000 | 10,800 | 10,800 | 116,900 | 27,000 | 5,400 | 5,400 | 13,500 | 116,900 | 24,300 | 496,500 |
| *EXPENSES* | | | | | | | | | | | | | | |
| Administrative | 350 | | 1,000 | | | 1,000 | | | 1,000 | | | 1,000 | | 4,350 |
| Cleaning | | 3,000 | | | 3,000 | | | | 3,000 | | | | | 9,000 |
| Electrical | | | 1,000 | | | 1,000 | | | | 1,000 | | | | 3,000 |
| Elevator | | | | 5,000 | | | 5,000 | | | | | 5,000 | 15,000 |
| Fire Life Safety | | | | 500 | | | 500 | | | | | 500 | 1,500 |
| Grounds | 200 | | 1,500 | | | 1,500 | | | | 1,500 | | | | 4,700 |
| HVAC | | 2,000 | | | 2,000 | | | | 2,000 | | | | | 6,000 |
| Insurance | | | | 23,000 | | | | | | | | | | 23,000 |
| Landscape | | | | | 1,000 | | | | 1,000 | | | 1,000 | | 3,000 |
| Mgmt Fees | | | 8,275 | | | 8,275 | | | | 8,275 | | | 8,275 | 33,100 |
| PR Wages/Taxes/Benefits | | | | | 11,500 | | | | 11,500 | | | 11,500 | 34,500 |
| Plumbing | | 1,500 | | | 1,500 | | | | 1,500 | | | | | 4,500 |
| Prof Legal Unlawful Detainer | | | 1,000 | | | 1,000 | | | | 1,000 | | | | 3,000 |
| Project Mgr - Deferred Maintenance | | 5,000 | | | 5,000 | | | | 5,000 | | | | | 15,000 |
| Repairs & Maintenance | | 10,000 | | | 10,000 | | | | 10,000 | | | | | 30,000 |
| Security | | | | 9,000 | | | 9,000 | | | | | 9,000 | 27,000 |
| Util Deposits | 16,560 | | | | | | | | | | | | | 16,560 |
| Util Electricity | | | | 8,000 | | | 8,000 | | | | | 8,000 | 24,000 |
| Util Gas | | | | 500 | | | 500 | | | | | 500 | 1,500 |
| Util Water Potable | | | | 3,000 | | | 3,000 | | | | | 3,000 | 9,000 |
| Util Sewer | | | | 3,000 | | | 3,000 | | | | | 3,000 | 9,000 |
| Util Refuse Removal | | 3,000 | | | 3,000 | | | | 3,000 | | | | | 9,000 |
| DT Tenant Repairs/Improvements | | 5,000 | | | | 5,000 | | | | 5,000 | | | | 15,000 |
| TOTAL EXPENSES | 17,110 | 18,500 | 22,775 | 24,000 | 41,500 | 33,775 | 8,500 | - | 42,500 | 32,775 | 8,500 | 1,000 | 49,775 | 300,710 |
| TOTAL NET OPERATING INCOME | (11,710) | (2,300) | 94,125 | 3,000 | (30,700) | (22,975) | 108,400 | 27,000 | (37,100) | (27,375) | 5,000 | 115,900 | (25,475) | 195,790 |
| Beginning Cash Balance | 753,224 | 741,514 | 739,214 | 833,339 | 836,339 | 805,639 | 782,664 | 891,064 | 918,064 | 880,964 | 853,589 | 858,589 | 974,489 | 753,224 |
| +/<-> Net Operating Cash | (11,710) | (2,300) | 94,125 | 3,000 | (30,700) | (22,975) | 108,400 | 27,000 | (37,100) | (27,375) | 5,000 | 115,900 | (25,475) | 195,790 |
| Ending Cash Balance | 741,514 | 739,214 | 833,339 | 836,339 | 805,639 | 782,664 | 891,064 | 918,064 | 880,964 | 853,589 | 858,589 | 974,489 | 949,014 | 949,014 |

