1  JEFFREY C. KRAUSE (State Bar No. 94053),
   jkrause@stutman.com
2  CHRISTINE M. PAJAK (State Bar No. 217173), and
   cpajak@stutman.com
3  NEETA MENON (State Bar No. 254736), Members of
   nmenon@stutman.com
4  STUTMAN, TREISTER & GLATT, P.C.
   1901 Avenue of the Stars, 12th Floor
5  Los Angeles, CA 90067
   Telephone:    (310) 228-5600
6  Telecopy:    (310) 228-5788

7  [Proposed] Reorganization Counsel for
   Debtor and Debtor in Possession

8
   Debtor's Mailing Address:
9  1880 Century Park East, Suite 810
   Los Angeles, CA  90067

10

11              **UNITED STATES BANKRUPTCY COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                  **LOS ANGELES DIVISION**

| | |
|---|---|
| 14  In re | )  Case No. 2:10-_____-__ |
| | ) |
| 15  LITTLE TOKYO PARTNERS, L.P., | )  Chapter 11 |
|     a Delaware limited partnership, | ) |
| 16 | ) |
|         Debtor. | )  **DECLARATION OF DAVID GODDARD IN** |
| 17 | )  **SUPPORT OF FIRST DAY MOTIONS** |
| | ) |
| 18 | ) |
| | )      [Hearing to be set by the Court] |
| 19 | ) |
| 20 | ) |
| 21 | ) |
| 22 | ) |

23

24

25

26

27

28

I, David Goddard, declare as follows:

**I.    INTRODUCTION**

1.    I am over 18 years old.  I have personal knowledge of the statements set forth below except for those facts stated on information and belief, and as to those facts, I am informed and believe them to be true.  If called upon to do so, I could and would testify competently to the matters stated in this Declaration because I know them of my own personal knowledge.

2.    I am the Chief Financial Officer ("CFO") of Little Tokyo Partners, L.P., the debtor and debtor in possession in the above-captioned case (the "Debtor").  I have served as CFO of the Debtor since May 2006.  In addition to serving as CFO of the Debtor, I am also CFO for affiliated companies.

3.    Prior to becoming CFO of the Debtor, I served for six years as the chief financial officer of an Ultra-High Net Worth Family Office and Kayne Anderson Rudnick, a $10 billion stock and bond investment manager.  Prior to that, I was for three years the vice president of finance for A-Mark Financial Corporation, a $2 billion merchant banker, and for five years the vice president of finance for American Realty Advisors, a $1 billion real estate investment manager, and for five years an acquisitions analyst and project manager for Lewis Douglas Partners, a private real estate development company.  I began my career at Price Waterhouse as an auditor and tax accountant.  I received a B.A. in accounting from the University of San Diego.

4.    I submit this Declaration in support of the various "first day" motions (the "First Day Motions") filed in this case.

5.    The Debtor commenced the above-captioned case by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on July 15, 2010 (the "Petition Date").

6.    As the CFO of the Debtor, I am in charge of strategic and financial planning, financing, and business operations.  I am involved on a day-to-day basis with all major decisions made by the Debtor.  Accordingly, I have personal knowledge of all major aspects of the Debtor's ongoing business affairs, day-to-day business operations, financial condition, and books and records.

7.      Based upon my personal knowledge of the Debtor and its business operations, as well as the information contained in the Debtor's books and records and assembled under my supervision and direction, I am qualified to give this Declaration on behalf of the Debtor.

8.      I submit this Declaration in support of certain of the First Day Motions submitted to the Court concurrently herewith.  Except as otherwise indicated, all facts set forth in this Declaration are based based on my personal knowledge, my review of relevant documents, reports prepared for me by the employees of the two management companies that the Debtor employs to operate and manage its businesses, discussions I have had with these employees or my opinion based upon my experience, expertise and knowledge of the Debtor's operations, financial condition and the industry.  If I were called upon to testify, I could and would testify competently as to my knowledge regarding the veracity of the facts set forth herein.

## II.   GENERAL BACKGROUND OF DEBTOR

9.      The Debtor is a startup company that owns the Kyoto Grand Hotel and Gardens (the "Hotel") and Weller Court ("Weller Court") in the "Little Tokyo"[1] area of Downtown Los Angeles.  Built in 1977, the Hotel is the centerpiece building and the only large, full-service hotel in Little Tokyo.  The 21-story hotel was purchased by the Debtor in 2007 and features 434 guest rooms, meeting rooms and a hotel restaurant.

10.     The Hotel is managed by Crestline Hotels & Resorts Inc. ("Crestline"), an independent hospitality management company headquartered in Fairfax, Virginia.  Crestline provides hospitality management services to the Hotel through a management agreement with the Debtor and is paid a monthly management fee of 2.5% of the Hotel's revenues.  Under the management agreement, Crestline is appointed as the Debtor's exclusive agent to supervise, direct, and control the management and operation of the Hotel.  As the Debtor's agent, Crestline contracts with third party vendors on behalf of the Hotel, and the Hotel's pre-petition bank accounts were in the name of Crestline.  Notwithstanding that certain business transactions took place in the name of

---

[1]      The Hotel is located at 204 East First Street, and Weller Court is located at 120 South Los Angeles Street and 227 East Second Street (together, the "Subject Properties").

542292v.5

1  Crestline, all obligations were incurred on behalf of the Hotel and all cash in the Hotel's bank

2  accounts constitutes revenue from the Hotel's business operations.

3         11.     With respect to the Hotel, the Debtor has no employees of its own.  The 175

4  employees who work at the Hotel (including full-time, part-time, and on-call employees) are all

5  employees of Crestline.  The Debtor reimburses Crestline for all services, wages, and benefits of

6  these employees on a bi-weekly basis.  In addition to the services provided to the Hotel by Crestline,

7  the Hotel also subcontracts out with third parties for a variety of other services, including those

8  related to parking, security, and engineering.

9         12.     Immediately adjacent to the Hotel is Weller Court, a three-story outdoor mall.

10  Weller Court has approximately 30 tenants, including retailers, restaurants, and a supermarket.

11  Weller Court is managed by Everest IV, LLC ("Everest IV"), an affiliated company that shares some

12  of the same ultimate equity investors as the Debtor, through a management agreement and is paid a

13  monthly fee of 5% of gross receipts, which is a fair market fee in the real property management

14  industry.

15         13.     Weller Court's day-to-day operations are maintained by the services of two

16  employees, on a part-time basis, who provide basic janitorial and maintenance services.  These

17  employees are employed and paid by Center Medical Building, LLC ("CMB").[2]  Although the

18  Debtor has not entered into any formal agreement with CMB, the Debtor has historically reimbursed

19  CMB for the Debtor's allocable share of the employment related expenses of these two employees,

20  based on the services that these employees provide to Weller Court.  This is projected to be

21  approximately $34,500 during the first 13 weeks of the case.  The Debtor's monthly payroll

22  reimbursement expense for both the Hotel and Weller Court is approximately $450,000.

23         14.     Pursuant to that certain Business Loan Agreement dated as of August 10,

24  2007 (the "Original Loan"), First Regional Bank ("FRB") loaned to the Debtor the original principal

25  sum of $44,000,000.  The Original Loan was secured by a deed of trust on both the Hotel and Weller

26

27  _____
[2]   CMB and the Debtor share some of the same ultimate equity investors.

28

542292v.5

Court, which were part of a single legal lot at the time.  The Original Loan was partially guaranteed by the equity owners of the Debtor (the "Guaranty").

15.    Under the terms of the Guaranty, the obligations thereunder would be released upon the Hotel and Weller Court achieving a debt service coverage ratio of not less than 1.25 to 1.0 for two consecutive quarters.  The Debtor and the guarantors provided financial statements to FRB in August 2008, demonstrating that the Debtor had met this ratio.  FRB conducted four months of analysis of the financial information, including dozens of emails exchanges between the FRB bank officer in charge of the Original Loan and the Debtor's accounting staff.  Ultimately, FRB agreed that this ratio had been met and, in December 2008, FRB formally released all obligations under each of the Guaranties.  As discussed further below, FRB's successor seeks to evade this release and resurrect and transform these Guaranties, but since December 2008 these Guaranties have not been in existence.

16.    In August 2009, the Debtor divided the Subject Properties into two legal lots—one for the Hotel and one for Weller Court—and refinanced its loan obligations.  In November 2009, the Debtor entered into a new loan transaction with FRB under which the Debtor borrowed $33,600,000 and granted FRB a deed of trust on the Hotel to secure the new loan (the "Hotel Loan").  The proceeds of the Hotel Loan were paid to FRB in partial satisfaction of the Original Loan, and FRB released the deed of trust on the Hotel which secured the Original Loan.  The remaining balance owing on the Original Loan in the amount of $10,400,000 is, therefore, now secured only by the Weller Court property. This reduced loan shall be referred to herein as the "Remaining Original Loan."  The two loans are not cross-collateralized but they do contain cross-default provisions.

17.    On January 29, 2010, FRB was closed by the California Department of Institutions, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver.  The Debtor has been informed that First-Citizens Bank & Trust Company (the "Bank") acquired a majority of the assets and assumed a majority of the liabilities of FRB, including the Hotel Loan and Remaining Original Loan from the FDIC.

542292v.5

18.     As of the Petition Date, the outstanding amount due and owing under the Remaining Original Loan is $10,400,000.00.  Likewise, as of the Petition Date, the outstanding principal amount due and owing under the Hotel Loan is $33,580,415.83.

19.     On July 14, 2010, Excell Investment Group, LLC ("Excell") funded a $300,000 loan to the Debtor, pursuant to a secured loan transaction, in order to fund the chapter 11 retainer payable to the Debtor's insolvency counsel.  The Excell loan is secured by a second priority deed of trust on the Hotel and Weller Court, which is subordinate to the Bank's first priority deed of trust on the Hotel and Weller Court.

