JEFFREY C. KRAUSE (State Bar No. 94053),
jkrause@stutman.com
CHRISTINE M. PAJAK (State Bar No. 217173), and
cpajak@stutman.com
NEETA MENON (State Bar No. 254736), Members of
nmenon@stutman.com
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars
12th Floor
Los Angeles, CA 90067
Telephone:   (310) 228-5600
Telecopy:    (310) 228-5788

[Proposed] Reorganization Counsel for
Debtor and Debtor in Possession

Debtor's Mailing Address:
1880 Century Park East, Suite 810
Los Angeles, CA  90067

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-39113-BR |
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership, | Chapter 11 |
| Debtor. | **APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF TROUTMAN SANDERS, LLP AS LITIGATION COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION; DECLARATION OF MARTIN TAYLOR IN SUPPORT THEREOF (INCLUDING DISCLOSURES PURSUANT TO 11 U.S.C. § 329(a))** |
| | [Hearing To Be Set, If Required] |

1048545v1
542843v.2

Little Tokyo Partners, L.P., the debtor and debtor in possession in the above captioned case (the "Debtor"), hereby applies to this Court for entry of an order, pursuant to sections 327(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2014(a), authorizing the Debtor to employ Troutman Sanders, LLP ("Troutman") as its litigation counsel as of the commencement of this case (the "Application"). This Application is supported by the accompanying Declaration of Martin Taylor (the "Taylor Declaration"), and includes Troutman's disclosures pursuant to section 329(a) of the Bankruptcy Code. In support of this Application, the Debtor respectfully represents as follows:

## BACKGROUND

**A.    Petition Date and Jurisdiction.**

On July 15, 2010 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.

Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is continuing to manage its financial affairs as a debtor in possession.

No trustee or examiner has been appointed in the Debtor's chapter 11 case. An official committee of unsecured creditors has not yet been formed or appointed.

This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334 and 157(b), and the venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    General Background of the Debtors.**

The Debtor owns the Kyoto Grand Hotel and Gardens (the "Hotel") and Weller Court ("Weller Court") in the "Little Tokyo"[1] area of Downtown Los Angeles.

The Debtor entered into a loan transaction with First Regional Bank ("FRB") under which the Debtor borrowed $33,600,000 and granted FRB a deed of trust on the Hotel to secure this loan (the "Hotel Loan"). The proceeds of the Hotel Loan were paid to FRB in partial satisfaction of an existing loan (the "Original Loan"), and FRB released the deed of trust on the Hotel which secured the Original Loan. The remaining balance owing on the Original Loan in the amount of

---

[1] The Hotel is located at 204 East First Street, and Weller Court is located at 120 South Los Angeles Street and 227 East Second Street (together, the "Subject Properties").

2

1048545v1
542843v.2

$10,400,000 is now secured only by the Weller Court property. This reduced loan shall be referred to herein as the "Remaining Original Loan." The two loans are not cross-collateralized but they do contain cross-default provisions.

On January 29, 2010, FRB was closed by the California Department of Institutions, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver. The Debtor has been informed that First-Citizens Bank & Trust Company (the "Bank") acquired a majority of the assets and assumed a majority of the liabilities of FRB, including the Hotel Loan and Remaining Original Loan from the FDIC.

As of the Petition Date, the outstanding amount due and owing under the Remaining Original Loan is $10,400,000.00. Likewise, as of the Petition Date, the outstanding principal amount due and owing under the Hotel Loan is $33,580,415.83.

The Debtor defaulted under the Hotel Loan in January 2010. The Debtor, however, has remained current on the Remaining Original Loan through the Petition Date.

