1    JEFFREY C. KRAUSE (State Bar No. 94053),
     jkrause@stutman.com
2    CHRISTINE M. PAJAK (State Bar No. 217173), and
     cpajak@stutman.com
3    NEETA MENON (State Bar No. 254736), Members of
     nmenon@stutman.com
4    STUTMAN, TREISTER & GLATT, P.C.
     1901 Avenue of the Stars
5    12th Floor
     Los Angeles, CA 90067
6    Telephone:  (310) 228-5600
     Telecopy:   (310) 228-5788
7

8    Reorganization Counsel for
     Debtor and Debtor in Possession

9    Debtor's Mailing Address:
     1880 Century Park East, Suite 810
10   Los Angeles, CA  90067

11            **UNITED STATES BANKRUPTCY COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13               **LOS ANGELES DIVISION**

14

| | |
|---|---|
| In re | Case No. 2:10-39113-BR |
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership, | Chapter 11 |
| Debtor. | **NOTICE OF FILING OF "DEBTOR'S AMENDED PLAN OF REORGANIZATION (OCTOBER 5, 2010)" AND NOTICE OF NON-OPPOSITION TO BANK'S REQUEST FOR A CONTINUANCE** |

**Disclosure Statement Hearing**

Currently Scheduled
Date:     October 6, 2010
Time:     10:00 a.m.
Place:    Courtroom 1668
            255 E. Temple St.
            Los Angeles, CA  90012

**Confirmation Hearing**

Date:     [To be Scheduled]

544496v2

A.    **Timing And Procedure.**

Attached hereto as Exhibit "A" and incorporated herein by this reference is a blacklined copy of the "Debtor's Amended Plan of Reorganization (October 5, 2010)" (the "Amended Plan"), showing all changes from the "Debtor's Plan of Reorganization (August 31, 2010)" (the "Original Plan").  The changes between the Original Plan and the Amended Plan are minor and are intended to address a handful of comments informally made by the Committee[1] and the formal objection to the proposed disclosure statement filed by the Bank, as well as addressing an erroneous classification in the Original Plan.

**The Bank has requested that the Court not consider the merits of the Disclosure Statement on October 6, 2010 and that the hearing be continued.  For the reasons set forth below, the Debtor has agreed not to oppose a short continuance, subject to this Court's approval and availability.**

On October 4, 2010, counsel for the Bank informed counsel for the Debtor that the FDIC and the Bank have executed a "Support Agreement and Joint Escrow Instructions" (the "Proposed Agreement") with an undisclosed buyer (the "Secret Buyer").  The Bank has informed the Debtor that the Secret Buyer has 10 business days from October 4, 2010 (the "Document Review Period") to complete its due diligence and execute the proposed purchase agreement with the Bank (the "Proposed Purchase Agreement").  The  Document Review Period expires October 18, 2010 and the Secret Buyer is required to make a $4 million good faith deposit on or before October 20, 2010.

The Bank has indicated that it believes that the Disclosure Statement should not be approved until the Document Review Period has expired and the parties and this Court know whether the Secret Buyer is actually going to commit to buy the Debtor's real property.  The Debtor has asked the Bank for information about the Buyer and its due diligence process to date. The Bank has thus far refused to provide the Debtor with any information about the Buyer, its assets or its due diligence process to date.  The Debtor requests that the Court instruct the Bank to provide to the

---

[1] Capitalized Terms used herein that are not defined herein have the meaning set forth in the Amended Plan.

544496v2

Debtor and the Court the following information, which the Debtor has separately requested from the Bank, in order to enable the Debtor and the Court to analyze the legitimacy of the Secret Buyer and its proposal:

      1.     The name of the Secret Buyer and, if the Secret Buyer is a legal entity, the names of the Secret Buyer's principals;

      2.     Current financial statements for the Secret Buyer, including a balance sheet and income statement and any other data that he Bank believes shows the Secret Buyer will have the ability to perform;

      3.     A list of other U.S. real estate assets owned by the Secret Buyer, including a list of any hotels owned currently or in the past by the Secret Buyer;

      4.     A list of the due diligence that the Secret Buyer has already completed, including an understanding of the due diligence materials in the Bank's possession that the Secret Buyer has already had an opportunity to review;

      5.     A description of the additional due diligence that the Secret Buyer needs to complete and what additional information, if any, the Bank believes that it needs from the Debtor in order to facilitate that due diligence process on an expedited basis;

      6.     A list of any internal approvals that the Secret Buyer may need, such as lender approvals or corporate governance approvals that have not yet been granted; and

      7.     Any information regarding the allocation of the purchase price between Weller Court and the Hotel, because the Bank's secured notes are not cross – collateralized.

The Debtor believes that it is very likely that the Secret Buyer will not commit to proceed with the Proposed Purchase Agreement on October 18, 2010, or make the required good faith deposit on or before October 20, 2010, as required by the Proposed Agreement and will, instead ask for more time and/or more information.  The Debtor's concerns are exacerbated by (a) the Bank's refusal to provide any information to the Debtor or the Court about the Secret Buyer or what due diligence materials the Bank has provided to the Secret Buyer, (b) the sheer coincidence that the proposed price is approximately equal to the Bank's debt, rounded to the nearest million, and (c) the

1    fact the proposed price is more than double the appraised value of the Debtor's assets.  The process

2    cannot be allowed to drag on indefinitely.  Every day that the Debtor is in chapter 11 creates

3    additional expense and adverse impact on the operations of the Hotel and Weller Court.  The Bank

4    must provide the Secret Buyer with all due diligence materials that the Debtor has provided to the

5    Bank and the Document Review Period simply should not be extended.

6            In addition, the Proposed Purchase Agreement does not allocate the purchase price as

7    between the Hotel and Weller Court.  The Bank's secured claim is not cross-collateralized and,

8    therefore, allocation of value is imperative.

9            Although the Debtor does not oppose a short continuance of the Disclosure Statement

10   hearing to address the question of whether the Secret Buyer will actually commit to the proposed

11   purchase, the Debtor does not believe that the short continuance of the Disclosure Statement hearing

12   should allow the Bank or other parties to re-open the adequacy of the disclosure or objections to the

13   Disclosure Statement.  The Debtor has filed attached hereto the Amended Plan and has filed a

14   blacklined version of the "Second Amended Disclosure Statement to Accompany Debtor's Plan of

15   Reorganization (October 5, 2010)," to provide the Court and the parties with concrete responses to

16   the specific concerns raised with respect to the original disclosure statement.  The Debtor requests

17   that no party be allowed to submit new objections to the Disclosure Statement solely because of the

18   continuance.

19                    **B.        Description of Minor Plan Amendments**

20           The Original Plan contained a general reservation of rights, which allowed the

21   Reorganized Debtor to prosecute any preference claims it deemed appropriate.  The Committee

22   questioned whether it was appropriate for the Reorganized Debtor to pursue preference claims

23   without such claims inuring to the benefit of unsecured creditors.  After reviewing the transfers made

24   during the 90 days immediately prior to the Petition Date and transfers made to insiders during the

25   one year immediately prior to the Petition Date, the Debtor has proposed in the Amended Plan not to

26   allow the Reorganized Debtor to pursue preference claims, because the vast majority of transfers

27   made during the preference period appear to be transfers made in the ordinary course of business to

28   trade creditors.  The balance still owing to 3D Investments IV, LLC as of the Petition Date was

1    $1,947,302.  During the 12 months immediately prior to the Petition Date, 3D Investments IV, LLC,

2    received interest payments totaling $130,243.78 on account of its large claim against the Debtor.

3    Pursuant to the Amended Plan, 3D Investments IV, LLC will repay the $130,243.78 to the

4    Reorganized Debtor on the Effective Date.

5           Based on discussions with the Committee, the dollar limit on claims to be placed in

6    the "Convenience Class" has been increased from $2,000 to $3,000 and the amount of the

7    distribution on account of these claims has been increased from 50% to 2/3rds of the Allowed

8    Claims in this Class.

9           The Bank's Objection argues that the "New Capital Contribution" is purportedly

10   illusory because this cash might be distributed to the Reorganized Debtor's partners **if** the Bank's

11   claim secured by the Hotel is paid in full.  While the Debtor believes that this contention was

12   unfounded in light of the fact the Debtor has voluntarily proposed to grant the Bank a lien on the

13   New Capital Contribution, the Debtor has added to the Plan the following provision:  "Neither the

14   New Capital Contribution, the Settlement Payment, nor the Net Hotel Rents shall be distributed to

15   the General Partner or the Limited Partner at any time."

16          The Original Plan separately classified the claim of First Private Bank, because the

17   Debtor erroneously believed that this claim was secured by a van owned by the Debtor and used at

18   the Hotel.  Based on further review of the underlying documentation, the Debtor has determined that

19   the claim held by First Private Bank is not secured and, therefore, will constitute a general unsecured

20   claim.  The separate Class 2 for this Claim has, therefore, been eliminated in the Amended Plan.

21   This has changed each of the other class numbers in the Amended Plan.  The Debtor respectfully

22   submits that none of these modifications is material, and each of them is intended to directly respond

23   to concerns raised by either the Bank or the Committee.

