1  Michael Gerard Fletcher (State Bar No. 070849)
   mfletcher@frandzel.com
2  Bernard R. Given II (State Bar No. 134718)
   bgiven@frandzel.com
3  Joy E. Mason (State Bar No. 215056)
   jmason@frandzel.com
4  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard
5  Seventeenth Floor
   Los Angeles, California 90048-4920
6  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
7
   Attorneys for First-Citizens Bank & Trust
8  Company

9

10                **UNITED STATES BANKRUPTCY COURT**

11                **CENTRAL DISTRICT OF CALIFORNIA**

12                   **LOS ANGELES DIVISION**

13

14
   In re                          | Bk. Case No. 2:10-bk-39113-BR
15
   LITTLE TOKYO PARTNERS, L.P., a   | Chapter 11
16  Delaware limited partnership,

17         Debtor.                  **FIRST CITIZEN BANK & TRUST
18                                  COMPANY'S PLAN OF LIQUIDATION
                                    (DATED: DECEMBER 8, 2010)**
19

20                                  **Disclosure Statement Hearing:**
21                                  DATE: _____, 2010
                                    TIME: _____ A.M./P.M.
22                                  CTRM.: 1668
                                            255 E. Temple Street
23                                          Los Angeles, CA 90012

24                                  **Confirmation Hearing:**
                                    DATE:  TBD
25                                  TIME: _____ A.M./P.M.
                                    CTRM.: 1668
26                                          255 E. Temple Street
                                            Los Angeles, CA 90012
27

28

# Table of Contents

INTRODUCTION...................................................................................2
ARTICLE 1 DEFINITIONS AND INTERPRETATIONS.................................2
    (A)    Definitions.............................................................................2
    1.2.    "Administrative Claim"..........................................................3
    1.3.    "Administrative Expense Claim" ............................................3
    1.4.    "Administrative Claim Bar Date"...........................................3
    1.5.    "Allowed"............................................................................3
    1.6.    "Asset"...............................................................................3
    1.7.    "Available Cash" .................................................................4
    1.8.    "Avoidance Actions" ............................................................4
    1.9.    "Avoiding Power Causes of Action" ......................................4
    1.10.    "Ballot".............................................................................4
    1.11.    "Bankruptcy Code"............................................................4
    1.12.    "Bankruptcy Court"............................................................4
    1.13.    "Bankruptcy Rules".............................................................4
    1.14.    "Business Day" ...................................................................4
    1.15.    "Cash"...............................................................................4
    1.16.    "Cause of Action"...............................................................4
    1.17.    "Chapter 11 Case" .............................................................5
    1.18.    "Claim"..............................................................................5
    1.19.    "Class" ..............................................................................5
    1.20.    "Commencement Date"........................................................5
    1.22.    "Confirmation Date"............................................................5
    1.23.    "Confirmation Hearing" .......................................................5
    1.24.    "Confirmation Order"...........................................................5
    1.26.    "Creditor"..........................................................................5
    1.30.    "Debtor".............................................................................6
    1.31.    "Disputed" .........................................................................6
    1.32.    "Disputed Claims Reserve(s)"...............................................6
    1.33.    "Distribution" .....................................................................6
    1.34.    "Effective Date" .................................................................6
    1.35.    "Estate" .............................................................................7
    1.37.    "File," "Filed" or "Filing" ...................................................7
    1.38.    "Final Decree" ...................................................................7
    1.39.    "Final Distribution Date".......................................................7
    1.40.    "Final Order" .....................................................................7
    1.41.    "General Partner"................................................................7
    1.42.    "General Partner Interest" ....................................................7
    1.43.    "General Unsecured Claim" ..................................................8
    1.44.    "Limited Partner" ...............................................................8
    1.45.    "Limited Partner Interest" ....................................................8
    1.48.    "Priority Claim"..................................................................9
    1.49.    "Priority Tax Claim" ...........................................................9
    1.50.    "Person".............................................................................9
    1.51.    "Plan".................................................................................9
    1.52.    "Plan Agent" ......................................................................9
    1.54.    "Proceeds".........................................................................9
    1.55.    "Professional" ....................................................................9
    1.56.    "Professional Fee Claim" .....................................................9
    1.57.    "Proponent" .......................................................................9
    1.58.    "Pro Rata Share".................................................................9
    1.59.    "Rejection Claims" ...........................................................10
    1.60.    "Scheduled".....................................................................10

1.61.   "Schedules" ................................................................................ 10
1.62.   "Secured Claim" ......................................................................... 10
1.63.   "Secured Tax Claim" .................................................................. 10
1.64.   "Setoff Claim" ........................................................................... 10
1.66.   "Subsequent Distribution Date" .................................................. 10
1.69.   "Unsecured Claims Bar Date" ..................................................... 11

ARTICLE II TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
PRIORITY TAX CLAIMS ................................................................................. 12
2.1    Administrative Expense Claims. ............................................................. 12
       (a)    Filing of Administrative Expense Claims. ................................... 12

       (b)    Allowed Administrative Expense Claims.. .................................. 12

2.2    Professional Fee Claims. ........................................................................ 12
2.3    Priority Tax Claims. ............................................................................... 13

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................... 13

ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS .................................. 14
4.1    Class 1- Secured Tax Claims ................................................................ 14
       (a)    Impairment and Voting.. .............................................................. 14

       (b)    Treatment of/distributions to Class 1. ......................................... 15

4.2    Class 2 – First-Citizens' Secured Weller Court Claim. ....................... 15
       (a)    Impairment and Voting. ............................................................... 15

       (b)    Treatment of/distributions to Class 2. ......................................... 15

4.3    Class 3 – Excell's Secured Weller Court Claim. ................................. 15
       (a)    Impairment and Voting. ............................................................... 15

4.4    Class 4 – First-Citizens' Secured Hotel Claim. ................................... 16
       (a)    Impairment and Voting. . .............................................................. 16

       (b)    Treatment of/distributions to Class 4.. ........................................ 16

4.5    Class 5 - General Unsecured Claims. ................................................... 17
       (a)    Impairment and Voting.. .............................................................. 17

       (b)    Treatment of/Distributions to Class 5.. ....................................... 17

       (c)    No interest.. .................................................................................. 18

4.6    Class 6 – Limited Partner's Interest. ................................................... 18
       (a)    Impairment and Voting.  Class 6 is impaired by this Plan. .......... 18

       (b)    Treatment of/distributions to Class 6. . ....................................... 18

4.7    Class 7 – Limited Partner's Interest.  Class 7 consists of the Interests of the
       General Partner of the Debtor. ............................................................... 18
       (a)    Impairment and Voting.. .............................................................. 18

       (b)    Treatment of/distributions to Class 7. ......................................... 18

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

ARTICLE V ACCEPTANCE OR REJECTION OF THIS PLAN...................................... 19
    5.1    Voting of Claims. ......................................................................................... 19
    5.2    Acceptance by a Class of Creditors.............................................................. 19
    5.3    Presumed Acceptance of Plan. ..................................................................... 19

