Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
Bernard R. Given II (State Bar No. 134718)
bgiven@frandzel.com
Joy E. Mason (State Bar No. 215056)
jmason@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California  90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Creditor
First-Citizens Bank & Trust Company

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Bk. Case No. 2:10-bk-39113-BR |
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership, | Chapter 11 |
| Debtor. | **DISCLOSURE STATEMENT TO ACCOMPANY FIRST-CITIZENS BANK & TRUST COMPANY'S PLAN OF LIQUIDATION (DECEMBER 8, 2010)** |

**Disclosure Statement Hearing:**
DATE: _____, 2010
TIME: _____ A.M./P.M.
CTRM.: 1668
      255 E. Temple Street
      Los Angeles, CA 90012

**Confirmation Hearing:**
DATE: TBD
DATE: _____, 2010
TIME: _____ A.M./P.M.
CTRM.: 1668
      255 E. Temple Street
      Los Angeles, CA 90012

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 2
II. GENERAL DISCLAIMERS AND INFORMATION ...................................... 4
III. WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN............................ 5
    A.    ALLOWED CLAIMS AND INTERESTS ............................................ 5
    B.    IMPAIRED CLAIMS AND INTERESTS............................................. 7
IV. VOTES NECESSARY TO CONFIRM THE PLAN........................................ 8
V. VOTING INSTRUCTIONS ............................................................................. 8
VI. CRAMDOWN: TREATMENT OF NON-CONSENTING CLASSES .................. 9
VII. WHO MAY OBJECT TO PLAN CONFIRMATION .................................. 10
VIII. HISTORY OF THE DEBTOR AND THE BANKRUPTCY CASE ............. 11
    A.    THE DEBTOR'S BUSINESS ........................................................... 11
    B.    OBLIGATIONS SECURED BY THE DEBTOR'S ASSETS .............. 12
    C.    THE ADA LITIGATION................................................................... 13
    D.    EVENTS LEADING UP TO THE DEBTOR'S CHAPTER 11 FILING .............. 15
    E.    EVENTS DURING THE CHAPTER 11 CASE.................................... 15
    F.    RETENTION OF PROFESSIONALS................................................ 16
    G.    SCHEDULES AND STATEMENTS OF AFFAIRS AND BAR DATE .............. 16
    H.    POST-PETITION OPERATIONAL PERFORMANCE OF THE DEBTOR ........ 16
    I.    ACCOUNTING INFORMATION ..................................................... 17
    J.    COLLECTABILITY OF ACCOUNTS RECEIVABLE ....................... 17
    K.    DEBTOR'S CAUSES OF ACTION .................................................. 17
IX. ALTERNATIVES TO CONFIRMATION OF THE PLAN ........................... 17
X. SUMMARY OF PLAN OF LIQUIDATION ................................................. 17
    A.    SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS
        AND INTERESTS UNDER THE PLAN ......................................... 19
        1.    Unclassified Claims - Administrative And Priority Tax Claims................. 19
        2.    Priority Tax Claims ................................................................... 21
        3.    Classified Claims and Interests ................................................ 21
    B.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 25
    C.    IMPLEMENTATION OF THE PLAN ............................................. 26
        1.    The Sale and Disposition of Property of the Estate ..................... 26
        2.    Bidding Procedures .................................................................. 27
        3.    The Continuing Estate and the Post-Confirmation Committee.................. 29
    D.    POWERS OF THE POST-CONFIRMATION COMMITTEE ............... 31
    E.    DISCHARGE, INJUNCTION, AND LIMITATION OF LIABILITY ................ 31
    F.    RETENTION OF JURISDICTION ................................................... 32
    G.    AMENDMENT, MODIFICATION, AND SEVERABILITY ............... 32
    H.    CONDITIONS TO EFFECTIVE DATE ............................................ 32
    I.    CLAIMS RESOLUTION PROCESS ................................................ 32
XI. FEASIBILITY OF THE PLAN AND OTHER CONFIRMATION
    CONSIDERATIONS ............................................................................. 33
    A.    FEASIBILITY AND RISK FACTORS ............................................. 33
    B.    BEST INTERESTS OF CREDITORS TEST ..................................... 33
XII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES ......................... 35
    A.    INTRODUCTION ........................................................................... 35
    B.    FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTOR AND
        ITS PARTNERS ............................................................................ 36

C.    FEDERAL INCOME TAX CONSEQUENCES TO CREDITORS........................ 37
    1.    Receipt of Interest ................................................................ 37
    2.    Other Tax Considerations.......................................................... 37

XIII. FAILURE OF THE PLAN................................................................. 38
XIV. RECOMMENDATION ....................................................................... 39

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# I.

## INTRODUCTION

Little Tokyo Partners, L.P., a Delaware limited partnership (the "Debtor"), Debtor and Debtor-in-Possession in the above-captioned case, filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), on July 15, 2010 (the "Petition Date"). First-Citizens Bank & Trust Company ("First-Citizens"), a secured creditor and party-in-interest, is distributing this Disclosure Statement to solicit acceptances of the "First-Citizens Bank & Trust Company's Plan of Liquidation (December 8, 2010)" (the "Plan") proposed by First-Citizens and filed with the Bankruptcy Court, a copy of which is attached hereto as Exhibit 1.

**THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT ACCOMPANYING THE PLAN.** The Plan sets forth the manner in which the Claims[1] and Interests in the Debtor will be treated. First-Citizens prepared the Disclosure Statement pursuant to Bankruptcy Code section 1125 in connection with its solicitation of votes on the Plan. The purpose of the Disclosure Statement is to provide information of a kind and in sufficient detail to enable the holders of Claims and Interests in impaired classes to make an informed judgment whether to accept or reject the Plan and to inform holders of unclassified Claims and Interests, and Claims and Interests in unimpaired classes of their treatment under the Plan. The Court has not authorized the communication of any information about the Plan other than the information contained in the Disclosure Statement and the related materials transmitted herewith or filed with the Bankruptcy Court.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, a copy of which, without exhibits, is attached hereto as Exhibit 1. To the extent there is any inconsistency between the description contained herein and the terms of the Plan, the terms in the Plan shall govern. Where a particular word (such as "Claim") or term (such as "Allowed Claim" or "Allowed Interest") in this Disclosure Statement, that word or phrase has the meaning ascribed to it in Article I (Definitions and Interpretations) of the Plan. Where, however, a particular word ("claim") or phrase ("allowed claim") is not capitalized herein, that word or phrase should be interpreted consistent with the usage generally in the bankruptcy process.

1    Except as otherwise specifically indicated, the Disclosure Statement does not reflect any

2    events that may occur subsequent to the date hereof.  The delivery of the Disclosure Statement shall

3    not under any circumstance imply that the information herein is correct or complete after the date

4    hereof.  Under no circumstances will the delivery of this Disclosure Statement or the exchange of any

5    rights made in connection with the Plan create an implication or representation that there has been no

6    subsequent change in the information included in this document.  First-Citizens assumes no duty to

7    update or supplement any of the information contained in this document, and it presently does not

8    intend to undertake any such updates or supplements.

9    On December ___, 2010, after notice and a hearing (the "Disclosure Statement Hearing"), the

10    Bankruptcy Court approved the Disclosure Statement as containing "adequate information" of a kind

11    and in sufficient detail to enable a hypothetical, reasonable investor typical of holders of Claims or

12    Interests to make informed judgments about the Plan.  A copy of the Bankruptcy Court's order

13    approving the Disclosure Statement (the "Disclosure Statement Order"), without certain exhibits, is

14    enclosed herewith.[2]  Approval of the Disclosure Statement by the Bankruptcy Court does not indicate

15    that the Bankruptcy Court either reviewed the merits of the Plan or recommends acceptance or

16    rejection of the Plan.

17    For the convenience of all parties, the terms of the Plan are summarized in the Disclosure

18    Statement.  Although First-Citizens believes that the Disclosure Statement accurately describes the

19    Plan, all summaries of the Plan contained in the Disclosure Statement are qualified by the Plan itself,

20    the exhibits thereto, and the documents described therein, which control in the event of any

21    inconsistency with or incompleteness in the summaries provided in the Disclosure Statement. First-

22    Citizens urges each recipient to review carefully the contents of the Disclosure Statement, the Plan,

23    and the other documents that accompany or are referred to in the Disclosure Statement or the Plan

24    before making a decision to accept or reject the Plan.

