1   JEFFREY C. KRAUSE (State Bar No. 94053),
    jkrause@stutman.com
2   CHRISTINE M. PAJAK (State Bar No. 217173), and
    cpajak@stutman.com
3   NEETA MENON (State Bar No. 254736), Members of
    nmenon@stutman.com
4   STUTMAN, TREISTER & GLATT, P.C.
    1901 Avenue of the Stars, 12th Floor
5   Los Angeles, CA 90067
    Telephone:    (310) 228-5600
6   Telecopy:     (310) 228-5788

7   Reorganization Counsel for
    Debtor and Debtor in Possession
8
    Debtor's Mailing Address:
9   1880 Century Park East, Suite 810
    Los Angeles, CA  90067
10

11               **UNITED STATES BANKRUPTCY COURT**

12               **CENTRAL DISTRICT OF CALIFORNIA**

13                    **LOS ANGELES DIVISION**

14

15   In re                              )   Case No. 2:10-39113-BR
                                        )
16   LITTLE TOKYO PARTNERS, L.P.,       )   Chapter 11
     a Delaware limited partnership,    )
17                                      )   **DEBTOR'S THIRD AMENDED**
                  Debtor.               )   **PLAN OF REORGANIZATION**
18                                      )   **(DECEMBER 15, 2010)**
                                        )
19                                      )
                                        )
20                                      )        **Confirmation Hearing**
                                        )
21                                      )   Date:    February 14, 2011
                                        )   Time:    2:00 P.M.
22                                      )   Place:   Courtroom 1668
                                        )            255 E. Temple St.
23                                      )            Los Angeles, CA  90012
                                        )
24                                      )
                                        )
25                                      )
                                        )
26                                      )
                                        )
27   _____)

28

# **TABLE OF CONTENTS**

**Page(s)**

I. DEFINITIONS AND RULES OF CONSTRUCTION .................................................. 1

    A.    Definitions. ................................................................................................ 1

    B.    Interpretation, Rules Of Construction, Computation Of Time................... 8

        1.    Defined Terms.................................................................................. 8

        2.    Rules Of Interpretation.................................................................... 8

        3.    Time Periods. .................................................................................. 9

II. DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS............................. 9

    A.    Secured Claims........................................................................................ 10

        1.    Secured Tax Claims (Class 1). ..................................................... 10

        2.    Excell's Secured Claim (Class 2).................................................. 10

        3.    Secured Hotel Claim (Class 3)...................................................... 10

        4.    The Secured Weller Court Claim (Class 4).................................... 10

    B.    Other Priority Claims (Class 5). .............................................................. 10

    C.    Unsecured Claims.................................................................................... 10

        1.    General Unsecured Claims (Class 6). ........................................... 10

        2.    ADA Claims (Class 7). .................................................................. 10

    D.    Interests. ................................................................................................. 10

        1.    Limited Partner's Interests (Class 8). ............................................ 10

        2.    General Partner's Interests (Class 9). ............................................ 10

III. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ........................... 11

    A.    Unclassified Claims................................................................................. 11

        1.    Administrative Claims. .................................................................. 11

            a.    General. ............................................................................. 11

            b.    Payment Of Statutory Fees. ............................................... 11

            c.    Bar Date For Administrative Claims. ................................. 11

                (1)    General Provisions. ................................................. 11

545240v7

            (2)      Professionals. ..............................................................11

            (3)      Ordinary Course Liabilities...........................................12

      2.      Treatment Of Priority Tax Claims. ........................................12

   B.      Classified Claims And Interests. .................................................13

      1.      Class 1 (Secured Tax Claims). ...............................................13

      2.      Class 2 (Excell's Secured Claim)............................................13

      3.      Class 3 (Bank's Secured Hotel Claim). ...................................13

      4.      Class 4 (Bank's Secured Weller Court Claim). ........................13

      5.      Class 5 (Other Priority Claims)...............................................14

      6.      Class 6 (General Unsecured Claims). ......................................14

      7.      Class 7 (ADA Claims). ...........................................................14

      8.      Class 8 (Limited Partner's Interests). .....................................14

      9.      Class 9 (General Partner's Interests). .....................................14

IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................15

   A.      Assumption.......................................................................................15

   B.      Cure Payments..................................................................................15

   C.      The Cure Reserve. ............................................................................16

   D.      Rejection...........................................................................................17

V. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ...........................17

   A.      Investment In The Hotel....................................................................17

   B.      Election To Extend The Current Maturity Date Of Each Of The
            Reinstated Bank's Hotel Note And Bank's Weller Note .......................18

   C.      The Doubletree Transaction. .............................................................18

   D.      Revesting Of Assets And Operations Of Property. ...............................18

   E.      Preservation Of Rights Of Action and Defenses....................................19

   F.      ADA Settlement. ...............................................................................20

   G.      Powers Of The Reorganized Debtor. ..................................................20

   H.      Discharge Of Debtor, Injunction And Other Releases. ...........................21

1               1.    Discharge Of Debtor. .................................................21

2               2.    Injunction. ............................................................21

3      I.    Limitation Of Liability. ..............................................22

4      J.    Execution Of Documents And Partnership Action. .................22

5      K.    Retention Of Jurisdiction.............................................23

6      L.    Successors And Assigns. .............................................24

7      M.    Amendment, Revocation, Modification And Severability. .........24

8      N.    Exhibits...............................................................25

9      O.    No Admission. ........................................................25

10      P.    1146(c) Exemption. ..................................................25

11      Q.    General Authority.....................................................25

12      R.    Binding Effect. .......................................................26

13      S.    Governing Law. ......................................................26

14      T.    Payment Dates. ......................................................26

15      U.    Headings.............................................................26

16      V.    No Waiver. ...........................................................26

17    VI. CONDITIONS TO CONFIRMATION EFFECTIVE DATE ..................27

18      A.    Condition To Confirmation. .........................................27

19      B.    Conditions to Effective Date. ........................................27

20    VII. DISTRIBUTION OF CONSIDERATION .................................27

21      A.    Objections To Claims. ...............................................27

22               1.    Deadlines............................................................27

23               2.    Authority. ...........................................................28

24      B.    Disputed Claims. .....................................................28

25      C.    Distributions. ........................................................28

26               1.    Disputed Claims. ....................................................28

27               2.    Distribution Date.....................................................28

28               3.    Unclaimed Distributions. ............................................29

4.    No *De Minimis* Distributions. ................................................29

D.    No Disbursing Agent. ........................................................................29

E.    Manner Of Payment Under The Plan. ................................................29

F.    Delivery Of Distributions. .................................................................29

G.    Compliance With Tax Requirements. ................................................30

H.    Old Instruments And Securities; Liens. ............................................30

1.    Rights Of Persons Holding Old Instruments And Securities. ....................30

2.    Cancellation Of Liens. ................................................................30

I.    Interest. ..............................................................................................30

VIII. REQUEST TO CONFIRM WITHOUT VOTING .............................................31

This Plan of Reorganization (the "Plan") is proposed by chapter 11 debtor Little Tokyo Partners, L.P. (the "Debtor").  All holders of claims and interests are encouraged to read the Plan in its entirety.  **The Debtor is not soliciting acceptances or rejections of the Plan, because the Plan cures and reinstates the Debtor's secured debts and pays all other creditors in full in Cash and, therefore, does not impair any creditor or interest holder.  You are not required to respond or permitted to vote, but you have the right to object to confirmation of the Plan if you wish to do so.**

## I.

### DEFINITIONS AND RULES OF CONSTRUCTION

**A.     Definitions.**

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

1.     **"ADA Claims"** means all Claims arising under that certain ADA Litigation.