| | WEEK 1 07/16/10 - 07/23/10 | WEEK 2 07/24/10 - 07/30/10 | WEEK 3 07/31/10 - 08/06/10 | WEEK 4 08/07/10 - 08/13/10 | WEEK 5 08/14/10 - 08/20/10 | WEEK 6 08/21/10 - 08/27/10 | WEEK 7 08/28/10 - 09/03/10 | WEEK 8 09/04/10 - 09/10/10 | WEEK 9 09/11/10 - 09/17/10 | WEEK 10 09/18/10 - 09/24/10 | WEEK 11 09/25/10 - 10/01/10 | WEEK 12 10/02/10 - 10/08/10 | WEEK 13 10/09/10 - 10/15/10 | TOTAL 13-WEEK PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **KYOTO GRAND HOTEL** Little Tokyo Partners, LP July 16 to Oct 15, 2010 13-Week Budget | | | | | | | | | | | | | | |
| **Account Name** | | | | | | | | | | | | | | |
| *REVENUE* | | | | | | | | | | | | | | |
| Rooms | 250,529 | 228,294 | 213,921 | 184,191 | 187,842 | 223,652 | 114,962 | 103,283 | 128,245 | 149,924 | 191,321 | 159,434 | 218,982 | 2,354,580 |
| Food and Beverage | 53,436 | 77,654 | 51,337 | 43,503 | 27,674 | 46,142 | 36,626 | 50,120 | 54,736 | 47,252 | 56,845 | 47,793 | 46,027 | 639,144 |
| Other Misc Departments | 18,925 | 27,648 | 17,519 | 13,139 | 34,798 | 19,907 | 12,495 | 16,661 | 14,156 | 17,991 | 15,610 | 15,508 | 17,914 | 242,272 |
| TOTAL REVENUE | 322,890 | 333,966 | 282,778 | 240,833 | 250,435 | 290,696 | 164,084 | 170,063 | 212,137 | 225,167 | 263,776 | 222,735 | 282,923 | 3,262,482 |
| *EXPENSES* | | | | | | | | | | | | | | |
| Cost of Sales | 12,718 | 18,482 | 12,218 | 10,354 | 6,587 | 10,982 | 8,717 | 11,928 | 13,027 | 11,246 | 13,529 | 11,375 | 10,955 | 152,116 |
| Cleaning Supplies | 1,033 | 1,069 | 905 | 771 | 801 | 930 | 525 | 544 | 679 | 721 | 844 | 713 | 905 | 10,440 |
| Credit Card Discounts | 6,135 | 6,345 | 5,373 | 4,576 | 4,758 | 5,523 | 3,118 | 3,231 | 4,031 | 4,278 | 5,012 | 4,232 | 5,376 | 61,987 |
| Guest Supplies | 2,956 | 2,694 | 2,524 | 2,173 | 2,217 | 2,639 | 1,357 | 1,219 | 1,513 | 1,769 | 2,258 | 1,881 | 2,584 | 27,784 |
| Linens | 887 | 1,289 | 852 | 722 | 459 | 766 | 608 | 832 | 909 | 784 | 944 | 793 | 764 | 10,610 |
| Radio & Television | | | 6,230 | | | | 6,230 | | | | 6,230 | | | 18,690 |
| Reservation Expense | | | | | | 15,500 | | | | 15,500 | | | 15,500 | 46,500 |
| Sales & Marketing | 6,458 | 6,679 | 5,656 | 4,817 | 5,009 | 5,814 | 3,282 | 3,401 | 4,243 | 4,503 | 5,276 | 4,455 | 5,658 | 65,250 |
| Travel Agent Commission | 4,008 | 6,224 | 3,423 | 2,947 | 3,005 | 3,578 | 1,839 | 1,653 | 2,052 | 2,399 | 3,061 | 2,551 | 3,504 | 40,244 |
| Uniforms (Cleaning) | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 3,757 |
| Adm Equipment | | | | | 1,965 | | | | | | 1,965 | | | 3,930 |