20.     Starting in the last quarter of 2008, the Debtor's financial performance was materially impacted by the continuing deterioration in the overall economy and the resulting decline in the business and leisure travel market.  The Hotel experienced a precipitous drop in revenue starting in the last quarter of 2008, which continued throughout 2009.

21.     As a result the Debtor defaulted under the Hotel Loan in January 2010.  The Debtor, however, has remained current on the Remaining Original Loan through the Petition Date.

22.     The Bank commenced non-judicial foreclosure proceedings against both the Hotel and Weller Court, relying on the cross-default provisions.  The Bank also filed a complaint (the "Complaint") seeking, among other things, the appointment of a receiver for both the Hotel and Weller Court.[3]  The parties continued to negotiate in an effort to reach a consensual resolution.  The Bank scheduled a non-judicial foreclosure sale for the morning of July 16, 2010.  On July 12, 2010, the Bank informed the Debtor that the Bank would not continue the foreclosure sale of the Hotel and Weller Court to give the parties additional time to reach a consensual resolution.  The Debtor commenced this chapter 11 case on July 15, 2010.

---

[3]     The Complaint also seeks to void the releases of the Guarantors and to somehow transform those guaranties into guaranties of the Hotel Loan (which was entered into only after the Guaranties had been formally released).  The Debtor and the Guarantors contend that the Bank's effort to resuscitate the Guaranties and transform them into Guaranties of the Hotel Loan is entirely unfounded.

-6-

## III. FIRST DAY EMERGENCY MOTIONS

23.    In connection with the preparation for this bankruptcy proceeding, I became familiar with the First Day Motions that were to be filed concurrently with this Declaration.  As set forth more fully below, the entry of orders granting the relief requested in the First Day Motions is critical to the Debtor's ability to maximize the return to its estate and creditors.

**A.    Emergency Motion of Debtor in Possession for Orders:  (1) Authorizing Interim Use of Cash Collateral; (2) Scheduling, and Establishing Deadlines Relating to, a Final Hearing on Continued Use of Cash Collateral; and (3) Authorizing Continued Use of Cash Collateral (the "Cash Collateral Motion").**

24.    There are two entities with an interest in cash, negotiable instruments, deposit accounts, and other cash equivalents within the scope of section 363(a) of the Bankruptcy Code, including cash and cash equivalents in escrow (the "Cash Collateral") other than the Debtor's estate. The first is the Bank, as successor in interest to First Regional Bank.  The Bank is a beneficiary under: (i) that certain Promissory Note ("Note 1")[4], dated as of August 10, 2007, in the principal amount of $10,400,000.00, which it asserts is secured by a first priority lien on Weller Court, pursuant to a deed of trust dated August 10, 2007, a true and correct copy of which is attached hereto as Exhibit "1"; and (ii) that certain Promissory Note ("Note 2"), dated as of November 25, 2009, in the principal amount of $33,600,000, which it asserts is secured by a first priority lien on the Hotel, pursuant to a deed of trust dated November 25, 2009, a true and correct copy of which is attached hereto as Exhibit "2".  As of the Petition Date, the outstanding principal amount due and owing under Note 2 was $33,580,415.83.

25.    The other entity with an interest in the Cash Collateral is Excell.  As explained above, Excell funded a $300,000 loan to the Debtor on July 14, 2010, pursuant to a secured loan transaction, in order to fund the chapter 11 retainer payable to the Debtor's insolvency counsel.  The Excell loan is secured by a second priority deed of trust on the Hotel and Weller Court, which is subordinate to the Bank's first priority deed of trust on the Hotel and Weller Court.

---

[4]    Note 1 was originally issued in the principal amount of $44,000,000, but was subsequently amended and reduced to $10,400,000, when the Debtor paid off $33.6 million of the Original Loan in August 2009.

542292v.5

26.     The Debtor seeks to use Cash Collateral, pursuant to the terms of a cash collateral budget attached hereto as Exhibit "3" (the "Budget"), to continue to market, lease, manage and operate the Hotel and Weller Court (hereinafter, collectively referred to as the "Properties"), in the ordinary course of business, to ensure that the transition into bankruptcy is seamless for the guests, customers, employees and lessees of the Properties.

27.     The Bank's and Excell's lien interests will be adequately protected by: (1) the maintenance and preservation of the going concern value of their respective collateral; and (2) replacement liens in any proceeds generated from the post-petition use of the Properties.

28.     Debtor proposes to use approximately $271,508 during the approximately fifteen (15) days following the Petition Date for expenditures necessary for the continued operation and management of Weller Court and the Hotel.  During this same period, it is estimated that the rents collected from Weller Court and revenues from the Hotel will be approximately $678,456. Accordingly, the use of Cash Collateral will enable the aggregate value of the Bank's and Excell's collateral to increases during the first two weeks, and thereafter to increase by approximately $401,133 during the Budget period, taking into account accruing interest on the claims of the Bank and Excell.  See Budget, Exhibit "3".

29.     The Debtor would suffer immediate and irreparable harm absent the interim relief requested in the Cash Collateral Motion.  Without the use of Cash Collateral, the Debtor will not be able to continue to operate the Hotel or Weller Court, as the Debtor will have no money to pay management fees or other essential operating costs of either of the Properties.  Any interruption in the Debtor's access to cash will prevent the Debtor from being able to provide the multitude of services to which the Hotel guests are accustomed.  As result, the Debtor would be forced to close the Hotel, thereby displacing both employees and current Hotel guests as well as guests who have not yet arrived (some of whom have prepaid for their stay), and losing all of its revenue sources.

30.     Without the use of Cash Collateral, the Debtor will be unable to provide the management, security, utilities, maintenance, and other services for which the tenants at Weller Court have paid and require in order to continue operating their businesses.  If the Debtor breaches

-8-

542292v.5

1    its landlord obligations under the Weller Court leases, many of the tenants may seek early

2    termination of their leases.

3             31.    Accordingly, if the Debtor is not allowed to use the Cash Collateral, a further

4    decline in the necessary cash flows will result, the value of both Properties will suffer, and both

5    businesses will be irreparably harmed.  However, by continuing to operate the Properties, the Debtor

6    will be able to operate on a cash flow positive basis to preserve the value of both of the Properties.

7             32.    Excell has consented to the Debtor's use of Cash Collateral but, to date, the

8    Bank has not consented.  The Debtor contends that the Bank's interest in the Cash Collateral extends

9    only to the net proceeds of the rents the Debtor will collect post-petition, after operating expenses

10    are paid.  Moreover, the Bank is adequately protected in at least the following ways: (i) the use of

11    Cash Collateral will preserve the going concern value of the Properties, which will inure to the

12    benefit of all parties in interest, including the Bank and Excell; and (ii) the Debtor will provide both

13    the Bank and Excell with replacement liens.

14       **B.**    **Emergency Motion For Order Pursuant To 11 U.S.C. §§ 105 and 363**
15             **Authorizing (A) Continued Maintenance of Certain Existing Bank Accounts; and (B) Continued Use Of Existing Cash Management System (the "Cash Management Motion").**

16

17             33.    Pursuant to the Cash Management Motion, the Debtor seeks authority to

18    maintain a certain pre-petition bank account and its prepetition cash management system.

19             34.    The Debtor maintains only one bank account in connection with the

20    operations of Weller Court (the "Weller Court Operating Account") located at Wells Fargo Bank,

21    N.A. ("Wells Fargo").  All tenant receipts and any other operating revenue from Weller Court are

22    deposited into this account, and all disbursements on account of goods and services provided to

23    Weller Court are paid from this account.  There are no automatic deposits into, or deductions from,

24    the Weller Court Operating Account.  The Debtor will close and re-open the Weller Court Operating

25    Account at Wells Fargo on the Petition Date and will also open a new debtor-in-possession tax

26    account to be used for Weller Court and the Hotel in order to comply with the United States

27    Trustee's operating guidelines (the "UST Guidelines").

28

542292v.5

35.     The Debtor maintains five bank accounts related to the Hotel.  Three of these accounts are located at Wells Fargo and include: (i) a savings account containing funds set aside for future renovations; (ii) a checking account which was used to make payments related to renovations at the Hotel; and (iii) an operating account into which profits from the Hotel's business were deposited and from which, among other things, payments on the Hotel Loan were historically made (collectively, the "Hotel Wells Accounts").  The Debtor will close and re-open the Hotel Wells Accounts as of the Petition Date.

36.     The remaining two accounts are comprised of the "Hotel Operating Account" and the "Travel Agency Account", which are maintained at Bank of America.  Unlike the Hotel Wells Accounts, these accounts are in the name of Crestline.  As explained above, Crestline acts as the Debtor's agent pursuant to the terms of a management agreement.  Both accounts, as well as all funds therein, are property of the Debtor and its estate, and Crestline exercises control over these accounts only in its role as agent for the Debtor.[5]

37.     The Hotel Operating Account is the Hotel's main operating account, and is maintained at Bank of America, bearing the account number 1233065939.  All of the Hotel's revenues are deposited into the Hotel Operating Account, including the automated credit card payments made by guests for room rentals, as well as restaurant and other incidental charges, that constitute the bulk of the Hotel's earnings.  In addition, automated disbursements are also made from the Hotel Operating Account, including the payment of credit card processing fees on a daily basis. If any of these transactions were disrupted for even a brief period of time, not to mention the extended period of time it would take to notify all entities doing business with the Debtor that the Hotel Operating Account has been closed, the result would be a breakdown of the Hotel's entire cash management system and would have a dramatic impact on the Hotel's ability to collect its operating revenue.  In particular, the Hotel would have difficulty processing the bulk of payments made by its guests if the Hotel Operating Account were closed.

---

[5]     The Management Agreement states, in relevant part, that "[t]he performance of all activities by [Crestline], including the maintenance of all bank accounts, shall be as the agent of and for the account of [the Debtor]".  Management Agreement, section 1.01.