The Bank commenced non-judicial foreclosure proceedings against both the Hotel and Weller Court, relying on the cross-default provisions. On June 3, 2010, the Bank commenced an action against the Debtor and other parties by filing a complaint (the "State Court Complaint") in the Superior Court of California, County of Los Angeles. In the State Court Complaint, the Bank sought, among other things, judicial foreclosure and the appointment of a receiver for both the Hotel and Weller Court (the "State Court Action"). The parties continued to negotiate in an effort to reach a consensual resolution. The Bank scheduled a non-judicial foreclosure sale for the morning of July 16, 2010. On July 12, 2010, the Bank informed the Debtor that the Bank would not continue the foreclosure sale of the Hotel and Weller Court to give the parties additional time to reach a consensual resolution. The Debtor commenced this chapter 11 case on July 15, 2010.

On August 2, 2010, the Bank filed its "Notice of Removal of Civil Action Under 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027(a)," in which it removed the State Court Action to this Court. The Bank filed its "Verified First Amended Complaint" with this Court (the "Complaint") on August 3, 2010, in which it set forth the various causes of action

3

1048545v1
542843v.2

contained in the State Court Complaint, thereby initiating adversary proceeding number 2:10-ap-02412-BR (the "Adversary Proceeding").

## RELIEF REQUESTED

**A.    Troutman's Services.**

The Debtor wishes to employ Martin Taylor, Dan Chambers, Meghan Sherrill and other partners, associates, and of-counsel attorneys of Troutman, as the Debtor's litigation counsel in connection with defending the Adversary Proceeding. A summary of the experience and qualifications of those members of Troutman expected to render substantial services to the Debtor is attached as Exhibit "1" to the Taylor Declaration.

The Debtor requires its litigation counsel to render the following types of professional services:

    a.    Represent the Debtor and other defendants in the Adversary Proceeding, some of whom are principals of the Debtor, in connection with all aspects of the Adversary Proceeding, including but not limited to factual investigation, case management, law and motion practice, discovery, settlement negotiations, trial preparation and trial representation;

    b.    Communicate on Debtor's behalf with opposing counsel, potential witnesses, Debtor's bankruptcy counsel and the Court.

Prior to the Petition Date, Troutman and the Debtor executed a retention and retainer agreement, a copy of which is attached as Exhibit "2" to the Taylor Declaration, whereby Troutman agreed to act as litigation counsel for the Debtor.

Troutman will not be responsible for: (1) representing the Debtor in bankruptcy court in connection with any bankruptcy related matters not related to the Adversary Proceeding; (2) litigation with respect to matters which are, in the main case, disputes involving issues of bankruptcy law; or (3) the provision of advice outside the litigation of the Adversary Proceeding, such as corporations, securities, torts, environmental, labor, criminal, real estate, health care, administrative, or regulatory law.

4

1048545v1
542843v.2

The Debtor may, from time to time, request that Troutman undertake specific matters beyond the limited scope of the responsibilities set forth above. Should Troutman agree in its discretion to undertake any such specific matters, the Debtor seeks authority herein to include such matters within the scope of Troutman's employment.

In addition to representing the Debtor, Troutman will also represent the other non-Debtor defendants in the Adversary Proceeding, which defendants are principals of the Debtor. Troutman will allocate its time appropriately, setting up two separate billing matters, one for the Debtor related work and one for the non-Debtor defendants.

**B.     Troutman's Compensation.**

Troutman has provided litigation advice and services to the Debtor since June 8, 2010. During the one year period prior to the Petition Date, Troutman received compensation in the aggregate amount of $78,863.10[2] from the Debtor for pre-petition services rendered on the Debtor's behalf. This entire amount came from the $250,000.00 in pre-petition retainers (the "Retainer") that Troutman received prior to the Petition Date for services to be rendered and expenses to be incurred in connection with negotiations with First Citizens Bank, the defense of the State Court Action and now the defense of the Adversary Proceeding. The Debtor does not owe Troutman any amount for pre-petition services.

Troutman has deposited the Retainer in a segregated interest-bearing trust account to secure the payment of Troutman's fees and expenses, including those incurred post-petition and otherwise allowed by this Court, and the Debtor has granted Troutman a security interest therein. Prior to the filing of the Debtor's case, Troutman drew down on the Retainer for its pre-petition services such that $171,136.90 remains in the trust account. The Retainer will only be paid, and Troutman will only seek approval from this Court for, that portion of Troutman's services which is for work performed on behalf of the Debtor. Troutman will not seek compensation, or approval from this Court for, work performed on behalf of the non-Debtor defendants. Troutman

---

[2]     The amounts specified in this Application are estimates and are subject to possible revision. Troutman will file an amended disclosure under Bankruptcy Code section 329(a) as necessary to reflect any changes in these amounts.