24   Dated:  October 5, 2010                          _/s/ Neeta Menon_
                                                       JEFFREY C. KRAUSE,
25                                                     CHRISTINE M. PAJAK, and
                                                       NEETA MENON, Members of
26                                                     STUTMAN, TREISTER & GLATT
                                                       PROFESSIONAL CORPORATION
27                                                     Reorganization Counsel for
                                                       Debtor and Debtor in Possession
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>EXHIBIT A</u>**

JEFFREY C. KRAUSE (State Bar No. 94053),
jkrause@stutman.com
CHRISTINE M. PAJAK (State Bar No. 217173), and
cpajak@stutman.com
NEETA MENON (State Bar No. 254736), Members of
nmenon@stutman.com
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:  (310) 228-5600
Telecopy:    (310) 228-5788

Reorganization Counsel for
Debtor and Debtor in Possession

Debtor's Mailing Address:
1880 Century Park East, Suite 810
Los Angeles, CA  90067

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-39113-BR |
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership, | Chapter 11 |
| Debtor. | **DEBTOR'S AMENDED PLAN OF REORGANIZATION** (August 31,October 5, 2010) |
| | **Confirmation Hearing** |
| | Date:    [To be Scheduled] |

1    This Plan of Reorganization (the "Plan") is proposed by chapter 11 debtor Little

2    Tokyo Partners, L.P. (the "Debtor").  The Disclosure Statement for the Plan discusses the Debtor's

3    history, business, properties, and results of operations and contains a summary of the Plan.  All

4    holders of Claims and interests are encouraged to read the Plan and the Disclosure Statement in their

5    entirety before voting to accept or reject the Plan.  No solicitation materials, other than the

6    Disclosure Statement and the exhibits attached thereto or referenced therein and related materials

7    transmitted with it, have been approved by the Bankruptcy Court for use in soliciting acceptances or

8    rejections of the Plan.

9    **I.**

10    **DEFINITIONS AND RULES OF CONSTRUCTION**

11    **A.    Definitions.**

12    In addition to such other terms as are defined in other sections of the Plan, the

13    following terms (which appear in the Plan as capitalized terms) have the following meanings as used

14    in the Plan:

15    1.    **"ADA Claims"** means all Claims arising under that certain ADA Litigation.

16    2.    **"ADA Litigation"** means that certain litigation styled <u>Hugh Marsh and Neva</u>

17    <u>Lema v. Grand Kyoto Hotel; Little Tokyo Partners, L.P., et al.</u>, Case No. CV10-1511, pending in the

18    United States District Court for the Central District of California.

19    3.    **"ADA Settlement"** means that certain settlement of the ADA Litigation as

20    more fully described herein.

21    4.    **"Administrative Claim"** means a Claim for costs and expenses of

22    administration of the Reorganization Case under Bankruptcy Code section 503(b) or 507(a)(1).

23    5.    **"Allowed Claim"** means a Claim against the Debtor to the extent that:

24    a.    a proof of such Claim

25    (1)    is timely Filed; or

26    (2)    is deemed timely Filed under applicable law or by reason of an

27    order of the Bankruptcy Court; and

28

b. (1) neither the Debtor nor the Reorganized Debtor Files an objection within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim);

(2) the Claim is allowed (and only to the extent allowed) by a Final Order; or

(3) the Claim is allowed under the Plan.

6. **"Allowed . . . Claim"** means an Allowed Claim in the particular class described.

7. **"Allowed Interest"** means all interests in the Debtor as of the Confirmation Date.

8. **"Avoiding Power Causes of Action"** means causes of action, if any, arising under Bankruptcy Code sections 502(d), 506, 544, 545, 547, 548, 549, 550, 553, and 558, or any fraudulent conveyance, fraudulent transfer or preference laws, or any cause of action arising under, or relating to, any similar state law or federal law that constitutes property of the Estate under Bankruptcy Code section 541, whether or not an action is initiated on or before the Effective Date.

9. **"Bank"** means First-Citizens Bank & Trust Company, the sole member of Classes 43 and 5,4, respectively.

10. **"Bank's Hotel Collateral"** means a first lien on that certain real property defined herein as the Hotel, the true and correct legal description of which shall be Filed not later than the Exhibit Filing Date, and all net rents, issues and profits generated from the Hotel.

11. **"Bank's Weller Court Collateral"** means a first lien on that certain real property defined herein as Weller Court, the true and correct legal description of which shall be Filed not later than the Exhibit Filing Date, and all net rents, issues and profits from Weller Court.

12. **"Bank's Weller Deed of Trust"** means that certain deed of trust, dated as of August 10, 2007, that was granted to the Bank to secure the Bank's Weller Note.

13. **"Bank's Weller Note"** means that certain promissory note issued by the Debtor to the Bank, dated as of August 10, 2007, in the original principal amount of $44,000,000.00, which was subsequently paid down to a principal balance of $10,400,000 in November 2009, and is

secured by a first priority lien on the Bank's Weller Court Collateral, pursuant to a deed of trust dated August 10, 2007.

14. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California, Los Angeles Division, or, if such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

15. **"Bankruptcy Rules"** means, collectively, the:  (a) Federal Rules of Bankruptcy Procedure, and (b) the Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

16. **"Business Day"** means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

17. **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

18. **"Claim"** means a Claim—as the term "Claim" is defined in Bankruptcy Code section 101(5)—against the Debtor.

19. **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Reorganization Case.

20. **"Confirmation"** means the entry of the Confirmation Order.

21. **"Confirmation Date"** means the date on which Confirmation occurs.

22. **"Confirmation Hearing"** means the hearing held pursuant to Bankruptcy Rule 3020(b)(2), including any continuances thereof, at which the Bankruptcy Court will consider Confirmation of the Plan.

23. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

24. **"Convenience Claims"** means all General Unsecured Claims against the Debtor that are less than $2,000,3,000, and any Unsecured Claim that is greater than $25,000,3,000, which its holder elects to treat as all of its Unsecured Claims a single Convenience Claim in a

1    reduced amount of $2,000.3,000.  A creditor cannot elect to have less than all of its Unsecured

2    Claims treated as a Convenience Claim.

3            25.    **"Debtor"** means Little Tokyo Partners, L.P.

4            26.    **"Debtor in Possession"** means Little Tokyo Partners, L.P., when acting in its

5    capacity as representative of the Estate in the Reorganization Case.

6            27.    **"Disclosure Statement"** means the "Second Amended Disclosure Statement

7    to Accompany Debtor's Plan of Reorganization (August 31,October 5, 2010)" (and all exhibits and

8    schedules thereto) that relates to the Plan, as such Disclosure Statement may be amended, modified

9    or superseded.

10           28.    **"Disclosure Statement Hearing"** means the hearing held pursuant to

11   Bankruptcy Rule 3017(a), including any continuances thereof, at which the Bankruptcy Court

12   considered the adequacy of the Disclosure Statement.

13           29.    **"Disputed Claim"** means any Claim: (a) as to which a proof of Claim has

14   been Filed and the dollar amount of such Claim, respectively, is not specified in a fixed amount; (b)

15   prior to the deadline to object to such Claim, as to which a proof of Claim has been Filed and the

16   dollar amount of such Claim is specified in a fixed liquidated amount, the extent to which the stated

17   amount of such Claim exceeds the amount of such Claim listed in the Schedules; (c) prior to the

18   deadline to object to such Claim, as to which a proof of Claim has been Filed and such Claim is not

19   included in the Schedules; (d) with respect to a proof of Claim that is filed or is deemed Filed under

20   Bankruptcy Rule 3003(b)(1) and is listed as contingent, disputed or liquidated; (e) as to which an

21   objection has been Filed or is deemed to have been Filed pursuant to any order approving procedures

22   for objecting to Claims and such objection has neither been overruled nor been denied by a Final

23   Order and has not been withdrawn; or (f) with respect to an Administrative Claim, as to which an

24   objection: (1) has been timely Filed (or the deadline for objection to such Administrative Claim has

25   not expired) and (2) has neither been overruled nor been denied by a Final Order and has not been

26   withdrawn.

27           30.    **"Distribution Date"** has the meaning ascribed to it in section VII.C.2 of the

28   Plan.

1        31.     **"Effective Date"** means the first Business Day that is at least eleven (11)

2 days after the Confirmation Date, and on which all conditions to the Effective Date contained in

3 section VI. hereof have been satisfied or, if waivable, waived, unless the Confirmation Order has

4 been stayed.  If the Confirmation Order has been stayed the Effective Date shall be the third

5 Business Day after any such stay terminates, lapses or expires.

6        32.     **"Estate"** means the estate created in the Reorganization Case under section

7 541 of the Bankruptcy Code.

8        33.     **"Excell"** means Excell Investment Group, LLC, the sole member of Class

9 3.2.