ARTICLE VI MEANS OF IMPLEMENTING AND EXECUTION OF THE PLAN ................. 19
    6.1    Implementation on the Effective Date. ........................................................ 19
        6.1.1   Bidding Procedures.  The sale on the Effective Date is subject to the
               following bidding procedures: ...................................................... 20

    6.2    Continuing Existence. .................................................................................. 23
    6.3    Vesting of Assets of the Estate. The Continuing Estate will hold title to the
          Proceeds not distributed to First-Citizens. .................................................. 23
    6.4    Dissolution of the Committee. ..................................................................... 24
    6.5    Appointment and Compensation of Plan Agent............................................ 25
    6.6    Duties and Responsibilities of Plan Agent................................................... 25
    6.7    Retention of Professionals............................................................................ 26
    6.8    Disposition of the Assets. ............................................................................ 26
    6.9    Funding For This Plan. ................................................................................. 27
    6.10   Accounts. ..................................................................................................... 27
    6.11   Bond and Insurance Requirements. .............................................................. 27
    6.12   Tax Returns. ................................................................................................. 27
    6.13   Claims Filed After the Confirmation Date. .................................................. 27
    6.14   No Discharge. .............................................................................................. 27
    6.15   Final Decree. ............................................................................................... 28
    6.16   Closing of the Chapter 11 Case. .................................................................. 28

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS ......................................... 28
    7.1    Plan Agent. .................................................................................................. 28
    7.2    Distributions. ............................................................................................... 28
        (a)    Effective Date Payments.  ............................................................ 28

        (b)    Distributions on a Subsequent Distribution Date........................... 28

        (c)    Distributions on the Final Distribution Date. ................................ 29

    7.3    Distributions of Cash.................................................................................... 30
    7.4    Delivery of Distributions and Undeliverable Distributions. ........................ 30
    7.5    Withholding and Reporting Requirements.................................................... 31
    7.6    Time Bar to Cash Payments. ........................................................................ 31
    7.7    Setoffs. ......................................................................................................... 31
    7.8    Professional Fees and Expenses. .................................................................. 32
    7.9    Transactions on Business Days. .................................................................... 32
    7.10   Minimum Distributions. .............................................................................. 32

ARTICLE VIII PROCEDURES FOR RESOLVING  AND TREATING DISPUTED
CLAIMS.................................................................................................................. 32
    8.1    No Distribution Pending Allowance. ........................................................... 32
    8.2    Resolution of Disputed Claims. ................................................................... 33
    8.3    Estimation.................................................................................................... 33
    8.4    Reserve Accounts for Disputed Claims........................................................ 33
    8.5    Investment of Disputed Claims Reserves. .................................................... 34
    8.6    Allowance of Disputed Claims. ................................................................... 34
    8.7    Release of Funds from Disputed Claims Reserves. ...................................... 34
    8.8    Effect on Third Parties. ................................................................................ 34

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ........................................................................................................... 35
  9.1  Executory Contracts and Unexpired Leases........................................ 35
  9.2  Approval of Rejection of Executory Contracts and Unexpired Leases. ................ 35
  9.3  Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
      Unexpired Leases Rejected Pursuant to this Plan. ...................................... 35

ARTICLE X EFFECT OF CONFIRMATION ............................................................ 35
  10.1  Release of Assets............................................................................... 35
  10.2  Binding Effect. ................................................................................. 36
  10.3  Rights of Action. .............................................................................. 36

ARTICLE XI MODIFICATIONS ............................................................................. 37
  11.1  Pre-Confirmation Modification. ........................................................ 37
  11.2  Pre-Consummation Modification. ..................................................... 37
  11.3  Non-Material Modifications. ............................................................. 38

ARTICLE XII RETENTION OF JURISDICTION ..................................................... 38
  12.1  Jurisdiction of Bankruptcy Court. ..................................................... 38

ARTICLE XIII MISCELLANEOUS PROVISIONS ................................................... 39
  13.1  Deletion of Classes............................................................................ 39
  13.2  Successors and Assigns. .................................................................... 39
  13.3  Binding Effect. ................................................................................. 39
  13.4  Effectuating Documents and Further Transactions. ........................... 39
  13.5  Exemption from Transfer Taxes. ....................................................... 40
  13.6  Post-Confirmation Date Fees and Expenses of Professionals and of Winding
      Up the Estates.................................................................................... 40
  13.7  Payment of Statutory Fees................................................................. 40
  13.8  Withdrawal or Revocation. ............................................................... 41
  13.9  Courts of Competent Jurisdiction...................................................... 41
  13.10  Severability...................................................................................... 41
  13.11  Governing Law................................................................................ 41
  13.12  Headings. ........................................................................................ 41
  13.13  Exhibits........................................................................................... 41

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**INTRODUCTION**

First-Citizens Bank & Trust Company ("First-Citizens"), a secured creditor and party-in-interest in the above-captioned case of Little Tokuyo Partners, L.P. (the "Debtor") currently pending under Chapter 11 of the Bankruptcy Code, proposes the following *Plan of Liquidation, Dated December 7, 2010* (the "Plan") for the resolution of the Debtor's outstanding creditor Claims (as hereinafter defined) and Partner Interests (as hereinafter defined). Reference is made to the *Disclosure Statement to Accompany First Citizen Bank & Trust Company's Plan of Liquidation, Dated December 7, 2010* ("Disclosure Statement") for (i) a discussion of the Debtor's history, business and results of operations, and (ii) a summary and analysis of the Plan. All holders of Claims and Partner Interests entitled to vote to accept or reject the Plan are encouraged to review the Disclosure Statement and the Plan before voting to accept or reject the Plan. To the extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern.

The Plan provides for the liquidation and conversion of all of the Debtor's assets to cash and the distribution of the net proceeds therefrom to Creditors (as hereinafter defined) in accordance with the priorities established by the Bankruptcy Code and prior orders of the Bankruptcy Court. The primary means for liquidating the Debtor's assets is through the sale of the Hotel and Weller Court to Seville or another qualified third party for the sum of not less than $44 million on the Effective Date. First-Citizens believes that the proposal set forth in the Plan is in the best interest of all Creditors and Equity Interests and will provide the best possible return available to Creditors.

**ARTICLE I**

**DEFINITIONS AND INTERPRETATION**

(A)    **Definitions**. As used in this Plan, and unless the context otherwise requires, the following terms shall have the respective meanings specified below. The rules of construction used in Section 102 of the Bankruptcy Code shall apply to construction of this Plan. Headings and captions are utilized in this Plan for convenient reference only, and shall not constitute part of this Plan for any other purpose.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1      1.1.   *"ADA Litigation"* means that certain litigation bearing Case No. CV10-15111,

2 pending in the United States District Court for the Central District of Los Angeles, entitled *Hugh*

3 *Marsh, et al. v. Grand Kyoto Hotel, et al.*

4      1.2.   *"Administrative Claim"* means any Claim for costs and expenses of administration of

5 the Chapter 11 Case under Bankruptcy Code Sections 503(b) or 507(a)(1).