25

26

27    [2] All exhibits to the Disclosure Statement will be filed with the Bankruptcy Court prior to
the date creditors and equity interest holders are served with the solicitation package.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THIS

2    **DISCLOSURE STATEMENT, THE PLAN, AND THE ANNEXED EXHIBITS IN THEIR**

3    **ENTIRETY.**

4    **II.**

5    **GENERAL DISCLAIMERS AND INFORMATION**

6    Please carefully read this document, the attached exhibits, and the Plan.  These documents

7    explain who may object to confirmation of the Plan, who is entitled to vote to accept or reject the Plan,

8    and the treatment that Claim holders and Interest holders can expect to receive if the Court confirms

9    the Plan.  The Disclosure Statement also describes the Debtor's history, the events precipitating this

10   bankruptcy case, the significant events that occurred during the bankruptcy, some of the things the

11   Court may consider in deciding whether to confirm the Plan, and the effect of Plan confirmation.  It

12   also provides adequate information to assess the Plan's feasibility and how the treatment of each class

13   of creditors under the Plan compares to its treatment under a chapter 7 liquidation.  **The statements**

14   **and information contained in the Plan and the Disclosure Statement, however, do not constitute**

15   **financial or legal advice. You should, therefore, consult your own advisors if you have questions**

16   **about the effect of the Plan on your Claims or Interests.**

17   The statements and information that concern the Debtor and that are set forth in the Plan and

18   this Disclosure Statement constitute the only statements and information that the Court has approved

19   for the purpose of soliciting votes to accept or reject the Plan.  Therefore, no statements or information

20   that are inconsistent with anything contained in this Disclosure Statement are authorized unless

21   otherwise ordered by the Court.

22   The exhibits to this Disclosure Statement listed in the following table are incorporated into this

23   Disclosure Statement by this reference and will be deemed to be included in this Disclosure Statement

24   when they are filed with the Bankruptcy Court.

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | First-Citizens Bank & Trust Company's Plan of Liquidation |
| 2 | Liquidation Analysis[3] |
| 3 | Support Agreement and Joint Escrow Instructions, and |
|  | Purchase and Sale Agreement and Joint Escrow Instructions |
| 4 | Letter from Comerica Bank Dated October 5, 2010 |
| 5 | Monthly Operating Report for September 2010 |
| 6 | Kyoto Grand Hotel and Gardens Management Agreement |

## III.

## WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

This Section contains a general discussion of the rules governing who may vote to accept or reject the Plan. To vote to accept or reject the Plan, your Claim must be both an Impaired Claim/Interest and not a Disputed Claim/Interest and the Plan must provide for you to receive or retain some value. Unimpaired claimants are deemed to have accepted the Plan and do not vote, although they may object to Plan confirmation to the extent they otherwise have standing to do so. Holders of Claims/Interests who do not receive or retain any value under the Plan are deemed to reject the Plan. If you hold only a Disputed Claim/Interest, you may not vote to accept or reject the Plan unless the Court grants you authority to vote on the Plan. As defined by the Bankruptcy Code, a claim generally includes all rights to payment from a debtor, while an interest generally represents an ownership stake in the debtor. Section X sets forth the classification of Claims/Interests under the Plan.

## A.    ALLOWED CLAIMS AND INTERESTS

With the exceptions explained below, under the Bankruptcy Code, a claim or interest is generally allowed only if proof of the claim or interest is properly filed before any bar date and either

---

[3] The Liquidation Analysis attached hereto is based upon the statements and admissions of the Debtor concerning the value of the Hotel and Weller Court in previously filed documents with this Court. These figures do not represent an admission or concession on the part of First-Citizens regarding the fair market value of either the Hotel or Weller Court.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  no party in interest has objected or the Court has entered an order allowing the claim or interest.[4]

2  Under certain circumstances provided in the Bankruptcy Code, a creditor may have an allowed claim

3  even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  For

4  example, a claim may be deemed allowed if the claim is listed on a debtor's schedules and is not

5  scheduled as disputed, contingent, or unliquidated.  Similarly, an interest may be deemed allowed if it

6  is included on the list of equity security holders filed by the debtor with the court and is not scheduled

7  as disputed.

8      A holder's Claim or Interest must be an Allowed Claim or Interest for purposes of voting for

9  such Claim or Interest to have the right to vote on the Plan.  Generally, for voting purposes, a Claim or

10  Interest is deemed Allowed if:  (i) a proof of Claim or Interest was timely filed; or (ii) if no proof of

11  Claim or Interest was filed, the Claim or Interest is identified in the Schedules as other than Disputed,

12  "contingent," or "unliquidated."

13      Under the Plan, a creditor or partner whose Claim or Interest is not Allowed may still be

14  entitled to vote to accept or reject the Plan, if the Claim holder or Interest holder has timely filed a

15  proof of Claim or Interest and that proof of Claim or Interest is not the subject of either an objection

16  filed before the Confirmation Hearing Date or an order disallowing the Claim entered before the

17  Confirmation Hearing Date.  An entity whose Claim or Interest is subject to an objection is not

18  eligible to vote on the Plan unless and until that objection is resolved in the entity's favor or, after

19  notice and a hearing under Bankruptcy Rule 3018(a), the Court temporarily allows the entity's Claim

20  or Interest for the purpose of voting to accept or reject the Plan.  **If an entity objects to your Claim**

21  **or you have not filed a proof of Claim and your Claim is identified in the Schedules as a**

22  **Disputed Claim or a "contingent" or "unliquidated" Claim, then your vote will not be counted**

23  **to accept or reject the Plan unless you obtain an order of the Court on or before the voting**

24  **deadline allowing your Claim for voting purposes. The Court has fixed January __, 2011 as the**

25  **last day for timely filing of a motion to allow a Disputed Claim for voting purposes. Timely filed**

---

27  [4] *See* Section VIII.G for specific information regarding the Bar Date in the bankruptcy case.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  motions to allow a Claim for voting purposes will be heard on or before January __, 2011.  No

2  vote may be cast by the holder of a Claim subject to objection or listed as disputed,

3  "contingent," or "unliquidated" on the Debtors' Schedules unless an order of the Court

4  allowing such Claim for voting purposes is entered on or before January __, 2011.

5  **B.    IMPAIRED CLAIMS AND INTERESTS**

6      Under the Bankruptcy Code, a class of claims or interests is impaired if the plan alters the

7  legal, equitable, or contractual rights of the members of the class, even if the alteration is beneficial to

8  the creditors or interest holders.  A contract provision that entitles a creditor to accelerated payment

9  upon default, however, does not necessarily render a claim impaired, even if the debtor defaulted and

10 the plan does not provide the creditor with accelerated payment.  Instead, the claim is deemed

11 unimpaired if the plan cures the default, reinstates the maturity of the claim as it existed before the

12 default, and compensates the creditor for any damages incurred as a result of reasonable reliance upon

13 the acceleration provision.  Section X identifies, among other things, the Classes of Claims and

14 Interests that First-Citizens believes to be impaired under the Plan.

15     Classes 2, 4, 5, 6, and 7 are impaired and, therefore, entitled to vote on the Plan.  Classes 1 and

16 3 are unimpaired, not entitled to vote on the Plan, and deemed to accept the Plan.  Entities holding

17 Administrative and Priority Claims are not classified and are, therefore, not entitled to vote on the

18 Plan.

19     **Any party that disputes First-Citizens' characterization of its Claim or Interest as**

20 **unimpaired may request a finding of impairment from the Court to obtain the right to vote.**

21 **January __, 2011 is the last day for timely filing a motion to determine impaired status of a**

22 **Claim designated as unimpaired under the Plan.  Timely filed motions to determine impaired**

23 **status of a Claim designated as unimpaired under the Plan will be heard on or before January**

24 **__, 2011.  No vote may be cast by the holder of a Claim designated as unimpaired unless an**

25 **order of the Court determining such Claim to be impaired is entered on or before January __,**

26 **2011.**

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

## IV.

### <u>VOTES NECESSARY TO CONFIRM THE PLAN</u>

Under the Bankruptcy Code, impaired claims and interests are placed in classes under a plan, and it is each class that accepts or rejects that plan. Secured claims are separately classified from unsecured claims, while a creditor with a claim that is partially secured and partially unsecured may vote in both capacities.[5] There are also some types of claims that are unclassified because the Bankruptcy Code requires that they be treated a certain way. These claims are considered unimpaired, and their holders cannot vote to accept or reject the plan.