2.     **"ADA Litigation"** means that certain litigation styled <u>Hugh Marsh and Neva Lema v. Grand Kyoto Hotel; Little Tokyo Partners, L.P., et al.</u>, Case No. CV10-1511, pending in the United States District Court for the Central District of California.

3.     **"ADA Settlement"** means that certain settlement of the ADA Litigation as more fully described herein, a copy of which will be filed as an Exhibit no later than the Exhibit Filing Date.

4.     **"Administrative Claim"** means a Claim for costs and expenses of administration of the Reorganization Case under Bankruptcy Code section 503(b) or 507(a)(2).

5.     **"Allowed Claim"** means a Claim against the Debtor to the extent that:

a.     a proof of such Claim

(1)     is timely Filed; or

(2)     is deemed timely Filed under applicable law or by reason of an order of the Bankruptcy Court; <u>and</u>

b.    (1)    the Claim is not a Disputed Claim;

(2)    the Claim is allowed (and only to the extent allowed) by a Final Order; or

(3)    the Claim is allowed under the Plan.

6.     **"Allowed . . . Claim"** means an Allowed Claim in the particular class described.

7.     **"Allowed Interest"** means all interests in the Debtor as of the Confirmation Date.

8.     **"Avoiding Power Causes of Action"** means causes of action, if any, arising under Bankruptcy Code sections 502(d), 506, 544, 545, 547, 548, 549, 550, 553, and 558, or any fraudulent conveyance, fraudulent transfer or preference laws, or any cause of action arising under, or relating to, any similar state law or federal law that constitutes property of the Estate under Bankruptcy Code section 541, whether or not an action is initiated on or before the Effective Date.

9.     **"Bank"** means First-Citizens Bank & Trust Company, the sole member of Classes 3 and 4, respectively.

10.     **"Bank's Hotel Collateral"** means a first lien on that certain real property defined herein as the Hotel, the true and correct legal description of which shall be Filed not later than the Exhibit Filing Date, and all net rents, issues and profits generated from the Hotel.

11.     **"Bank's Hotel Note"** means that certain promissory note, dated as of November 25, 2009, in the principal amount of $33,600,000, which is secured by a first priority lien on the Hotel, pursuant to a deed of trust dated November 25, 2009.

12.     **"Bank's Weller Court Collateral"** means a first lien on that certain real property defined herein as Weller Court, the true and correct legal description of which shall be Filed not later than the Exhibit Filing Date, and all net rents, issues and profits from Weller Court.

13.     **"Bank's Weller Deed of Trust"** means that certain deed of trust, dated as of August 10, 2007, that was granted to the Bank to secure the Bank's Weller Note, and that certain Modification of Deed of Trust dated as of November 25, 2009.

14. **"Bank's Weller Note"** means that certain promissory note issued by the Debtor to the Bank, dated as of August 10, 2007, in the original principal amount of $44,000,000, which was subsequently paid down to a principal balance of $10,400,000 in November 2009, and is secured by a first priority lien on the Bank's Weller Court Collateral, pursuant to a deed of trust dated August 10, 2007.

15. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California, Los Angeles Division, or, if such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

16. **"Bankruptcy Rules"** means, collectively, the:  (a) Federal Rules of Bankruptcy Procedure, and (b) the Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

17. **"Business Day"** means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

18. **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

19. **"Claim"** means a Claim—as the term "Claim" is defined in Bankruptcy Code section 101(5)—against the Debtor.

20. **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Reorganization Case.

21. **"Confirmation"** means the entry of the Confirmation Order.

22. **"Confirmation Date"** means the date on which Confirmation occurs.

23. **"Confirmation Hearing"** means the hearing held pursuant to Bankruptcy Rule 3020(b)(2), including any continuances thereof, at which the Bankruptcy Court will consider Confirmation of the Plan.

24. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

25.     **"Cure Reserve"** means the reserve to be established pursuant to Article IV.C.

26.     **"Debtor"** means Little Tokyo Partners, L.P.

27.     **"Debtor in Possession"** means Little Tokyo Partners, L.P., when acting in its capacity as representative of the Estate in the Reorganization Case.

28.     **"Disputed Claim"** means with respect to any Claim as to which:

(a) a proof of Claim is timely Filed or is deemed timely Filed under applicable law or by reason of an order of the Bankruptcy Court; and

(b) on or prior to the deadline to object to such Claim, the Debtor or the Reorganized Debtor, either has filed a notice of designation of such Claim as a Disputed Claim or has Filed an objection to such Claim which objection has not been (i) waived on account of a failure to timely file and serve a claim objection; or (ii) overruled, denied by a Final Order, or withdrawn.

29.     **"Distribution Date"** has the meaning ascribed to it in section VII.C.2 of the Plan.

30.     **"Doubletree Contract"** means a new franchise license agreement with Hilton Worldwide, Inc., a form of which the Debtor is seeking approval of under this Plan shall be filed not later than the Exhibit Filing Date.

31.     **"Effective Date"** means the first Business Day that is at least fifteen (15) days after the Confirmation Date, and on which all conditions to the Effective Date contained in section VI. hereof have been satisfied or, if waivable, waived, unless the Confirmation Order has been stayed.  If the Confirmation Order has been stayed the Effective Date shall be the third Business Day after any such stay terminates, lapses or expires.

32.     **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

33.     **"Excell"** means Excell Investment Group, LLC, the sole member of Class 2.

34.     **"Exhibit Filing Date"** means a Business Day on which drafts of all Exhibits to the Plan shall be Filed and which day shall be no later than twenty (20) days prior to the Confirmation Hearing.  The Debtor reserves the right to File amended or revised versions of any Exhibit through and including the Confirmation Date.

35.    **"File" or "Filed"** means filed with the Bankruptcy Court in the
Reorganization Case.