| Adm Printing & Office Supplies | 258 | 267 | 226 | 193 | 200 | 233 | 131 | 136 | 170 | 180 | 211 | 178 | 226 | 2,610 |
| Emp Payroll & Taxes | | | 202,183 | | 202,493 | | 186,873 | | | 200,824 | | 193,882 | | 195,147 | 1,181,402 |
| Emp Health / Dental Insurances | | | | 29,000 | | | | | 29,000 | | | | 29,000 | 87,000 |
| Engineering Labor | | 72,150 | | | 72,150 | | | | | 72,150 | | | | 216,450 |
| Insurance | 19,000 | | | | 97,140 | | | | | | 19,000 | | | 135,140 |
| Mgmt Fee Asset Mgr | | | 1,000 | | 1,000 | | 1,000 | | | 1,000 | | 1,000 | | 6,000 |
| Mgmt Fee Hotel Mgmt Co | | 38,888 | | 30,986 | | | | | 30,972 | | | | 100,846 |
| Parking Labor | 6,375 | | 12,750 | | 12,750 | | 12,750 | | | 12,750 | | | 12,750 | 82,875 |
| Prof Legal - ADA Lawsuit | | | | 6,000 | | | 6,000 | | | 6,000 | | | 6,000 | 24,000 |
| Prof Legal - Banquet Emp Lawsuit | | | | 4,000 | | | 4,000 | | | 2,000 | | | | 10,000 |
| Prof Other - Labor Consultant | | | | 3,000 | | | 3,000 | | | 5,000 | | | 4,000 | 20,000 |
| Project Mgr - Deferred Maintenance | | 4,000 | | | 4,000 | | | | | 4,000 | | | | 12,000 |
| Plumbing | | | | | 10,000 | | 30,000 | | 30,000 | | | 10,000 | | 80,000 |
| Repair & Maintenance | 12,916 | 13,359 | 11,311 | 9,633 | 10,017 | 11,628 | 6,563 | 6,803 | 8,485 | 9,007 | 10,551 | 8,909 | 11,317 | 130,499 |
| Repairs ADA | | | | | 25,000 | | | 25,000 | | | 25,000 | | | 75,000 |
| Taxes - Personal Property | | | | 63,663 | | | | | | | | | | 63,663 |
| Telephone & Postage | 850 | 500 | | | 850 | 500 | | | 850 | 500 | | 850 | 500 | 5,400 |
| Transportation Expense | 200 | 183 | 171 | 147 | 150 | 179 | 92 | 83 | 103 | 120 | 153 | 128 | 175 | 1,884 |
| Utility Deposits | 28,285 | | | | | | | | | | | | | |
| Utilities | | | | 110,656 | | | | | 120,020 | | | | 122,101 | 352,777 |
| TOTAL EXPENSES | 102,369 | 133,529 | 303,999 | 252,941 | 323,537 | 231,851 | 276,374 | 55,119 | 429,943 | 169,383 | 303,989 | 46,354 | 427,751 | 3,028,854 |
| TOTAL NET OPERATING INCOME | 220,521 | 200,437 | (21,222) | (12,108) | (73,102) | 58,845 | (112,290) | 114,944 | (217,807) | 55,784 | (40,213) | 176,381 | (144,828) | 233,628 |
| Beginning Cash Balance | 427,898 | 648,419 | 848,856 | 827,635 | 815,527 | 742,425 | 801,270 | 688,980 | 803,924 | 586,118 | 641,901 | 601,688 | 778,069 | 427,898 |
| +/<-> Net Operating Cash | 220,521 | 200,437 | (21,222) | (12,108) | (73,102) | 58,845 | (112,290) | 114,944 | (217,807) | 55,784 | (40,213) | 176,381 | (144,828) | 205,343 |
| Ending Cash Balance | 648,419 | 848,856 | 827,635 | 815,527 | 742,425 | 801,270 | 688,980 | 803,924 | 586,118 | 641,901 | 601,688 | 778,069 | 633,241 | 633,241 |