542292v.5

38.     In addition to the Hotel Operating Account, the Debtor (through Crestline) also maintains the Travel Agency Account at Bank of America, which bears the account number 1233065953.  This account is set up for the sole purpose of making commission payments to travel agencies and other travel-related companies (together, the "Travel Agencies") that do business with the Debtor.  The Debtor estimates that it does business with more than 50 Travel Agencies.

39.     In general terms, Travel Agencies earn a commission after a guest stays at the Hotel.  Commissions are then paid on a weekly basis, in arrears, typically through the issuance of commission checks to the Travel Agencies in accordance with industry practice.[6]  The Debtor seeks to close and re-open the Travel Agency Account.

40.     Upon the filing of this case, the Debtor will take steps to substantially comply with the UST Guidelines to the fullest extent possible with respect to the Hotel Operating Account.  The Debtor will notify Bank of America and Wells Fargo of its status as a "debtor in possession," and will request that Bank of America modify its records to reflect that the Hotel Operating Account and the re-opened Travel Agency Account are accounts in the name of Crestline as agent for Little Tokyo Partners, L.P., a debtor in possession.  Other than payments that are approved by the Court, the Debtor will promptly notify Bank of America to make sure that no pre-petition checks will be honored post-petition from the Hotel Operating Account.

41.     In addition, the Debtor will also be able to ensure that there are no automatic transfer of funds out of these accounts on account of pre-petition expenses.  In connection with the Operating Account, most of the automated transfers are made to reimburse certain payments to Crestline.  Crestline has been informed of this bankruptcy filing, has been put on notice not to deduct any pre-petition expenses from the Hotel Operating Account, and has confirmed to counsel that it will not deduct any pre-petition amounts that are owed to it from the Hotel Operating Account.  The Debtor has also stopped other scheduled payments on account of pre-petition payments that would otherwise be made against the Operating Account.  The Debtor will also closely monitor all

---

[6]     The Hotel has contracts with just a handful of Travel Agencies that set out terms for making commission payments.  The Hotel follows standard industry practice, as opposed to relying on specific contract terms, in paying commissions to Travel Agencies.

542292v.5

1  transactions it manually effectuates to further ensure that no pre-petition obligation is honored post-

2  petition, except as authorized by this Court.

3          42.    Finally, the Debtor will request that Wells Fargo issue checks for the Debtor's

4  newly opened accounts with its "debtor-in-possession" status and chapter 11 case number

5  prominently featured, and will request that Bank of America, with respect to the newly re-opened

6  Travel Agency Account, issue new checks in the name of Crestline as agent for Little Tokyo

7  Partners, L.P., a debtor in possession with the chapter 11 case number prominently featured.  With

8  respect to the Hotel Operating Account, the Debtor, in writing any checks on this account, will

9  clearly state on each check that the account is under the name of Crestline, solely as agent for Little

10  Tokyo Partners, L.P., a debtor-in-possession, and write the chapter 11 case number on each check.

11          43.    As noted above, the Debtor had only one operating account in connection with

12  the pre-petition operations at Weller Court.  All receipts and disbursements were made out of this

13  account.  The Debtor seeks to continue the same cash management system post-petition.

14          44.    The Debtor also maintained a simplified pre-petition cash management system

15  similar to that of Weller Court for the Hotel.  With the exception of payments made to Travel

16  Agencies, all receipts and disbursements were made out of the Hotel Operating Account.  In making

17  payments to Travel Agencies, the Debtor's agent would first transfer monies from the Hotel

18  Operating Account into the Travel Agency Account to fund the commission payments to the Travel

19  Agencies.  The Debtor seeks to continue the same cash management system post-petition; however,

20  as mentioned above, the Debtor will establish a single debtor-in-possession tax account to pay all

21  taxes incurred by the Debtor as they relate to either the operations at the Hotel or Weller Court.

22          45.    Maintaining the Debtor's pre-petition cash management system assures

23  prompt receipt and allocation of funds and the generation of timely and accurate financial

24  information necessary to manage the Debtor's operations.  Failure to preserve the cash management

25  system in essentially the same manner as it existed pre-petition, particularly at a time when the

26  Debtor is subject to the operational dislocation attendant to its chapter 11 filing, would severely

27  disrupt the Debtor's ordinary financial affairs and business operations, and would likely interfere

28  significantly with efforts to preserve and maximize value for the Debtor's estate and its creditors.

542292v.5

**C.     Emergency Motion For Order Permitting Debtor To Honor Customer Deposits and Travel Agency Commissions (the "Customer Deposit and Commission Motion").**

46.     Pursuant to the Customer Deposit and Commission Motion, the Debtor seeks authority to honor pre-petition customer deposits and pay certain pre-petition travel agency commissions.

47.     In the ordinary course of business, the Hotel collects deposits from prospective guests and customers to reserve rooms, facilities, and other services on specific dates. For example, future guests at the Hotel sometime secure their reservations by paying a deposit for all fees, charges and taxes for one night's stay, and other guests choose to pre-pay for their entire stay at the Hotel.

48.     The Hotel also has contracts with Travel Agencies which arrange group travel and make deposits with the Hotel to secure rooms for those traveling on these tours.  In addition, the Hotel also receives deposits from customers to secure the use of its facilities for events such as weddings and family reunions.  In these instances, the customer enters into a contract with the Hotel and typically makes an initial deposit of 25% of the total anticipated cost.  Scheduled payments are then made by the customer who fully pays for the entire event in advance.  Finally, the Hotel provides catering services to certain customers who also pre-pay for any such services.  All of these deposits and pre-payments by the Hotel's customers collectively comprise the "Customer Deposits."

49.     As of the Petition Date, the Debtor estimates the Hotel is in possession of Customer Deposits in the amount of approximately $290,625.  These Customer Deposits were made by numerous prospective customers for future post-petition services to be provided by the Hotel. Maintaining the satisfaction and goodwill of prospective guests and other customers is imperative to the success of any reorganization by the Debtor.  If the Debtor is unable to honor the Customer Deposits, its operations would be severely affected.

50.     In connection with outstanding pre-petition travel agency commissions, the approximately 50 Travel Agencies that do business with the Debtor are responsible for booking thousands of guests at the Hotel on an annual basis, which bookings are responsible for $1 million

-13-

dollars in Hotel revenues per year.   Any deviation from promptly fulfilling the commissions owed

to these entities (the "Travel Agency Commissions") would likely result in the Travel Agencies

diverting potential customers away from the Hotel, detrimentally impacting the Hotel's business.

Regardless of whether they have a contract with the Hotel, the Travel Agencies are under no

obligation to refer business to the Hotel.  They will simply direct potential customers to other

establishments.  Moreover, by honoring the Travel Agency Commissions, the Debtor will further

demonstrate that the Hotel's operations have not been interrupted by the filing of the bankruptcy.

51.    As of the Petition Date, the Debtor estimates the Hotel owes Travel Agencies

for Travel Agency Commissions that were earned prior to the Petition Date approximately $20,000.

**D.    Emergency Motion for Order: (I) Deeming Utilities Adequately Assured of
Future Performance; and (II) Establishing Procedures for Determining Requests
for Additional Assurance Pursuant to Bankruptcy Code Section 366 (the
"Utilities Motion").**

52.    Pursuant to the Utilities Motion, the Debtor seeks to provide adequate

assurance of future performance to the utilities that provide services to the Hotel and Weller Court.

53.    In connection with its ongoing business, the Debtor currently obtains

electricity, natural gas, water, telephone, sewer, trash removal, and other similar services ("Utility

Services") from approximately seven companies (the "Utilities") at Weller Court and the Hotel.

Certain accounts for Utilities Services provided to the Hotel are in Crestline's name as agent for the

Debtor and others are in the name of the Debtor or the Hotel.  The Debtor pays all Utilities directly

for Utility Services incurred by both the Hotel and Weller Court.

54.    By their nature, the Utility Services are critical to the Debtor's operations and

cannot be replaced or interrupted.  If any such disruption were to occur for even a brief period at the

two properties, the Debtor would be unable to make good on basic tenant and guest obligations, and

the corresponding detriment to the Debtor's business operations would be devastating.

55.    The Debtor, in connection with the Hotel operations, has issued bonds to the

Department of Water and Power ("DWP") in the amount of $100,000 (the "Bond"), which it renews

every year through its insurance provider, BB&T Insurance Services.  The Bond secures payment for

electricity and water services provided by DWP.  The average monthly payment the Debtor makes to

542292v.5

the DWP on account of Utility Services provided to the Hotel is approximately $78,000.00, which is substantially less than the amount of the Bond posted to secure payment to DWP and, therefore, DWP has been provided adequate assurance of payment by the Debtor.

56.    Except for the average monthly invoices paid by the Hotel to the DWP, the total monthly average of the Debtor's payments to Utilities is approximately $44,844.81. Of this $16,560.00 is allocable to charges incurred by Weller Court, and $28,284.81 is allocable to charges incurred by the Hotel. Prior to the commencement of its chapter 11 case, the Debtor generally paid all of its utility bills in a timely manner. To the best of the Debtor's knowledge, there are no defaults or arrearages of any kind with respect to any undisputed utility bills, other than current charges which, as of the Petition Date, may have accrued but have not yet been billed, or which may have been billed but were not yet due, or amounts whose payment may have been delayed or interrupted by the filing of the Debtor's chapter 11 case.

57.    If Utilities are permitted to unilaterally terminate Utility Services on the 31st day after the Petition Date because they insist on a greater deposit or some more onerous security, they could severely disrupt the Debtor's operations, significantly diminish the Debtor's going concern value, and jeopardize the Debtor's reorganization prospects.

**E.    Emergency Motion of the Debtor and Debtor in Possession for Order Limiting Notice and Permitting Service on Insured Depository Institutions by First-Class Mail.**

58.    The mailing of notices of all matters to all creditors in these cases would be impractical and would impose an enormous administrative and economic burden upon the Debtor's estates. There are potentially more than five hundred (500) creditors and other interested parties upon whom, in certain instances, notice must be provided, unless the court orders otherwise.