5

acknowledges that the Retainer is subject to Court review pursuant to Bankruptcy Code section 329(b). In addition, to the extent the fees for services and expenses allowed pursuant to orders of the Court under Bankruptcy Code section 330 do not exceed the amount of the Retainer, Troutman will promptly return the difference to the Debtor's estate.

Troutman has agreed to accept as compensation for its services in this case such sums as may be allowed by the Court in accordance with law, based upon the time spent and services rendered, the results achieved, the difficulties encountered, the complexities involved, and other appropriate factors. Subject to the Court's approval, Troutman will charge the Debtor for its services at a 10% discount from its guideline rates. A summary of (i) the range of the applicable current hourly rates for Troutman that will be charged in this case, and (ii) the hourly rates of those members of Troutman expected to render substantial services to the Debtor, is attached as Exhibit "3" to the Taylor Declaration.

No compensation will be paid by the Debtor to Troutman except as authorized by this Court.

**C.    Disinterestedness.**

To the best of the Debtor's knowledge, based upon the accompanying Taylor Declaration, except as they are and have been the attorneys for the Debtor and except as otherwise set forth in the Taylor Declaration, Troutman and all of the attorneys comprising or employed by it are disinterested persons who do not hold or represent an interest adverse to the Debtor's estate and do not have any connection with the Debtor, its estate, its creditors, the Office of the United States Trustee, or any other party in interest in this case or with their respective attorneys or accountants. The Court is respectfully directed to the Taylor Declaration for disclosures relating to Troutman's connections with the Debtor, its creditors, and its equity investors.

The following supplemental disclosures are made with respect to Troutman's disinterestedness and connections with the Debtor and in compliance with Form 2014-1 for the United States Bankruptcy Court for the Central District of California:

1048545v1
542843v.2

    a. Troutman is not and was not a creditor, an equity holder, or an insider of the Debtor, except that Troutman has previously rendered legal services to the Debtor for which it has been compensated as disclosed above.

    b. No member of Troutman is a relative or an employee of the United States Trustee or a Bankruptcy Judge in the Central District of California.

    c. Troutman has no interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity holders, either by reason of any direct or indirect relationship to, connection with, or interest in the Debtor.  As set forth above, although Troutman does also represent the non-Debtor defendants in the Adversary Proceeding, Troutman does not believe this representation creates a conflict of interest or the representation of an interest adverse to the estate.

  References to Troutman include all members who are expected to render services in this case.

  In order to check for potential conflicts, Troutman conducted its standard conflicts check procedure.  Each party to the Adversary Proceeding and any affiliates, parent companies and/or subsidiaries were run through a firm database and through a Dun & Bradstreet database to check for any potential conflicts.  After reviewing the conflicts check report, Troutman has determined that, except as otherwise noted herein and in the Taylor Declaration, it does not hold or represent an interest adverse to the Debtor's estate and does not have any connection with the Debtor, its estate, its creditors, the Office of the United States Trustee, or any other party in interest in these cases or with their respective attorneys or accountants.

  Troutman will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new facts or circumstances are discovered, Troutman will supplement its disclosure to the Court.

  Other than with respect to its own partners, associates, and of counsel, Troutman has agreed not to share with any person or firm the compensation to be paid for professional services it renders in connection with these cases.

1048545v1
542843v.2

1        The employment of Martin Taylor, Dan Chambers, Meghan Sherrill, and other partners, associates, and attorneys of counsel of Troutman as the Debtor's litigation counsel is in the best interest of the Debtor's estate and its creditors.

       This Application has been served on the Office of the United States Trustee, and other parties required to be served in this bankruptcy case. The Debtor respectfully submits that such service and notice is sufficient under the circumstances and that no other or further notice need be provided.