10        34.     **"Excell's Weller Court Collateral"** means a second lien on that certain real

11 property defined herein as Weller Court, the true and correct legal description of which shall be

12 Filed not later than the Exhibit Filing Date, and all net rents, issues and profits generated from

13 Weller Court.

14        35.     **"Excell's Weller Court Note"** means that certain promissory note issued by

15 the Debtor to Excell as of July 13, 2010, in the principal amount of $300,000, which is secured by a

16 second lien priority on Weller Court, pursuant to a deed of trust.

17        36.     **"Exhibit Filing Date"** means a Business Day on which drafts of all Exhibits

18 to the Plan shall be Filed and which day shall be no later than twenty (20) days prior to the

19 Confirmation Hearing.  The Debtor reserves the right to File amended or revised versions of any

20 Exhibit through and including the Confirmation Date.

21        37.     **"File" or "Filed"** means filed with the Bankruptcy Court in the

22 Reorganization Case.

23        38.     **"Final Order"** means an order or judgment of the Bankruptcy Court, as

24 entered on its docket, which has not been reversed, stayed, modified or amended, and as to which (a)

25 the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to

26 which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then

27 be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have

28 been waived in writing in form and substance satisfactory to the Debtor or Reorganized Debtor, as

1    applicable, or (b) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof

2    has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall

3    have been affirmed by the highest court to which such order or judgment was appealed, or certiorari

4    has been denied, or from which reargument or rehearing was sought, and the time to take any further

5    appeal, petition for certiorari or move for reargument or rehearing shall have expired.

6            39.    **"FPB"** means First Private Bank, the sole member of Class 2.

7            40.    **"FPB's Collateral"** means a first lien on that personal property commonly

8    known as the 2000 Oldsmobile Silhouette, which is used in the Hotel's operations.

9            41.    **"General Partner"** means Little Tokyo Partners, LLC, the Debtor's sole

10   general partner.

11           42/40.    **"General Partner Interest"** means the interest of the General Partner.

12           43/41.    **"Hotel"** means the Kyoto Grand Hotel and Gardens located at 120 South Los

13   Angeles Street, Los Angeles, California, the true and correct legal description of which shall be Filed

14   not later than the Exhibit Filing Date.

15           44/42.    **"Limited Partner"** means 3D Investments IV, L.P.

16           45/43.    **"Limited Partner Interest"** means the Limited Partner's limited partnership

17   interest in the Debtor.

18           46/44.    **"Judgment Rate"** means the interest rate on a federal judgment entered on

19   the Petition Date, which was 0.31%.

20           47/45.    **"Net Hotel Rents"** means the net rents, issues and profits held in the

21   Debtor's accounts on the Effective Date derived form/from the Hotel during the Chapter 11 Case,

22   which secure the Prepetition Bank Hotel Note.

23           49./46.    **"New Bank Hotel Deed of Trust"** means the new deed of trust to be granted

24   to the Bank in connection with the New Bank Hotel Note under the Plan, a true and correct copy of

25   which shall be included in the Plan Documents.

26           50./47.    **"New Bank Hotel Note"** means the new promissory note to be delivered to

27   the Bank, which shall be secured by the New Bank Hotel Deed of Trust, a true and correct copy of

28   which shall be included in the Plan Documents.

51.48. **"New Bank Hotel Security Agreement"** means the new security agreement to be granted to the Bank in connection with the New Bank Hotel Note under the Plan, which grants the Bank a security interest, among other things, in the New Capital Contribution, a true and correct copy of which shall be included in the Plan Documents.

52.49. "New Capital Contribution" means the $5,500,000 to be invested in the Reorganized Debtor by the General Partner and the Limited Partner on the Effective Date.

53.50. **"New Excell Deed of Trust"** means the new deed of trust to be granted to Excell in connection with the New Excell Note under the Plan, a true and correct copy of which shall be included in the Plan Documents.

54.51. **"New Excell Note"** means the new promissory note to be delivered to Excell, which shall be secured by the New Excell Deed of Trust, a true and correct copy of which shall be included in the Plan Documents.

55. **"New FPB Note"** means the new promissory note to be delivered to FPB, a true and correct copy of which shall be included in the Plan Documents52.

56. **"New FPB Security Agreement"** means the new security agreement to be granted to FPB in connection with the New FPB Note under the Plan, a true and correct copy of which shall be included in the Plan Documents.57. **"Other Priority Claim"** means an Allowed Claim entitled to priority under section 507(a) of the Bankruptcy Code, except for Administrative Claims and Priority Tax Claims.

58.53. **"Partner Interests"** means the General Partner Interest and Limited Partner Interest.

59.54. **"Petition Date"** means July 15, 2010.

60.55. **"Plan"** means the Plan of reorganization, either in its present form or as it may be altered, amended or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

61.56. **"Plan Documents"** means those documents necessary to effectuate the Plan, a list of which shall be filed at or before the Disclosure Statement hearing.

62.57.  **"Prepetition Bank Hotel Note"** means that certain promissory note, dated as of November 25, 2009, in the principal amount of $33,600,000, which is secured by a first priority lien on the Hotel, pursuant to a deed of trust dated November 25, 2009.

63.58.  **"Priority Tax Claim"** means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

64.59.  **"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the amount of such Allowed Claim is the same as the ratio of (x) the amount of consideration distributed on account of all Allowed Claims of the class or group of classes in which the particular Allowed Claim is included to (y) the amount of all Allowed Claims of that class or group of classes.

65.60.  **"Remediation Work"** means those certain repairs and maintenance work to be completed at the Hotel in accordance with the timeline described in an exhibit to be Filed by the Exhibit Filing Date.

66.61.  **"Reorganization Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date and captioned "In re Little Tokyo Partners, L.P.," Case No. 2:10-39113-BR.

67.62.  **"Reorganized Debtor"** means the Debtor, or any successor thereto by merger, consolidation or otherwise, as revested with property of the Estate on and after the Effective Date.

68.63.  **"Scheduled"** means set forth on the Schedules.

69.64.  **"Schedules"** means the schedules of assets and liabilities and list of equity security holders Filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

70.65.  **"Secured Bank Weller Court Claim"** means the Allowed Claim that is secured by the Bank's Weller Court Collateral.

71.66.  **"Secured Claim"** means any Allowed Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claimholder's interest in the Estate's interest in

1  such property or to the extent of the amount subject to setoff, as applicable, as determined under

2  section 506 of the Bankruptcy Code.

3       72.67.  **"Secured Excell Weller Court Claim"** means the Allowed Claim that is

4  secured by Excell's Weller Court Collateral.

5       73.68.  **"Secured Hotel Claim"** means the Allowed Claim that is secured by the

6  Bank's Hotel Collateral.

7       74.69.  **"Secured Tax Claims"** means every Claim of a governmental unit for taxes

8  which, by operation of applicable nonbankruptcy law, is a Secured Claim.

9       70.  **"Settlement Payment"** means the payment of $130,243.78 by 3D

10  Investments IV, LLC to the Reorganized Debtor on the Effective Date, which reflects the voluntary

11  return of all payments received by 3D Investments, LLC during the 12 months immediately prior to

12  the Petition Date.

13       75.71.  **"Unsecured Claim"** means all Claims against the Debtor that are not Secured

14  Claims, Administrative Claims, Priority Tax Claims or Other Priority Claims.

15       76.72.  **"Weller Court"** means that certain mall located at 227 East Second Street,

16  Los Angeles, California, the true and correct legal description of which shall be Filed not later than

17  the Exhibit Filing Date.

18      **B.**  **Interpretation, Rules Of Construction, Computation Of Time.**

19      **1.**  **Defined Terms.**

20      Any term used in the Plan that is not defined in the Plan, but that is used in the

21  Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy

22  Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

23      **2.**  **Rules Of Interpretation.**

24      For purposes of the Plan:

25       a.  whenever from the context it is appropriate, each term, whether stated

26  in the singular or the plural, shall include both the singular and the plural;

27       b.  any payment required under the Plan on a particular date shall be made

28  on such date or as soon thereafter as practicable;

c.    any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, delivered and Filed on or before the Exhibit Filing Date as an exhibit to the Plan;

d.    any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented through and including the Confirmation Date which, after they are Filed, may be amended, modified or supplemented only with the express written consent of the proponents of the Plan;

e.    unless otherwise specified in a particular reference, all references in the Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to the Plan;

f.    the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

g.    captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

h.    all exhibits to the Plan and Plan Documents are incorporated herein, regardless of when those exhibits are Filed;

i.    to the extent any discrepancy exists between the description contained herein or in the Disclosure Statement of a document or agreement that is an exhibit to the Plan or Disclosure Statement and with the provisions of that exhibit, the actual agreement or document shall govern; and

j.    the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

**3.     Time Periods.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**II.**

**DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

The following is a designation of the classes of Claims and interests under the Plan. Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following classes in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim or interest is classified in a particular class only to the extent that the Claim or interest qualifies within the description of that class and is classified in a different class to the extent that any remainder of the Claim or interest qualifies within the description of such different class.  A Claim or interest is in a particular class only to the extent that the Claim or interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released, or otherwise satisfied before the Effective Date.

**A.     Secured Claims.**

**1.     Secured Tax Claims (Class 1).**

Class 1 consists of all Claims that are Secured Tax Claims.