6      1.3.   *"Administrative Expense Claim"* means any Claim under Sections 503(b)(1) through

7 (b)(8) , 507(a)(2) and 507(a)(3) of the Bankruptcy Code, including, without limitation, any actual and

8 necessary expenses of preserving the assets of the Debtor, any actual and necessary expenses of

9 operating the business of the Debtor, all compensation and reimbursement of expenses allowed by the

10 Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees and charges

11 assessed against the Debtor under section 1930 of chapter 123 of title 28 of the United States Code, all

12 as may arise prior to the Effective Date.

13      1.4.   *"Administrative Claim Bar Date"* means the last day by which requests for payment

14 of Administrative Expense Claims must be filed against the Debtor (except for the claims of the

15 Professionals) which date shall be sixty (60) days after the Effective Date or such later date as may be

16 determined by the Confirmation Order or other Order of the Court.

17      1.5.   *"Allowed"* means, with respect to a Claim, proof of which was timely and properly

18 filed or, if no proof of Claim was filed, which has been or hereafter is listed by the Debtor on its

19 Schedules as liquidated in amount and not disputed or contingent and, in either case, as to which no

20 objection to allowance has been interposed on or before the expiration of the time within which to

21 object to such Claim as set forth herein or such other applicable period of limitation fixed by the

22 Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has

23 been determined by a Final Order to the extent such objection is determined in favor of the respective

24 holder. Unless otherwise specified in this Plan or by order of the Bankruptcy Court, "Allowed Claim"

25 shall not, for purposes of computation of distributions under this Plan, include interest on such Claim

26 from and after the Commencement Date or include any penalty on such Claim.

27      1.6.   *"Asset"* means any and all assets of the Debtor's Estate as provided for under Section

28 541 of the Bankruptcy Code.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1.7.    *"Available Cash"* means all cash of the Debtor's Estate to be distributed to the holders of Allowed Claims against such Estate, less in the following order: (i) $450,000 for payment of Administrative Expense and Priority Tax Claims in the Chapter 11 Case, (ii) $50,000 for post-confirmation administrative costs to file and prosecute objections to Claims; (iii) $1,000,000 to holders of Class 5 Claims; and (iv) Cure Costs.

1.8.    *"Avoidance Actions"* shall mean Causes of Action under Sections 502(d), 506, 510, 541, 544, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

1.9.    *"Avoiding Power Causes of Action"* means causes of action arising under Bankruptcy Code Sections 502(d), 506, 510, 541, 544, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

1.10.    *"Ballot"* means each of the ballot forms to be distributed to holders of impaired Claims entitled to vote under Article V hereof in connection with the solicitation of acceptances of the Plan.

1.11.    *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as now in effect or hereafter amended.

1.12.    *"Bankruptcy Court"* means the United States District Court for the Central District of California, having jurisdiction over this Chapter 11 Case, and, to the extent of the reference pursuant to 28 U.S.C. § 157(a), the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

1.13.    *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

1.14.    *"Business Day"* means any day other than a Saturday, a Sunday or any other day on which banking institutions in Los Angeles, California are required or authorized to close by law or executive order.

1.15.    *"Cash"* means cash and cash equivalents.

1.16.    *"Cause of Action"* means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, which are to be retained by the Estate and litigated and liquidated by the Plan Agent in the name of the Debtor pursuant to the Plan.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1.17.   ***"Chapter 11 Case"*** means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor, styled *Little Tokyo, L.P., a California limited partnership*, Case No. 2:10-bk-39113-BR, currently pending in the Bankruptcy Court.

1.18.   ***"Claim"*** shall have the meaning as defined in Section 101(5) of the Bankruptcy Code.

1.19.   ***"Class"*** means any group of substantially similar Claims or Partner Interests classified by this Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

1.20.   ***"Commencement Date"*** means July 15, 2010, the date on which the Debtor commenced its Chapter 11 Case.

1.21.   ***"Confirmation"*** means entry by the Clerk of the Bankruptcy Court of the Confirmation Order.

1.22.   ***"Confirmation Date"*** means the date of entry of the Confirmation Order by the Clerk of the Bankruptcy Court.

1.23.   ***"Confirmation Hearing"*** means the hearing to consider Confirmation of this Plan under Section 1129 of the Bankruptcy Code.

1.24.   ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.25.   ***"Continuing Estate"*** means the Estate as it will continue after the Effective Date.

1.26.   ***"Creditor"*** means any Person who holds a Claim against the Debtor

1.27.   ***"Creditors' Committee"*** means the Official Committee of Unsecured Creditors for the Debtor's estate, appointed on August 18, 2010.

1.28.   ***"Crestline"*** means Crestline Hotels & Resorts, Inc.

1.29.   ***"Cure Costs"*** means the amount required to be paid by Seville, or the other successful third party purchaser, associated with the assumption of the management agreement with Crestline.

1.30.   ***"Debtor"*** means Little Tokyo Partners, L.P., debtor in possession, pursuant to Section 1107 of the Bankruptcy Code and where applicable, following the Effective Date, the Debtor in liquidation.

1.31.   ***"Disputed"*** means, with respect to a Claim or Interest, (a) any such proof of Claim which was timely and properly Filed and (i) which has been or hereafter is listed on the Schedules as

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the

2  parties or a Final Order of the Bankruptcy Court, or (ii) as to which the Debtor or any other party in

3  interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy

4  Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or

5  determined by a Final Order, and (b) any Claim as to which a proof of Claim was required to be Filed

6  by order of the Bankruptcy Court, but as to which a proof of Claim was not Filed or which was Filed

7  untimely or improperly.  Unless previously Allowed, prior to the time that an objection has been filed

8  and the expiration of time within which to object to such Claim established by any order of the

9  Bankruptcy Court, for purposes of this Plan, (A) a Claim shall be considered a Disputed Claim if the

10  amount of the Claim specified in the proof of Claim exceeds the amount of the claim scheduled by the

11  Debtor as other than disputed, contingent or unliquidated, or (B) in the event that a Claim is not listed

12  on the Schedules, then the entire amount of such Claim shall be considered a Disputed Claim.

13      1.32.  *"Disputed Claims Reserve(s)"* means, in the event there exists any Disputed Claim on

14  or after the Effective Date, Cash is to be set aside by the Post-Confirmation Committee in separate,

15  interest bearing account(s), in amounts sufficient to pay all such Disputed Claims in accordance with

16  the provisions of this Plan, if such Disputed Claims become Allowed Claims, and to be maintained

17  under this Plan, as set forth more fully in Article 8.4 of this Plan.

18      1.33.  *"Distribution"* means any payment of Cash or property called for under the Plan.

19      1.34.  *"Effective Date"* means the date which is the later of (i) thirty (30) Days after the entry

20  of the Confirmation Order, unless a stay pending appeal of the Confirmation Order has been issued by

21  a court of appropriate jurisdiction and such stay remains in effect, or (ii) the day on which such stay

22  has been vacated, revoked or terminated.

23      1.35.  *"Estate"* means the Debtor's estate in this Chapter 11 Case created pursuant to Section

24  541 of the Bankruptcy Code.