A bankruptcy court may confirm a plan if at least one class of impaired claims has voted to accept the plan (without counting the votes of any insiders whose claims are classified within that class) and if certain statutory requirements are met both as to non-consenting members within a consenting class and as to dissenting classes. A class of claims has accepted the plan only when at least a majority in number and at least two-thirds in amount of the allowed claims actually voting in that class vote to accept the plan. A class of interests has accepted the plan only when at least two-thirds in amount of the allowed interests actually voting in that class vote to accept the plan.

Even if First-Citizens receives the requisite number of votes to confirm the Plan, the Plan will not become binding unless and until, among other things, the Court makes an independent determination that confirmation is appropriate. This determination will be the subject of the upcoming Confirmation Hearing. Also, even if all Classes do not vote to accept the Plan, the Plan may nonetheless be confirmed if the dissenting Classes are treated in a manner prescribed by the Bankruptcy Code, as set forth in more detail in Section VI.

## V.

### <u>VOTING INSTRUCTIONS</u>

Please use only the ballot sent to you with this Disclosure Statement in voting to accept or reject the Plan, and please carefully read the voting instructions on the ballot for an explanation of the

---

[5] *See* Federal Rule of Bankruptcy Procedure 3018(d).

1  applicable voting procedures and deadlines.  After reviewing this Disclosure Statement, if you believe

2  that you hold an Impaired Claim or Interest and that you are entitled to vote on the Plan but you did

3  not receive a ballot, or if your ballot is damaged or lost, please send a written request for a ballot to the

4  Ballot Tabulator at the following address:

5         Michael J. Gomez, Ballot Tabulator

6         Frandzel Robins Bloom & Csato, L.C.

       6500 Wilshire Boulevard, 17th Floor

7         Los Angeles, CA 90048

       Facsimile: (323) 852-1000

8

9      If you wish to vote to accept or reject the Plan, your ballot must be <u>received</u> by the Ballot

Tabulator at the address listed immediately above by no later than 5:00 p.m. Pacific Time, on January

10  __, 2011.  If the Ballot Tabulator does not timely receive your ballot, your ballot will not be counted.

11  Ballots must be provided to the Ballot Tabulator by mail, overnight delivery, messenger, or facsimile;

12  ballots sent by email will not be accepted by the Ballot Tabulator and will not be counted in tabulating

13  votes accepting or rejecting the Plan.

14  **VI.**

15  **<u>CRAMDOWN: TREATMENT OF NON-CONSENTING CLASSES</u>**

16      Even if all classes do not consent to the proposed treatment of their claims and interests under

17  a plan, that plan may, nonetheless, be confirmed if the dissenting classes are treated in the manner

18  prescribed by the Bankruptcy Code.  The process by which dissenting classes are forced to abide by

19  the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Code allows dissenting

20  classes to be crammed down if the plan does not "discriminate unfairly" and is "fair and equitable."

21  The Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum

22  requirements for "fair and equitable" treatment.  For a class of secured claims, "fair and equitable" can

23  mean that the secured claimants retain their liens and receive deferred cash payments whose present

24  value equals the value of their interest in collateral.  For a class of unsecured claimants, a plan is fair

25  and equitable if the claims in that class receive reorganization value equal to the allowed amount of the

26  claims, or, if the unsecured claimants' claims are not fully satisfied, no claim or interest that is junior to

27  their claims receives or retains anything under the plan.

28

1    Accordingly, if a class of general unsecured claims votes against a plan—unless the plan

2   provides that the class of general unsecured claims receives reorganization value equal to the allowed

3   amount of the claims in that class—the plan cannot be confirmed where a class of interest holders

4   (e.g., partners) will receive or retain any property under the plan.  These are complex statutory

5   provisions, their judicial interpretation has evolved through an extensive body of case law, and the

6   preceding paragraphs do not purport to state or explain fully the applicable statutes or case law.

7                                              **VII.**

8                     **WHO MAY OBJECT TO PLAN CONFIRMATION**

9    A hearing has been scheduled for February ___, 2011 at ___ a.m./p.m. Pacific Time in

10   Courtroom 1668 of the Royal Federal Building, 255 East Temple Street, Los Angeles, California to

11   determine whether the Court will confirm the Plan.  If, after receiving the ballots, it appears that

12   entities holding a sufficient number and amount of Claims and Interests have voted to accept the Plan,

13   the First-Citizens will file a memorandum of points and authorities supporting the entry of an order

14   confirming the Plan.  This memorandum will be served on the U.S. Trustee; counsel for the Creditors'

15   Committee; counsel for the Debtor; and all entities entitled to special notice.

16    Any party-in-interest in this bankruptcy case—including any creditor or partner who voted (or

17   was deemed to have voted) to accept or reject the Plan—may file an objection to Plan confirmation.

18   Any such objection must be filed and served on the Debtor and their counsel; the U.S. Trustee;

19   counsel for the Creditors' Committee; and counsel for First-Citizens no later than fourteen (14) days

20   before the Confirmation Hearing Date (i.e., no later than January __, 2011).  Oppositions to

21   assumptions or rejections of executory contracts or unexpired leases under the Plan must be Filed and

22   served in accordance with Article IX of the Plan.  **Failure to properly and timely file an opposition to**

23   **Plan confirmation may be deemed to be consent to the Plan's confirmation.**  If you wish to obtain

24   more information, you should contact the following person in writing:

25                     Frandzel Robins Bloom & Csato, L.C.
                      Attn: Michael J. Gomez, Esq.
26                     6500 Wilshire Boulevard, 17th Floor
                      Los Angeles, CA 90048
27                     Facsimile: (323) 852-1000

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# VIII.

## HISTORY OF THE DEBTOR AND THE BANKRUPTCY CASE

### A.    THE DEBTOR'S BUSINESS

The Debtor was formed during 2007 to own and operate a 21-story, 434 guestroom hotel with meeting rooms and a restaurant (the "Hotel") and an adjacent 3-story, outdoor mall ("Weller Court") in the "Little Tokyo" area of Downtown Los Angeles. The Hotel is located at 120 South Los Angeles Street and Weller Court is located at 227 East Second Street.

The Hotel is managed by Crestline Hotels & Resorts Inc. ("Crestline"), an independent hospitality management company headquartered in Fairfax, Virginia. Crestline provides hospitality management services to the Hotel through a management agreement with the Debtor and is paid a monthly management fee of 2.5% of the Hotel's revenues. Under the management agreement, Crestline is appointed as the Debtor's exclusive agent to supervise, direct, and control the management and operation of the Hotel. As the Debtor's agent, Crestline contracts with third party vendors on behalf of the Hotel, and the Hotel's pre-petition bank accounts were in the name of Crestline. Notwithstanding that certain business transactions took place in the name of Crestline, all obligations were incurred on behalf of the Hotel and all cash in the Hotel's bank accounts constitutes revenue from the Hotel's business operations.

According to the Debtor, the Debtor has no employees of its own with respect to the Hotel. The approximately 175 employees who work at the Hotel (including full-time, part-time, and on-call employees) are all employees of Crestline. The Debtor reimburses Crestline for all services, wages, and benefits of these employees on a bi-weekly basis. In addition to the services provided to the Hotel by Crestline, the Hotel also subcontracts out with third parties for a variety of other services, including those related to parking, security, and engineering.