36.    **"Final Order"** means an order or judgment of the Bankruptcy Court, as
entered on its docket, which has not been reversed, stayed, modified or amended, and as to which
(a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as
to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall
then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall
have been waived in writing in form and substance satisfactory to the Debtor or Reorganized Debtor,
as applicable, or (b) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof
has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall
have been affirmed by the highest court to which such order or judgment was appealed, or certiorari
has been denied, or from which reargument or rehearing was sought, and the time to take any further
appeal, petition for certiorari or move for reargument or rehearing shall have expired.

37.    **"General Partner"** means Little Tokyo Partners, LLC, the Debtor's sole
general partner.

38.    **"General Partner Interest"** means the interest of the General Partner.

39.    **"Hotel"** means the Kyoto Grand Hotel and Gardens located at 120 South Los
Angeles Street, Los Angeles, California, the true and correct legal description of which shall be Filed
not later than the Exhibit Filing Date.

40.    **"Limited Partner"** means 3D Investments IV, L.P.

41.    **"Limited Partner Interest"** means the Limited Partner's limited partnership
interest in the Debtor.

42.    **"Judgment Rate"** means the interest rate on a federal judgment entered on
the Petition Date, which was 0.31% per annum.

43.    "**New Capital Contribution**" means the $10,000,000 to be invested in the
Reorganized Debtor by the Limited Partner on the Effective Date, or such other amount as the
Bankruptcy Court determines is required to confirm the Plan.

44.     **"Other Priority Claim"** means an Allowed Claim entitled to priority under section 507(a) of the Bankruptcy Code, except for Administrative Claims and Priority Tax Claims.

45.     **"Partner Interests"** means the General Partner Interest and Limited Partner Interest.

46.     **"Petition Date"** means July 15, 2010.

47.     **"Plan"** means the Plan of reorganization, either in its present form or as it may be altered, amended or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

48.     **"Plan Documents"** means those documents necessary to effectuate the Plan.

49.     **"Priority Tax Claim"** means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

50.     **"Professional Fee Claim"** means:

(a) a Claim under Bankruptcy Code Sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on the Estate's behalf; or

(b) a Claim either under Bankruptcy Code Section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code Section 503(b)(3)(D) for expenses incurred in making a substantial contribution to the Estate.

51.     **"Property Improvement Plan"** means the required improvements to the Hotel that must be completed after the Effective Date pursuant to the Doubletree Contract.

52.     **"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the amount of such Allowed Claim is the same as the ratio of (x) the amount of consideration distributed on account of all Allowed Claims of the class or group of classes in which the particular Allowed Claim is included to (y) the amount of all Allowed Claims of that class or group of classes.

53.     **"Remediation Work"** means those certain repairs and maintenance work to be completed at the Hotel as described in the Consent Decree Order and Judgment, which is an Exhibit attached to the ADA Settlement.

54.     **"Reorganization Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date and captioned "In re Little Tokyo Partners, L.P.," Case No. 2:10-39113-BR.

55.     **"Reorganized Debtor"** means the Debtor, or any successor thereto by merger, consolidation or otherwise, as revested with property of the Estate on and after the Effective Date.

56.     **"Scheduled"** means set forth on the Schedules.

57.     **"Schedules"** means the schedules of assets and liabilities and list of equity security holders Filed by the Debtor under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

58.     **"Secured Claim"** means any Allowed Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined under section 506 of the Bankruptcy Code.

59.     **"Secured Hotel Claim"** means the Allowed Claim that is secured by the Bank's Hotel Collateral.

60.     **"Secured Tax Claims"** means every Claim of a governmental unit for taxes which, by operation of applicable nonbankruptcy law, is a Secured Claim.

61.     **"Secured Weller Court Claim"** means the Allowed Claim that is secured by the Bank's Weller Court Collateral.

62.     **"Settlement Payment"** means the payment of $130,243.78 by 3D Investments IV, L.P. to the Reorganized Debtor on the Effective Date, which reflects the voluntary return of all payments received by 3D Investments IV, L.P. during the 12 months immediately prior to the Petition Date.

63.     **"Unsecured Claim"** means all Claims against the Debtor that are not Secured Claims, Administrative Claims, Priority Tax Claims or Other Priority Claims.

64.    **"Weller Court"** means that certain mall located at 227 East Second Street, Los Angeles, California, the true and correct legal description of which shall be Filed not later than the Exhibit Filing Date.

**B.    Interpretation, Rules Of Construction, Computation Of Time.**

**1.    Defined Terms.**

Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

**2.    Rules Of Interpretation.**

For purposes of the Plan:

a.    whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

b.    any payment required under the Plan on a particular date shall be made on such date or as soon thereafter as practicable;

c.    any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, delivered and Filed on or before the Exhibit Filing Date as an exhibit to the Plan;

d.    any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented through and including the Confirmation Date which, after they are Filed, may be amended, modified or supplemented only with the express written consent of the proponents of the Plan;

e.    unless otherwise specified in a particular reference, all references in the Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to the Plan;

1          f.      the words "herein," "hereof," "hereto," "hereunder" and others of

2   similar import refer to the Plan in its entirety rather than to only a particular portion of the

3   Plan;

4          g.      captions and headings to articles and sections are inserted for

5   convenience of reference only and are not intended to be a part of or to affect the

6   interpretation of the Plan;

7          h.      all exhibits to the Plan and Plan Documents are incorporated herein,

8   regardless of when those exhibits are Filed;

9          i.      to the extent any discrepancy exists between the description contained

10  herein of a document or agreement that is an exhibit to the Plan and with the provisions of

11  that exhibit, the actual agreement or document shall govern; and

12         j.      the rules of construction set forth in section 102 of the Bankruptcy

13  Code shall apply.

14      **3.      Time Periods.**

15          In computing any period of time prescribed or allowed by the Plan, the provisions of

16  Bankruptcy Rule 9006(a) shall apply.

17                          **II.**

18      **DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

19          The following is a designation of the classes of Claims and interests under the Plan.

20  Administrative Claims and Priority Tax Claims have not been classified and are excluded from the

21  following classes in accordance with section 1123(a)(1) of the Bankruptcy Code.  A Claim or

22  interest is classified in a particular class only to the extent that the Claim or interest qualifies within

23  the description of that class and is classified in a different class to the extent that any remainder of

24  the Claim or interest qualifies within the description of such different class.  A Claim or interest is in

25  a particular class only to the extent that the Claim or interest is an Allowed Claim or Allowed

26  Interest in that class and has not been paid, released, or otherwise satisfied before the Effective Date.

27

28

545240v7

**A.      Secured Claims.**

       **1.      Secured Tax Claims (Class 1).**

Class 1 consists of all Claims that are Secured Tax Claims.