| In re: | CHAPTER 11 |
|---|---|
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership,                                   Debtor(s). | CASE NUMBER 2:10-_____-__ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067.

The foregoing document described **EMERGENCY MOTION OF DEBTOR IN POSSESSION FOR ORDERS: (1) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO FIRST CITIZENS BANK AND TRUST COMPANY AND EXCELL INVESTMENT GROUP, LLC PURSUANT TO 11 U.S.C. §§ 361 AND 363; (2) SCHEDULING FINAL HEARING ON CONTINUED USE OF CASH COLLATERAL; AND (3) AUTHORIZING CONTINUED USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **July 15, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

*See Exhibit A, Attached Hereto and Incorporated Herein by Reference*

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 15, 2010 | Danielle Trujillo | *Danielle S. Trujillo* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| In re:<br><br>LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:10-_____-__ |

## Exhibit A

**SERVED BY CERTIFIED MAIL AND FEDERAL EXPRESS**

Bank of America N.A.
Attn: Jerri Shephard
1185 Avenue of the Americas, 16th Floor
New York, NY 10035

Wells Fargo Bank, N.A.
Attn: Michael Barry
433 North Camden Drive
Beverly Hills, CA 90210

**SERVED BY OVERNIGHT MAIL (Federal Express, unless otherwise indicated)**

Little Tokyo First Day Svc List
6325.000
Document #542310

Little Tokyo Partners LP
1880 Century Park East Suite 810
Los Angeles, CA 90067

Office of the US Trustee
725 S Figueroa St
Suite 2600
Los Angeles, CA 90017

Frandzel Robins Bloom Csato
Brian Bloom Esq
6500 Wilshire Blvd 17th Fl
Los Angeles, CA 90048-4920

First Citizens Bank and Trust
1801 Century Park East Suite 800
Los Angeles, CA 90067

Excell Investment Group, LLC
23586 Calabasas Rd. #100
Calabasas, CA 91302

Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114
**Served via U.S. Postal Express Mail**

Able Engineering Services
868 Folsom Street
San Francisco, CA 94107
Contact: Mark S. Kelly, VP

LA DWP
PO Box 30808
Los Angeles, CA 90030
**Served via U.S. Postal Express Mail**

Crestline Hotels & Resorts
3950 University Drive Suite 301
Fairfax, VA 22030
Contact: Elizabeth Lieberman, Esq.

State of California
Board of Equalization
PO Box 942870
Sacramento, CA 94279
**Served via U.S. Postal Express Mail**

Marukai Corporation
1740 W Artesia Blvd
Gardena, CA 90248
Contact: Debi Ichinofe

Thimesch Law Offices
158 Hilltop Crescent
Walnut Creek, CA 94597-3457
Contact: Timothy S. Thimesch

Kinokuniya Bookstores
123 South Onizuka St
Suites 205-206
Los Angeles, CA 90012
Contact: Kyoichi Ishikawa

Hodes Parking
421 N. Rodeo Drive
Beverly Hills, CA 90210

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
542326v.1

**F 9013-3.1**

| In re: | CHAPTER 11 |
|---|---|
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership,<br><br>Debtor(s). | CASE NUMBER 2:10-_____-__ |

Gateway Security, Inc.
604-608 Market Street
Newark, NJ 07105

House Foods America Corp
7351 Orangewood Avenue
Garden Grove, CA 92841
Contact: Koji Yamada

K & M Foodservice
2443 3 27th Street
Vernon, CA 90058

Jin Sung Lee & Jae Hee Lee
DBA Tofu Village
123 S Onizuka St Suite 307
Los Angeles, CA 90012
Contact: Jin Sung Lee

Waxie Sanitary Supply
PO Box 81006
San Diego, CA 92138
**Served via U.S. Postal Express Mail**

KTWV-FM
PO Box 100495
Pasadena, CA 91189
**Served via U.S. Postal Express Mail**

Yee Yuen Linen Service
2575 S Normandie Avenue
Los Angeles, CA 90007

Room Service Amenities
1010 Campus Drive West
Morganville, NJ 07751

Pasadena Baking Wholesale
70 W. Palmetto Drive
Pasadena, CA 91105

Commercial Waste Service Inc.
PO Box 820
Montebello, CA 90640
**Served via U.S. Postal Express Mail**

Simplex Grinnell
Dept. Ch 10320
Palatine, IL 60055

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
542326v.1

**F 9013-3.1**