59.    The notice procedures that the Debtor requests be implemented in this case will streamline the distribution of notices, reduce the administrative cost of providing notice, yet provide all critical parties with an interest in these cases with notice and an opportunity to be heard.

60.    The Debtor believes that it is necessary and appropriate to adopt the proposed procedures for several reasons. First, providing notice of all matters to as many as 500 potential creditors, would: (a) substantially delay the provision of notice in each particular instance; (b) place

a heavy administrative burden on the Debtor's estates; and (c) impede the timely consummation of

transactions, the negotiation of settlements, or the granting of other relief that may be advantageous

to the Debtor's estate and its creditors.  Furthermore, providing notice of all matters to all creditors or

potential creditors, and serving notice on each insured depository institution entitled to notice by

certified mail rather than first-class mail, would unnecessarily increase the costs of these cases.

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

Executed this 15th day of July, 2010, at Los Angeles, California.


/s/ David Goddard
DAVID GODDARD

542292v.5

**EXHIBIT "1"**




This page is part of your document - DO NOT DISCARD



**20071933389**    Pages:
016



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/17/07 AT 08:00AM

Fee: 73.00
Tax: 0.00
Other: 0.00
Total: 73.00

**Title Company**

## TITLE(S) :



L E A D    S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.      Number of AIN's Shown



THIS FORM IS NOT TO BE DUPLICATED

EXHIBIT 1

*7/07 5619-X5,*

RECORDATION REQUESTED BY:
    FIRST REGIONAL BANK
    South Bay Real Estate
    970 W. 190th Street, Suite 400
    Torrance, CA  90502

WHEN RECORDED MAIL TO:
    FIRST REGIONAL BANK
    South Bay Real Estate
    970 W. 190th Street, Suite 400
    Torrance, CA  90502



08/17/07

20071933389

---

**FOR RECORDER'S USE ONLY**

## DEED OF TRUST

THIS DEED OF TRUST is dated August 10, 2007, among Little Tokyo Partners, LP., a Delaware limited partnership, whose address is 433 North Camden Drive, S-900, Beverly Hills, CA  90210 ("Trustor"); FIRST REGIONAL BANK, whose address is South Bay Real Estate , 970 W. 190th Street, Suite 400, Torrance, CA 90502 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and LAWYERS TITLE COMPANY, whose address is 800 East Colorado Boulevard, Pasadena, CA  91101 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Los Angeles County, State of California:

> See Attached Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as  120 S. Los Angeles Street and 227 E. 2nd Street and 204 E. 1st Street, Los Angeles, CA  90012.  The Assessor's Parcel Number for the Real Property is 5161-016-019, 5161-016-020, 5161-016-021 and 5161-016-024 .

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Trustor agrees that Trustor's possession and use of



EXHIBIT 1

Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 2

the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole

EXHIBIT 1

opinion, Lender's interests in the Property are not jeopardized.  Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Trustor agrees neither to abandon or leave unattended the Property.  Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**  Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials.  Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.**  Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.  Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as



EXHIBIT 1

**DEED OF TRUST**
**(Continued)**

additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Trustor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Trustor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Trustor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Trustor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Trustor, and Lender is not Trustor's agent for payment of the taxes and assessments required to be paid by Trustor.



EXHIBIT 1

Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 5

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions



EXHIBIT 1

Loan No: 9750442

# DEED OF TRUST
## (Continued)

Page 6

relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording,



## EXHIBIT 1

Loan No: 9750442

## DEED OF TRUST
### (Continued)

Page 7

and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Trustor's existence as a going business or the death of any partner, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the



EXHIBIT 1

Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 8

Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and



EXHIBIT 1

Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 9

above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join



EXHIBIT 1

Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 10

in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**FINANCIAL RECORDS.** Trustor will furnish to Lender financial statements and other related information at such frequencies and in such detail as Lender may reasonably request and permit Lender to examine and audit Trustor's books and records.

**CONSENT TO LOAN PARTICIPATION.** Lender may from time to time solicit purchasers for all or a portion of the Indebtedness. In connection with such a solicitation, Lender has the right to permit potential purchaser(s) to review all of the Lender's records and documents with respect to the Indebtedness, including confidential financial information and documents Grantor and/or Borrower have given to Lender. Grantor or Borrower waive any right of privacy with respect to information and documents provided to Lender. In connection with any potential sale of the Indebtedness by Lender, Grantor and/or Borrower agrees to acknowledge, at the Bank's request, the then outstanding balances of the Indebtedness and to acknowledge that Grantor and/or Borrower does not possess any claim, offset, or defense against Lender which would diminish the enforceability of the Indebtedness or any of the documents evidencing or securing the Indebtedness.

**LENDER'S RIGHT TO REAPPRAISE PROPERTY.** Lender may, not more often than once in any 12 month period,



EXHIBIT 1

Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 11

enter the Real Property through its agent for purposes of inspecting and/or appraising the value of the Property. Upon the demand of Lender, Trustor shall reimburse Lender for its costs incurred in performing each such inspection and/or appraisal of the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.



EXHIBIT 1



Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 12

===

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means FIRST REGIONAL BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means Little Tokyo Partners, LP. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means FIRST REGIONAL BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 10, 2007, **in the original principal amount of $44,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: **THE NOTE CONTAINS A VARIABLE INTEREST RATE.**



EXHIBIT 1

Loan No: 9750442

**DEED OF TRUST**
**(Continued)**

Page 13

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means LAWYERS TITLE COMPANY, whose address is 800 East Colorado Boulevard, Pasadena, CA 91101 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Little Tokyo Partners, LP.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

LITTLE TOKYO PARTNERS, LP.

LITTLE TOKYO ~~PARNTERS~~, *PARTNERS* LLC, General Partner of Little Tokyo Partners, LP.

By: _____

Joseph Daneshgar, Manager of Little Tokyo ~~Parnters~~, LLC
*PARTNER-S,*

EXHIBIT 1

Loan No: 9750442

## DEED OF TRUST
(Continued)

Page 14

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )

COUNTY OF _Los Angeles_ ) SS
)

On _August 10_ , 20_07_ before me, _Marisela Cornejo, a Notary Public_
(here insert name and title of the officer)

personally appeared **Joseph Daneshgar**, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MARISELA CORNEJO
Commission # 1546145
Notary Public - California
Los Angeles County
My Comm. Expires Feb 19, 2009

Signature _____

(Seal)

(DO NOT RECORD)

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured
by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums
owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured
by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty,
to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust.
Please mail the reconveyance and Related Documents to:

_____

Date: _____    Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 6.37.00.000 Copr. Harland Financial Solutions, Inc. 1997, 2007.   All Rights Reserved.  - CA  F:\HARLAND\CFI\LPL\G01.FC  TR-4661  PR-37

EXHIBIT 1

## Exhibit "A"

LOTS 1, 2, 3 AND 4 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING AND RESERVING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

EXHIBIT 1

# EXHIBIT "2"

**This page is part of your document - DO NOT DISCARD**



# 20091906475



**Pages:
0018**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/15/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 86.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 86.00 |



**L E A D S H E E T**

200912150170009

00001646781

002445476

**SEQ:
01**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E6441                                                                    t72

# EXHIBIT 2

RECORDATION REQUESTED BY:

12/15/2009

|||||||||||||||||||||||||||||||

*20091906475*

WHEN RECORDED MAIL TO:
FIRST REGIONAL BANK
Century City
1801 Century Park East, Suite #800
Los Angeles, CA 90067

_____
                                                    FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated November 25, 2009, among LITTLE TOKYO PARTNERS, LP, a Delaware limited partnership, whose address is 1880 Century Park East, Suite 810, Los Angeles, CA 90067 ("Trustor"); FIRST REGIONAL BANK, whose address is Century City, 1801 Century Park East, Suite #800, Los Angeles, CA 90067 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and LAWYERS TITLE COMPANY, whose address is 7530 North Glenoaks Boulevard, Burbank, CA 91504 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Los Angeles County, State of California:

See Exhibit "A", which is attached hereto and made a part hereof as if fully set forth herein.

The Real Property or its address is commonly known as 204 East 1st Street, Los Angeles, CA 90012. The Assessor's Parcel Number for the Real Property is 5161-016-019 and 5161-016-020.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

9100 76763 - X59


INITIAL

1A

EXHIBIT 2

Loan No: 09750641

# DEED OF TRUST
## (Continued)

Page 2

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in



EXHIBIT 2

# DEED OF TRUST
## (Continued)

Loan No: 09750641

Page 3

Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain



EXHIBIT 2

Loan No: 09750641

# DEED OF TRUST
## (Continued)

Page 4

comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Subject to any limitations set by applicable law, Lender may require Trustor to maintain with Lender reserves for payment of annual taxes, assessments, and insurance premiums, which reserves shall be created by advance payment or monthly payments of a sum estimated by Lender to be sufficient to produce, amounts at least equal to the taxes, assessments, and insurance premiums to be paid. The reserve funds shall be held by Lender as a general deposit from Trustor, which Lender may satisfy by payment of the taxes, assessments, and insurance premiums required to be paid by Trustor as they become due. Lender shall have the right to draw upon the reserve funds to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Deed of Trust shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the reserve funds disclose a shortage or deficiency, Trustor shall pay such shortage or deficiency as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default. Lender shall not be required to pay any interest or earnings on the



EXHIBIT 2

## DEED OF TRUST
### (Continued)

Loan No: 09750641

Page 5

reserve funds unless required by law or agreed to by Lender in writing. Lender does not hold the reserve funds in trust for Trustor, and Lender is not Trustor's agent for payment of the taxes and assessments required to be paid by Trustor.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation



**EXHIBIT 2**

Loan No: 09750641

**DEED OF TRUST**
**(Continued)**

Page 6

proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the

EXHIBIT 2

Loan No: 09750641

**DEED OF TRUST**
**(Continued)**

Page 7

Note, this Deed of Trust, and the Related Documents, and  (2)   the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor.  Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.**  If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense.  For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**  If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.**  Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.**  Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.**  Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.**  Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.**  Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.**  Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.**  Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The dissolution or termination of Trustor's existence as a going business or the death of any partner, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness.  This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of



EXHIBIT 2

**DEED OF TRUST**
**(Continued)**

Loan No: 09750641

Page 8

the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu



EXHIBIT 2

**Loan No: 09750641**

**DEED OF TRUST**
**(Continued)**

Page 9

of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in



EXHIBIT 2

Loan No: 09750641

**DEED OF TRUST
(Continued)**

Page 10

addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**CONSENT TO LOAN PARTICIPATION.** Lender may from time to time solicit purchasers for all or a portion of the Indebtedness. In connection with such a solicitation, Lender has the right to permit potential purchaser(s) to review all of the Lender's records and documents with respect to the Indebtedness, including confidential financial information and documents Trustor or Grantor have given to Lender. Trustor or Grantor waives any right of privacy with respect to information and documents provided to Lender. In connection with any potential sale of the Indebtedness by Lender, Trustor or Grantor agrees to acknowledge, at the Lender's request, the then

EXHIBIT 2

Loan No: 09750641

**DEED OF TRUST**
**(Continued)**

Page 11

outstanding balances of the Indebtedness and to acknowledge that Trustor or Grantor does not possess any claim, offset, or defense against Lender which would diminish the enforceability of the Indebtedness or any of the documents evidencing or securing the Indebtedness.