       **WHEREFORE**, the Debtor requests that it be authorized to employ Martin Taylor, Dan Chambers, Meghan Sherrill, and other partners, associates, and attorneys of counsel of Troutman as litigation counsel with compensation at the expense of the Debtor's estate in such amount as this Court may hereafter allow.

Dated: August _13_, 2010

_____
DAVID GODDARD
Chief Financial Officer of Little Tokyo Partners, L.P.

SUBMITTED BY:

/s/ Neeta Menon
_____
JEFFREY C. KRAUSE,
CHRISTINE M. PAJAK, and
NEETA MENON, Members of
STUTMAN, TREISTER & GLATT, P.C.
[Proposed] Reorganization Counsel for Debtor
and Debtor in Possession

1048545v1

## DECLARATION OF MARTIN TAYLOR

I, Martin Taylor, declare as follows:

1. I am over eighteen years of age, and I have personal knowledge of each of the facts stated in this declaration. If called as a witness, I could and would testify as to the matters set forth below based upon my personal knowledge.

2. I am a senior partner at the law firm of Troutman Sanders, LLP ("Troutman"), proposed litigation counsel for Little Tokyo Partners, L.P., the debtor and debtor in possession in the above captioned case (the "Debtor").

3. I submit this declaration pursuant to Federal Rule of Bankruptcy Procedure 2014(a) in support of the "Application for Order Authorizing the Employment and Retention of Troutman Sanders LLP as Litigation Counsel for the Debtor and Debtor in Possession" (the "Application").

**A.     Services to be Rendered by Troutman.**

4. I believe that Troutman is well qualified to represent the Debtor. All attorneys comprising of or associated with Troutman who will render services to the Debtor are duly admitted to practice law in the courts of the State of California and in the United States District Court for the Central District of California. A summary of the experience and qualifications of those members of Troutman expected to render substantial services to the Debtor in this case is attached hereto as Exhibit "1."

5. The Debtor desires to employ Troutman as its counsel in connection with its chapter 11 case, and in that regard requires reorganization counsel to render the following types of professional services:

    a. Represent the Debtor and other defendants in the Adversary Proceeding, some of whom are principals of the Debtor, in connection with all aspects of the Adversary Proceeding, including but not limited to factual investigation, case management, law and motion practice, discovery, settlement negotiations, trial preparation and trial representation;

b.    Communicate on Debtor's behalf with opposing counsel, potential witnesses, Debtor's bankruptcy counsel and the Court.

6.    Prior to the Petition Date, Troutman and the Debtor executed a retention and retainer agreement, a copy of which is attached hereto as Exhibit "2," whereby Troutman agreed to act as litigation counsel for the Debtor.

7.    In its capacity as counsel to the Debtor, Troutman will not be responsible for: (1) representing the Debtor in bankruptcy court in connection with any bankruptcy related matters not related to the Adversary Proceeding; (2) litigation with respect to matters which are, in the main, disputes involving issues of bankruptcy law; or (3) the provision of advice outside the litigation of the Adversary Proceeding, such as corporations, securities, torts, environmental, labor, criminal, real estate, health care, administrative, or regulatory law.

**B.    Compensation Arrangements.**

8.    Troutman has provided litigation advice and services to the Debtor since June 8, 2010. During the one year period prior to the Petition Date, Troutman received compensation in the aggregate amount of $78,863.10[3] from the Debtor for pre-petition services rendered on the Debtor's behalf. This entire amount came from the $250,000.00 in pre-petition retainers (the "Retainer") that Troutman received prior to the Petition Date for services to be rendered and expenses to be incurred in connection with negotiations with First Citizens Bank, the defense of the State Court Action and now the defense of the Adversary Proceeding. The Debtor does not owe Troutman any amount for pre-petition services.