~~2.     **FPB's Secured Claim (Class 2).**~~

~~Class 2 consists of FPB's Secured Claim, which shall be limited in dollar amount to the lesser of the value of FPB's Collateral and FPB's Allowed Claim.  Unless the Bankruptcy Court establishes a different amount at or before the Confirmation Hearing or FPB makes the election under Bankruptcy Code § 1111(b), FPB's Class 2 Claim shall be in the amount of $5,545.00.~~

**2.     ~~3.~~ Excell's Secured Claim (Class ~~3~~2).**

Class ~~3~~2 consists of the Secured Excell Weller Court Claim.

**3.     ~~4.~~ Secured Hotel Claim (Class ~~4~~3).**

Class ~~4~~3 consists of the Secured Hotel Claim, which shall be limited in dollar amount to the value of the Bank's Hotel Collateral unless the Bank makes a timely election under Bankruptcy Code § 1111(b).  Unless the Bankruptcy Court establishes a different amount at or

1    before the Confirmation Hearing or the Bank makes a timely election under Bankruptcy Code §

2    1111(b), the Bank's Class ~~4~~3 Claim shall be in the amount of $8,700,000.

3            **4.**    ~~5.~~ **The Secured Bank Weller Court Claim (Class ~~5~~4).**

4            Class ~~5~~4 consists of the Secured Bank Weller Court Claim.

5    **B.**    **Other Priority Claims (Class ~~6~~5).**

6            Class ~~6~~5 consists of all Other Priority Claims.

7    **C.**    **Unsecured Claims**

8            **1.**    **General Unsecured Claims (Class ~~7~~6).**

9            Class ~~7~~6 consists of all Unsecured Claims not in Class ~~6,~~5, Class ~~8~~7 or Class ~~9,~~8,

10    including the deficiency ~~Claims~~Claim of ~~FPB and~~ the Bank.

11            **2.**    **ADA Claims (Class ~~8~~7).**

12            Class ~~8~~7 consists of all ADA Claims.

13            **3.**    **Convenience Claims (Class ~~9~~8).**

14            Class ~~9~~8 consists of all Convenience Claims.

15    **D.**    **Interests.**

16            **1.**    **Limited Partner's Interests (Class ~~10~~9).**

17            Class ~~10~~9 consists of the Limited Partner Interest.

18            **2.**    **General Partner's Interests (Class ~~11~~10).**

19            Class ~~11~~10 consists of the General Partner Interest.

20    **III.**

21    **TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**

22    **A.**    **Unclassified Claims.**

23            **1.**    **Administrative Claims.**

24            **a.**    **General.**

25            Subject to the bar date provisions herein, the Reorganized Debtor shall pay to each

26    holder of an Allowed Administrative Claim, on account and in full satisfaction of the Allowed

27    Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, unless the

28    holder agrees to other treatment of the Claim.

### b.    Payment Of Statutory Fees.

On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full.

### c.    Bar Date For Administrative Claims.

#### (1)    General Provisions.

Except as provided below in section III.A.1.c.(3) for non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be Filed no later than sixty (60) days after the Effective Date.  Holders of Administrative Claims (including without limitation, professionals requesting compensation or reimbursement of expenses and any governmental units asserting Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property.

#### (2)    Professionals.

All professionals or other entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any professional or any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.

#### (3)    Ordinary Course Liabilities.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of the Debtor in Possession's business prior to the Effective Date (other than professionals or other entities described in subparagraph (2), above, and governmental units that hold Claims for taxes or Claims and/or penalties related to such taxes) shall not be required to File any request for payment of such Claims.  Each Administrative Claim shall be assumed and paid by the Reorganized Debtor under the terms and conditions of the particular transaction giving rise to that Administrative Claim, without any further action by the holder of such Administrative Claim.

543095v910

2.      **Treatment Of Priority Tax Claims.**

In accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor deferred Cash payments over a period not exceeding six (6) years from the date of assessment of such Claim.  Payments shall be made in equal, quarterly installments and each installment shall include simple interest accrued on the unpaid portion of such Claim at the rate of 5% per annum from and after the Effective Date; provided, however, that the Reorganized Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Claim, in full, at any time on or after the Effective Date, without premium or penalty.

**B.      Classified Claims And Interests.**

1.      **Class 1 (Secured Tax Claims).**

Class 1 is impaired under the Plan.  The holder of each Allowed Class 1 Claim will receive:

a.      deferred Cash payments in eight (8) equal, quarterly installments with simple interest on the unpaid portion of such Allowed Class 1 Claim at the rate required by Bankruptcy Code § 511 or such other lower rate as may be agreed by the holder of such Claim; provided, however, that the Reorganized Debtor shall have the right to pay all Allowed Class 1 Claims, or the remaining balance of such Claims, in full, at any time after the Effective Date, without premium or penalty; and

b.      the holder of such Claim shall retain the liens securing such Claims to the extent of the Allowed Class 1 Claim.

2.      **Class 2 (FPB's Secured Claim).**

Class 2 is impaired under the Plan.  On account of its Allowed Class 2 Claim, FPB will receive the New FPB Note and the New FPB Security Agreement on the Effective Date.  The New FPB Note and the New FPB Security Agreement will be Filed as Plan Documents.  The New FPB Note shall be in a principal amount equal to the Class 2 Allowed Claim, as established by the Court at the Confirmation Hearing.  The Class 2 Allowed Claim shall be in the amount of $5,545.00 unless the Bankruptcy Court establishes a different value of the Class 2 collateral.  The New FPB

1    ~~Note shall provide for the accrual of interest at the rate of 5% per annum and shall fully amortize~~

2    ~~over 36 equal monthly payments.  The New FPB Security Agreement will secure the New FPB~~

3    ~~Note.~~

4    ~~If FPB makes the election pursuant to Bankruptcy Code § 1111(b) to be fully secured,~~

5    ~~the face amount of the New FPB Note shall be increased to an amount equal to the entire debt owing~~

6    ~~to FPB as of the Petition Date, the interest rate shall be reduced to 0% per annum, and the New FPB~~

7    ~~Note shall provide for amortization of the New FPB Note on a straight line basis over 60 months~~

8    ~~from the Effective Date.~~

9    **2.**    ~~3.~~ **Class ~~3~~2 (Excell's Secured Claim).**

10    Class ~~3~~2 is impaired under the Plan.  On account of its Allowed Class ~~3~~2 Claim,

11    Excell will receive the New Excell Note and the New Excell Deed of Trust on the Effective Date.

12    The New Excell Note and the New Excell Deed of Trust will be Filed as Plan Documents.  The New

13    Excell Note shall be in a principal amount equal to the balance of the Class ~~3~~2 Allowed Claim,

14    including all amounts accrued pursuant to Bankruptcy Code § 506 as of the Effective Date

15    (estimated to be approximately $312,000).  The New Excell Note shall provide for the accrual of

16    interest at the rate of 5% per annum, with interest only paid on a monthly basis, and the New Excell

17    Note shall become all due and payable on October 1, 2019.  The New Excell Deed of Trust will

18    secure the New Excell Note.

19    **3.**    ~~4.~~ **Class ~~4~~3 (Bank's Secured Hotel Claim).**

20    Class ~~4~~3 is impaired under the Plan.  On account of its Allowed Class ~~4~~3 Claim, the

21    Bank will receive the New Bank Hotel Note, the New Bank Hotel Deed of Trust, and the New Bank

22    Hotel Security Agreement on the Effective Date.  The New Bank Hotel Note, the New Bank Hotel

23    Deed of Trust, and the New Bank Hotel Security Agreement will be Filed as Plan Documents.

24    Unless the Bank makes a timely election under Bankruptcy Code § 1111(b), the New Bank Hotel

25    Note shall be in the amount of $9,000,000, plus the Net Hotel Rents on hand as of the Confirmation

26    Hearing (minus the $150,000 ADA settlement payment), unless the Bank presents evidence of a

27    different value of the Hotel.  If the Bank timely objects to the $9,000,000 valuation and submits

28    evidence of a higher value of the Hotel, the Bankruptcy Court shall establish the amount of the New

1    Bank Hotel Note at the Confirmation Hearing.  The New Bank Hotel Note shall provide for the

2    accrual and payment of interest at the rate of 5% per annum, with interest only to be paid monthly

3    from the Effective Date.  The entire balance shall be all due and payable on September 1, 2019.  The

4    New Bank Hotel Deed of Trust and the New Bank Security Agreement shall secure the New Hotel

5    Note.

6            If the Bank makes a timely election pursuant to Bankruptcy Code § 1111(b) to be

7    fully secured, the face amount of the New Bank Hotel Note shall be increased to an amount equal to

8    the entire debt owing to the Bank on account of the Prepetition Bank Hotel Note as of the Petition

9    Date, the interest rate shall be reduced to 0% per annum, and the maturity date of the New Bank

10    Hotel Note shall be thirty (30) years after the Effective Date.  The New Bank Hotel Note shall

11    require monthly payments of $45,000 for the first 5 years and $60,000 for the next 10 years.  The

12    remaining principal balance as of the fifteen-year anniversary of the Effective Date shall be fully

13    amortized over the next fifteen years.