25      1.36.  *"Excell"* means Excell Investment Group, LLC.

26      1.37.  *"File," "Filed" or "Filing"* means file, filed, or filing with the Bankruptcy Court or

27  its authorized designee in the Chapter 11 Case.

28      1.38.  *"Final Decree"* means an order entered by the Bankruptcy Court closing the Chapter

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

776029.2 | 100102-0083

6

1    11 Case after substantial consummation of the Plan.

2        1.39.   ***"Final Distribution Date"*** means, for the Estate, the date on which a final Distribution

3    of Available Cash is made pursuant to Article 7.2(c) of this Plan.  For the Estate, the Final Distribution

4    Date shall be a date, as determined by the Plan Agent (i) which is after the liquidation into Cash of all

5    Assets of the Debtor (other than those Assets abandoned by the Debtor) and collection of other sums

6    due or otherwise remitted or returned to the Estate, and (ii) on or after which a final Distribution is

7    made from the Disputed Claims Reserves pursuant to Article 8.7 of this Plan after final resolution of

8    all Disputed Claims.

9        1.40.   ***"Final Order"*** means an order or judgment of the Bankruptcy Court entered by the

10   Clerk of the Bankruptcy Court on the docket in this case, which has not been reversed, vacated or

11   stayed and as to which (i) the time to appeal, petition for certiorari, other reargument, or rehearing has

12   expired and as to which no appeal, petition for certiorari, new trial, reargument, or rehearing thereof

13   has been sought or (ii) such order or judgment of the Bankruptcy Court shall have been affirmed by

14   the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial,

15   reargument or rehearing shall have been denied or resulted in no modification of such order, and the

16   time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing

17   shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal

18   Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be filed relating to

19   such order shall not cause such order to not be a Final Order.

20       1.41.   ***"General Partner"*** means Little Tokyo Partners, LLC, the Debtor's general partner.

21       1.42.   ***"General Partner Interest"*** means the Interest of the General Partner in the Debtor.

22       1.43.   ***"General Unsecured Claim"*** means any Claim (other than any Administrative

23   Expense Claim, a Professional Fee Claim, or a Priority Claim).

24       1.44.   ***"Limited Partner"*** means 3D Investments, IV, LP.

25       1.45.   ***"Limited Partner Interest"*** means the Interest of the Limited Partner in the Debtor.

26       1.46.   ***"Hotel"*** means the 21-story hotel located at 120 South Los Angeles Street, Los

27   Angeles, California.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1.47.   ***"Impaired"*** means the alteration of a legal, equitable or contractual right of a claim or interest.

1.48.   ***"Priority Claim"*** means a Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Professional Fee Claim.

1.49.   ***"Priority Tax Claim"*** means an Allowed Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.50.   ***"Person"*** means any individual, corporation, partnership, association, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any subdivision thereof and any other entity.

1.51.   ***"Plan"*** means this Chapter 11 plan of liquidation as proposed by the Proponent and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

1.52.   ***"Plan Agent"*** means Post-Confirmation Committee, the appointed Plan Agent of the Debtor hereunder, or any successor appointed by the Court.

1.53.   ***"Post-Confirmation Committee"*** means the committee appointed under this Plan on the Effective Date to act as the agent for the Continuing Estate.

1.54.   ***"Proceeds"*** means any Cash obtained by the Estate through the liquidation of any of the Assets.

1.55.   ***"Professional"*** means any professional employed in the Chapter 11 Case pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code.

1.56.   ***"Professional Fee Claim"*** means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Commencement Date and prior to and including the Effective Date.

1.57.   ***"Proponent"*** means the First-Citizens as the Proponent of this Plan.

1.58.   ***"Pro Rata Share"*** means the proportion that the amount of any Claim bears to the aggregate amount of such Claim and all other Claims in the same Class entitled to distributions from the same source of Cash, including Disputed Claims.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1.59.    *"Rejection Claims"* means Claims arising from the rejection of an executory contract or lease of personal property or real property by the Debtor.

1.60.    *"Scheduled"* means set forth in the Schedules.

1.61.    *"Schedules"* means the schedules of assets and liabilities and the statements of financial affairs, filed by the Debtor, as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.62.    *"Secured Claim"* means any Allowed Claim that is secured by a lien on the property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent the value of the Claim-holder's interest in the Estate's interest in such property or to the estate of the amount subject to setoff, as applicable, as determined under Section 506 of the Bankruptcy Code.

1.63.    *"Secured Tax Claim"* means any Claim of a governmental unit for taxes which, by operation of applicable non-bankruptcy law, is a Secured Claim.

1.64.    *"Setoff Claim"* means a Claim against the Debtor by a Creditor that has a valid right of setoff with respect to such Claim, which right exists under non-bankruptcy law and is enforceable under Section 553 of the Bankruptcy Code as determined by a Final Order or as otherwise agreed to in writing by the Debtor, to the extent of the amount subject to such right of setoff.

1.65.    *"Seville"* means Seville Gateway Investments, LLC.

1.66.    *"Subsequent Distribution Date"* means any date, as determined by the Plan Agent which is after the date of the initial Distributions hereunder and prior to the Final Distribution Date, on which a distribution of Available Cash is made to holders of Allowed Claims in accordance with Article 7.2 of this Plan.

1.67.    *"Unclaimed Property"* means any distribution to a Creditor made pursuant to the Plan, but which is unclaimed, including distributions which have been returned as undeliverable without a proper forwarding address, or which were not mailed or delivered because of the absence of a proper address of such Creditor.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1.68.   ***"Unclaimed Property Reserve"*** means the reserve account to be established by the Plan Agent in accordance with Article 7.4 of the Plan to hold Unclaimed Property.

1.69.   ***"Unsecured Claims Bar Date"*** means December 10, 2010, which is the date established by the Bankruptcy Court as the last date for Filing proofs of Claim (other than Administrative Expense Claims, Rejection Claims and Professional Fee Claims) against the Debtor.

1.70.   ***"Weller Court"*** means the three-story outdoor mall located at 227 East Second Street, Los Angeles, California.

**(B)**   **Other Terms.**   A term used in this Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**(C)**   **Construction of Certain Terms.**

**(a)**   The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan;

**(b)**   wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter;

**(c)**   any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

**(d)**   any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified or supplemented;

**(e)**   unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan;

**(f)**   captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and

**(g)**   the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# ARTICLE II

## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**2.1**    **Administrative Expense Claims.**

    **(a)**    **Filing of Administrative Expense Claims.**    Holders of Administrative Expense Claims, incurred on or after July 15, 2010, other than Professional Fee Claims or United States Trustee fees not paid prior to the Confirmation Date, must submit proofs of Administrative Expense Claim and file requests for payment on or before the Administrative Claims Bar Date or such later date established in the Confirmation Order.    Failure to file a proof of Administrative Expense Claim and request for payment on or before the Administrative Expense Claim Bar Date shall cause such Administrative Expense Claim to be disallowed and be considered null and void and such Creditors shall have no further Claim against the Debtor and its Estate.    The Plan Agent shall have sixty (60) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the last Administrative Claim Bar Date to review and object to all Administrative Expense Claims filed against the Estate.    If no objection is made then the Plan Agent shall pay such Administrative Expense Claims in accordance with Article 2.1(b) of the Plan.