Immediately adjacent to the Hotel is Weller Court, a three-story outdoor mall. Weller Court has approximately 30 tenants, including retailers, restaurants, and a supermarket. Weller Court is managed by Everest IV, LLC ("Everest IV"), an affiliated company that shares the same ultimate equity investors as the Debtor, through a management agreement. Prior to the Petition Date, the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    Debtor paid to Everest IV, LLC a monthly fee of 4% to 4.5% of gross receipts, which is a fair market

2    fee in the real property management industry. Everest IV agreed to defer payment of its current

3    property management fee of 4% at least through December 3, 2010.

4         Weller Court's day-to-day operations are maintained by the services of two employees, on a

5    part-time basis, who provide basic janitorial and maintenance services. These employees are

6    employed and paid by Center Medical Building, LLC ("CMB"). CMB and the Debtor also share the

7    same ultimate equity investors as Everest IV. Although the Debtor has not entered into any formal

8    agreement with CMB, the Debtor has historically reimbursed CMB for the Debtor's allocable share of

9    the employment related expenses of these two Employees, based on the services that these employees

10   provide to Weller Court. This is approximately $12,000 per month.

11   **B.      OBLIGATIONS SECURED BY THE DEBTOR'S ASSETS**

12        Pursuant to that certain Business Loan Agreement dated as of August 10, 2007 (the "Original

13   Loan"), First Regional Bank ("FRB") loaned to the Debtor the original principal sum of $44,000,000.

14   The Original Loan was secured by a Deed of Trust on both the Hotel and Weller Court, which were

15   part of a single legal lot at the time.

16        The equity owners of the Debtor guaranteed the Original Loan (the "Guaranty"). Under the

17   terms of the Guaranty, the obligations thereunder would be released upon the Hotel and Weller Court

18   achieving a debt service coverage ratio of not less than 1.25 to 1.0 for two consecutive quarters. The

19   Debtor and the guarantors provided financial statements to FRB in August 2008, alleging to

20   demonstrate that the Debtor had met this ratio for the first two quarters of 2008. FRB relied on these

21   representations and agreed that the Debtor had met this ratio during the first two quarters of 2008 and

22   released all obligations under each of the guaranties in December 2008. These representations,

23   however, are in dispute and are the subject of a pending adversary proceeding between First-Citizens

24   and the guarantors.

25        In August 2009, the Debtor divided the Hotel and Weller Court into two legal lots¬one for the

26   Hotel and one for Weller Court-and refinanced its loan obligation to FRB. In November 2009, the

27   Debtor entered into a new loan transaction with FRB under which the Debtor borrowed $33,600,000

28   and granted FRB a first priority Deed of Trust on the Hotel to secure the new loan (the "Prepetition

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    Bank Hotel Note"). The proceeds of the Prepetition Bank Hotel Note were paid to FRB in partial

2    satisfaction of the Original Loan, and FRB released the Deed of Trust on the Hotel which secured the

3    Original Loan. The remaining balance owing on the Original Loan in the amount of $10,400,000 is,

4    therefore, now secured only by Weller Court, the "Bank's Weller Note" (subject to the outcome of the

5    pending adversary proceeding).

6        On January 29, 2010, FRB was closed by the California Department of Institutions, and the

7    Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver. First-Citizens acquired

8    the Prepetition Bank Hotel Note and Bank's Weller Note from the FDIC.

9        First-Citizens believes the Debtor and the guarantors provided false and misleading financial

10    statements regarding the Hotel and Weller Court achieving a debt service coverage ratio in order to

11    obtain a release of the Guaranty. As a result, First-Citizens alleges that the Debtor and the guarantors

12    procured a release of the Guaranty by fraud. First-Citizens asserts that the Debtor's failure to meet the

13    financial covenants led to a non-monetary default under the Original Loan and the Prepetition Bank

14    Hotel Note. First-Citizens claims that the non-monetary default is an incurable default and that it is

15    accordingly entitled to interest at the default rates under the Original Loan and the Prepetition Bank

16    Hotel Note.

17        As of the Petition Date, the outstanding amount due and owing under the Bank's Weller Note

18    was $10,400,000.00 and the outstanding principal amount due and owing under the Prepetition Bank

19    Hotel Note was $33,580,415.83.

20        On July 13, 2010, Excell Investment Group, LLC ("Excell") funded a $300,000.00 secured loan

21    to the Debtor in order to fund the chapter 11 retainer payable to the Debtor's insolvency counsel. The

22    Excell loan is secured by a second priority Deed of Trust on Weller Court, which is subordinate to the

23    Bank's first priority deed of trust on Weller Court.

24    **C.    THE ADA LITIGATION**

25        On March 1, 2010, two alleged disabled individuals filed a lawsuit in federal court in Los

26    Angeles styled Hugh Marsh and Neva Lema, Plaintiffs v. Grand Kyoto Hotel; Little Tokyo Partners,

27    L.P.; Little Tokyo Partners, LLC; Crestline Hotels And Resorts, Inc.; and DOES 1 THROUGH 50,

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  Inclusive, Defendants, U.S.D.C. C.D. Cal. Case No. CV 10-1511 PA (AGRx) (the "ADA

2  Litigation").[6]

3      Mr. Marsh and Ms. Lema ("Plaintiffs") alleged that the defendants own, operate or lease the

4  Kyoto Grand Hotel (the "Hotel") and that the Hotel does not comply with the Americans with

5  Disabilities Act ("ADA") and its supporting regulations and standards and analogous California laws,

6  regulations and standards. Among other things alleged in the ADA Litigation, Plaintiffs seek the

7  remediation of portions of the Hotel so that it would be brought into full compliance with current

8  applicable standards under the ADA and analogous California law. Plaintiffs also continue to seek

9  vast remediation of multiple elements and features of the Hotel, including: the guestrooms; the path of

10 travel from the public sidewalk to the front entrance; the parking lot; the registration desk; the

11 Japanese Gardens; and the hotel restrooms. The Plaintiffs also seek to recover damages for each of the

12 two Plaintiffs and the attorneys' fees and costs incurred in bringing and prosecuting the ADA Action.

13     The Debtor and the other defendants in the ADA Action ("Defendants") dispute many of

14 Plaintiffs' allegations, principally on the ground that the Hotel complied with then-applicable disability

15 access laws, regulations and standards when it was constructed in 1977 and that any subsequent

16 alterations to the Hotel did not trigger an obligation to comply with those laws, at least not with

17 respect to the elements or features of the Hotel as to which Plaintiffs complain. Defendants believe

18 that, given the severe losses at which the Hotel has been operating, it is not "readily achievable" for

19 the Debtor to perform most, if not all, of the remediation that Plaintiffs seek.

20     On the basis of an agreement entered into between Crestline and the Debtor, the Debtor had

21 previously agreed to defend Crestline in the ADA Action and indemnify it against all losses.

22     The ADA Litigation has been stayed as a result of the filing of bankruptcy by the Debtor.

23

24

25 _____

26     [6] The ADA Litigation was since re-assigned from the Honorable Percy Anderson to the

27 Honorable Josephine Stanton Tucker, District Judge, changing the Case Number to CV 10-1511
JST(AGRx).

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    **D.    EVENTS LEADING UP TO THE DEBTOR'S CHAPTER 11 FILING**

2         The Debtor's financial performance was materially impacted by the continuing deterioration in

3    the overall economy and the resulting decline in the business and leisure travel market.  The Debtor

4    defaulted under the Prepetition Bank Hotel Note in January 2010.  The Debtor, however, remained

5    current on the Original Loan through the Petition Date.

6         To enforce its rights, First-Citizens commenced non-judicial foreclosure proceedings against

7    both the Hotel and Weller Court.  First-Citizens also filed a Complaint in California State Court (the

8    "State Court Complaint").  In the State Court Complaint, First-Citizens sought, among other things,

9    judicial foreclosure and the appointment of a Receiver for both the Hotel and Weller Court.  First-

10   Citizens scheduled a non-judicial foreclosure sale for the morning of July 16, 2010.  The Debtor

11   commenced this bankruptcy case on July 15, 2010.