       **2.      Excell's Secured Claim (Class 2).**

Class 2 consists of Excell's Claim, which is secured by a second priority deed of trust on Weller Court.

       **3.      Secured Hotel Claim (Class 3).**

Class 3 consists of the Secured Hotel Claim.

       **4.      The Secured Weller Court Claim (Class 4).**

Class 4 consists of the Secured Weller Court Claim.

**B.      Other Priority Claims (Class 5).**

Class 5 consists of all Other Priority Claims.

**C.      Unsecured Claims**

       **1.      General Unsecured Claims (Class 6).**

Class 6 consists of all Unsecured Claims not in Class 5 or Class 7.

       **2.      ADA Claims (Class 7).**

Class 7 consists of all ADA Claims.

**D.      Interests.**

       **1.      Limited Partner's Interests (Class 8).**

Class 8 consists of the Limited Partner Interest.

       **2.      General Partner's Interests (Class 9).**

Class 9 consists of the General Partner Interest.

## III.

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

A.      **Unclassified Claims.**

      1.      **Administrative Claims.**

            a.      **General.**

      Subject to the bar date provisions herein, the Reorganized Debtor shall pay to each holder of an Allowed Administrative Claim, on account and in full satisfaction of the Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim, unless the holder agrees to other treatment of the Claim.

            b.      **Payment Of Statutory Fees.**

      On or before the Effective Date, all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full.

            c.      **Bar Date For Administrative Claims.**

                  (1)      **General Provisions.**

      Except as provided below in section III.A.1.c.(3) for non-tax liabilities incurred in the ordinary course of business by the Debtor in Possession, requests for payment of Administrative Claims must be Filed no later than sixty (60) days after the Effective Date.  Holders of Administrative Claims (including without limitation any governmental units asserting Claims for federal, state or local taxes and excluding any Professional Fee Claims, which are subject to the process set forth below)) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtor, Reorganized Debtor, any other person or entity, or any of their respective property.

                  (2)      **Professionals.**

      The Court must approve all Professional Fee Claims.  As set forth below, each professional in question must File and serve a properly noticed fee application or motion (the "Fee

Motion"), and the Court must rule on the Fee Motion. Only the amount of fees allowed by the Court will be required to be paid under this Plan.  A Professional Fee Claim will be allowed only if:

       (a)    On or before 60 days after the Effective Date, the professional or other entity holding the Professional Fee Claim both Files with the Court a Fee Motion requesting  that the Reorganized Debtor pay the Professional Fee Claim and serves the Fee Motion on the Reorganized Debtor and its counsel; and

       (b)    The Professional Fee Claim is allowed by a Final Order.

The Reorganized Debtor or any other party in interest may File an objection to such Fee Motion within the time provided by the Bankruptcy Rules or within any other period that the Court establishes.  **Persons holding Professional Fee Claims who do not timely File and serve a Fee Motion for payment will be forever barred from asserting those Claims against the Debtor, the Estate, the Reorganized Debtor, or their respective property.**

**(3)    Ordinary Course Liabilities.**

Holders of Administrative Claims based on liabilities incurred in the ordinary course of the Debtor in Possession's business prior to the Effective Date (other than professionals or other entities described in subparagraph (2), above, and governmental units that hold Claims for taxes or Claims and/or penalties related to such taxes) shall not be required to File any request for payment of such Claims.  Each Administrative Claim shall be assumed and paid by the Reorganized Debtor under the terms and conditions of the particular transaction giving rise to that Administrative Claim, without any further action by the holder of such Administrative Claim.

**2.    Treatment Of Priority Tax Claims.**

In accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except as otherwise agreed to by the parties, each holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor deferred Cash payments over a period not exceeding five (5) years from the date of assessment of such Claim.  Payments shall be made in equal, quarterly installments and each installment shall include simple interest accrued on the unpaid portion of such Claim at the rate of 5% per annum from and after the Effective Date; provided, however, that the Reorganized Debtor

1  reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed

2  Claim, in full, at any time on or after the Effective Date, without premium or penalty.

3  **B.    Classified Claims And Interests.**

4  **1.    Class 1 (Secured Tax Claims).**

5  Class 1 is not impaired under the Plan.  The holder of each Allowed Class 1 Claim

6  will receive Cash equal to its Allowed Claim, including any interest, fees and costs to which it is

7  entitled under Bankruptcy Code §§ 506 & 1124, on the Effective Date, or such other treatment as the

8  Reorganized Debtor and the holder of an Allowed Class 1 Claim agree to in writing, on or before the

9  Confirmation Date.

10  **2.    Class 2 (Excell's Secured Claim).**

11  Class 2 is not impaired under the Plan.  The holder of each Allowed Class 2 Claim

12  will receive Cash equal to its Allowed Claim, including any interest (at the nondefault contract rate),

13  fees and costs to which it is entitled under Bankruptcy Code §§ 506 & 1124, on the Effective Date,

14  or such other treatment as the Reorganized Debtor and the holder of an Allowed Class 2 Claim agree

15  to in writing, on or before the Confirmation Date.

16  **3.    Class 3 (Bank's Secured Hotel Claim).**

17  Class 3 is not impaired under the Plan.  On account of its Allowed Class 3 Claim, the

18  Bank will receive the following: the Reorganized Debtor will cure all defaults (except for the kind

19  specified in section 365(b)(2) of the Bankruptcy Code) that exist under the agreements and contracts

20  governing the Allowed Class 3 Claim, including the Bank Hotel Note, reinstate the maturity of such

21  claim, compensate the Bank for any damage incurred as a result of reasonable reliance by such

22  holder on such contractual provision or applicable law, and not otherwise alter the legal, equitable or

23  contractual rights of the Bank with respect to its Allowed Class 3 Claim.  The Debtor shall pay to the

24  Bank all missed installments under the Hotel Note and interest at the non-default contract rate, plus

25  any reasonable fees and costs to which the Bank is entitled under Bankruptcy Code §§ 506 &1124.

26  **4.    Class 4 (Bank's Secured Weller Court Claim).**

27  Class 4 is not impaired under the Plan.  On account of its Allowed Class 4 Claim, the

28  Bank will receive the following: the Reorganized Debtor will cure all defaults (except for the kind

1    specified in section 365(b)(2) of the Bankruptcy Code) that exist under the agreements and contracts

2    governing the Allowed Class 4 Claim, including the Bank's Weller Note, reinstate the maturity of

3    such claim, compensate the Bank for any damage incurred as a result of reasonable reliance by such

4    holder on such contractual provision or applicable law, and not otherwise alter the legal, equitable or

5    contractual rights of the Bank with respect to its Allowed Class 4 Claim.  The Debtor shall pay to the

6    Bank all missed installments under the Bank Weller Note and interest at the non-default contract

7    rate, plus any reasonable fees and costs to which the Bank is entitled under Bankruptcy Code §§ 506

8    &1124.