**LENDER'S RIGHT TO REAPPRAISE PROPERTY.** Lender may, not more often than once in any 12 month period, enter the Real Property through its agent for purposes of inspecting and/or appraising the value of the Property. Upon the demand of Lender, Trustor or Grantor shall reimburse Lender for its costs incurred in performing each such inspection and/or appraisal of the Property.

**RENEWAL OF REQUIRED INSURANCE.** Trustor or Grantor shall provide to Lender evidence, acceptable to Lender in its discretion, of the renewal or replacement of any insurance policy required under this Deed of Trust or Mortgage or any of the Related Documents including, but not limited to the Agreement to Provide Insurance, not less than fifteen (15) days prior to the expiration of any such required insurance policy. If Trustor or Grantor fails to timely provide such acceptable evidence of the renewal or replacement of required insurance then Lender is authorized to place any required insurance on the Property only to protect Lender's interest in the Property. Any such insurance placed by Lender may not protect Trustor's or Grantor's interest or equity in the Property. Such insurance will provide limited protection against physical damage to the Property up to an amount equal to the lesser of (i) the unpaid balance of the Indebtedness, or (ii) the value of the improvements to the Property. In addition, such insurance may not provide any public liability or property damage coverage for the benefit of Trustor or Grantor. All expenses incurred by Lender in the placement of insurance pursuant to this section will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. In the event that Trustor or Grantor provides untimely evidence of the renewal or replacement of required insurance subsequent to the placement of such insurance by Lender, Trustor or Grantor will remain responsible for the expenses incurred by Lender but will be entitled to a refund, if any, received upon cancellation of Lender placed insurance. The Deed of Trust or Mortgage also will secure payment of these amounts.

**FINANCIAL RECORDS.** Trustor or Grantor will furnish to Lender financial statements and other related information at such frequencies and in such detail as Lender may reasonably request and permit Lender to examine and audit Trustor or Grantor books and records.

**NO CROSS COLLATERALIZATION.** NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS DEED OF TRUST OR ANY RELATED DOCUMENTS TO THE CONTRARY, THIS DEED OF TRUST IS NOT INTENDED TO AND DOES NOT SECURE THAT CERTAIN PROMISSORY NOTE DATED AS OF AUGUST 10, 2007, AS MODIFIED, EVIDENCING LENDER'S LOAN NUMBER 9750442 TO BORROWER.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.



EXHIBIT 2

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means FIRST REGIONAL BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means LITTLE TOKYO PARTNERS, LP, a Delaware limited partnership and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801,



EXHIBIT 2

Loan No: 09750641

**DEED OF TRUST**
**(Continued)**

Page 13

et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means FIRST REGIONAL BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated November 25, 2009, **in the original principal amount of $33,600,000.00 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means LAWYERS TITLE COMPANY, whose address is 7530 North Glenoaks Boulevard, Burbank, CA 91504 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means LITTLE TOKYO PARTNERS, LP, a Delaware limited partnership.



EXHIBIT 2

Loan No: 09750641

**DEED OF TRUST**
**(Continued)**

Page 14

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND
TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE
SECURED BY THIS DEED OF TRUST.

TRUSTOR:

LITTLE TOKYO PARTNERS, LP, A DELAWARE LIMITED PARTNERSHIP

LITTLE TOKYO PARTNERS, LLC, A DELAWARE LIMITED LIABILITY
COMPANY, General Partner of LITTLE TOKYO PARTNERS, LP, a
Delaware limited partnership

By:
Joseph Daneshgar, Manager of LITTLE TOKYO PARTNERS,
LLC, a Delaware limited liability company

EXHIBIT 2

Loan No: 09750641

**DEED OF TRUST**
**(Continued)**

Page 15

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_                                     )
                                                          ) SS
COUNTY OF _Los Angeles_                                   )

On _November 30_ , 20_09_ before me, _Alisa L Bishop Notary Public_
                                      (here insert name and title of the officer)
personally appeared Joseph Daneshgar, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _Alisa L. Bishop_

ALISA L. BISHOP
Commission # 1694549
Notary Public - California
Los Angeles County
My Comm. Expires Sep 19, 2010

(Seal)

EXHIBIT 2

Loan No: 09750641

**DEED OF TRUST**
**(Continued)**

Page 16

**(DO NOT RECORD)**
**REQUEST FOR FULL RECONVEYANCE**
(To be used only when obligations have been paid in full)

To: _____; Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 5.47.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2009.  All Rights
Reserved.  - CA  F:\APPS\HARLAND\CFI\LPL\G01.FC  TR-6167  PR-37

**EXHIBIT 2**

## EXHIBIT "A"

**PARCEL 1A: (HOTEL PARCEL)**

LOTS 1 AND 3 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 OF MAPS, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION LYING SOUTHEASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT 1, DISTANT NORTH 54° 18' 58" WEST 319.53 FEET FROM THE MOST SOUTHERLY CORNER OF LOT 4 OF SAID TRACT NO. 30213; THENCE NORTH 33° 09' 33" EAST 171.00 FEET; THENCE NORTH 11° 27' 39" EAST 14.72 FEET; THENCE NORTH 33° 09' 56" EAST 121.78 FEET TO THE GENERALLY SOUTHWESTERLY LINE OF SAID LOT 3; THENCE SOUTHEASTERLY ALONG SAID GENERALLY SOUTHWESTERLY LINE, SOUTH 51° 47' 58" EAST 1.47 FEET TO AN ANGLE POINT IN SAID GENERALLY SOUTHWESTERLY LINE; THENCE AT RIGHT ANGLES TO THE NORTHEASTERLY LINE OF SAID LOT 3, NORTH 80° 53' 52" EAST 29.61 FEET.

SAID LAND IS SHOWN AS PARCEL A ON THAT CERTAIN CERTIFICATE OF COMPLIANCE FOR LOT-LINE ADJUSTMENT RECORDED AUGUST 3, 2009 AS INSTRUMENT NO. 20091184249 OF OFFICIAL RECORDS.

EXCEPTING AND RESERVING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

**PARCEL 1B: (HOTEL FOUNTAIN AND SEATING PARCEL)**

LOT 2 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 OF MAPS, RECORDS OF SAID COUNTY.

EXCEPTING AND RESERVING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

APN: 5161-021-019
     5161-021-020
     5161-021-021

END OF LEGAL DESCRIPTION



EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**



## 20091906483



**Pages:**
**0007**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/15/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |



**LEADSHEET**



200912150170009

00001646789



002445476

**SEQ:**
**09**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E4443                                                               t72

EXHIBIT 2

RECORDATION REQUESTED BY:

12/15/2009

*20091906483*

WHEN RECORDED MAIL TO:
FIRST REGIONAL BANK
Century City
1801 Century Park East, Suite #800
Los Angeles, CA 90067

_____ FOR RECORDER'S USE ONLY

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST dated November 25, 2009, is made and executed between Little Tokyo Partners, LP., a Delaware limited partnership, whose address is 1880 Century Park East #810, Los Angeles, CA 90067 ("Trustor") and FIRST REGIONAL BANK, whose address is Century City, 1801 Century Park East, Suite #800, Los Angeles, CA 90067 ("Lender").

DEED OF TRUST. Lender and Trustor have entered into a Deed of Trust dated August 10, 2007 (the "Deed of Trust") which has been recorded in Los Angeles County, State of California, as follows:

RECORDED AUGUST 17, 2007 AS INSTRUMENT NO. 2007-1933389.

REAL PROPERTY DESCRIPTION. The Deed of Trust covers the following described real property located in Los Angeles County, State of California:

See Exhibit "A", which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as 120 S. Los Angeles Street and 227 E. 2nd Street, Los Angeles, CA 90012. The Assessor's Parcel Number for the Real Property is 5161-016-021 and 5161-016-024 .

MODIFICATION. Lender and Trustor hereby modify the Deed of Trust as follows:

THE ABOVE REFERENCED DEED OF TRUST IS HEREBY MODIFIED TO SECURE A CHANGE IN TERMS AGREEMENT OF EVEN DATE HEREWITH, WHICH AMENDS THE PROMISSORY NOTE DATED AUGUST 10, 2007 AND FURTHER MODIFIED BY CHANGE IN TERMS AGREEMENT DATED SEPTEMBER 27, 2007 AND A LETTER AGREEMENT DATED FEBRUARY 25, 2008 AND BY CHANGE IN TERMS AGREEMENTS DATED DECEMBER 18, 2008 AND JUNE 18, 2009, IN THE ORIGINAL PRINCIPAL AMOUNT OF $44,000,000.00.