9.    Troutman has deposited the Retainer in a segregated interest-bearing trust account to secure the payment of Troutman's fees and expenses, including those incurred post-petition and otherwise allowed by this Court, and the Debtor has granted Troutman a security interest therein. Prior to the filing of the Debtor's case, Troutman drew down on the Retainer for its pre-petition services such that $171,136.90 remains in the trust account. The Retainer will only be

---

[3]    The amounts specified in this Application are estimates and are subject to possible revision. Troutman will file an amended disclosure under Bankruptcy Code section 329(a) as necessary to reflect any changes in these amounts.

10

1. paid, and Troutman will only seek approval from this Court for, that portion of Troutman's services which is for work performed on behalf of the Debtor. Troutman will not seek compensation, or approval from this Court for, work performed on behalf of the non-Debtor defendants. Troutman acknowledges that the Retainer is subject to Court review pursuant to Bankruptcy Code section 329(b). In addition, to the extent the fees for services and expenses allowed pursuant to orders of the Court under Bankruptcy Code section 330 do not exceed the amount of the Retainer, Troutman will promptly return the difference to the Debtor's estate.

10. Troutman has agreed to accept as compensation for its services in this case the Retainer, as well as such additional sums as may be allowed by this Court, based upon the time spent and services rendered, the results achieved, the difficulties encountered, the complexities involved, and other appropriate factors related to its representation of the Debtor. Subject to the Court's approval, Troutman will charge the Debtor for its services at a 10% discount from its guideline hourly rates. Troutman also reserves the right, depending upon the results achieved in the Adversary Proceeding, to seek a bonus in addition to its hourly charges, which bonus would of course be subject to the approval of the Debtor and the Court. Attached hereto as Exhibit "3" is a list of: (i) the current rates for Troutman that will be charged in this case; and (ii) the corresponding rates of those members of Troutman expected to render substantial services to the Debtor.

**C.     Disinterestedness.**

11. To the best of Troutman's knowledge, based on the conflict searches conducted by Troutman, I believe that Troutman and all of the attorneys comprising or employed by it: (i) do not hold or represent an adverse interest in connection with the Debtor's chapter 11 case; (ii) do not hold or represent an interest adverse to the interests of the Debtor's estate with respect to the Adversary Proceeding; (iii) are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code; and (iv) do not have any other connection with the Debtor, its creditors, any other party in interest, their respective attorneys or accountants, the U.S. Trustee, nor any person employed in the Office of the U.S. Trustee.

1048545v1
542843v.2

12.     It is possible that Troutman may have represented in the past, or may represent in the future, parties that are creditors or other parties in interest in the Debtor's chapter 11 case in matters entirely unrelated to the Debtor's chapter 11 case.

13.     Several attorneys at Troutman may have spouses, parents, children, siblings, fiancés or fiancées who are attorneys at other law firms and companies.  However, Troutman has strict policies against disclosing confidential information to anyone outside of the firm, including spouses, parents, children, siblings, fiancés, and fiancées.

14.     The following supplemental disclosure is made in compliance with Form 2014-1 for the United States Bankruptcy Court for the Central District of California (references to Troutman include all members who are expected to render services in this case):

    a.     Troutman is not and was not a creditor, an equity holder or an insider of the Debtor, or of any member of the Debtor.

    b.     Troutman is not and was not, within two (2) years before the Petition Date, a director, officer or employee of the Debtor or any member of the Debtor.

    c.     Subject to the disclosures contained in this Declaration, Troutman has no interest materially adverse to the interests of the Debtor's estate or to any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor. As set forth above, although Troutman does also represent the non-Debtor defendants in the Adversary Proceeding, Troutman does not believe this representation creates a conflict of interest or the representation of an interest adverse to the estate.

15.     I am the partner at Troutman who will bear primary responsibility for supervising the representation of the Debtor, and I believe that Troutman is competent to represent the interests of the Debtor as counsel in connection with this chapter 11 case.

1048545v1
542843v.2

1 | I declare under penalty of perjury that the foregoing is true and correct to the best of
2 | my knowledge and belief.
3 | Executed on August 13, 2010, at Irvine, California.
4 |
5 | _____
  | MARTIN TAYLOR