14            These payments will total the Bank's Secured Hotel Claim and will have a present

15    value greater than the value of the Bank's Hotel Collateral as of the Confirmation Date.

16          **4.**    ~~5.~~ **Class 5̶4 (Bank's Secured Weller Court Claim).**

17            Class 5̶4 is unimpaired under the Plan.  On the Effective Date, the Reorganized

18    Debtor shall reinstate the Bank's Weller Note and cure all defaults under the Bank's Weller Note, by

19    paying all accrued, unpaid amounts due thereunder at the non-default rate of interest.  In light of the

20    extinguishment of the Prepetition Bank Hotel Note under this Plan, all references in the Bank's

21    Weller Note to the Prepetition Bank Hotel Note and related documents shall be deemed to refer to

22    the New Bank Hotel Note, the New Bank Hotel Deed of Trust, and the New Bank Hotel Security

23    Agreement.

24          **5.**    ~~6.~~ **Class 6̶5 (Other Priority Claims).**

25            Class 6̶5 is impaired under the Plan.  Each holder of an Allowed Class 6̶5 Claim will

26    be paid in Cash, in full, with interest at the Judgment Rate, not later than 30 days after the later of (i)

27    the Effective Date or (ii) the date its Claim becomes an Allowed Claim.

28

543095v9̶10            

**6.**   7. **Class 76 (General Unsecured Claims).**

Class 76 is impaired under the Plan.  Each holder of an Allowed Class 76 Claim will be paid in Cash an amount equal to 4% of its Allowed Class 76 Claim, which shall be paid in eight installments as follows: .50% of its Allowed Class 76 Claim sixty days after the Effective Date and .50% of its Allowed Class 76 Claim on each of the following dates June 30, 2011, September 30, 2011, December 31, 2011, March 31, 2012, June 30, 2012, September 30, 2012, and December 31, 2012.

**7.**   8. **Class 87 (ADA Claims).**

Class 87 is impaired under the Plan.  On account of the Allowed Class 87 Claims, the Reorganized Debtor shall perform the Remediation Work and shall distribute an aggregate amount of $150,000 in Cash to all holders of Allowed Class 87 Claims pursuant to the ADA Settlement within 30 days after the Effective Date.

**8.**   9. **Class 98 (Convenience Claims).**

Class 98 is impaired under the Plan.  Each holder of an Allowed Class 98 Claim will be paid in Cash an amount equal to 50%2/3rds of its Allowed Class 98 Claim, which shall be paid as soon as practicable after the later of (a) the Effective Date or (b) the date its Claim becomes an Allowed Class 98 Claim.

**9.**   10. **Class 109 (Limited Partner's Interests).**

The holder of the Class 109 Limited Partner's Interest shall receive no distribution under the Plan on account of that interest and, therefore, shall be deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g).

**10.**   11. **Class 1110 (General Partner's Interests).**

The holder of Class 1110 General Partner's Interest shall receive no distribution under the Plan on account of that interest and, therefore, shall be deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g).

1

## IV.

2

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3

### A.    Assumption.

4        Each executory contract or unexpired lease of the Debtor that has not expired by its

5    own terms before the Effective Date or previously been rejected by the Debtor in Possession and is

6    listed on the "Schedule of Executory Contracts and Unexpired Leases to be Assumed," Filed as

7    Exhibit IV.A hereto (which Exhibit shall be filed by the Exhibit Filing Date) is assumed, as of the

8    Effective Date, pursuant to Bankruptcy Code section 365.  All leases under which the Debtor leases

9    any portion of the Hotel or Weller Court shall be assumed and the Cure Amount with respect thereto

10   is $0.  A list of the security deposits of the tenants will be filed as a Plan Document.

11       Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered

12   in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the

13   Debtor, the Reorganized Debtor, or any other person or entity that is not currently liable on such

14   obligation, with respect to any executory contract or unexpired lease.  The Debtor reserves the right

15   at any time before Confirmation to amend Exhibit IV.A either to: (a) delete any executory contract

16   or unexpired lease listed on Exhibit IV.A and provide for its rejection under section IV.C below, or

17   (b) add any executory contract or unexpired lease to Exhibit IV.A, thus providing for its assumption

18   under this section IV.A.  Debtor shall provide notice of any amendment of Exhibit IV.A to the

19   parties to the affected executory contract or unexpired lease and the Office of the United States

20   Trustee.

21   ### B.    Cure Payments.

22       Any monetary defaults under each executory contract and unexpired lease assumed

23   under the Plan shall be satisfied under section 365(b)(1) of the Bankruptcy Code either by payment

24   of the cure amount (if any) in Cash on the Effective Date, or on such other terms as agreed to by

25   Reorganized Debtor and the non-debtor party to the executory contract or unexpired lease.  Unless

26   the non-debtor party to any executory contract or unexpired lease to be assumed Files and serves on

27   the Debtor and its counsel an objection to the "cure amount" specified on Exhibit IV.A (which

28

Exhibit shall be Filed on the Exhibit Filing Date) on or before the last date established by the

Bankruptcy Court to File and serve objections to confirmation of the Plan, such "cure amount" shall

be forever binding on such non-debtor party to said executory contract or unexpired lease.  In the

event of a timely Filed and served objection regarding (1) the amount of any cure payments, (2) the

ability of Reorganized Debtor to provide adequate assurance of future performance under the

contract or lease to be assumed, or (3) any other matter pertaining to assumption, any cure payment

required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final

Order resolving the dispute and approving assumption.

> ### C.    Rejection.

Effective immediately before the Effective Date, each executory contract or

unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or

previously been assumed by the Debtor in Possession, that is either:  (1) listed on the "Schedule of

Executory Contracts and Unexpired Leases to be Rejected," Filed as Exhibit IV.C to the Plan (which

Exhibit shall be filed by the Exhibit Filing Date), or (2) is not assumed pursuant to section IV.A.

above, is rejected, as of the Effective Date, pursuant to Bankruptcy Code section 365, to the extent,

if any, that they constitute executory contracts or unexpired leases, and without conceding that they

constitute executory contracts or unexpired leases or that the Debtor has any liability under them.

Listing a contract or lease on Exhibit IV.C is not an admission by the Debtor or Reorganized Debtor

that such contract or lease is an executory contract or unexpired lease or that the Debtor or

Reorganized Debtor has any liability thereunder.  The Debtor reserves the right at any time before

Confirmation to amend Exhibit IV.C to delete any executory contract or unexpired lease listed on

Exhibit IV.C and provide for its assumption under section IV.A above.  Debtor shall provide notice

of any amendment of Exhibit IV.C to the parties to the affected executory contract or unexpired

lease and the Office of the United States Trustee.

The Confirmation Order shall constitute an Order of the Bankruptcy Court approving

all such rejections as of the Effective Date.  Any Claim for damages arising from the rejection under

the Plan of an executory contract or unexpired lease must be Filed within sixty (60) days after the

1  Effective Date or be forever barred and unenforceable against the Debtor, the Reorganized Debtor

2  and its properties and barred from receiving any distribution under the Plan.

3  **V.**

4  **MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

5  **A.    Investment In The Hotel.**

6  The General Partner and the Limited Partner shall contribute to the Reorganized

7  Debtor on the Effective Date the New Capital Contribution, which shall be sufficient to fund the

8  Remediation Work and deferred maintenance at the Hotel.  The Debtor's projections show the need

9  for approximately $10,000,000 of deferred maintenance over the first 4 years after the Effective

10  Date, which shall be paid for through the use of the New Capital Contribution and the cash flow

11  from the Hotel and Weller Court.  In connection with the New Bank Hotel Note, the Bank shall be

12  granted a lien on the New Capital Contribution; provided, however, that so long as the Reorganized

13  Debtor has not defaulted under the New Bank Hotel Note the Reorganized Debtor shall be allowed

14  to use the New Capital Contribution to fund the Remediation Work and other deferred maintenance

15  at the Hotel.  Neither the New Capital Contribution, the Settlement Payment, nor the Net Hotel

16  Rents shall be distributed to the General Partner or the Limited Partner at any time.

17  **B.    Revesting Of Assets And Operations Of Property.**

18  As of the Effective Date, all property of the Estate (including each Debtor in

19  Possession bank account) shall revest in the Reorganized Debtor, free and clear of all Claims, liens,

20  encumbrances and other interests of creditors and holders of interests, except as otherwise set forth

21  herein.  From and after the Effective Date, the Reorganized Debtor may operate its business and use,

22  acquire, and dispose of property and settle and compromise Claims without supervision by the

23  Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other

24  than those restrictions expressly imposed by the Plan and the Confirmation Order.  Reorganized

25  Debtor shall have authority to pay any Post-Effective Date Claims in the ordinary course of business.

26  **C.    Preservation Of Rights Of Action and Defenses.**

27  Except to the extent such rights, Claims, causes of action, defenses, and

28  counterclaims are expressly and specifically released in connection with the Plan or in any

settlement agreement approved during the Reorganization Case, (i) any and all rights, Claims, causes of action, defenses, and counterclaims accruing to the Debtor or its estate (including, without limitation, Avoiding Power Causes of Action but excluding any causes of action under Bankruptcy Code § 547) shall remain assets of and vest in the Reorganized Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, causes of action, defenses, and counterclaims have been Scheduled or otherwise listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtor nor the Reorganized Debtor waives, relinquishes, or abandons (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim that constitutes property of the Debtor's estate: (a) whether or not such right, Claim, cause of action, defense, or counterclaim has been listed or referred to in the Schedules, the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such right, Claim, cause of action, defense, or counterclaim filed a proof of Claim in the Reorganization Case, filed a notice of appearance or any other pleading or notice in the Reorganization Case, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action, defense, or counterclaim, in the Debtor's Schedules, the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtor's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that any of the Debtor or Reorganized Debtor has or may have as of the Confirmation Date.  The Reorganized Debtor may commence, prosecute, defend against, recover on account of, and settle all rights, Claims, causes of action, defenses, and counterclaims in their sole discretion in accordance with what is in the best interests, and for the

benefit, of the Reorganized Debtor. Notwithstanding the foregoing reservation of rights, the Debtor shall not currently pursue any action arising under Bankruptcy Code § 547.