    **(b)**    **Allowed Administrative Expense Claims.**    Except to the extent that the Plan Agent and the holder of an Allowed Administrative Expense Claim agree to a different treatment, the Plan Agent shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Allowed Administrative Expense Claim, on the later of (i) the Effective Date or (ii) as soon as practicable after the date upon which such claim becomes an Allowed Claim, but in no event more than thirty (30) days after entry of a Final Order allowing such claim.

    **2.2**    **Professional Fee Claims.** All Persons that are employed under Section 327 or awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with Section 330 or 331 of the Bankruptcy Code shall be paid in full for all work completed through the date of the Confirmation Hearing, in such amounts as are Allowed by the Bankruptcy Court (a) on the later of (i) the Effective Date or (ii) the date on which the Bankruptcy Court order allowing such Claim becomes a Final Order or (b) upon such other terms as may be mutually agreed upon in writing between the

1  Plan Agent and such holder of an Allowed Professional Fee Claim.  Fees and costs of professionals

2  employed by the Debtor may not be paid until after they are approved and allowed by the Court.

3      **2.3**   **Priority Tax Claims.** Allowed unsecured tax claims accorded priority under Section

4  507(a)(8) of the Bankruptcy Code shall be paid in full no later than thirty (30) days after the later of (i)

5  the Effective Date, or (ii) date its Claim becomes an Allowed Claim.

6  **ARTICLE III**

7  **CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

8

| | |
|---|---|
| Class 1 – Secured Tax Claims | Class 1 consists of all Allowed Secured Tax Claims against the Debtor . |
| Class 2 – First Citizens' Secured Weller Court Claim | Class 2 consists of First-Citizens' Claims that are secured by Weller Court. |
| Class 3 – Excell' Secured Weller Court Claim | Class 3 consists of Excells' Claims that are secured by Weller Court. |
| Class 4 – First Citizens' Secured Hotel Claim | Class 4 consists of First-Citizens' Claims that are secured by the Hotel. |
| Class 5 – General Unsecured Claims | Class 5 consists of all Allowed General Unsecured Claims against the Debtor. |
| Class 6 – Limited Partner's Interest | Class 6 consists of the Interests of the Limited Partner of the Debtor. |
| Class 7 – General Partner's Interest | Class 7 consists of the Interests of the General Partner of the Debtor. |

22  **ARTICLE IV**

23  **TREATMENT OF CLAIMS AND EQUITY INTERESTS**

24      **4.1**   **Class 1- Secured Tax Claims.**  Class 1 consists of all Allowed Secured Tax Claims

25  against the Debtor .

26      **(a)**     **Impairment and Voting**.  Class 1 is not impaired by this Plan.  Accordingly,

27  each holder of an Allowed Claim in Class 1 is deemed to have accepted this Plan.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    **(b)     Treatment of/distributions to Class 1.** Allowed Secured Tax Claims shall be

2  paid in full thirty (30) days after the later of (i) the Effective Date, or (ii) the date its Claim becomes

3  an Allowed Claim.  The liens of Class 1 Claims shall be released on the Effective Date.

4    **4.2     Class 2 – First-Citizens' Secured Weller Court Claim.**  Class 2 consists of First-

5  Citizens' Claims that are secured by Weller Court.

6    **(a)     Impairment and Voting.**  Class 2 is impaired by this Plan.  Accordingly, each

7  holder of an Allowed Claim in Class 2 is entitled to vote to accept or reject this Plan.

8    **(b)     Treatment of/distributions to Class 2.**  On the Effective Date, First-Citizens

9  will receive, on account of its Allowed Class 2 Claim, Cash equal to the amount of such Allowed

10  Secured Claim, unless First-Citizens agrees or shall have agreed to other treatment of such claim.

11  First-Citizens shall allocate sufficient Cash due to it from Class 2 and Class 4 to pay the Cure Costs

12  and $1,500,000 for: (1) $450,000 in administrative claims and priority tax claims; (2) $50,000 for

13  post-confirmation administrative costs in objecting to claims; (3) $1,000,000 for Class 5; and (4) the

14  Cure Costs.  If sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's

15  Secured Weller Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for

16  Seville which shall not exceed $800,000, if applicable; (e) the Cure Costs; and (f) $1,500,000, the

17  $1,500,000 and the amount of the Cure Costs shall be paid to First-Citizens on account of its Allowed

18  Class 2 Claim and Allowed Class 4 Claim.  Any additional Cash in excess of (a), (b), (c), (d), (e), and

19  (f) shall be paid to Class 5, Class 6, and Class 7, as described below.  If sufficient Cash exists to

20  satisfy (a), (b), (c), (d) only, any Cash in excess of (a), (b), (c), (d), and less than $1,500,000 and the

21  amount of the Cure Costs shall be paid to First-Citizens on account of its Allowed Class 2 Claim and

22  Allowed Class 4 Claim.  Payment on the Allowed Secured Claims shall occur on the Effective Date.

23  The liens of Class 2 Claims shall be released on the Effective Date.

24    **4.3     Class 3 – Excell's Secured Weller Court Claim.**  Class 3 consists of Excell's Claims

25  that are secured by Weller Court.

26    **(a)     Impairment and Voting.**  Class 3 is unimpaired by this Plan.  Accordingly,

27  each holder of an Allowed Claim in Class 3 is deemed to have accepted this Plan.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**(b)    Treatment of/distributions to Class 3.** Holders of Class 3 Claims will receive, on account of its Allowed Class 3 Claim and in full satisfaction thereof, Cash equal to the amount of such Allowed Secured Claim, unless Excell agrees or shall have agreed to other treatment of such claim. Payment on the Allowed Secured Claims shall occur 30 days after the later of (i) the Effective Date or (ii) the date its claim becomes an Allowed Claim. The liens of Class 3 Claims shall be released on the Effective Date. Fourteen days (14) days before the Confirmation Hearing, Excell shall file with the Court and serve on Debtors' counsel, Committee's counsel, and First-Citizens' counsel the anticipated amount of its claim for attorney's fees or costs, other costs of collection, or for any kind of interest, penalty, fee overcharge not provided for Excell in the Plan as of the Effective Date, and shall file with the Court and serve on Debtors' counsel, Committee's counsel, and First-Citizens' counsel a statement providing the details and basis for such claim.

**4.4    Class 4 – First-Citizens' Secured Hotel Claim.** Class 4 consists of First-Citizens' Claims that are secured by the Hotel.

**(a)    Impairment and Voting.** Class 4 is impaired by this Plan. Accordingly, each holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject this Plan.