12   **E.    EVENTS DURING THE CHAPTER 11 CASE**

13        This bankruptcy has been pending for six months.  At an initial hearing, the Court granted the

14   Debtor the authority to use cash collateral on an interim basis, which authority was formalized

15   pursuant to a Court order entered on August 2, 2010.  On August 24, 2010, the Court extended its

16   interim order by granting the Debtor the authority to use cash collateral through December 3,2010 on

17   a final basis, subject only to the right of the Official Committee of Unsecured Creditors (the

18   "Committee") to object to the Debtor's use of cash collateral by no later than September 10, 2010.

19   The Committee, Excell, and First-Citizens subsequently stipulated to the Debtor's use of cash

20   collateral through December 17, 2010.

21        On August 2, 2010, First-Citizens filed its "Notice of Removal of Civil Action Under 28

22   U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027(a)," in which it removed the State

23   Court Action to the Bankruptcy Court.  First-Citizens filed its "Verified First Amended Complaint"

24   with the Bankruptcy Court (the "Complaint") on August 3, 2010, in which it set forth the various

25   causes of action contained in the Complaint, thereby initiating adversary proceeding number 2:10-ap-

26   02412-BR (the "Adversary Proceeding").

27

28

778195.2 | 100102-0083                                    15

1    On August 13, 2010, the Office of the United States Trustee ("OUST") appointed the

2  Committee in the case. Members of the Committee are: Waxie Sanitary Supply Co., RoomService

3  Amenities, and Able Engineering Services.

4    On August 31, 2010, the Debtor filed a Disclosure Statement and Plan of Reorganization. The

5  Debtor filed an Amended Disclosure Statement on August 31, 2010. On October 5, 2010, the Debtor

6  filed a Second Amended Disclosure Statement and an Amended Plan of Reorganization.   On

7  November 30, 2010, the Debtor filed a Second Amended Plan of Reorganization.

8  **F.      RETENTION OF PROFESSIONALS**

9    The Debtor obtained authority to employ Stutman, Treister & Glatt Professional Corporation

10  as reorganization counsel for the Debtor. The Debtor also obtained authority to employ Troutman

11  Sanders, LLP as litigation counsel. The Committee sought authorization, but has not obtained Court

12  approval, to employ Arent Fox LLP as attorneys for the Committee. The Debtor sought authorization,

13  but has not obtained Court approval, to employ Colliers PKF Consulting USA as real estate consultant

14  for the Debtor.

15  **G.      SCHEDULES AND STATEMENTS OF AFFAIRS AND BAR DATE**

16    On July 29, 2010, the Debtor filed its Schedules of Assets and Liabilities, as well as its

17  Statements of Financial Affairs (together, the "Schedules"). On August 26, 2010, the Debtor filed a

18  Motion requesting that the Court set certain claims bar dates by which proofs of claim based on

19  prepetition debts or liabilities against the Debtor must be filed by creditors. The Debtor sent a notice

20  of the claims bar dates (the "Claims Bar Date Notice"). The general claims bar date is December 10,

21  2010. Filing proofs of claim is a separate obligation from voting on the Plan. It is important that you

22  read the Claims Bar Date Notice and the Court order setting the Claims Bar Dates to determine if you

23  need to file a proof of claim. On September 17, 2010, the Debtor filed its Amended Schedules D, E,

24  F, and G.

25  **H.      POST-PETITION OPERATIONAL PERFORMANCE OF THE DEBTOR**

26    According to the Debtor's Monthly Operating Report for September 30, 2010, attached hereto

27  as Exhibit 5, the Debtor lost $157,130.53 for the month of September, 2010, and has a cumulative

28  post-petition loss of $2,588.35. The profit and loss statement attached to the Debtor's monthly

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  operating report is on an accrual basis only and does not reflect any payment of the obligation to First-

2  Citizens.

3  **I.     ACCOUNTING INFORMATION**

4       The financial information contained herein was obtained exclusively from the filings made by

5  the Debtor and has not been independently audited or verified by First-Citizens.

6  **J.     COLLECTABILITY OF ACCOUNTS RECEIVABLE**

7       According to the Debtor's September 30, 2010 Monthly Operating Report (Exhibit 5), the

8  Debtor had $551,177.51 in accounts receivable.   First-Citizens does not have any independent

9  knowledge as to what amount, if any, of these accounts receivable are collectible.

10  **K.     DEBTOR'S CAUSES OF ACTION**

11       According to the Debtor, it is not aware of any causes of action or preferences or fraudulent

12  transfers of significance. The Debtor has further represented that it does not anticipate bringing in any

13  preferential transfer actions but reserved the right to do so.

14  **IX.**

15  **ALTERNATIVES TO CONFIRMATION OF THE PLAN**

16       First-Citizens evaluated the most likely alternative to the Plan: a foreclosure sale of the Hotel

17  and Weller Court by First-Citizens, and has concluded that the Plan is the best alternative, and

18  confirmation of the Plan will maximize recoveries by parties in interest.   Among other things,

19  converting the bankruptcy case from chapter 11 to a chapter 7 liquidation would require significant

20  administrative costs and would require First-Citizens to forfeit the opportunity to create substantial

21  value from the sale of the Hotel and Weller Court in accordance with the terms of the Plan. First-

22  Citizens believes that the Plan fairly adjusts the rights of various Classes of creditors and interest

23  holders consistent with the distribution scheme embodied in the Bankruptcy Code and enables such

24  parties to realize the most possible under the circumstances.

25  **X.**

26  **SUMMARY OF PLAN OF LIQUIDATION**

27       The Plan contemplates a sale of the Hotel and Weller Court to Seville-Gateway Investments,

28  LLC ("Seville") or another qualified third party for the sum of not less than $44 million on the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA  90048-4920
(323) 852-1000

Effective Date. First-Citizens asserts two Secured Claims against the Hotel and Weller Court. Excell asserts a Secured Claim against Weller Court which shall be paid in full through the sale.

First-Citizens shall allocate $1,500,000 due to it from the sale in order to pay: (1) $450,000 in allowed administrative and priority unsecured claims; (2) $50,000 for post-confirmation administrative costs in objecting to claims; (3) $1,000,000 for allowed general unsecured claims. Any allowed claims arising from the ADA Litigation shall be treated as general, unsecured claims. All executory contracts and unexpired leases shall be rejected, except for the management agreement with Crestline Hotels and Resorts, Inc. ("Crestline"), attached as Exhibit 6. Crestline's executory contract shall be assumed and assigned to Seville or a successful third party purchaser. First-Citizens shall allocate sufficient funds due to it from the sale to pay the costs to cure Crestline's executory contract (the "Cure Costs"). The allowed claims arising from the rejected executory contracts and unexpired leases shall be treated as general, unsecured claims.

The Limited Partner and General Partner in the Debtor will receive no distribution on account of their existing partnership interests unless the sale generates sufficient proceeds to pay First-Citizens in full after repaying First-Citizens for its $1,500,000 and Cure Costs allocation, and after paying all allowed general unsecured claims in full with interest at the Judgment Rate calculated from the Effective Date. The partnership interests will be cancelled and the Debtor will be wound down on the Effective Date. To effectuate the Plan, First-Citizens reserves the right to elect to be fully secured pursuant to Bankruptcy Code § 1111(b) through the Effective Date.

First-Citizens believes that through the Plan, general, unsecured claimants will obtain a greater recovery than would be available if the Debtor's assets were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

**THE DESCRIPTION OF THE PLAN SET FORTH HEREIN IS ONLY A SUMMARY OF SOME OF THE MATERIAL PROVISIONS OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN, THE TERMS OF WHICH ARE CONTROLLING OVER THE SUMMARY SET FORTH BELOW.** The Plan is attached hereto as Exhibit 1 and is made a part of this Disclosure Statement.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**A.    SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS UNDER THE PLAN**

The following discussion summarizes the classification and treatment of Claims and Interests under the Plan.

**1.    Unclassified Claims - Administrative And Priority Tax Claims**

In accordance with section 1123( a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified under the Plan. The treatment of these Administrative Claims and Priority Tax Claims is specified in Article IV of the Plan.