9                **5.        Class 5 (Other Priority Claims).**

10                   Class 5 is not impaired under the Plan.  Each holder of an Allowed Class 5 Claim will

11   be paid in Cash, in full, with interest at the Judgment Rate, on the Distribution Date.

12                **6.        Class 6 (General Unsecured Claims).**

13                   Class 6 is not impaired under the Plan.  Each holder of an Allowed Class 6 Claim will

14   be paid in Cash, in full, with interest at the Judgment Rate or such other rate as the holder and the

15   Reorganized Debtor agree upon or is established by the Court in order to unimpair that holder, on the

16   Distribution Date.

17                **7.        Class 7 (ADA Claims).**

18                   Class 7 is not impaired under the Plan.  On account of the Allowed Class 7 Claims,

19   the Reorganized Debtor shall fully comply with the ADA Settlement.

20                **8.        Class 8 (Limited Partner's Interests).**

21                   Class 8 is not impaired under the Plan.  The Limited Partner shall retain its Limited

22   Partner's Interest in the Reorganized Debtor.

23                **9.        Class 9 (General Partner's Interests).**

24                   Class 9 is not impaired under the Plan.  The General Partner shall retain its General

25   Partner's Interest in the Reorganized Debtor.

26

27

28

# IV.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption.

Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or previously been rejected by the Debtor in Possession and is listed on the "Schedule of Executory Contracts and Unexpired Leases to be Assumed," Filed as Exhibit IV.A hereto (which Exhibit shall be filed by the Exhibit Filing Date) is assumed, as of the Effective Date, pursuant to Bankruptcy Code section 365. All leases under which the Debtor leases any portion of the Hotel or Weller Court shall be assumed and the Cure Amount with respect thereto is $0. A list of the security deposits of the tenants will be filed as a Plan Document. The Debtor also intends at the present time to assume all executory contracts, including the Management Contract with Crestline Hotels & Resorts, Inc. and the existing agreement with Able Engineering.

Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtor, the Reorganized Debtor, or any other person or entity that is not currently liable on such obligation, with respect to any executory contract or unexpired lease. The Debtor reserves the right to amend on or before 14 days prior to the Confirmation Hearing Date Exhibit IV.A either to: (a) delete any executory contract or unexpired lease listed on Exhibit IV.A and provide for its rejection under section IV.C below, or (b) add any executory contract or unexpired lease to Exhibit IV.A, thus providing for its assumption under this section IV.A. Debtor shall provide notice of any amendment of Exhibit IV.A to the parties to the affected executory contract or unexpired lease and the Office of the United States Trustee.

### B. Cure Payments.

Any monetary defaults under each executory contract and unexpired lease assumed under the Plan shall be satisfied under section 365(b)(1) of the Bankruptcy Code either by payment of the cure amount (if any) in Cash on the Effective Date, or on such other terms as agreed to by Reorganized Debtor and the non-debtor party to the executory contract or unexpired lease. Unless

the non-debtor party to any executory contract or unexpired lease to be assumed Files and serves on

the Debtor and its counsel an objection to the "cure amount" specified on Exhibit IV.A (which

Exhibit shall be Filed on the Exhibit Filing Date) on or before the later of (i) the last date established

by the Bankruptcy Court to File and serve objections to confirmation of the Plan or (ii) 7 days after

the Debtor File and serve Exhibit IV.A, or any amendment thereto, such "cure amount" shall be

forever binding on such non-debtor party to said executory contract or unexpired lease.  In the event

of a timely Filed and served objection regarding (1) the amount of any cure payments, (2) the ability

of Reorganized Debtor to provide adequate assurance of future performance under the contract or

lease to be assumed, or (3) any other matter pertaining to assumption, any cure payment required by

section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order

resolving the dispute and approving assumption.

### C.    The Cure Reserve.

To the extent a timely filed objection contends that the cure amount should be

different than the Debtor's proposed cure amount in Exhibit IV.A, the undisputed portion of such

cure amount will be paid as set forth above.  On or before the Effective Date, the Debtor will transfer

to a segregated Cure Reserve on account of any disputed cure amounts an amount to be agreed upon

by the Debtor and the objecting party prior to the Effective Date, or such other amount as is

determined by the Bankruptcy Court to provide adequate assurance that all cure amounts will be

paid in full as contemplated under the Plan, which Cash shall be free and clear of any and all liens

asserted by the Bank.   Pending resolution of the cure amount, the Debtor will request a status

conference with respect to any outstanding objection within approximately 30 days from the

Confirmation Hearing Date.  If, at the status conference, the objection has not been resolved to the

parties' satisfaction, the Court may then, at the status hearing, set a briefing schedule and a further

evidentiary or other hearing to resolve the objections on their merits. If a dispute arises regarding: (a)

the amount of any proposed cure payments; (b) whether the Debtor has provided adequate assurance

of future performance under an executory contract or unexpired lease to be assumed; or (c) any other

matter pertaining to a proposed assumption, the proposed cure payments will be made within 30

1    days after entry of a Final Order resolving the dispute and approving the assumption or a Final Order

2    consensually resolving such dispute.

3        **D.    Rejection.**

4        Effective immediately before the Effective Date, each executory contract or

5    unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or

6    previously been assumed by the Debtor in Possession, that is either:  (1) listed on the "Schedule of

7    Executory Contracts and Unexpired Leases to be Rejected," Filed as Exhibit IV.C to the Plan (which

8    Exhibit shall be filed by the Exhibit Filing Date), or (2) is not assumed pursuant to section IV.A.

9    above, is rejected, as of the Effective Date, pursuant to Bankruptcy Code section 365, to the extent,

10   if any, that they constitute executory contracts or unexpired leases, and without conceding that they

11   constitute executory contracts or unexpired leases or that the Debtor has any liability under them.

12   Listing a contract or lease on Exhibit IV.C is not an admission by the Debtor or Reorganized Debtor

13   that such contract or lease is an executory contract or unexpired lease or that the Debtor or

14   Reorganized Debtor has any liability thereunder.  The Debtor reserves the right at any time before

15   Confirmation to amend Exhibit IV.C to delete any executory contract or unexpired lease listed on

16   Exhibit IV.C and provide for its assumption under section IV.A above.  Debtor shall provide notice

17   of any amendment of Exhibit IV.C to the parties to the affected executory contract or unexpired

18   lease and the Office of the United States Trustee.