CONCURRENT WITH THE EXECUTION OF THIS MODIFICATION OF DEED OF TRUST, THE OUTSTANDING PRINCIPAL BALANCE OF THIS NOTE IS REDUCED TO $10,400,000.00.

BY THIS MODIFICATION OF DEED OF TRUST, BENEFICIARY PARTIALLY RELEASES FROM THE DEED OF TRUST, THAT PORTION OF THE REAL PROPERTY COMMONLY KNOWN AS 204 EAST 1ST STREET, LOS ANGELES, CA 90012, ASSESSOR'S PARCEL NUMBER FOR THE RELEASED REAL PROPERTY IS 5161-016-019 AND 5161-016-020.

NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE OF THE REMAINDER OF THE REAL PROPERTY ENCUMBERED BY THE DEED OF TRUST. THE RELEASED REAL PROPERTY IS DESCRIBED AS FOLLOWS:

71075619A - X59

EXHIBIT  2                                       9

## MODIFICATION OF DEED OF TRUST
### (Continued)

Loan No: 9750442

Page 2

PARCEL IA: (HOTEL PARCEL)

LOTS 1 AND 3 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 OF MAPS, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION LYING SOUTHEASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT 1, DISTANT NORTH 54° 18' 58" WEST 319.53 FEET FROM THE MOST SOUTHERLY CORNER OF LOT 4 OF SAID TRACT NO. 30213; THENCE NORTH 33° 09' 33" EAST 171.00 FEET; THENCE NORTH 110 27' 39" EAST 14.72 FEET; THENCE NORTH 33° 09' 56" EAST 121.78 FEET TO THE GENERALLY SOUTHWESTERLY LINE OF SAID LOT 3; THENCE SOUTHEASTERLY ALONG SAID GENERALLY SOUTHWESTERLY LINE, SOUTH 51 ° 47' 58" EAST 1.47 FEET TO AN ANGLE POINT IN SAID GENERALLY SOUTHWESTERLY LINE; THENCE AT RIGHT ANGLES TO THE NORTHEASTERLY LINE OF SAID LOT 3, NORTH 80° 53' 52" EAST 29.61 FEET.

SAID LAND IS SHOWN AS PARCEL A ON THAT CERTAIN CERTIFICATE OF COMPLIANCE FOR LOT-LINE ADJUSTMENT RECORDED AUGUST 3, 2009 AS INSTRUMENT NO. 20091184249 OF OFFICIAL RECORDS.

EXCEPTING AND RESERVING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

PARCEL IB: (HOTEL FOUNTAIN AND SEATING PARCEL)



LOT 2 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 OF MAPS, RECORDS OF SAID COUNTY.

EXCEPTING AND RESERVING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

ALL OTHER TERMS AND CONDITIONS OF THE DEED OF TRUST SHALL REMAIN UNCHANGED AND IN FULL FORCE AND EFFECT.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND TRUSTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED NOVEMBER 25, 2009.

EXHIBIT 2

Loan No: 9750442

## MODIFICATION OF DEED OF TRUST
### (Continued)

Page 3

---

TRUSTOR:

**LITTLE TOKYO PARTNERS, LP., A DELAWARE LIMITED PARTNERSHIP**

**LITTLE TOKYO PARTNERS, LLC, A DELAWARE LIMITED LIABILITY
COMPANY**, General Partner of Little Tokyo Partners, LP., a Delaware
limited partnership

By: _____
   Joseph Daneshgar, Manager of Little Tokyo Partners, LLC, a
   Delaware Limited Liability Company

LENDER:

FIRST REGIONAL BANK

X _____
Authorized Officer

EXHIBIT 2

Loan No: 9750442

## MODIFICATION OF DEED OF TRUST
(Continued)

Page 4

### CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_                )

                                     ) SS

COUNTY OF _Los Angeles_              )

On _November 30_, 20_09_ before me, _Alisa L. Bishop, Notary Public_

(here insert name and title of the officer)

personally appeared **Joseph Daneshgar**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Alisa L. Bishop_

ALISA L. BISHOP
Commission # 1694549
Notary Public - California
Los Angeles County
My Comm. Expires Sep 19, 2010

(Seal)

**EXHIBIT 2**

Loan No: 9750442

**MODIFICATION OF DEED OF TRUST**
**(Continued)**

Page 5

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_                                          )

COUNTY OF _Los Angeles_                                  ) SS
                                                                             )

On _December 3_ , 20_09_ before me, _Beckie I. Page, Notary Public_
                                                                    (here insert name and title of the officer)

personally appeared _Nelly E. Paladines_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Beckie Page_

> BECKIE I. PAGE
> Commission # 1758155
> Notary Public - California
> Los Angeles County
> My Comm. Expires Aug 18, 2011

(Seal)

LASER PRO Lending, Ver. 5.47.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2009.  All Rights Reserved.  - CA  F:\APPS\HARLAND\CFI\LPL\G202.FC  TR-6171  PR-37

EXHIBIT 2

EXHIBIT "A"

(WELLER COURT PARCEL)

LOTS 1, 3 AND 4 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 OF MAPS, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION LYING NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT 1, DISTANT NORTH 54° 18' 58" WEST 319.53 FEET FROM THE MOST SOUTHERLY CORNER OF SAID LOT 4; THENCE NORTH 33° 09' 33" EAST 171.00 FEET; THENCE NORTH 11° 27' 39" EAST 14.72 FEET; THENCE NORTH 33° 09' 56" EAST 121.78 FEET TO THE GENERALLY SOUTHWESTERLY LINE OF SAID LOT 3; THENCE SOUTHEASTERLY ALONG SAID GENERALLY SOUTHWESTERLY LINE, SOUTH 51° 47' 58" EAST 1.47 FEET TO AN ANGLE POINT IN SAID GENERALLY SOUTHWESTERLY LINE; THENCE AT RIGHT ANGLES TO THE NORTHEASTERLY LINE OF SAID LOT 3, NORTH 80° 53' 52" EAST 29.61 FEET.

SAID LAND IS SHOWN AS PARCEL B ON THAT CERTAIN CERTIFICATE OF COMPLIANCE FOR LOT-LINE ADJUSTMENT RECORDED AUGUST 3, 2009 AS INSTRUMENT NO. 20091184249 OF OFFICIAL RECORDS.



EXCEPTING AND RESERVING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

APN: 5161-016-021
      5161-016-024

END OF LEGAL DESCRIPTION

EXHIBIT 2

# EXHIBIT "3"

| WELLER + HOTEL ROLLUP<br>Little Tokyo Partners, LP<br>July 16 to Oct 15, 2010<br>13-Week Budget | WEEK 1<br>07/16/10 -<br>07/23/10 | WEEK 2<br>07/24/10 -<br>07/30/10 | WEEK 3<br>07/31/10 -<br>08/06/10 | WEEK 4<br>08/07/10 -<br>08/13/10 | WEEK 5<br>08/14/10 -<br>08/20/10 | WEEK 6<br>08/21/10 -<br>08/27/10 | WEEK 7<br>08/28/10 -<br>09/03/10 | WEEK 8<br>09/04/10 -<br>09/10/10 | WEEK 9<br>09/11/10 -<br>09/17/10 | WEEK 10<br>09/18/10 -<br>09/24/10 | WEEK 11<br>09/25/10 -<br>10/01/10 | WEEK 12<br>10/02/10 -<br>10/08/10 | WEEK 13<br>10/09/10 -<br>10/15/10 | TOTAL<br>13-WEEK<br>PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Account Name** | | | | | | | | | | | | | | |
| *REVENUE* | | | | | | | | | | | | | | |
| Weller Court | 5,400 | 16,200 | 116,900 | 27,000 | 10,800 | 10,800 | 116,900 | 27,000 | 5,400 | 5,400 | 13,500 | 116,900 | 24,300 | 496,500 |
| Kyoto Grand Hotel | 322,890 | 333,966 | 282,778 | 240,833 | 250,435 | 290,696 | 164,084 | 170,063 | 212,137 | 225,167 | 263,776 | 222,735 | 282,923 | 3,262,482 |
| TOTAL REVENUE | **328,290** | **350,166** | **399,678** | **267,833** | **261,235** | **301,496** | **280,984** | **197,063** | **217,537** | **230,567** | **277,276** | **339,635** | **307,223** | **3,758,982** |
| *EXPENSES* | | | | | | | | | | | | | | |
| Weller Court | 17,110 | 18,500 | 22,775 | 24,000 | 41,500 | 33,775 | 8,500 | - | 42,500 | 32,775 | 8,500 | 1,000 | 49,775 | 300,710 |
| Kyoto Grand Hotel | 102,369 | 133,529 | 303,999 | 252,941 | 323,537 | 231,851 | 276,374 | 55,119 | 429,943 | 169,383 | 303,989 | 46,354 | 427,751 | 3,057,139 |
| TOTAL EXPENSES | **119,479** | **152,029** | **326,774** | **276,941** | **365,037** | **265,626** | **284,874** | **55,119** | **472,443** | **202,158** | **312,489** | **47,354** | **477,526** | **3,357,849** |
| TOTAL NET OPERATING INCOME | **208,811** | **198,137** | **72,903** | **(9,108)** | **(103,802)** | **35,870** | **(3,890)** | **141,944** | **(254,907)** | **28,409** | **(35,213)** | **292,281** | **(170,303)** | **401,133** |
| Beginning Cash Balance | 1,123,650 | 1,332,462 | 1,530,599 | 1,603,502 | 1,594,394 | 1,490,592 | 1,526,463 | 1,522,572 | 1,664,517 | 1,409,610 | 1,438,019 | 1,402,806 | 1,695,087 | 1,123,650 |
| +/<-> Net Operating Cash | 208,811 | 198,137 | 72,903 | (9,108) | (103,802) | 35,870 | (3,890) | 141,944 | (254,907) | 28,409 | (35,213) | 292,281 | (170,303) | 401,133 |
| Ending Cash Balance | 1,332,462 | 1,530,599 | 1,603,502 | 1,594,394 | 1,490,592 | 1,526,463 | 1,522,572 | 1,664,517 | 1,409,610 | 1,438,019 | 1,402,806 | 1,695,087 | 1,524,784 | 1,524,784 |