**D.    ADA Settlement.**

The Plan will implement the ADA Settlement.  Prior to the Petition Date, a lawsuit was brought by two disabled individuals against the Debtor and certain other defendants alleging that the defendants failed to comply with certain aspects of the Americans with Disabilities Act at the Hotel.  Since filing the Reorganization Case, the Debtor has engaged in extensive discussions to resolve the ADA Litigation.  Under the terms of the ADA Settlement that will resolve the ADA Litigation on a final basis, the Debtor shall complete the Remediation Work and shall pay $150,000, which shall be distributed to holders of the ADA Claims as set forth in the ADA Settlement.

**E.    Powers Of The Reorganized Debtor.**

The Reorganized Debtor shall have all the powers and duties set forth in the Plan, and the Reorganized Debtor's organizational documents, as may be amended, and under applicable law. The Reorganized Debtor shall become, on the Effective Date of the Plan, the exclusive representative of the Estate.  Subject to the provisions of the Plan, but notwithstanding whether they are set forth in the Disclosure Statement or the Plan, on and after the Effective Date, the Estate shall retain and the Reorganized Debtor may enforce any and all rights, Claims, causes of action, powers, privileges, licenses, and franchises of the Debtor or the Estate, including all rights regarding tax determinations under Bankruptcy Code section 505, all causes of action arising under the Plan and the Bankruptcy Code.

The Reorganized Debtor shall have the authority to pay any post-Effective Date Claims in the ordinary course of business.

**F.    Discharge Of Debtor, Injunction And Other Releases.**

**1.    Discharge Of Debtor.**

On and after the Effective Date, the rights afforded in the Plan and the treatment of all Claims and interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, or any of

1   its assets or properties.  Except as otherwise provided in the Plan or the Confirmation Order on and

2   after the Effective Date:  (a) the Debtor shall be deemed discharged and released to the fullest extent

3   permitted by section 1141 of the Bankruptcy Code from all Claims and interests, including Claims

4   and interests that arose before the Effective Date and all debts of the kind specified in sections

5   502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (i) a proof of Claim or proof of

6   interest based on such debt or interest is Filed or deemed Filed pursuant to section 501 of the

7   Bankruptcy Code, (ii) a Claim or interest based on such debt or interest is allowed pursuant to

8   section 502 of the Bankruptcy Code, or (iii) the holder of a Claim or interest based on such debt or

9   interest has accepted the Plan; and (b) all persons shall be precluded from asserting against

10  Reorganized Debtor, its successors, the General Partner, the Limited Partner or the Debtor's assets or

11  properties any other or further Claims or interests based upon any act or omission, transaction, or

12  other activity of any kind or nature that occurred before the Effective Date.  Except as otherwise

13  provided in the Plan or the Confirmation Order, on and after the Effective Date, the Confirmation

14  Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtor,

15  as provided in sections 524 and 1141 of the Bankruptcy Code.

16          **2.    Injunction.**

17          In addition to the injunction provided under section 524(a) of the Bankruptcy Code,

18  on and after the Effective Date, all persons who have held, currently hold or may hold a debt, Claim

19  or interest discharged under the Plan are permanently enjoined from taking any of the following

20  actions on account of any such discharged debt, Claim or interest:  (a) commencing or continuing in

21  any manner any action or other proceeding against the Debtor, Reorganized Debtor, the partners of

22  the Reorganized Debtor or property; (b) enforcing, attaching, collecting or recovering in any manner

23  any judgment, award, decree or order against the Debtor, Reorganized Debtor, its successors or its

24  respective property; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor,

25  Reorganized Debtor, its successors or its respective property; (d) asserting any setoff, right of

26  subrogation or recoupment of any kind against any obligation due to the Debtor, Reorganized

27  Debtor, its successor or its respective property; and (e) commencing or continuing any action, in any

28  manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or

the Confirmation Order.  Any person injured by any willful violation of such injunction may recover

actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover

punitive damages, from the willful violator.

The Plan does not discharge any party other than the Debtor from any liability such

non-debtor party has or may have under or pursuant to any guarantee or alleged guarantee of any

obligation of the Debtor. The Bank contends that certain parties guaranteed certain obligations to the

Bank.  The alleged guarantors contend that they have previously been released from any liability

they might otherwise have had to the Bank.  This dispute is the subject of pending litigation.  The

Plan shall not alter the rights, claims or defenses of the Bank or the alleged guarantors in that

litigation.

**G.    Limitation Of Liability.**

On and after the Effective Date, none of the Debtor, the Debtor in Possession, nor any

of its partners, employees, officers, directors, agents, or representatives, nor any professional persons

employed by any of them, shall have or incur any liability to any person or entity for any authorized

act taken or authorized omission made in good faith in connection with or related to the

Reorganization Case or the Estate, including objections to or estimations of Claims, disposition of

assets, or formulating, soliciting acceptances to, or confirming the Plan, the Disclosure Statement, or

any contract, instrument, release, or other agreement or document created in connection with the

Plan.

**H.    Execution Of Documents And Partnership Action.**

The Debtor and Debtor in Possession, and the Reorganized Debtor, without any

partner action whatsoever, shall execute such documents and take such other action as is necessary

to effectuate the transactions provided for in the Plan.

**I.    Retention Of Jurisdiction.**

After Confirmation of the Plan and occurrence of the Effective Date, the Bankruptcy

Court will retain such jurisdiction as is legally permissible, including for the following purposes:

1.    To resolve any and all disputes regarding the operation and interpretation of

the Plan or the Confirmation Order;

2.      To determine the allowability, classification, or priority of any Claim or interest, based on any objection by the Debtor or by other parties in interest with standing to bring such objection or proceeding;

3.      To determine the extent, validity, and priority of any lien asserted against property of the Reorganized Debtor or property of the Estate;

4.      To construe and to take any action to (a) enforce and execute the Plan, the Confirmation Order, and any other order of the Bankruptcy Court; (b) issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order and all matters referred to in the Plan and the Confirmation Order; and (c) determine all matters that may be pending before the Bankruptcy Court in this Reorganization Case on or before the Effective Date with respect to any person or entity;

5.      To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for periods on or before the Effective Date;

6.      To determine any other request for payment of administrative expenses;

7.      To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan or the Confirmation Order;

8.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

9.      To adjudicate all adversary proceedings and contested matters initiated by the Reorganized Debtor to pursue retained causes of action;

10.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters commenced during the Reorganization Case whether before, on, or after the Effective Date;

11.      To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.     To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intents and purposes;

13.     To issue injunctions or take such other actions or issue such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order or their implementation by any person or entity; and

14.     To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the full extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**J.     Successors And Assigns.**

The rights, benefits and obligations of any entity named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such entity.

**K.     Amendment, Revocation, Modification And Severability.**

1.     The Plan may be amended or modified before the Effective Date by the Debtor to the extent provided by section 1127 of the Bankruptcy Code.

2.     The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

3.     The Debtor reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the Bankruptcy Code.  To the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code without the need to resolicit acceptances, the Debtor reserves the right to sever any provisions of the Plan that the Bankruptcy Court finds objectionable.

**L.     Exhibits.**

Any Exhibits to the Plan will be Filed not later than the Exhibit Filing Date.  The Exhibits will not be served with the Plan, but rather copies of all such Exhibits will be available upon written request to the Debtor's counsel.

**M.     No Admission.**

Except as specifically provided in the Plan, nothing contained in the Plan or the Disclosure Statement shall be deemed or construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth in the Plan or the Disclosure Statement, including the amount or allowability of any Claim, or the value of any property of the Estate.