**(b)    Treatment of/distributions to Class 4.** First-Citizens will receive, on account of its Allowed Class 4 Claim, Cash equal to the amount of such Allowed Secured Claim, unless First-Citizens agrees or shall have agreed to other treatment of such claim. First-Citizens shall allocate sufficient Cash due to it from Class 2 and Class 4 to pay the Cure Costs and $1,500,000 for: (1) $450,000 in administrative claims and priority tax claims; (2) $50,000 for post-confirmation administrative costs in objecting to claims; (3) $1,000,000 for Class 5; and (4) the Cure Costs. If sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's Secured Weller Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for Seville which shall not exceed $800,000, if applicable; (e) the Cure Costs; and (f) $1,500,000, the $1,500,000 and the amount of the Cure Costs shall be paid to First-Citizens on account of its Allowed Class 2 Claim and Allowed Class 4 Claim. Any additional Cash in excess of (a), (b), (c), (d), (e), and (f) shall be paid to Class 5, Class 6, and Class 7, as described below. If sufficient Cash exists to satisfy (a), (b), (c), and (d) only, any Cash in excess of (a), (b), (c), (d) and less than $1,500,000 and the amount of the Cure Costs shall

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    be paid to First-Citizens on account of its Allowed Class 2 Claim and Allowed Class 4 Claim.

2    Payment on the Allowed Secured Claims shall occur on the Effective Date.    The liens of Class 4

3    Claims shall be released on the Effective Date.

4        **4.5**    **Class 5 - General Unsecured Claims.**  Class 5 consists of all Non-Priority, Unsecured

5    Claims, including allowed claims arising from the ADA Litigation and allowed claims arising from

6    the rejected executory contracts and unexpired leases.

7        **(a)**    **Impairment and Voting.**  Class 5 is impaired by this Plan. Accordingly, each

8    holder of an Allowed Claim in Class 5 is entitled to vote to accept or reject this Plan.

9        **(b)**    **Treatment of/Distributions to Class 5.**  Each holder of an Allowed Claim in

10   Class 5 will receive, on account of its Allowed Class 5 Claim and in full satisfaction thereof, Cash

11   equal to its Pro Rata amount of $1,000,000 based upon the total Allowed Class 5 Claims.  In addition,

12   payment to holders of Allowed Class 5 Claims may increase if objections to invalid general unsecured

13   claims are upheld.  Any Cash allocated by First-Citizens to pay administrative claims and priority tax

14   claims ($450,000), and post-confirmation administrative costs in objecting to claims ($50,000) which

15   is unused because it exceeds administrative claims, priority tax claims, and post-confirmation

16   administrative costs in objecting to claims, shall be distributed to Allowed Class 5 Claim holders.

17       If sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's

18   Secured Weller Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for

19   Seville which shall not exceed $800,000, if applicable; (e) the Cure Costs; and (f) $1,500,000, the

20   $1,500,000 and the amount of the Cure Costs shall be paid to First-Citizens on account of its Allowed

21   Class 2 Claim and Allowed Class 4 Claim.  Any additional Cash in excess of (a), (b), (c), (d), (e), and

22   (f) shall be paid to Allowed Class 5 Claims until they are paid in full with interest at the Judgment

23   Rate from the Effective Date.  If sufficient Cash exists to satisfy (a), (b), (c), and (d) only, any Cash in

24   excess of (a), (b), (c), (d), and less than $1,500,000 and the amount of the Cure Costs shall be paid to

25   First-Citizens on account of its Allowed Class 2 Claim and Allowed Class 4 Claim.

26       Payment on the Allowed Claims shall occur 60 days after the later of (i) the Effective Date or

27   (ii) the date such claim becomes an Allowed Claim.  The treatment and consideration to be received

28   by the holders of the Allowed Class 5 Claims shall be in full settlement, satisfaction and release of

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

their respective Claims. Except as provided in (c) below, each holder of an Allowed Class 5 Claim shall receive one or more Distributions of their respective Pro-Rata Share of the proceeds of the liquidation of the Assets and from Available Cash after payment of those Claims having priority over Class 5 Creditors.

   **(c)    No interest**. Allowed Class 5 Claims shall not include any interest from and after the Commencement Date or include any penalty on such Claims. Any such interest or penalty component of any such Claim, if Allowed, shall be paid only in accordance with the priority set forth in Bankruptcy Code § 726(a), which section is hereby incorporated herein.

   **4.6    Class 6 – Limited Partner's Interest**. Class 6 consists of the Interests of the Limited Partner of the Debtor.

   **(a)    Impairment and Voting**. Class 6 is impaired by this Plan. Holders of Class 6 Interests are anticipated to receive no distribution on account of their Class 6 Interests. Accordingly, the holder of an Interest in Class 6 is deemed to have rejected this Plan.

   **(b)    Treatment of/distributions to Class 6**. If sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's Secured Weller Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for Seville which shall not exceed $800,000, if applicable; (e) the Cure Costs; (f) $1,500,000; and (g) additional Cash in excess of (a), (b), (c), (d), (e), and (f) for Allowed Class 5 Claims on account of their claims until they are paid in full with interest at the Judgment Rate from the Effective Date, the holder of the Class 6 Interests may receive a distribution under the Plan on account of that interest.

   **4.7    Class 7 – Limited Partner's Interest**. Class 7 consists of the Interests of the General Partner of the Debtor.

   **(a)    Impairment and Voting**. Class 7 is impaired by this Plan. Holders of Class 7 Interests are anticipated to receive no distribution on account of their Class 7 Interests. Accordingly, the holder of an Interest in Class 7 is deemed to have rejected this Plan.

   **(b)    Treatment of/distributions to Class 7**. If sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's Secured Weller Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for Seville which shall not exceed $800,000, if

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  applicable; (e) the Cure Costs; (f) $1,500,000; and (g) additional Cash in excess of (a), (b), (c), (d),

2  (e), and (f) for Allowed Class 5 Claims on account of their claims until they are paid in full with

3  interest at the Judgment Rate from the Effective Date, the holder of the Class 7 Interest may receive a

4  distribution under the Plan on account of that interest.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THIS PLAN

7      **5.1      Voting of Claims.** Except as otherwise provided in this Plan, holders of Claims in an

8  impaired Class of Claims shall be entitled to vote to accept or reject this Plan.  For purposes of

9  calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject this

10  Plan under Section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one

11  entity or any affiliate thereof (as defined in the Securities Act of 1933 and the rules and regulations

12  promulgated thereunder) shall be aggregated and treated as one Allowed Claim in such Class.  Any

13  Ballot which is executed by a holder of a Claim but which does not indicate an acceptance or rejection

14  of the Plan shall be deemed to be an acceptance of the Plan.

15      **5.2      *Acceptance by a Class of Creditors.*** Consistent with Section 1126(c) of the Bankruptcy

16  Code and except as provided for in Section 1126(e) of the Bankruptcy Code, a Class of Creditors shall

17  have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half

18  in number of the holders of Allowed Claims of such Class that have timely and properly voted to

19  accept or reject this Plan.

20      **5.3      *Presumed Acceptance of Plan.*** First-Citizens reserves the right to assert that any Class

21  is in fact unimpaired under the Plan and to assert at confirmation that such Classes are conclusively

22  presumed to have accepted this Plan.