**(a)    <u>Administrative Claims</u>**

**(i)    Nature and Amounts.**

Administrative Claims are generally comprised of the actual and necessary costs and expenses of preserving the Estate and operating the business of the Debtor after the Petition Date. Because Administrative Claims result from matters that occur after the Petition Date, First-Citizens is not presently in a position to estimate the total amount of Administrative Claims that will eventually be allowed in the bankruptcy. All insurance premiums that have come due following the Petition Date relating to policies covering the Debtor have been paid current.

There are three types of Administrative Claims. The first type consists of debt incurred by the Debtor in the ordinary course of its business (other than tax claims) since the Petition Date, including operating expenses. Holders of these types of Administrative Claims will not be required to file any requests for payment of such claims. Except for claims of the U.S. Trustee, such Administrative Claims shall be assumed and paid by the Debtor pursuant to the terms and conditions of a particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claim.

The Post-Confirmation Committee will pay all pre-confirmation fees owed to the U.S. Trustee on the Effective Date of the Plan. After confirmation, First Citizens will file with the Court and serve on the United States Trustee quarterly financial reports in a format prescribed by the U.S. Trustee and pay post-confirmation quarterly fees to the United States Trustee until a final decree is entered, or the case is converted or dismissed.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  The second type of Administrative Claim consists of Administrative Claims of governmental

2 units for taxes and penalties and/or interest on such taxes.  First-Citizens does not anticipate any

3 material Allowed Administrative Claims related to taxes that will not be satisfied by the Debtor in the

4 ordinary course of its operation after the Petition Date.  The Debtor has paid current all property tax

5 claims that have come due following the Petition Date.  Real property taxes for the 2010-2011 fiscal

6 year have not yet come due.

7  The third type of Administrative Claim consists of claims for fees and expenses as allowed by

8 Order of the Bankruptcy Court for professionals employed by the Debtor.  All compensation awarded

9 to professionals under the Bankruptcy Code must be approved by the Bankruptcy Court.

10    **(ii)**  **Deadlines.**

11  Other than non-tax liabilities incurred in the ordinary course of business by the Debtor,

12 requests for payment of Administrative Claims must be filed no later than 60 days after the Effective

13 Date.  Any Holder of an Administrative Claim that is required to file a request for payment of such

14 claim and that does not file such a request by the applicable bar date shall be forever barred from

15 asserting such claim against the Debtor, its Estate, Seville, any other third party purchaser, any other

16 person or entity, or any of their respective property.

17    **(iii)**  **Treatment.**

18  Subject to the applicable bar date provisions, each holder of an Allowed Administrative Claim

19 shall receive, on account of the Allowed Administrative Claim and in full satisfaction thereof, Cash

20 equal to the amount of such Allowed Administrative Claim, unless the holder agrees or shall have

21 agreed to other treatment of such claim.  Payment on an Allowed Administrative Claim incurred in the

22 ordinary course of business will not be made until such payment otherwise would become due in the

23 ordinary course of the Debtor's business.    Distributions on non-ordinary course Allowed

24 Administrative Claims shall occur on the later of the Effective Date or as soon as practicable after the

25 day upon which such claim becomes an Allowed Claim, but in no event more than thirty (30) days

26 after entry of a Final Order allowing such claim.

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

## 2. Priority Tax Claims

Priority Tax Claims are comprised of claims of federal, state and local governmental units for taxes, interest and penalties for certain periods specified in section 507(a) of the Bankruptcy Code. First-Citizens is unaware of any Priority Tax Claims that are likely to be material other than the claim of the State Board of Equalization in the approximate amount of $37,810.00. In accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim shall receive, on account of the Allowed Priority Tax Claim and in full satisfaction thereof, Cash equal to the amount of such Allowed Priority Tax Claim, unless the holder agrees or shall have agreed to other treatment of such claim. Payment on Allowed Priority Tax Claims shall occur not later than 30 days after the later of (i) the Effective Date or (ii) the date its claim becomes an Allowed Claim.

## 3. Classified Claims and Interests

The following is a designation of the classes of Claims and Interests under the Plan.

### (a) Secured Claims

#### (i) Secured Tax Claims (Class 1).

Class 1 consists of all Claims that are Secured Tax Claims. First-Citizens does not believe there are any Class 1 Claims. If there are any Class 1 Claims, Class 1 is unimpaired under the Plan. The holder of each Allowed Class 1 Claim will receive, on account of the Allowed Secured Tax Claim and in full satisfaction thereof, Cash equal to the amount of such Allowed Secured Tax Claim, unless the holder agrees or shall have agreed to other treatment of such claim. Payment on Allowed Secured Tax Claims shall occur 30 days after the later of (i) the Effective Date or (ii) the date its claim becomes an Allowed Claim. The liens of Class 1 Claims shall be released on the Effective Date. Because Class 1 is unimpaired under the Plan, Class 1 shall be deemed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f).

#### (ii) First-Citizens' Secured Weller Court Claim (Class 2).

Class 2 consists of First-Citizens' Claims that are secured by Weller Court. Class 2 is impaired under the Plan. First-Citizens will receive, on account of its Allowed Class 2 Claim, Cash equal to the amount of such Allowed Secured Claim, unless First-Citizens agrees or shall have agreed

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   to other treatment of such claim.  First-Citizens shall allocate sufficient Cash due to it from Class 2

2   and Class 4 to pay the Cure Costs and $1,500,000 for: (1) $450,000 in administrative claims and

3   priority tax claims; (2) $50,000 for post-confirmation administrative costs in objecting to claims; (3)

4   $1,000,000 for Class 5; and (4) the Cure Costs.  If sufficient Cash exists for: (a) First-Citizens'

5   Secured Weller Court Claim; (b) Excell's Secured Weller Court Claim; (c) First-Citizens' Secured

6   Hotel Claim; (d) the break-up costs for Seville which shall not exceed $800,000, if applicable; (e) the

7   Cure Costs; and (f) $1,500,000, the $1,500,000 and the amount of the Cure Costs shall be paid to

8   First-Citizens on account of its Allowed Class 2 Claim and Allowed Class 4 Claim.  Any additional

9   Cash in excess of (a), (b), (c), (d), (e), and (f) shall be paid to Class 5, Class 6, and Class 7, as

10  described below.  If sufficient Cash exists to satisfy (a), (b), (c), (d) only, any Cash in excess of (a),

11  (b), (c), (d), and less than $1,500,000 and the amount of the Cure Costs shall be paid to First-Citizens

12  on account of its Allowed Class 2 Claim and Allowed Class 4 Claim.

13          Payment on the Allowed Secured Claims shall occur on the Effective Date.  The liens of Class

14  2 Claims shall be released on the Effective Date.  Because Class 2 is impaired under the Plan, Class 2

15  shall be entitled to vote on the Plan.

16          **(iii)     Excell's Secured Weller Court Claim (Class 3).**

17          Class 3 consists of Excell's Claims that are secured by Weller Court.  Class 3 is unimpaired

18  under the Plan.  Excell will receive, on account of its Allowed Class 3 Claim and in full satisfaction

19  thereof, Cash equal to the amount of such Allowed Secured Claim, unless Excell agrees or shall have

20  agreed to other treatment of such claim.  Payment on the Allowed Secured Claims shall occur 30 days

21  after the later of (i) the Effective Date or (ii) the date its claim becomes an Allowed Claim.  The liens

22  of Class 3 Claims shall be released on the Effective Date.  Fourteen days (14) days before the

23  Confirmation Hearing, Excell shall file with the Court and serve on Debtors' counsel, Committee's

24  counsel, and First-Citizens' counsel the anticipated amount of its claim for attorney's fees or costs,

25  other costs of collection, or for any kind of interest, penalty, fee overcharge not provided for Excell in

26  the Plan as of the Effective Date, and shall file with the Court and serve on Debtors' counsel,

27  Committee's counsel, and First-Citizens' counsel a statement providing the details and basis for such

28

1  claim.  Because Class 3 is unimpaired under the Plan, Class 3 shall be deemed to have accepted the