19       The Confirmation Order shall constitute an Order of the Bankruptcy Court approving

20   all such rejections as of the Effective Date.  Any Claim for damages arising from the rejection under

21   the Plan of an executory contract or unexpired lease must be Filed within sixty (60) days after the

22   Effective Date or be forever barred and unenforceable against the Debtor, the Reorganized Debtor

23   and its properties and barred from receiving any distribution under the Plan.

24                              **V.**

25       **MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

26       **A.    Investment In The Hotel.**

27       The Limited Partner shall contribute to the Reorganized Debtor on the Effective Date

28   the New Capital Contribution, which shall be sufficient to fund the Remediation Work, other

545240v7                                    -17-

necessary deferred maintenance work, and the Property Improvement Plan under the Doubletree

Contract.  By re-flagging the Hotel as a Doubletree hotel, the increased revenue and profitability

from the Hotel, together with the Debtor's existing assets and the New Capital Contribution, will be

sufficient to pay (1) all amounts due on the Effective Date, including the cure payments to the Bank,

(2) the required deferred maintenance at the hotel, (3) the remediation required by the ADA

Settlement, (4) the Property Improvement Plan, and (5) all debt service payable to the Bank on

account of its reinstated Claims.  The Limited Partner is sufficiently confident in the ability to pay

these amounts that they are committing to contribute $10,000,000 in the New Capital Contribution,

which shall be junior to all present and future creditors, including the Bank's reinstated Claims.

Neither the New Capital Contribution nor the Settlement Payment shall be distributed to the General

Partner or the Limited Partner at any time before the Bank's Allowed Secured Claims are paid in

full.

> **B.**     **Election To Extend The Current Maturity Date Of Each Of The Reinstated Bank's Hotel Note And Bank's Weller Note.**

As provided in sections III.B.3 and III.B.4 of the Plan, the Debtor will reinstate the

current maturity date (the "Current Maturity Date") for each of the Bank's Hotel Note and Bank's

Weller Note (i.e., September 1, 2012).  In 2012, prior to the Current Maturity Date, the Debtor

intends to exercise its right to extend the Current Maturity Date to September 1, 2019 in accordance

with the terms of the Bank's Hotel Note and Bank's Weller Note.

> **C.**     **The Doubletree Transaction.**

On or before the Effective Date, the Debtor shall enter into the Doubletree Contract,

which shall be binding on the Reorganized Debtor from and after the Effective Date.

> **D.**     **Revesting Of Assets And Operations Of Property.**

As of the Effective Date, all property of the Estate (including each Debtor in

Possession bank account) shall revest in the Reorganized Debtor, free and clear of all Claims, liens,

encumbrances and other interests of creditors and holders of interests, except as otherwise set forth

herein.  From and after the Effective Date, the Reorganized Debtor may operate its business and use,

acquire, and dispose of property and settle and compromise Claims without supervision by the

1    Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other

2    than those restrictions expressly imposed by the Plan and the Confirmation Order.  Reorganized

3    Debtor shall have authority to pay any Post-Effective Date Claims in the ordinary course of business.

4              **E.       Preservation Of Rights Of Action and Defenses.**

5              Except to the extent such rights, Claims, causes of action, defenses, and

6    counterclaims are expressly and specifically released in connection with the Plan or in any

7    settlement agreement approved during the Reorganization Case, (i) any and all rights, Claims, causes

8    of action, defenses, and counterclaims accruing to the Debtor or its estate (including, without

9    limitation, Avoiding Power Causes of Action but excluding any causes of action under Bankruptcy

10   Code § 547) shall remain assets of and vest in the Reorganized Debtor, whether or not litigation

11   relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, causes

12   of action, defenses, and counterclaims have been Scheduled or otherwise listed or referred to in the

13   Plan, or any other document filed with the Bankruptcy Court, and (ii) neither the Debtor nor the

14   Reorganized Debtor waives, relinquishes, or abandons (nor shall they be estopped or otherwise

15   precluded from asserting) any right, Claim, cause of action, defense, or counterclaim that constitutes

16   property of the Debtor's estate: (a) whether or not such right, Claim, cause of action, defense, or

17   counterclaim has been listed or referred to in the Schedules, the Plan, or any other document filed

18   with the Bankruptcy Court, (b) whether or not such right, Claim, cause of action, defense, or

19   counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation

20   relating to such right, Claim, cause of action, defense, or counterclaim filed a proof of Claim in the

21   Reorganization Case, filed a notice of appearance or any other pleading or notice in the

22   Reorganization Case, voted for or against the Plan, or received or retained any consideration under

23   the Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise

24   applicable principle of law or equity, including, without limitation, any principles of judicial

25   estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list,

26   disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or counterclaim, or

27   potential right, Claim, cause of action, defense, or counterclaim, in the Debtor's Schedules, the Plan,

28   or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify,

release, or alter the Reorganized Debtor's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that any of the Debtor or Reorganized Debtor has or may have as of the Confirmation Date.  The Reorganized Debtor may commence, prosecute, defend against, recover on account of, and settle all rights, Claims, causes of action, defenses, and counterclaims in their sole discretion in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtor.  Notwithstanding the foregoing reservation of rights, the Debtor shall not pursue any action arising under Bankruptcy Code § 547, because any claims arising from the recovery of preferential transfers would be paid in full under the Plan.

**F.    ADA Settlement.**

The Plan will implement the ADA Settlement.  Prior to the Petition Date, a lawsuit was brought by two disabled individuals against the Debtor and certain other defendants alleging that the defendants failed to comply with certain aspects of the Americans with Disabilities Act at the Hotel.  Since filing the Reorganization Case, the Debtor has engaged in extensive discussions to resolve the ADA Litigation.  Under the terms of the ADA Settlement that will resolve the ADA Litigation on a final basis, the Debtor shall complete the Remediation Work and shall pay $150,000, which shall be distributed to holders of the ADA Claims as set forth in the ADA Settlement.

**G.    Powers Of The Reorganized Debtor.**

The Reorganized Debtor shall have all the powers and duties set forth in the Plan, and the Reorganized Debtor's organizational documents, as may be amended, and under applicable law. The Reorganized Debtor shall become, on the Effective Date of the Plan, the exclusive representative of the Estate.  Subject to the provisions of the Plan, but notwithstanding whether they are set forth in the Plan, on and after the Effective Date, the Estate shall retain and the Reorganized Debtor may enforce any and all rights, Claims, causes of action, powers, privileges, licenses, and franchises of the Debtor or the Estate, including all rights regarding tax determinations under Bankruptcy Code section 505, all causes of action arising under the Plan and the Bankruptcy Code.

The Reorganized Debtor shall have the authority to pay any post-Effective Date Claims in the ordinary course of business.