Notes:
1.  The Budget reflects only essential capital expenditures required to maintain operations during the Budget period.
2.  The Budget does not include any payments under that certain parking agreement, pursuant to which the Hotel pays Weller Court $42,300 per month for the use of 66 parking spaces
    because the Debtor is the owner of both properties.
3.  The Budget does not include certain expenses such as real property taxes or insurance costs because they are not paid during this period.

| WELLER COURT<br>Little Tokyo Partners, LP<br>July 16 to Oct 15, 2010<br>13-Week Budget | WEEK 1<br>07/16/10 -<br>07/23/10 | WEEK 2<br>07/24/10 -<br>07/30/10 | WEEK 3<br>07/31/10 -<br>08/06/10 | WEEK 4<br>08/07/10 -<br>08/13/10 | WEEK 5<br>08/14/10 -<br>08/20/10 | WEEK 6<br>08/21/10 -<br>08/27/10 | WEEK 7<br>08/28/10 -<br>09/03/10 | WEEK 8<br>09/04/10 -<br>09/10/10 | WEEK 9<br>09/11/10 -<br>09/17/10 | WEEK 10<br>09/18/10 -<br>09/24/10 | WEEK 11<br>09/25/10 -<br>10/01/10 | WEEK 12<br>10/02/10 -<br>10/08/10 | WEEK 13<br>10/09/10 -<br>10/15/10 | TOTAL<br>13-WEEK<br>PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Account Name** | | | | | | | | | | | | | | |
| *REVENUE* | | | | | | | | | | | | | | |
| Rent | 4,120 | 12,360 | 65,920 | 20,600 | 8,240 | 8,240 | 65,920 | 20,600 | 4,120 | 4,120 | 10,300 | 65,920 | 18,540 | 309,000 |
| Rent Storage | | | 1,500 | | | | 1,500 | | | | | 1,500 | | 4,500 |
| Rent Parking Monthly | | | 9,500 | | | | 9,500 | | | | | 9,500 | | 28,500 |
| Rent Percentage | | | 8,000 | | | | 8,000 | | | | | 8,000 | | 24,000 |
| Income Other | | | 2,500 | | | | 2,500 | | | | | 2,500 | | 7,500 |
| Recov Insurance | | | 1,000 | | | | 1,000 | | | | | 1,000 | | 3,000 |
| Recov Marketing | | | 1,500 | | | | 1,500 | | | | | 1,500 | | 4,500 |
| Recov Taxes Property | 320 | 960 | 5,120 | 1,600 | 640 | 640 | 5,120 | 1,600 | 320 | 320 | 800 | 5,120 | 1,440 | 24,000 |
| Recov Utilities | | | 2,500 | | | | 2,500 | | | | | 2,500 | | 7,500 |
| Recov CAM Actual | | | 4,000 | | | | 4,000 | | | | | 4,000 | | 12,000 |
| Recov CAM Est | 960 | 2,880 | 15,360 | 4,800 | 1,920 | 1,920 | 15,360 | 4,800 | 960 | 960 | 2,400 | 15,360 | 4,320 | 72,000 |
| TOTAL REVENUE | 5,400 | 16,200 | 116,900 | 27,000 | 10,800 | 10,800 | 116,900 | 27,000 | 5,400 | 5,400 | 13,500 | 116,900 | 24,300 | 496,500 |
| | | | | | | | | | | | | | | |
| *EXPENSES* | | | | | | | | | | | | | | |
| Administrative | 350 | | 1,000 | | | 1,000 | | | 1,000 | | | 1,000 | | 4,350 |
| Cleaning | | | 3,000 | | | 3,000 | | | | 3,000 | | | | 9,000 |
| Electrical | | | | 1,000 | | 1,000 | | | | | 1,000 | | | 3,000 |
| Elevator | | | | | 5,000 | | | | 5,000 | | | | 5,000 | 15,000 |
| Fire Life Safety | | | | | 500 | | | | 500 | | | | 500 | 1,500 |
| Grounds | 200 | | 1,500 | | | 1,500 | | | | | 1,500 | | | 4,700 |
| HVAC | | 2,000 | | | | 2,000 | | | | 2,000 | | | | 6,000 |
| Insurance | | | | 23,000 | | | | | | | | | | 23,000 |
| Landscape | | | | | 1,000 | | | | 1,000 | | | | 1,000 | 3,000 |
| Mgmt Fees | | | 8,275 | | | 8,275 | | | | 8,275 | | | 8,275 | 33,100 |
| PR Wages/Taxes/Benefits | | | | | 11,500 | | | | 11,500 | | | | 11,500 | 34,500 |
| Plumbing | | 1,500 | | | | 1,500 | | | | | 1,500 | | | 4,500 |
| Prof Legal Unlawful Detainer | | | 1,000 | | | 1,000 | | | | | 1,000 | | | 3,000 |
| Project Mgr - Deferred Maintenance | | 5,000 | | | | 5,000 | | | | 5,000 | | | | 15,000 |
| Repairs & Maintenance | | 10,000 | | | | 10,000 | | | | 10,000 | | | | 30,000 |
| Security | | | | | 9,000 | | | | 9,000 | | | | 9,000 | 27,000 |
| Util Deposits | 16,560 | | | | | | | | | | | | | 16,560 |
| Util Electricity | | | | | 8,000 | | | | 8,000 | | | | 8,000 | 24,000 |
| Util Gas | | | | | 500 | | | | 500 | | | | 500 | 1,500 |
| Util Water Potable | | | | | 3,000 | | | | 3,000 | | | | 3,000 | 9,000 |
| Util Sewer | | | | | 3,000 | | | | 3,000 | | | | 3,000 | 9,000 |
| Util Refuse Removal | | | 3,000 | | | 3,000 | | | | 3,000 | | | | 9,000 |
| DT Tenant Repairs/Improvements | | | 5,000 | | | | 5,000 | | | | 5,000 | | | 15,000 |
| TOTAL EXPENSES | 17,110 | 18,500 | 22,775 | 24,000 | 41,500 | 33,775 | 8,500 | - | 42,500 | 32,775 | 8,500 | 1,000 | 49,775 | 300,710 |
| | | | | | | | | | | | | | | |
| TOTAL NET OPERATING INCOME | (11,710) | (2,300) | 94,125 | 3,000 | (30,700) | (22,975) | 108,400 | 27,000 | (37,100) | (27,375) | 5,000 | 115,900 | (25,475) | 195,790 |

| | WEEK 1 | WEEK 2 | WEEK 3 | WEEK 4 | WEEK 5 | WEEK 6 | WEEK 7 | WEEK 8 | WEEK 9 | WEEK 10 | WEEK 11 | WEEK 12 | WEEK 13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 753,224 | 741,514 | 739,214 | 833,339 | 836,339 | 805,639 | 782,664 | 891,064 | 918,064 | 880,964 | 853,589 | 858,589 | 974,489 | 753,224 |
| +/<-> Net Operating Cash | (11,710) | (2,300) | 94,125 | 3,000 | (30,700) | (22,975) | 108,400 | 27,000 | (37,100) | (27,375) | 5,000 | 115,900 | (25,475) | 195,790 |
| Ending Cash Balance | 741,514 | 739,214 | 833,339 | 836,339 | 805,639 | 782,664 | 891,064 | 918,064 | 880,964 | 853,589 | 858,589 | 974,489 | 949,014 | 949,014 |