**N.     1146(c) Exemption.**

In accordance with Bankruptcy Code section 1146(c), the making delivery, filing or recording of any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded or unrecorded) and/or the various instruments and documents of transfer as specified in or contemplated by the Plan (collectively, "Instruments of Transfer") and/or the exhibits thereto are hereby exempt from taxation under any law imposing a recording tax, stamp tax, transfer tax, or any similar tax.  The appropriate state or local government officers are hereby directed to accept for filing or recording all Instruments of Transfer or other documents of transfer to be filed and recorded in accordance with the Plan and the exhibits thereto, without payment of any such tax or government assessment, and without the presentation of any affidavits, instruments, or returns otherwise required for recording other than the Confirmation Order.  The Bankruptcy Court retains jurisdiction to enforce the foregoing direction by contempt proceedings or otherwise.

**O.     General Authority.**

The Reorganized Debtor shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in the Plan.

**P.     Binding Effect.**

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, holders of Claims, holders of interests, and their respective successors and assigns.

**Q.     Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Federal Rules of Bankruptcy Procedure), or by an express choice of law provision in any agreement, contract, document, or instrument provided for or executed in

connection with the Plan, the rights and obligations arising under the Plan and any agreement, contract, document, or instrument provided for or executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

**R.    Payment Dates.**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

**S.    Headings.**

The headings used in the Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affects the construction of the provisions of the Plan.

**T.    No Waiver.**

The failure of the Debtor or any other person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtor's or the Reorganized Debtor's or the right to object to or examine such Claim, in whole or in part.

**VI.**

**CONDITIONS TO CONFIRMATION EFFECTIVE DATE**

**A.    Condition To Confirmation.**

The only condition precedent to Confirmation of the Plan is that the Bankruptcy Court shall have entered the Confirmation Order in a form acceptable to the Debtor and the General Partner and the Limited Partner including establishment of the amounts of the ~~New FPB Note and~~ New Bank Hotel Note in the ~~amounts~~amount set forth in the Plan or, if the Bankruptcy Court sets higher face amounts for either of such notes, such higher amounts are acceptable to the General Partner and the Limited Partner.

# VII.

## DISTRIBUTION OF CONSIDERATION

A.     **Objections To Claims.**

    1.     **Deadlines.**

Objections to Claims, including Administrative Claims, not including applications of professionals for compensation and reimbursement of expenses, shall be Filed and served upon the holders of such Claims no later than the last to occur of:  (a) ninety (90) days after the Effective Date, or (b) thirty (30) days after a proof of Claim or request for payment of such Claim is Filed and delivered to the Debtor or Reorganized Debtor, unless the periods set forth in (a) and (b) hereof are extended by the Bankruptcy Court.  An objection to the allowance of a Claim of a professional for compensation shall be Filed and served in accordance with section III.A.1.c.(2) of the Plan.

    2.     **Authority.**

The Reorganized Debtor shall be responsible for filing and resolving objections to Claims in all classes.  The Reorganized Debtor may settle and compromise as appropriate, without further order of the Bankruptcy Court any and all Claims, rights of action, causes of action, counterclaims and defenses held by the Estate.  The Estate may, but shall not be required to, set off or recoup against any Claim and the distributions to made pursuant to the Plan in respect of such Claim, any counterclaims, setoffs, or recoupments of any nature whatsoever that the Estate may have against the holder of the Claim, but neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by Estate or Reorganized Debtor of any such Claim, cause of action, setoff or recoupment.

B.     **Disputed Claims.**

No distributions and no payments will be made with respect to all or any portion of a Disputed Claim until such Claim becomes an Allowed Claim.

C.     **Distributions.**

    1.     **Disputed Claims.**

Except as may otherwise be agreed with respect to any Disputed Claim, no payment or distribution will be made with respect to all or a portion of any Disputed Claim until such Claim

is an Allowed Claim.  Payments and distributions to each holder of a Disputed Claim (to the extent that it ultimately becomes an Allowed Claim) will be made in accordance with the Plan.

### 2.    Distribution Date.

Notwithstanding anything to the contrary contained herein, no distributions will be made under the Plan on account of any Claim until the Distribution Date, which, with regard to any individual Claim, shall be the latest of the following:  (a) as soon as practicable after the Effective Date, but in no event more than thirty (30) days after the Effective Date; (b) as soon as practicable after the day upon which such Claim becomes an Allowed Claim, but in no event more than thirty (30) days after the entry of a Final Order allowing such Claim; or (c) the date upon which the Claim became due and payable under applicable nonbankruptcy law.

### 3.    Unclaimed Distributions.

The Reorganized Debtor will hold until the second anniversary of the Effective Date any unclaimed distributions to be made to the holders of Allowed Claims under the Plan.  Any unclaimed Cash will be deposited by the Reorganized Debtor in a segregated, interest-bearing account for the sole benefit of the holders of the Allowed Claims who have failed to Claim such property.  On the second anniversary of the Effective Date, any unclaimed distributions to be made to holders of Allowed Claims will become the property of the Reorganized Debtor.

### 4.    No *De Minimis* Distributions.

Notwithstanding anything to the contrary in this Plan, no distribution of less than $5.00 will be made to any holder of an Allowed Claim on account thereof.  No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section.

### D.    No Disbursing Agent.

Reorganized Debtor shall act as disbursing agent under the Plan and make all distributions required under the Plan.  Reorganized Debtor may employ or contract with other entities to assist in or perform the distribution of property to be distributed.

### E.    Manner Of Payment Under The Plan.

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by Reorganized Debtor or by wire transfer from a domestic bank, at Reorganized Debtor's option.

### F.    Delivery Of Distributions.

Except as provided above in section VII.C.3 for holders of undeliverable distributions, distributions to holders of Allowed Claims shall be distributed by mail as follows:  (1) at the addresses set forth on the respective proofs of Claim by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related proof of Claim; or (3) at the address reflected on the Schedules if no proof of Claim or proof of interest is Filed and the Disbursing Agent has not received a written notice of a change of address.

### G.    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Reorganized Debtor, in making distributions under the Plan, shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

### H.    Old Instruments And Securities; Liens.

#### 1.    Rights Of Persons Holding Old Instruments And Securities.

Except as otherwise provided herein, as of the Effective Date, and whether or not surrendered by the holder thereof, all existing instruments and securities evidencing any Claims or interests shall be deemed automatically cancelled and deemed void and of no further force or effect, without any further action on the part of any person, and any Claims or interests under or evidenced by any instruments or securities shall be deemed discharged.

#### 2.    Cancellation Of Liens.

Except as otherwise provided in the Plan, any lien securing any Secured Claim, shall be deemed released and discharged, and the person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor (including, without limitation,

543095v910

-31-

any cash collateral) held by such person and to take such actions as may be requested by the

Reorganized Debtor to evidence the release of such lien, including, without limitation, the execution,

delivery and filing or recording of such releases as may be requested by the Reorganized Debtor at

the sole expense of the Reorganized Debtor.

**I.    Interest.**

Nothing in this Article shall affect any right of the holder of any Claim to include

interest accruing prior to the Petition Date, but no Claim shall be allowed for interest for periods

after the Petition Date, or after the Confirmation Date, except as expressly provided in the Plan.

**VIII.**

**CONFIRMATION REQUEST**

The Debtor hereby requests confirmation of the Plan under section 1129(b) of the

Bankruptcy Code with respect to any impaired class that does not accept the Plan or is deemed to

reject the Plan.


Dated: ~~August 31,~~ October 5, 2010          LITTLE TOKYO PARTNERS, L.P.


By:    _____


Submitted by:


*/s/ Neeta Menon*
_____
JEFFREY C. KRAUSE, and
NEETA MENON, Members of
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
Reorganization Counsel for the Debtor

# **TABLE OF CONTENTS**

**Page(s)**

I. DEFINITIONS AND RULES OF CONSTRUCTION ................................................. 1

    A.    Definitions. ........................................................................... 1

    B.    Interpretation, Rules Of Construction, Computation Of Time. ................... 9

        1.    Defined Terms. ..................................................................... 9

        2.    Rules Of Interpretation. ............................................................ 9

        3.    Time Periods. ...................................................................... 10

II. DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ...................................... ~~11~~10

    A.    Secured Claims. ...................................................................... 11

        1.    Secured Tax Claims (Class 1). ...................................................... 11

        2.    FPB's Secured Claim (Class 2) ............... ~~11~~**Error! Bookmark not defined.**

        3.    Excell's Secured Claim (Class 3) ..................................................... 11

        4.    Secured Hotel Claim (Class 4). ...................................................... 11

        5.    The Secured Bank Weller Court Claim (Class 5). .................................... ~~12~~11

    B.    Other Priority Claims (Class 6). ...................................................... ~~12~~11

    C.    Unsecured Claims. ................................................................... ~~12~~11

        1.    General Unsecured Claims (Class 7). ................................................ ~~12~~11

        2.    ADA Claims (Class 8). ............................................................. ~~12~~11

        3.    Convenience Claims (Class 9). ...................................................... ~~12~~11

    D.    Interests. ............................................................................ ~~12~~11

        1.    Limited Partner's Interests (Class 10). ............................................... ~~12~~11

        2.    General Partner's Interests (Class 11). ............................................... 12

III. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ..................................... 12

    A.    Unclassified Claims. ................................................................. 12

        1.    Administrative Claims. .............................................................. 12

            a.    General. ...................................................................... 12

            b.    Payment Of Statutory Fees. ................................................. ~~13~~12