## ARTICLE VI

## MEANS OF IMPLEMENTING AND EXECUTION OF THE PLAN

25      **6.1      Implementation on the Effective Date.** The Plan shall be implemented on the

26  Effective Date.  On the Effective Date, the Estate will sell the Hotel and Weller Court to Seville or

27  another qualified third party free and clear of all liens, claims, and interests in exchange for a sum of

28  no less than $44 million (the "Proceeds").    The Proceeds allocable to First-Citizens will be

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   immediately turned over to First-Citizens. First-Citizens believes that any and all other property of

2   the Estate constituting cash collateral as defined in section 363(a) of the Bankruptcy Code and

3   applicable case law is subject to liens in favor of First-Citizens (the "Cash Collateral"). As of the

4   Effective Date, the Cash Collateral (including each Debtor in Possession bank account) shall be turned

5   over to First-Citizens and the Proceeds allocable to First-Citizens shall be reduced by the amount of

6   the Cash Collateral.

7   The Effective Date shall be the date which is the later of (i) the entry of the Confirmation

8   Order, unless a stay pending appeal of the Confirmation Order has been issued by a court of

9   appropriate jurisdiction and such stay remains in effect, or (ii) the day on which such stay has been

10  vacated, revoked or terminated.

11  **6.1.1  Bidding Procedures.** The sale on the Effective Date is subject to the following

12  bidding procedures:

13  a.  <u>Bid Deadline</u>. A person or entity (other than Seville) that desires to make a bid

14  for the Assets must be a qualified bidder (as defined below) who submits an initial overbid which

15  confirms to the following procedures by no later than 5:00 p.m. (Pacific Standard Time) fourteen

16  calendar days immediately preceding the date of the Confirmation Hearing (as defined below) (the

17  "<u>Bid Deadline</u>").

18  b.  <u>Qualifying Bids</u>. For purposes of these bid procedures, the Proposed Sale by

19  Seville shall be deemed to be a qualified bid. For any "initial overbid" to constitute a qualified bid,

20  such "initial overbid" must:

21  (i)  Contain a written agreement with, at a minimum, the following
    requirements: (1) purchasing all of the Assets on an "as is, where is" basis; (2)

22  providing for a purchase price of at least $45,500,000.00; and (3) not being subject to
    any financing, due diligence or subsequent board or internal approvals, or other

23  contingencies whatsoever;

24  (ii)  Include a cashier's check or certified check in the amount of
    $10,000,000.00 as a deposit;

25

26  (iii)  Be accompanied by evidence satisfactory to First-Citizens in its
    reasonable discretion, that the overbidder is willing, authorized, capable, and qualified
    financially, legally, and otherwise, of unconditionally performing all obligations of the

27  Proposed Sale (or its equivalent) in the event that it submits the prevailing bid at
    auction (a "<u>Qualified Bidder</u>");

28

1               (iv)    Remain open and irrevocable until fifteen (15) calendar days
after entry of the Confirmation Order by the Court approving the sale of the Assets to
2  an alternative bidder;

3               (e)    Does not contain any terms or conditions that are materially
more burdensome to the Estate than the Proposed Sale; and
4

5               (f)    Be submitted to First-Citizens at Frandzel Robins Bloom &
Csato, L.C., 6500 Wilshire Boulevard, 17th Floor, Los Angeles, CA 90048 (Attn:
Michael J. Gomez); Stutman, Treister & Glatt, P.C., 1901 Avenue of the Stars, 12th
6  Floor, Los Angeles, CA 90067 (Attn: Christine Pajak); Arent Fox LLP, 555 W. Fifth
Street, 48th Floor, Los Angeles, CA 90013 (Attn: Mette Kurth) so as to be received not
7  later than the Bid Deadline.

8        Only a bid that meets each of the foregoing requirements shall be considered a "Qualified

9  Bid."

10        c.    Auction. In the event that First-Citizens timely receives a conforming Qualified

11  Bid from a Qualified Bidder, then the Bankruptcy Court will conduct an auction at the Courthouse (the

12  "Auction") with respect to the sale of the Assets immediately preceding the Confirmation Hearing. All

13  Qualifying Bidders participating in the Auction must be physically present at the Auction.

14        At the Auction, Qualified Bidders (including Seville) may submit successive bids in

15  increments of at least $250,000.00 greater than the prior bid for the purchase of the Assets until there

16  is only one offer that the Bankruptcy Court determines is the highest or best offer – the prevailing bid,

17  subject to the approval of the Court at the Confirmation Hearing. At the conclusion of the Auction, the

18  Bankruptcy Court shall identify and announce which Qualified Bid made the highest and best bid for

19  the Assets (the "Successful Bid"). If no Qualified Bid from a Qualifying Bidder shall have been

20  received prior to the Bid Deadline, the Auction will not be held and the Confirmation Hearing will

21  proceed with respect to the Proposed Sale to Seville.

22        d.    Confirmation Hearing. First-Citizens intends to subsequently present the

23  Successful Bid for approval by the Court at the Confirmation Hearing to be scheduled by the Court.

24  The Estate shall be deemed to have accepted a bid only when the bid has been approved by the Court

25  at the Confirmation Hearing.  Upon the failure to consummate a sale of the Assets after the

26  Confirmation Hearing because of the occurrence of a breach or default under the terms of the

27  Successful Bid, the next highest or otherwise best bid, if any, disclosed at the Confirmation Hearing,

28  shall be deemed the prevailing bid without further order of the Court and the parties shall be

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

authorized to consummate the transaction contemplated by the backup prevailing bid. The failure to consummate a sale of the Assets at the Confirmation Hearing may be due to the confirmation of another plan of reorganization. If another plan of reorganization is confirmed, the duty of First-Citizens to proceed with the sale shall be null and void.

e. <u>Deposits</u>. All Qualifying Bids at the Auction shall remain open and subject to acceptance by the Bankruptcy Court for a period of fifteen (15) days following entry of the Confirmation Order, following which period, the deposits of all bidders who were not the Successful Bidder at Auction or later accepted, shall be refunded, without interest. Any deposits made shall not be property of the Debtor's bankruptcy estate and no party shall have a lien on the deposit of the successful bidder.

f. <u>Sale Implementation</u>. Following approval of the Successful Bid at the Confirmation Hearing, the Estate and First-Citizens will be authorized to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the prevailing bid.

g. <u>Bid Protections</u>. In the event a party other than Seville is the Successful Bidder and acquires the Assets, then the Excess Net Sale Proceeds (as defined below) shall be distributed in the following order of priority:

(i) Seville shall be paid an amount (the "<u>Potential Purchaser's Due Diligence Costs</u>") equal to the lesser of (i) one hundred percent (100%) of actual, reasonably-documented out-of-pocket costs incurred by Seville in connection with its investigation, inspection, and due diligence of the Assets, and (ii) $300,000;

(ii) From any amounts remaining after the payment of the Potential Purchaser's Due Diligence Costs described above (the "<u>Remaining Amount</u>"), Seville shall be paid an amount equal to the lesser of (1) twenty-five percent (25%) of the Remaining Amount, and (2) $500,000; and

(iii) All Excess Net Sale Proceeds not paid pursuant to the foregoing shall be disbursed as provided in the order authorizing the sale and the Seville shall have no interest in them; and

(iv) In the event a third party bids at the sale and Seville continues to bid at the sale, is the Successful Bidder, and acquires the Assets, the Excess Net Sale Proceeds shall be disbursed as provided in the order authorizing the sale and Seville shall have no interest in them.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**6.2    Continuing Existence.** From and after the Effective Date, the Estate shall continue in existence for the purpose of (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash or other methods, any remaining Assets, as expeditiously as possible, (iii) enforcing and prosecuting Claims, interests, rights and privileges of the Debtor, including, without limitation, the Causes of Action, (iv) resolving Disputed Claims, (v) administering the Plan, (vi) filing appropriate tax returns, (vii) making Distributions, and (viii) performing such other functions as may be consistent with the provisions of the Plan.