2  Plan pursuant to Bankruptcy Code § 1126(f).

3          **(iv)    First-Citizens' Secured Hotel Claim (Class 4).**

4          Class 4 consists of First-Citizens' Claims that are secured by the Hotel.  Class 4 is impaired

5  under the Plan.  First-Citizens will receive, on account of its Allowed Class 4 Claim, Cash equal to the

6  amount of such Allowed Secured Claim, unless First-Citizens agrees or shall have agreed to other

7  treatment of such claim.  First-Citizens shall allocate sufficient Cash due to it from Class 2 and Class 4

8  to pay the Cure Costs and $1,500,000 for: (1) $450,000 in administrative claims and priority tax

9  claims; (2) $50,000 for post-confirmation administrative costs in objecting to claims; (3) $1,000,000

10 for Class 5; and (4) the Cure Costs.  If sufficient Cash exists for: (a) First-Citizens' Secured Weller

11 Court Claim; (b) Excell's Secured Weller Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the

12 break-up costs for Seville which shall not exceed $800,000, if applicable; (e) the Cure Costs; and (f)

13 $1,500,000, the $1,500,000 and the amount of the Cure Costs shall be paid to First-Citizens on

14 account of its Allowed Class 2 Claim and Allowed Class 4 Claim.  Any additional Cash in excess of

15 (a), (b), (c), (d), (e), and (f) shall be paid to Class 5, Class 6, and Class 7, as described below.  If

16 sufficient Cash exists to satisfy (a), (b), (c), and (d) only, any Cash in excess of (a), (b), (c), (d) and

17 less than $1,500,000 and the amount of the Cure Costs shall be paid to First-Citizens on account of its

18 Allowed Class 2 Claim and Allowed Class 4 Claim.

19         Payment on the Allowed Secured Claims shall occur on the Effective Date.  The liens of Class

20 4 Claims shall be released on the Effective Date.  Because Class 4 is impaired under the Plan, Class 4

21 shall be entitled to vote on the Plan.

22         **(b)    Unsecured Claims and Interests**

23                 **(i)    General Unsecured Claims (Class 5).**

24         Class 5 consists of all Non-Priority, Unsecured Claims, including allowed claims arising from

25 the ADA Litigation and allowed claims arising from the rejected executory contracts and unexpired

26 leases.  Class 5 is impaired under the Plan.  Each holder of an Allowed Class 5 Claim will receive, on

27 account of its Allowed Class 5 Claim and in full satisfaction thereof, Cash equal to its pro rata amount

28 of $1,000,000 based upon the total Allowed Class 5 Claims.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    According to the Debtor's Schedules, there are $2,838,233.74 in liquidated, undisputed, non-

2  contingent, potential Allowed Class 5 Claims.[7] Based upon the Debtor's Schedules, Allowed Class 5

3  Claim holders may be entitled to receive a payment of 35 cents for every dollar they are owed.  The

4  recovery for Allowed Class 5 Claim holders may diminish if high claims arising from the ADA

5  Litigation and the rejected executory contracts and unexpired leases are allowed or if general

6  unsecured claims in excess of the amounts listed in the Debtor's Schedules are filed by the Bar Date.

7  Conversely, the recovery for Allowed Class 5 Claim holders may increase if claim objections to

8  invalid general unsecured claims are upheld.   Any Cash allocated by First-Citizens to pay

9  administrative claims and priority tax claims ($450,000), and post-confirmation administrative costs in

10 objecting to claims ($50,000) which is unused because it exceeds administrative claims, priority tax

11 claims, and post-confirmation administrative costs in objecting to claims, shall be distributed to

12 Allowed Class 5 Claim holders.

13    If sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's

14 Secured Weller Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for

15 Seville which shall not exceed $800,000, if applicable; (e) the Cure Costs; and (f) $1,500,000, the

16 $1,500,000 and the amount of the Cure Costs shall be paid to First-Citizens on account of its Allowed

17 Class 2 Claim and Allowed Class 4 Claim.  Any additional Cash in excess of (a), (b), (c), (d), (e), and

18 (f) shall be paid to Allowed Class 5 Claims until they are paid in full with interest at the Judgment

19 Rate from the Effective Date.  If sufficient Cash exists to satisfy (a), (b), (c), and (d) only, any Cash in

20 excess of (a), (b), (c), (d), and less than $1,500,000 and the amount of the Cure Costs shall be paid to

21 First-Citizens on account of its Allowed Class 2 Claim and Allowed Class 4 Claim.

22    Payment on the Allowed Claims shall occur 60 days after the later of (i) the Effective Date or

23 (ii) the date such claim becomes an Allowed Claim.  Because Class 5 is impaired under the Plan,

24 Class 5 shall be entitled to vote on the Plan.

25

26

27    [7] The Bar Date has not yet expired so First-Citizens cannot make a reasonable estimation
based upon the amount of general unsecured claims filed.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

778195.2 | 100102-0083                                    24

1              **(ii)     Limited Partner's Interest (Class 6).**

2          Class 6 consists of the Limited Partner's Interest. Class 6 is impaired under the Plan. At this

3    time, First-Citizens projects that the holder of the Class 6 Interest shall receive no distribution under

4    the Plan on account of that interest based upon Seville's $44 million purchase offer and, therefore,

5    shall be deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g). Nevertheless, if

6    sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's Secured Weller

7    Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for Seville which shall not

8    exceed $800,000, if applicable; (e) the Cure Costs; (f) $1,500,000; and (g) additional Cash in excess

9    of (a), (b), (c), (d), (e), and (f) for Allowed Class 5 Claims on account of their claims until they are

10   paid in full with interest at the Judgment Rate from the Effective Date, the holder of the Class 6

11   Interest may receive a distribution under the Plan on account of that interest. Accordingly, Class 6

12   shall be entitled to vote on the Plan, but the vote may be moot pursuant to Bankruptcy Code §

13   1126(g).

14             **(iii)    General Partner's Interest (Class 7).**

15         Class 7 consists of the Limited Partner's Interest. Class 7 is impaired under the Plan. At this

16   time, First-Citizens projects that the holder of the Class 7 Interest shall receive no distribution under

17   the Plan on account of that interest based upon Seville's $44 million purchase offer and, therefore,

18   shall be deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g). Nevertheless, if

19   sufficient Cash exists for: (a) First-Citizens' Secured Weller Court Claim; (b) Excell's Secured Weller

20   Court Claim; (c) First-Citizens' Secured Hotel Claim; (d) the break-up costs for Seville which shall not

21   exceed $800,000, if applicable; (e) the Cure Costs; (f) $1,500,000; and (g) additional Cash in excess

22   of (a), (b), (c), (d), (e), and (f) for Allowed Class 5 Claims until they are paid in full with interest at the

23   Judgment Rate from the Effective Date, the holder of the Class 7 Interest may receive a distribution

24   under the Plan on account of that interest. Accordingly, Class 7 shall be entitled to vote on the Plan,

25   but the vote may be moot pursuant to Bankruptcy Code § 1126(g).

26   **B.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

27         Subject to certain limitations, the Debtor (or plan proponent) has the right, subject to

28   Bankruptcy Court approval, to assume or reject any executory contract or unexpired lease entered into

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    prior to the Petition Date. Damages resulting to the other party from a rejection are treated as an

2    Unsecured Claim arising prior to the Petition Date and included in Class 5 to the extent such claim is

3    allowed by the Bankruptcy Court.

4        Each executory contract or unexpired lease of the Debtor that has not expired by its own terms

5    before the Effective Date or previously been rejected by the Debtor shall be deemed rejected effective

6    immediately before the Effective Date, except for the management agreement with Crestline. The

7    executory contract with Crestline shall be assumed and assigned to Seville or the successful third party

8    purchaser as of the Effective Date. Seville or the successful third party purchaser shall provide

9    adequate assurance of future performance to Crestline. First-Citizens shall allocate sufficient Cash

10    from the sale proceeds due to it on account of the First-Citizens' Secured Hotel Claim and the First-

11    Citizens' Secured Weller Court Claim to pay the costs to cure Crestline's executory contract. First-

12    Citizens shall deliver to Crestline the payment for cure costs to Crestline after it receives all Cash it is

13    entitled to on account of the First-Citizens' Secured Hotel Claim and the First-Citizens' Secured

14    Weller Court Claim.

15        The Confirmation Order shall constitute an Order of the Bankruptcy Court approving all such

16    rejections, and the sole assumption and assignment, as of the Effective Date. Any claim for damages

17    arising from the rejection under the Plan of an executory contract or unexpired lease must be filed

18    within thirty (30) days after the Confirmation Hearing or be forever barred and unenforceable against

19    the Debtor, its Estate, Seville, any other third party purchaser, any other person or entity, or any of

20    their respective property, and barred from receiving any distribution under the Plan.