**H.     Discharge Of Debtor, Injunction And Other Releases.**

    **1.     Discharge Of Debtor.**

On and after the Effective Date, the rights afforded in the Plan and the treatment of all Claims and interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, or any of its assets or properties.  Except as otherwise provided in the Plan or the Confirmation Order on and after the Effective Date:  (a) the Debtor shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all Claims and interests, including Claims and interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (i) a proof of Claim or proof of interest based on such debt or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim or interest based on such debt or interest is allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the holder of a Claim or interest based on such debt or interest has accepted the Plan; and (b) all persons shall be precluded from asserting against Reorganized Debtor, its successors, the General Partner, the Limited Partner or the Debtor's assets or properties any other or further Claims or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtor, as provided in sections 524 and 1141 of the Bankruptcy Code.

    **2.     Injunction.**

In addition to the injunction provided under section 524(a) of the Bankruptcy Code, on and after the Effective Date, all persons who have held, currently hold or may hold a debt, Claim or interest discharged under the Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim or interest:  (a) commencing or continuing in any manner any action or other proceeding against the Debtor, Reorganized Debtor, the partners of the Reorganized Debtor or property; (b) enforcing, attaching, collecting or recovering in any manner

any judgment, award, decree or order against the Debtor, Reorganized Debtor, its successors or its respective property; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor, Reorganized Debtor, its successors or its respective property; and (d) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

The Plan does not discharge any party other than the Debtor from any liability such non-debtor party has or may have under or pursuant to any guarantee or alleged guarantee of any obligation of the Debtor. The Bank contends that certain parties guaranteed certain obligations to the Bank.  The alleged guarantors contend that they have previously been released from any liability they might otherwise have had to the Bank.  This dispute is the subject of pending litigation.  The Plan shall not alter the rights, claims or defenses of the Bank or the alleged guarantors in that litigation.

**I.    Limitation Of Liability.**

On and after the Effective Date, none of the Debtor, the Debtor in Possession, nor any of its partners, employees, officers, directors, agents, or representatives, nor any professional persons employed by any of them, shall have or incur any liability to any person or entity for any authorized act taken or authorized omission made in good faith in connection with or related to the Reorganization Case or the Estate, including objections to or estimations of Claims, disposition of assets, or formulating or seeking confirmation of the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan.

**J.    Execution Of Documents And Partnership Action.**

The Debtor and Debtor in Possession, and the Reorganized Debtor, without any partner action whatsoever, shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

**K.      Retention Of Jurisdiction.**

After Confirmation of the Plan and occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including for the following purposes:

1.      To resolve any and all disputes regarding the operation and interpretation of the Plan or the Confirmation Order;

2.      To determine the allowability, classification, or priority of any Claim or interest, based on any objection by the Debtor or by other parties in interest with standing to bring such objection or proceeding;

3.      To determine the extent, validity, and priority of any lien asserted against property of the Reorganized Debtor or property of the Estate;

4.      To construe and to take any action to (a) enforce and execute the Plan, the Confirmation Order, and any other order of the Bankruptcy Court; (b) issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order and all matters referred to in the Plan and the Confirmation Order; and (c) determine all matters that may be pending before the Bankruptcy Court in this Reorganization Case on or before the Effective Date with respect to any person or entity;

5.      To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for periods on or before the Effective Date;

6.      To determine any other request for payment of administrative expenses;

7.      To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan or the Confirmation Order;

8.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

9.      To adjudicate all adversary proceedings and contested matters initiated by the Reorganized Debtor to pursue retained causes of action;

545240v7

10.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters commenced during the Reorganization Case whether before, on, or after the Effective Date;

11.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.    To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intents and purposes;

13.    To issue injunctions or take such other actions or issue such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order or their implementation by any person or entity; and

14.    To issue such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the full extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**L.    Successors And Assigns.**

The rights, benefits and obligations of any entity named or referred to in the Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators, successors or assigns of such entity.

**M.    Amendment, Revocation, Modification And Severability.**

1.    The Plan may be amended or modified before the Effective Date by the Debtor to the extent provided by section 1127 of the Bankruptcy Code.

2.    The Debtor reserves the right to withdraw the Plan before the Confirmation Date.

3.    The Debtor reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the Bankruptcy Code.  To the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code without the need to solicit acceptances,

the Debtor reserves the right to sever any provisions of the Plan that the Bankruptcy Court finds objectionable.

### N.    Exhibits.

Any Exhibits to the Plan will be Filed not later than the Exhibit Filing Date.  The Exhibits will not be served with the Plan, but rather copies of all such Exhibits will be available upon written request to the Debtor's counsel.

### O.    No Admission.

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtor or the Estate with respect to any matter set forth in the Plan , including the amount or allowability of any Claim, or the value of any property of the Estate.

### P.    1146(c) Exemption.

In accordance with Bankruptcy Code section 1146(c), the making delivery, filing or recording of any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded or unrecorded) and/or the various instruments and documents of transfer as specified in or contemplated by the Plan (collectively, "Instruments of Transfer") and/or the exhibits thereto are hereby exempt from taxation under any law imposing a recording tax, stamp tax, transfer tax, or any similar tax.  The appropriate state or local government officers are hereby directed to accept for filing or recording all Instruments of Transfer or other documents of transfer to be filed and recorded in accordance with the Plan and the exhibits thereto, without payment of any such tax or government assessment, and without the presentation of any affidavits, instruments, or returns otherwise required for recording other than the Confirmation Order.  The Bankruptcy Court retains jurisdiction to enforce the foregoing direction by contempt proceedings or otherwise.

### Q.    General Authority.

The Reorganized Debtor shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in the Plan.

**R.    Binding Effect.**

The Plan and all rights, duties and obligations thereunder shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, holders of Claims, holders of interests, and their respective successors and assigns.

**S.    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Federal Rules of Bankruptcy Procedure), or by an express choice of law provision in any agreement, contract, document, or instrument provided for or executed in connection with the Plan, the rights and obligations arising under the Plan and any agreement, contract, document, or instrument provided for or executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the principles of conflict of laws thereof.

**T.    Payment Dates.**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

**U.    Headings.**

The headings used in the Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affects the construction of the provisions of the Plan.

**V.    No Waiver.**

The failure of the Debtor or any other person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtor's or the Reorganized Debtor's or the right to object to or examine such Claim, in whole or in part.

## VI.

## CONDITIONS TO CONFIRMATION EFFECTIVE DATE

### A.    Condition To Confirmation.

The only condition precedent to Confirmation of the Plan is that the Bankruptcy Court shall have entered the Confirmation Order in a form acceptable to the Debtor and the General Partner and the Limited Partner.