| KYOTO GRAND HOTEL<br>Little Tokyo Partners, LP<br>July 16 to Oct 15, 2010<br>13-Week Budget | WEEK 1<br>07/16/10 -<br>07/23/10 | WEEK 2<br>07/24/10 -<br>07/30/10 | WEEK 3<br>07/31/10 -<br>08/06/10 | WEEK 4<br>08/07/10 -<br>08/13/10 | WEEK 5<br>08/14/10 -<br>08/20/10 | WEEK 6<br>08/21/10 -<br>08/27/10 | WEEK 7<br>08/28/10 -<br>09/03/10 | WEEK 8<br>09/04/10 -<br>09/10/10 | WEEK 9<br>09/11/10 -<br>09/17/10 | WEEK 10<br>09/18/10 -<br>09/24/10 | WEEK 11<br>09/25/10 -<br>10/01/10 | WEEK 12<br>10/02/10 -<br>10/08/10 | WEEK 13<br>10/09/10 -<br>10/15/10 | TOTAL<br>13-WEEK<br>PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Account Name** | | | | | | | | | | | | | | |
| *REVENUE* | | | | | | | | | | | | | | |
| Rooms | 250,529 | 228,294 | 213,921 | 184,191 | 187,842 | 223,652 | 114,962 | 103,283 | 128,245 | 149,924 | 191,321 | 159,434 | 218,982 | 2,354,580 |
| Food and Beverage | 53,436 | 77,654 | 51,337 | 43,503 | 27,674 | 46,142 | 36,626 | 50,120 | 54,736 | 47,252 | 56,845 | 47,793 | 46,027 | 639,144 |
| Other Misc Departments | 18,925 | 27,648 | 17,519 | 13,139 | 34,798 | 19,907 | 12,495 | 16,661 | 14,156 | 17,991 | 15,610 | 15,508 | 17,914 | 242,272 |
| TOTAL REVENUE | 322,890 | 333,966 | 282,778 | 240,833 | 250,435 | 290,696 | 164,084 | 170,063 | 212,137 | 225,167 | 263,776 | 222,735 | 282,923 | 3,262,482 |
| *EXPENSES* | | | | | | | | | | | | | | |
| Cost of Sales | 12,718 | 18,482 | 12,218 | 10,354 | 6,587 | 10,982 | 8,717 | 11,928 | 13,027 | 11,246 | 13,529 | 11,375 | 10,955 | 152,116 |
| Cleaning Supplies | 1,033 | 1,069 | 905 | 771 | 801 | 930 | 525 | 544 | 679 | 721 | 844 | 713 | 905 | 10,440 |
| Credit Card Discounts | 6,135 | 6,345 | 5,373 | 4,576 | 4,758 | 5,523 | 3,118 | 3,231 | 4,031 | 4,278 | 5,012 | 4,232 | 5,376 | 61,987 |
| Guest Supplies | 2,956 | 2,694 | 2,524 | 2,173 | 2,217 | 2,639 | 1,357 | 1,219 | 1,513 | 1,769 | 2,258 | 1,881 | 2,584 | 27,784 |
| Linens | 887 | 1,289 | 852 | 722 | 459 | 766 | 608 | 832 | 909 | 784 | 944 | 793 | 764 | 10,610 |
| Radio & Television | | | 6,230 | | | | 6,230 | | | | 6,230 | | | 18,690 |
| Reservation Expense | | | | | | 15,500 | | | | 15,500 | | | 15,500 | 46,500 |
| Sales & Marketing | 6,458 | 6,679 | 5,656 | 4,817 | 5,009 | 5,814 | 3,282 | 3,401 | 4,243 | 4,503 | 5,276 | 4,455 | 5,658 | 65,250 |
| Travel Agent Commission | 4,008 | 6,224 | 3,423 | 2,947 | 3,005 | 3,578 | 1,839 | 1,653 | 2,052 | 2,399 | 3,061 | 2,551 | 3,504 | 40,244 |
| Uniforms (Cleaning) | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 289 | 3,757 |
| Adm Equipment | | | | | 1,965 | | | | | 1,965 | | | | 3,930 |
| Adm Printing & Office Supplies | 258 | 267 | 226 | 193 | 200 | 233 | 131 | 136 | 170 | 180 | 211 | 178 | 226 | 2,610 |
| Emp Payroll & Taxes | | | 202,183 | | 202,493 | | 186,873 | | | 200,824 | | 193,882 | | 195,147 | 1,181,402 |
| Emp Health / Dental Insurances | | | | 29,000 | | | | | | 29,000 | | | 29,000 | 87,000 |
| Engineering Labor | | 72,150 | | | | 72,150 | | | | 72,150 | | | | 216,450 |
| Insurance | 19,000 | | | | | 97,140 | | | | | 19,000 | | | 135,140 |
| Mgmt Fee Asset Mgr | | | 1,000 | | 1,000 | | 1,000 | | | 1,000 | | 1,000 | | 1,000 | 6,000 |
| Mgmt Fee Hotel Mgmt Co | | | 38,888 | | 30,986 | | | | | 30,972 | | | | 100,846 |
| Parking Labor | 6,375 | | 12,750 | | 12,750 | | 12,750 | | | 12,750 | | 12,750 | | 12,750 | 82,875 |
| Prof Legal - ADA Lawsuit | | | | 6,000 | | | 6,000 | | | 6,000 | | | 6,000 | 24,000 |
| Prof Legal - Banquet Emp Lawsuit | | | | 4,000 | | | 4,000 | | | 2,000 | | | | 10,000 |
| Prof Other - Labor Consultant | | | | 3,000 | | | 3,000 | | | 5,000 | | | 4,000 | 20,000 |
| Project Mgr - Deferred Maintenance | | 4,000 | | | | 4,000 | | | | | 4,000 | | | 12,000 |
| Plumbing | | | | | 10,000 | | 30,000 | | 30,000 | | | 10,000 | | 80,000 |
| Repair & Maintenance | 12,916 | 13,359 | 11,311 | 9,633 | 10,017 | 11,628 | 6,563 | 6,803 | 8,485 | 9,007 | 10,551 | 8,909 | 11,317 | 130,499 |
| Repairs ADA | | | | | 25,000 | | | 25,000 | | | 25,000 | | | 75,000 |
| Taxes - Personal Property | | | | 63,663 | | | | | | | | | | 63,663 |
| Telephone & Postage | 850 | 500 | | | 850 | 500 | | | 850 | 500 | | 850 | 500 | 5,400 |
| Transportation Expense | 200 | 183 | 171 | 147 | 150 | 179 | 92 | 83 | 103 | 120 | 153 | 128 | 175 | 1,884 |
| Utility Deposits | 28,285 | | | | | | | | | | | | | |
| Utilities | | | | 110,656 | | | | | 120,020 | | | | 122,101 | 352,777 |
| TOTAL EXPENSES | 102,369 | 133,529 | 303,999 | 252,941 | 323,537 | 231,851 | 276,374 | 55,119 | 429,943 | 169,383 | 303,989 | 46,354 | 427,751 | 3,028,854 |
| TOTAL NET OPERATING INCOME | 220,521 | 200,437 | (21,222) | (12,108) | (73,102) | 58,845 | (112,290) | 114,944 | (217,807) | 55,784 | (40,213) | 176,381 | (144,828) | 233,628 |
| Beginning Cash Balance | 427,898 | 648,419 | 848,856 | 827,635 | 815,527 | 742,425 | 801,270 | 688,980 | 803,924 | 586,118 | 641,901 | 601,688 | 778,069 | 427,898 |
| +/<-> Net Operating Cash | 220,521 | 200,437 | (21,222) | (12,108) | (73,102) | 58,845 | (112,290) | 114,944 | (217,807) | 55,784 | (40,213) | 176,381 | (144,828) | 205,343 |
| Ending Cash Balance | 648,419 | 848,856 | 827,635 | 815,527 | 742,425 | 801,270 | 688,980 | 803,924 | 586,118 | 641,901 | 601,688 | 778,069 | 633,241 | 633,241 |

| In re: | CHAPTER 11 |
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership,  Debtor(s). | CASE NUMBER 2:10-_____-__ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067.

The foregoing document described **DECLARATION OF DAVID GODDARD IN SUPPORT OF FIRST DAY MOTIONS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **July 15, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

*See Exhibit A, Attached Hereto and Incorporated Herein by Reference*

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 15, 2010 | Danielle Trujillo | *Danielle S. Trujillo* |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| In re:<br><br>LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership,<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER 2:10-_____-__ |

## Exhibit A

**SERVED BY CERTIFIED MAIL AND FEDERAL EXPRESS**

Bank of America N.A.
Attn: Jerri Shephard
1185 Avenue of the Americas, 16th Floor
New York, NY 10035

Wells Fargo Bank, N.A.
Attn: Michael Barry
433 North Camden Drive
Beverly Hills, CA 90210

**SERVED BY OVERNIGHT MAIL (Federal Express, unless otherwise indicated)**

Little Tokyo First Day Svc List
6325.000
Document #542310

|  |  |  |
|---|---|---|
|  | Little Tokyo Partners LP<br>1880 Century Park East Suite 810<br>Los Angeles, CA 90067 | Office of the US Trustee<br>725 S Figueroa St<br>Suite 2600<br>Los Angeles, CA 90017 |
| Frandzel Robins Bloom Csato<br>Brian Bloom Esq<br>6500 Wilshire Blvd 17th Fl<br>Los Angeles, CA 90048-4920 | First Citizens Bank and Trust<br>1801 Century Park East Suite 800<br>Los Angeles, CA 90067 | Excell Investment Group, LLC<br>23586 Calabasas Rd. #100<br>Calabasas, CA 91302 |
| Internal Revenue Service<br>PO Box 21126<br>Philadelphia, PA 19114<br>**Served via U.S. Postal Express Mail** | Able Engineering Services<br>868 Folsom Street<br>San Francisco, CA 94107<br>Contact: Mark S. Kelly, VP | LA DWP<br>PO Box 30808<br>Los Angeles, CA 90030<br>**Served via U.S. Postal Express Mail** |
| Crestline Hotels & Resorts<br>3950 University Drive Suite 301<br>Fairfax, VA 22030<br>Contact: Elizabeth Lieberman, Esq. | State of California<br>Board of Equalization<br>PO Box 942870<br>Sacramento, CA 94279<br>**Served via U.S. Postal Express Mail** | Marukai Corporation<br>1740 W Artesia Blvd<br>Gardena, CA 90248<br>Contact: Debi Ichinofe |
| Thimesch Law Offices<br>158 Hilltop Crescent<br>Walnut Creek, CA 94597-3457<br>Contact: Timothy S. Thimesch | Kinokuniya Bookstores<br>123 South Onizuka St<br>Suites 205-206<br>Los Angeles, CA 90012<br>Contact: Kyoichi Ishikawa | Hodes Parking<br>421 N. Rodeo Drive<br>Beverly Hills, CA 90210 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
542327v.1

**F 9013-3.1**

| In re: | CHAPTER 11 |
|---|---|
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership, | |
| Debtor(s). | CASE NUMBER 2:10-_____-__ |

Gateway Security, Inc.
604-608 Market Street
Newark, NJ 07105

House Foods America Corp
7351 Orangewood Avenue
Garden Grove, CA 92841
Contact: Koji Yamada

K & M Foodservice
2443 3 27th Street
Vernon, CA 90058

Jin Sung Lee & Jae Hee Lee
DBA Tofu Village
123 S Onizuka St Suite 307
Los Angeles, CA 90012
Contact: Jin Sung Lee

Waxie Sanitary Supply
PO Box 81006
San Diego, CA 92138
**Served via U.S. Postal Express Mail**

KTWV-FM
PO Box 100495
Pasadena, CA 91189
**Served via U.S. Postal Express Mail**

Yee Yuen Linen Service
2575 S Normandie Avenue
Los Angeles, CA 90007

Room Service Amenities
1010 Campus Drive West
Morganville, NJ 07751

Pasadena Baking Wholesale
70 W. Palmetto Drive
Pasadena, CA 91105

Commercial Waste Service Inc.
PO Box 820
Montebello, CA 90640
**Served via U.S. Postal Express Mail**

Simplex Grinnell
Dept. Ch 10320
Palatine, IL 60055

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
542327v.1

**F 9013-3.1**