1              c.      Bar Date For Administrative Claims. ........................................ ~~13~~12

2        2.      Treatment Of Priority Tax Claims. ........................................................ ~~14~~13

3    B.      Classified Claims And Interests. ................................................................. ~~14~~13

4        1.      Class 1 (Secured Tax Claims). ................................................................ ~~14~~13

5        2.      Class 2 (FPB's Secured Claim)................ ~~14~~**Error! Bookmark not defined.**

6        3.      Class 3 (Excell's Secured Claim)............................................................. ~~15~~14

7        4.      Class 4 (Bank's Secured Hotel Claim). .................................................... ~~15~~14

8        5.      Class 5 (Bank's Secured Weller Court Claim). ....................................... ~~16~~15

9        6.      Class 6 (Other Priority Claims)............................................................... ~~16~~15

10       7.      Class 7 (General Unsecured Claims). ...................................................... ~~17~~15

11       8.      Class 8 (ADA Claims). ........................................................................... ~~17~~16

12       9.      Class 9 (Convenience Claims). ............................................................... ~~17~~16

13       10.     Class 10 (Limited Partner's Interests). ................................................... ~~17~~16

14       11.     Class 11 (General Partner's Interests). ................................................... ~~17~~16

15   IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ ~~18~~16

16   A.      Assumption............................................................................................... ~~18~~16

17   B.      Cure Payments........................................................................................... ~~18~~17

18   C.      Rejection.................................................................................................... ~~19~~18

19   V. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ...................... ~~20~~18

20   A.      Investment In The Hotel............................................................................. ~~20~~18

21   B.      Revesting Of Assets And Operations Of Property. .................................... ~~20~~19

22   C.      Preservation Of Rights Of Action and Defenses........................................ ~~20~~19

23   D.      ADA Settlement. ........................................................................................ ~~22~~20

24   E.      Powers Of The Reorganized Debtor. .......................................................... ~~22~~21

25   F.      Discharge Of Debtor, Injunction And Other Releases. ............................... ~~22~~21

26       1.      Discharge Of Debtor. ............................................................................. ~~22~~21

27       2.      Injunction. .............................................................................................. ~~23~~22

28   G.      Limitation Of Liability. ............................................................................. ~~24~~23

1  H.  Execution Of Documents And Partnership Action. ............................................... 2423

2  I.  Retention Of Jurisdiction............................................................................. 2423

3  J.  Successors And Assigns. ............................................................................... 2625

4  K.  Amendment, Revocation, Modification And Severability. ................................ 2625

5  L.  Exhibits. ....................................................................................................... 2625

6  M.  No Admission. ............................................................................................... 2725

7  N.  1146(c) Exemption. ....................................................................................... 2725

8  O.  General Authority........................................................................................ 2726

9  P.  Binding Effect. ............................................................................................. 2726

10  Q.  Governing Law. ............................................................................................. 2726

11  R.  Payment Dates. ............................................................................................. 2826

12  S.  Headings. ...................................................................................................... 2827

13  T.  No Waiver. ................................................................................................... 2827

14  VI. CONDITIONS TO CONFIRMATION EFFECTIVE DATE .............................................. 2827

15  A.  Condition To Confirmation. ......................................................................... 2827

16  VII. DISTRIBUTION OF CONSIDERATION ....................................................................... 2927

17  A.  Objections To Claims. ................................................................................... 2927

18  1.  Deadlines...................................................................................... 2927

19  2.  Authority. ..................................................................................... 2928

20  B.  Disputed Claims. ........................................................................................... 2928

21  C.  Distributions. ................................................................................................ 2928

22  1.  Disputed Claims. ........................................................................... 2928

23  2.  Distribution Date........................................................................... 3028

24  3.  Unclaimed Distributions. ............................................................... 3029

25  4.  No *De Minimis* Distributions. ....................................................... 3029

26  D.  No Disbursing Agent....................................................................................... 3029

27  E.  Manner Of Payment Under The Plan. ........................................................... 3129

28  F.  Delivery Of Distributions. ............................................................................. 3129

G.      Compliance With Tax Requirements. ............................................... 3130

H.      Old Instruments And Securities; Liens. ......................................... 3130

        1.      Rights Of Persons Holding Old Instruments And Securities. ............... 3130

        2.      Cancellation Of Liens. ..................................................... 3130

I.      Interest. ........................................................................... 3230

VIII. CONFIRMATION REQUEST ..................................................... 3231

Document comparison done by Workshare DeltaView on Tuesday, October 05, 2010
9:10:23 AM

| Input: | |
|---|---|
| Document 1 | interwovenSite://STGINT/iManage/543095/9 |
| Document 2 | interwovenSite://STGINT/iManage/543095/10 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 208 |
| Deletions | 204 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 412 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1901 Avenue of the Stars, 12th Floor, Los Angeles, CA  90067

A true and correct copy of the foregoing document described as **NOTICE OF FILING OF "DEBTOR'S AMENDED PLAN OF REORGANIZATION (OCTOBER 5, 2010)" AND NOTICE OF NON-OPPOSITION TO BANK'S REQUEST FOR A CONTINUANCE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 5, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

> Dan E Chambers on behalf of Interested Party Courtesy NEF
> dan.chambers@troutmansanders.com
>
> Russell Clementson on behalf of U.S. Trustee United States Trustee (LA)
> russell.clementson@usdoj.gov
>
> Peter Csato on behalf of Interested Party Courtesy NEF
> efiling@frandzel.com, banderson@frandzel.com;pcsato@frandzel.com
>
> Michael G Fletcher on behalf of Interested Party Courtesy NEF
> mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
>
> Bernard R Given on behalf of Interested Party Courtesy NEF
> bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
>
> Mette H Kurth on behalf of Creditor Committee Official Committee of Unsecured Creditors
> kurth.mette@arentfox.com
>
> Mary D Lane on behalf of Creditor Crestline Hotels & Resorts, Inc.
> mlane@pszjlaw.com
>
> Samuel R Maizel on behalf of Debtor Little Tokyo Partners, L.P.
> smaizel@pszjlaw.com, smaizel@pszjlaw.com
>
> Neeta Menon on behalf of Debtor Little Tokyo Partners, L.P.
> nmenon@stutman.com
>
> Kenneth N Russak on behalf of Counter-Defendant First Citizens Bank & Trust Company
> krussak@frandzel.com, efiling@frandzel.com;ltokubo@frandzel.com
>
> Meghan C Sherrill on behalf of Counter-Claimant Little Tokyo Partners, L.P.
> meghan.sherrill@troutmansanders.com
>
> United States Trustee (LA)
> ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
544503v1

**F 9013-3.1.PROOF.SERVICE**

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **October 5, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*See Exhibit A, which is attached hereto and incorporated herein by reference*

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 5, 2010,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**

Hon. Barry Russell
U.S. Bankruptcy Court
255 E Temple St Ste 1660
Los Angeles, CA  90012-3543

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 5, 2010 | Danielle S. Trujillo | *Danielle S. Trujillo* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
544503v1

**F 9013-3.1.PROOF.SERVICE**

## Exhibit A

## (SERVED BY U.S. MAIL)

Little Tokyo Partners (6325)
General Service List
Doc #542310 – Rev. 08/26/10

Little Tokyo Partners LP
1880 Century Park East Suite 810
Los Angeles, CA 90067

Office of the US Trustee
725 S Figueroa St
Suite 2600
Los Angeles, CA 90017

Frandzel Robins Bloom Csato
Peter Csato, Esq
6500 Wilshire Blvd 17th Fl
Los Angeles, CA 90048-4920

First Citizens Bank and Trust
1801 Century Park East Suite 800
Los Angeles, CA 90067

Excell Investment Group, LLC
23586 Calabasas Rd. #100
Calabasas, CA 91302

Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114

Counsel for the Official Committee of
Unsecured Creditors
Mette Kurth, Esq. / M. Douglas Flahaut, Esq.
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013

Able Engineering Services
Contact: Jim Johnson, VP
868 Folsom Street
San Francisco, CA 94107

Waxie Sanitary Supply
Attn:  John Olea, Corp. Credit Mngr.
PO Box 81006
San Diego, CA 92138

Room Service Amenities
Attn:  Charmaine Gardner, Accounting
Administrator
1010 Campus Drive West
Morganville, NJ 07751

LA DWP
PO Box 30808
Los Angeles, CA 90030

Crestline Hotels & Resorts
Contact: Elizabeth Lieberman, Esq.
3950 University Drive Suite 301
Fairfax, VA 22030

State of California
Board of Equalization
PO Box 942870
Sacramento, CA 94279

Bank of America N.A.
Attn: Jerri Shephard
1185 Avenue of the Americas, 16th Floor
New York, NY 10035

Wells Fargo Bank, N.A.
Attn: Michael Barry
433 North Camden Drive
Beverly Hills, CA 90210

Requests for Notice:

Samuel R. Maizel, Esq.
Mary D. Lane, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Fl.
Los Angeles, CA  90067

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
544503v1

**F 9013-3.1.PROOF.SERVICE**