**6.3    Vesting of Assets of the Estate.** The Continuing Estate will hold title to the Proceeds not distributed to First-Citizens.  Upon the Effective Date, the Assets of the Estate, wherever situated, shall revest in the Continuing Estate for the purpose of fully administering this Plan, and the Plan Agent, shall liquidate the Assets and distribute the Proceeds from that liquidation to the holders of Allowed Claims in accordance with the provisions of the Plan.  Except for any rights, claims, causes of action, defenses, and counterclaims accruing to the Debtor or the Estate against First-Citizens, all rights, claims, causes of action, defenses, and counterclaims accruing to the Debtor or the Estate are expressly and specifically not released in connection herewith (including, without limitation, Avoiding Power Causes of Action) whether or not any such rights, claims, causes of action, defenses, and counterclaims, or litigation relating thereto have been Scheduled or otherwise listed or referred to in the Disclosure Statement, or any other document filed with the Bankruptcy Court; whether or not litigation relating thereto is pending on the Effective Date; whether or not such rights, claims, causes of action, defenses, or counterclaims are currently known to the Debtor or the Estate; and whether or not a defendant in any litigation relating to such rights, claims, causes of action, defenses, or counterclaims filed a proof of claim in the bankruptcy, filed a notice of appearance or any other pleading or notice in the bankruptcy, voted for or against the Plan, or received or retained any consideration under the Plan.  The Post-Confirmation Committee shall have the duty and sole opportunity to prosecute such rights, claims, causes of action, defenses, and counterclaims. The Plan Agent is authorized to investigate, prosecute and, if necessary, litigate any Cause of Action on behalf of the Estate and shall have standing as a representative of the Estate to pursue any Cause of Action and Claims objections, whether initially filed by the Debtor, and may assert any defenses that may

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  otherwise have been asserted by a "trustee" under the Bankruptcy Code. Without having the effect of

2  dispossessing the Debtor, the Plan Agent shall also be vested with all rights, powers and benefits

3  afforded to a "trustee" under Section 1108 of the Bankruptcy Code exclusive of the rights of such Plan

4  Agent to make a claim under Section 326 of the Bankruptcy Code for compensation (such

5  compensation being subject to the provisions of this Plan). Except as provided herein, or as provided

6  in a prior or future order of the Bankruptcy Court, no Asset of the Estate shall be deemed abandoned

7  and no Cause of Action shall be deemed released or compromised by or as a result of this Plan, its

8  Confirmation, its consummation or its treatment of any Claim or Creditor. Further, no defense, set-

9  off, counterclaim or right of recoupment shall be deemed waived or compromised. All rights, claims,

10  causes of action, defenses, and counterclaims accruing to the Debtor or the Estate against First-

11  Citizens are expressly and specifically released in connection with the Plan (including, without

12  limitation, Avoiding Power Causes of Action) whether or not any such rights, claims, causes of action,

13  defenses, and counterclaims, or litigation relating thereto have been Scheduled or otherwise listed or

14  referred to in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy

15  Court; whether or not litigation relating thereto is pending on the Effective Date; and whether or not

16  such rights, claims, causes of action, defenses, or counterclaims are currently known to the Debtor or

17  the Estate. This waiver includes a waiver of Section 1542 of the California Civil Code which provides

18  as follows:

19  
20  A general release does not extend to claims which the creditor does not know or
     suspect to exist in his or her favor at the time of executing the release, which if
     known by him or her must have materially affected his or her settlement with the
21  debtor.

22  **6.4    Dissolution of the Committee.** Upon the Effective Date, the Committee will be

23  dissolved and the Post-Confirmation Committee will be appointed.    The Post-Confirmation

24  Committee shall become, on the Effective Date of the Plan, the exclusive representative of the Estate.

25  The Post-Confirmation Committee shall retain and may enforce any and all rights regarding tax

26  determinations under Bankruptcy Code section 505 and any rights, claims, causes of action, defenses,

27  and counterclaims accruing to the Debtor or the Estate, except for any rights, claims, causes of action,

28  defenses, and counterclaims accruing to the Debtor or the Estate against First-Citizens which shall be

released. The Post-Confirmation Committee will disburse the Proceeds as set forth herein and will charge a reasonable fee as set forth herein. The Post-Confirmation Committee will also have the duty and sole exclusive right to object to claims. This Plan provides for the discharge of claims and interests against the Debtor and its Estate, an injunction of certain actions against the Debtor, its Estate, Seville, or any other third party purchaser, the Post-Confirmation Committee, their successors or respective property, and limitation of liability for the Post-Confirmation Committee.

**6.5    Appointment and Compensation of Plan Agent.** From and after the Effective Date, the Post-Confirmation Committee shall serve as the Plan Agent of the Estate, provided however, that upon the application of an interested party and for good cause shown, the Court may appoint a successor Plan Agent. The Plan Agent shall be compensated as provided in the Confirmation Order.

**6.6    Duties and Responsibilities of Plan Agent.** On the Effective Date, the Post-Confirmation Committee shall assume all of the fiduciary responsibilities, duties and obligations of the Debtor that arise after the Effective Date under the Plan and is empowered and authorized to satisfy such responsibility, duties and obligations without further corporate authority as may have been required prior to the Effective Date. These duties, responsibilities and obligations of the Plan Agent include, but are not limited to, the following, all of which are done on behalf of the Estate:

　　　　a.    preparation and filing of business tax returns, including the right to request a determination of tax liability as set forth in Section 505 of the Bankruptcy Code if deemed necessary or appropriate;

　　　　b.    preservation or liquidation of Assets or the distribution of Proceeds of Assets;

　　　　c.    payment of post-confirmation fees due to the Office of the U.S. Trustee;

　　　　d.    filing of status reports with the Bankruptcy Court;

　　　　e.    responding to inquiries of Creditors;

　　　　f.    prosecuting or defending any Causes of Action, including but not limited to Avoidance Actions;

　　　　g.    commencing and/or prosecuting any and all objections to Claims;

　　　　h.    filing a motion for Final Decree;

　　　　i.    any duty of care, loyalty or other duty imposed or imputed by law; and

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000