21    **C.    IMPLEMENTATION OF THE PLAN**

22        **1.    The Sale and Disposition of Property of the Estate**

23        On the Effective Date, the Estate will sell the Hotel and Weller Court to Seville or another

24    qualified third party free and clear of all liens, claims, and interests in exchange for a sum of no less

25    than $44 million (the "Proceeds"). The Proceeds will be sufficient to pay all claims secured by liens

26    against Weller Court and the Hotel not held by First-Citizens. The Proceeds allocable to First-

27    Citizens will be immediately turned over to First-Citizens. First-Citizens believes that any and all

28    other property of the Estate constituting cash collateral as defined in section 363(a) of the Bankruptcy

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Code and applicable case law is subject to liens in favor of First-Citizens (the "Cash Collateral"). As of the Effective Date, the Cash Collateral (including each Debtor in Possession bank account) shall be turned over to First-Citizens and the Proceeds allocable to First-Citizens shall be reduced by the amount of the Cash Collateral.

**2.    Bidding Procedures**

The sale on the Effective Date is subject to the following bidding procedures:

a.    Bid Deadline. A person or entity (other than Seville) that desires to make a bid for the Assets must be a qualified bidder (as defined below) who submits an initial overbid which confirms to the following procedures by no later than 5:00 p.m. (Pacific Standard Time) fourteen calendar days immediately preceding the date of the Confirmation Hearing (as defined below) (the "Bid Deadline").

b.    Qualifying Bids. For purposes of these bid procedures, the Proposed Sale by Seville shall be deemed to be a qualified bid. For any "initial overbid" to constitute a qualified bid, such "initial overbid" must:

(i)    Contain a written agreement with, at a minimum, the following requirements: (1) purchasing all of the Assets on an "as is, where is" basis; (2) providing for a purchase price of at least $45,500,000.00; and (3) not being subject to any financing, due diligence or subsequent board or internal approvals, or other contingencies whatsoever;

(ii)    Include a cashier's check or certified check in the amount of $10,000,000.00 as a deposit;

(iii)    Be accompanied by evidence satisfactory to First-Citizens in its reasonable discretion, that the overbidder is willing, authorized, capable, and qualified financially, legally, and otherwise, of unconditionally performing all obligations of the Proposed Sale (or its equivalent) in the event that it submits the prevailing bid at auction (a "Qualified Bidder");

(iv)    Remain open and irrevocable until fifteen (15) calendar days after entry of the Confirmation Order by the Court approving the sale of the Assets to an alternative bidder;

(e)    Does not contain any terms or conditions that are materially more burdensome to the Estate than the Proposed Sale; and

(f)    Be submitted to First-Citizens at Frandzel Robins Bloom & Csato, L.C., 6500 Wilshire Boulevard, 17th Floor, Los Angeles, CA 90048 (Attn: Michael J. Gomez); Stutman, Treister & Glatt, P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, CA 90067 (Attn: Christine Pajak); Arent Fox LLP, 555 W. Fifth

1   Street, 48th Floor, Los Angeles, CA 90013 (Attn: Mette Kurth) so as to be received not
2   later than the Bid Deadline.

3   Only a bid that meets each of the foregoing requirements shall be considered a "Qualified
4   Bid."

5   c.   Auction.  In the event that First-Citizens timely receives a conforming Qualified

6   Bid from a Qualified Bidder, then the Bankruptcy Court will conduct an auction at the Courthouse (the

7   "Auction") with respect to the sale of the Assets immediately preceding the Confirmation Hearing. All

8   Qualifying Bidders participating in the Auction must be physically present at the Auction.

9   At the Auction, Qualified Bidders (including Seville) may submit successive bids in

10   increments of at least $250,000.00 greater than the prior bid for the purchase of the Assets until there

11   is only one offer that the Bankruptcy Court determines is the highest or best offer – the prevailing bid,

12   subject to the approval of the Court at the Confirmation Hearing. At the conclusion of the Auction, the

13   Bankruptcy Court shall identify and announce which Qualified Bid made the highest and best bid for

14   the Assets (the "Successful Bid"). If no Qualified Bid from a Qualifying Bidder shall have been

15   received prior to the Bid Deadline, the Auction will not be held and the Confirmation Hearing will

16   proceed with respect to the Proposed Sale to Seville.

17   d.   Confirmation Hearing.   First-Citizens intends to subsequently present the

18   Successful Bid for approval by the Court at the Confirmation Hearing to be scheduled by the Court.

19   The Estate shall be deemed to have accepted a bid only when the bid has been approved by the Court

20   at the Confirmation Hearing.   Upon the failure to consummate a sale of the Assets after the

21   Confirmation Hearing because of the occurrence of a breach or default under the terms of the

22   Successful Bid, the next highest or otherwise best bid, if any, disclosed at the Confirmation Hearing,

23   shall be deemed the prevailing bid without further order of the Court and the parties shall be

24   authorized to consummate the transaction contemplated by the backup prevailing bid. The failure to

25   consummate a sale of the Assets at the Confirmation Hearing may be due to the confirmation of

26   another plan of reorganization.  If another plan of reorganization is confirmed, the duty of First-

27   Citizens to proceed with the sale shall be null and void.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    e.    Deposits. All Qualifying Bids at the Auction shall remain open and subject to

2   acceptance by the Bankruptcy Court for a period of fifteen (15) days following entry of the

3   Confirmation Order, following which period, the deposits of all bidders who were not the Successful

4   Bidder at Auction or later accepted, shall be refunded, without interest. Any deposits made shall not

5   be property of the Debtor's bankruptcy estate and no party shall have a lien on the deposit of the

6   successful bidder.

7    f.    Sale Implementation. Following approval of the Successful Bid at the

8   Confirmation Hearing, the Estate and First-Citizens will be authorized to take all commercially

9   reasonable and necessary steps to complete and implement the transaction(s) contemplated by the

10   prevailing bid.

11    g.    Bid Protections. In the event a party other than Seville is the Successful Bidder

12   and acquires the Assets, then the Excess Net Sale Proceeds (as defined below) shall be distributed in

13   the following order of priority:

14    (i)    Seville shall be paid an amount (the "Potential Purchaser's Due
Diligence Costs") equal to the lesser of (i) one hundred percent (100%) of actual,

15    reasonably-documented out-of-pocket costs incurred by Seville in connection with its
investigation, inspection, and due diligence of the Assets, and (ii) $300,000;

16

17    (ii)    From any amounts remaining after the payment of the Potential
Purchaser's Due Diligence Costs described above (the "Remaining Amount"), Seville
shall be paid an amount equal to the lesser of (1) twenty-five percent (25%) of the

18    Remaining Amount, and (2) $500,000; and

19    (iii)    All Excess Net Sale Proceeds not paid pursuant to the foregoing shall
be disbursed as provided in the order authorizing the sale and the Seville shall have no

20    interest in them; and

21    (iv)    In the event a third party bids at the sale and Seville continues to bid at
the sale, is the Successful Bidder, and acquires the Assets, the Excess Net Sale

22    Proceeds shall be disbursed as provided in the order authorizing the sale and Seville
shall have no interest in them.

23

24    **3.    The Continuing Estate and the Post-Confirmation Committee**

25    First-Citizens believes that by the Effective Date, the company will have liquidated

26   substantially all of its assets. The Estate will continue after the Effective Date as the Continuing

27   Estate in order to ratably disburse the Proceeds amongst claimants. The Continuing Estate will hold

28   title to the Proceeds not distributed to First-Citizens. On the Effective Date, the Committee will be

778195.2 | 100102-0083