### B.    Conditions to Effective Date.

The Effective Date of the Plan shall not occur unless and until each of the conditions set forth below has been satisfied.  As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the Reorganized Debtor shall File and serve on each creditor and equity interest holder a written notice of occurrence of Effective Date.

1.    The Confirmation Order is a Final Order;

2.    The Debtor shall have received the New Capital Contribution;

3.    The Cure Reserve shall have been funded; and

4.    The Doubletree Contract shall have been executed and have become effective, except for any provisions in such contract which are dependent on the Plan becoming effective. The Debtor and the Partners can waive the condition of a Final Order if they choose to do so and if no stay pending appeal of the Confirmation Order has been granted.  Only the Bankruptcy Court can waive the other conditions to the Effective Date, based on a showing of cause.

## VII.

## DISTRIBUTION OF CONSIDERATION

### A.    Objections To Claims.

#### 1.    Deadlines.

Notice of designation of a Claim as a Disputed Claim and objections to Claims, including Administrative Claims, not including applications of professionals for compensation and reimbursement of expenses, shall be Filed and served upon the holders of such Claims no later than the last to occur of:  (a) thirty (30) days after the Effective Date, or (b) thirty (30) days after a proof

of Claim or request for payment of such Claim is Filed and delivered to the Debtor or Reorganized Debtor, unless the periods set forth in (a) and (b) hereof are extended by the Bankruptcy Court.  An objection to the allowance of a Claim of a professional for compensation shall be Filed and served in accordance with section III.A.1.c.(2) of the Plan.

### 2.    Authority.

The Reorganized Debtor shall be responsible for filing and resolving objections to Claims in all classes.  The Reorganized Debtor may settle and compromise as appropriate, without further order of the Bankruptcy Court any and all Claims, rights of action, causes of action, counterclaims and defenses held by the Estate.  The Estate may, but shall not be required to, set off or recoup against any Claim and the distributions to made pursuant to the Plan in respect of such Claim, any counterclaims, setoffs, or recoupments of any nature whatsoever that the Estate may have against the holder of the Claim, but neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by Estate or Reorganized Debtor of any such Claim, cause of action, setoff or recoupment.

### B.    Disputed Claims.

No distributions and no payments will be made with respect to all or any portion of a Disputed Claim until such Claim becomes an Allowed Claim.

### C.    Distributions.

#### 1.    Disputed Claims.

Except as may otherwise be agreed with respect to any Disputed Claim, no payment or distribution will be made with respect to all or a portion of any Disputed Claim until such Claim is an Allowed Claim.  Payments and distributions to each holder of a Disputed Claim (to the extent that it ultimately becomes an Allowed Claim) will be made in accordance with the Plan.

#### 2.    Distribution Date.

Notwithstanding anything to the contrary contained herein, no distributions will be made under the Plan on account of any Claim until the Distribution Date, which, with regard to any individual Claim, shall be the latest of the following:  (a) as soon as practicable after the Effective

Date, but in no event more than thirty (30) days after the Effective Date; (b) as soon as practicable after the day upon which such Claim becomes an Allowed Claim, but in no event more than thirty (30) days after the entry of a Final Order allowing such Claim; or (c) the date upon which the Claim became due and payable under applicable nonbankruptcy law.

### 3.    Unclaimed Distributions.

The Reorganized Debtor will hold until the second anniversary of the Effective Date any unclaimed distributions to be made to the holders of Allowed Claims under the Plan.  Any unclaimed Cash will be deposited by the Reorganized Debtor in a segregated, interest-bearing account for the sole benefit of the holders of the Allowed Claims who have failed to Claim such property.  On the second anniversary of the Effective Date, any unclaimed distributions to be made to holders of Allowed Claims will become the property of the Reorganized Debtor.

### 4.    No *De Minimis* Distributions.

Notwithstanding anything to the contrary in this Plan, no distribution of less than $5.00 will be made to any holder of an Allowed Claim on account thereof.  No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section.

### D.    No Disbursing Agent.

Reorganized Debtor shall act as disbursing agent under the Plan and make all distributions required under the Plan.  Reorganized Debtor may employ or contract with other entities to assist in or perform the distribution of property to be distributed.

### E.    Manner Of Payment Under The Plan.

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by Reorganized Debtor or by wire transfer from a domestic bank, at Reorganized Debtor's option.

### F.    Delivery Of Distributions.

Except as provided above in section VII.C.3 for holders of undeliverable distributions, distributions to holders of Allowed Claims shall be distributed by mail as follows: (1) at the addresses set forth on the respective proofs of Claim by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date

545240v7

-29-

of any related proof of Claim; or (3) at the address reflected on the Schedules if no proof of Claim or proof of interest is Filed and the Disbursing Agent has not received a written notice of a change of address.

### G.    Compliance With Tax Requirements.

In connection with the Plan, to the extent applicable, the Reorganized Debtor, in making distributions under the Plan, shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

### H.    Old Instruments And Securities; Liens.

#### 1.    Rights Of Persons Holding Old Instruments And Securities.

Except as otherwise provided herein, as of the Effective Date, and whether or not surrendered by the holder thereof, all existing instruments and securities evidencing any Claims or interests shall be deemed automatically cancelled and deemed void and of no further force or effect, without any further action on the part of any person, and any Claims or interests under or evidenced by any instruments or securities shall be deemed discharged.

#### 2.    Cancellation Of Liens.

Except as otherwise provided in the Plan, any lien securing any Secured Claim, shall be deemed released and discharged, and the person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor (including, without limitation, any cash collateral) held by such person and to take such actions as may be requested by the Reorganized Debtor to evidence the release of such lien, including, without limitation, the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtor at the sole expense of the Reorganized Debtor.

### I.    Interest.

Nothing in this Article shall affect any right of the holder of any Allowed Claim to include interest accruing prior to the Petition Date, but no Claim shall be allowed for interest for periods after the Petition Date, or after the Confirmation Date, except as expressly provided in the Plan.

# VIII.

## REQUEST TO CONFIRM WITHOUT VOTING

Because the Plan proposes not to impair any Class of Claims, the Debtor requests confirmation of the Plan under Bankruptcy Code §§1124 & 1129, without the need for a disclosure statement or the solicitation of votes. All Classes are deemed to have accepted the Plan, pursuant to Bankruptcy Code § 1126(f).

Dated: December 15, 2010

LITTLE TOKYO PARTNERS, L.P.

By:    David Goddard

Its:    Chief Financial Officer

545240v7

-31-

1  Submitted by:

2

3  */s/ Christine M. Pajak*
   JEFFREY C. KRAUSE,
4  CHRISTINE M. PAJAK, and
   NEETA MENON, Members of
5  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
6  Reorganization Counsel for the Debtor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28