1  JEFFREY C. KRAUSE (State Bar No. 94053),
   jkrause@stutman.com
2  CHRISTINE M. PAJAK (State Bar No. 217173), and
   cpajak@stutman.com
3  NEETA MENON (State Bar No. 254736), Members of
   nmenon@stutman.com
4  STUTMAN, TREISTER & GLATT, P.C.
   1901 Avenue of the Stars, 12th Floor
5  Los Angeles, CA 90067
   Telephone:    (310) 228-5600
6  Telecopy:    (310) 228-5788

7  Reorganization Counsel for
   Debtor and Debtor in Possession

8
   Debtor's Mailing Address:
9  1880 Century Park East, Suite 810
   Los Angeles, CA  90067

10

11            **UNITED STATES BANKRUPTCY COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                **LOS ANGELES DIVISION**

14

15  In re                                ) Case No. 2:10-39113-BR
                                         )
16  LITTLE TOKYO PARTNERS, L.P.,         ) Chapter 11
    a Delaware limited partnership,      )
17                                       ) **SUBMISSION OF EXHIBITS TO**
                Debtor.                  ) **DEBTOR'S THIRD AMENDED**
18                                       ) **PLAN OF REORGANIZATION**
                                         ) **(DECEMBER 15, 2010)**
19                                       )
                                         )
20                                       )
                                         )            **Confirmation Hearing**
21                                       )
                                         )  Date:      February 14, 2011
22                                       )  Time:      2:00 P.M.
                                         )  Place:     Courtroom 1668
23                                       )             255 E. Temple St.
                                         )             Los Angeles, CA  90012
24                                       )
                                         )
25                                       )
                                         )
26                                       )
                                         )
27  _____ )

28

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, AND OTHER PARTIES IN INTEREST:**

Little Tokyo Partners, L.P., the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), submits the following exhibits to the "Debtor's Third Amended Plan of Reorganization (December 15, 2010)" [Docket No. 176] (the "Plan") which has been filed concurrently herewith:

**DESCRIPTION**

| EXHIBIT | EXHIBIT TAB |
|---|---|
| A true and correct copy of the legal description of the Hotel | 1 |
| A true and correct copy of the legal description of Weller Court | 2 |
| A true and correct copy of the ADA Settlement | 3 |
| A true and correct copy of the Property Improvement Plan | 4 |
| Exhibit IV.A. – Schedule of Executory Contracts and Unexpired Leases to be Assumed | 5 |
| A true and correct copy of the Schedule of Security Deposits | 6 |
| Exhibit IV.C. – Schedule of Executory Contracts and Unexpired Leases to be Rejected | 7 |

DATED:  December 15, 2010            /s/ Christine M. Pajak
                                     Jeffrey C. Krause,
                                     Christine M. Pajak, and
                                     Neeta Menon, Members of
                                     STUTMAN, TREISTER & GLATT
                                     PROFESSIONAL CORPORATION
                                     Reorganization Counsel for Debtor and
                                     Debtor in Possession Little Tokyo Partners, L.P.

546457v1

-2-

# EXHIBIT "1"

**LITTLE TOKYO PARTNERS, L.P.**

**BANK HOTEL COLLATERAL – LEGAL DESCRIPTION OF HOTEL**

PARCEL 1A: (HOTEL PARCEL)

LOTS 1 AND 3 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 MAPS, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION LYING SOUTHEASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT 1, DISTANT NORTH 54° 18' 58" WEST 319.53 FEET FROM THE MOST SOUTHERLY CORNER OF LOT 4 OF SAID TRACT NO. 30213; THENCE NORTH 33° 09' 56" EAST 121.78 FEET TO THE GENERALLY SOUTHWESTERLY LINE OF SAID LOT 3; THENCE SOUTHEASTERLY ALONG SAID GENERALLY SOUTHWESTERLY LINE, SOUTH 51° 47' 58" EAST 1.47 FEET TO AN ANGLE POINT IN SAID GENERALLY SOUTHWESTERLY LINE; THENCE AT RIGHT ANGLES TO THE NORTHEASTERLY LINE OF SAID LOT 3, NORTH 80° 53' 52" EAST 29.61 FEET.

SAID LAND IS SHOWN AS PARCEL A ON THAT CERTAIN CERTIFICATE OF COMPLIANCE FOR LOT-LINE ADJUSTMENT RECORDED AUGUST 3, 2009 AS INSTRUMENT NO. 20091184249 OF OFFICIAL RECORDS.

EXCEPTING AND RESERVING ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE, OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

PARCEL 1B: (HOTEL FOUNTAIN AND SEATING PARCEL)

LOST 2 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 60 AND 51 OF MAPS, RECORDS OF SAID COUNTY.

EXCEPTING AND RESERVING ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEET OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.

APN:  5161-021-019
APN:  5161-021-020

END OF LEGAL DESCRIPTION

544136v1

EXHIBIT 1                                                3

# EXHIBIT "2"

## LITTLE TOKYO PARTNERS, L.P.

### BANK WELLER COURT COLLATERAL

### LEGAL DESCRIPTION OF WELLER COURT

(Weller Court Parcel)

LOTS 1,3, AND 4 OF TRACT NO. 30213, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 856 PAGES 50 AND 51 OF MAPS, RECORDS OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION LYING NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT 1, DISTANT NORTH 54° 18' 58" WEST 319.53 FEET FROM THE MOST SOUTHERLY CORNER OF SAID LOT 4; THENCE NORTH 33° 09' 33" EAST 171.00 FEET; THENCE NORTH 11° 27' 39" EAST 14.72 FEET; THENCE NORTH 33° 09' 56" EAST 121.78 FEET TO THE GENERALLY SOUTHWESTERLY LINE OF SAID LOT 3; THENCE SOUTHEASTERLY ALONG SAID GENERALLY SOUTHWESTERLY LINE, SOUTH 51° 47' 58" EAST 1.47 FEET TO AN ANGLE POINT IN SAID GENERALLY SOUTHWESTERLY LINE; THENCE AT RIGHT ANGLES TO THE NORTHWESTERLY LINE OF SAID LOT 3, NORTH 80° 53' 52" EAST 29.61 FEET.

SAID LAND IS SHOWN AS PARCEL B ON THAT CERTAIN CERTIFICATE OF COMPLIANCE FOR LOT-LINE ADJUSTMENT RECORDED AUGUST 3, 2009 AS INSTRUMENT NO. 20091184249 OF OFFICIAL RECORDS.

EXCEPTION AND RESERVING ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND, WITHOUT ANY RIGHT TO PENETRATE, USE OR DISTURB SAID PROPERTY WITHIN 500 FEE OF THE SURFACE, AS EXCEPTED AND RESERVED IN VARIOUS DOCUMENTS OF RECORD.


APN:  5161-016-021
        5161-016-024


END OF LEGAL DESCRIPTION


544137v1

EXHIBIT 2                                                                4

# EXHIBIT "3"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims, which expressly includes and incorporates by reference in its entirety the Consent Decree Order And Judgment attached as Exhibit "A" to this Agreement (the "Consent Decree") (collectively, the "Agreement"), is entered into as of September 20, 2010, by and between Hugh Marsh and Neva Lema ("Plaintiffs"), on the one hand, and Little Tokyo Partners, L.P. (dba Kyoto Grand Hotel and Gardens), Little Tokyo Partners, LLC, and Crestline Hotels & Resorts, Inc. (collectively, "Defendants"), on the other hand. (Plaintiff and Defendants are sometimes referred to collectively in this Agreement as the "Parties.")

### RECITALS

This Agreement is made and entered into with reference to the following facts:

A.    On March 1, 2010, Plaintiffs commenced the action entitled *Hugh Marsh and Neva Lema, et al. v. Grand Kyoto Hotel, et al.*, Case No. CV10-1511-PA (AGRx), in the United States District Court for the Central District of California (the "Action"). (The Action was since re-assigned to a new judicial officer and acquired a new case number (CV10-1511-JST (AGRx).) In the Action, Plaintiffs contend that Defendants own and/or operate the Kyoto Grand Hotel and Gardens, located at 120 South Los Angeles Street, Los Angeles, California (the "Facility"), that certain barriers and other conditions exist in the paths of travel, parking areas, lobby, guestrooms and other areas of the Facility that make the Facility inaccessible to physically disabled persons, and that Plaintiffs have been deterred from attempting to access or have been denied access to the Facility due to such barriers and conditions.    In the Complaint in the Action (the "Complaint"), Plaintiffs allege, among other things, that Defendants violated the Unruh Civil Rights Act (Cal. Civ. Code § 51 et seq.) ("Unruh Act"), the California Disabled Persons Act (Cal. Civ. Code § 54 et seq.) ("CDPA"), the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) ("ADA"), and other laws.

B.    Defendants have denied and continue to deny each and every claim, allegation and/or contention made by Plaintiffs in connection with the Action.

C.    On July 15, 2010, Little Tokyo Partners, L.P. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code before the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), commencing Case No. 2:10-39113-BR (the "Chapter 11 Case").

D.    On August 31, 2010, Debtor submitted in the Chapter 11 Case for the Bankruptcy Court's approval its Debtor's Plan Of Reorganization (August 31, 2010) (the "Plan").

E.    Without necessarily admitting or denying any of the claims and allegations in the Action, and for the purpose of avoiding the expenses associated with further litigation of their respective claims and defenses, the Parties now desire to fully and finally resolve, conclude and settle the claims and disputes between them in accordance with and under the terms and conditions set forth in this Agreement.

- 1 -

EXHIBIT 3

COVENANTS

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## 1. Settlement Logistics

(A)    Within two (2) Court days of the Parties' complete execution and delivery to opposing counsel of record of executed versions of this Agreement, the Parties agree to enter into and jointly submit to the District Court in the Action the Stipulation To Refer Action To The Bankruptcy Court that is attached as Exhibit "B" to this Agreement (the "Stipulation").  The Parties acknowledge and agree that failure of the Court to enter an order giving full force and effect to the Stipulation, for any reason, shall not impact the remaining provisions of this Agreement (including the Consent Decree), except as follows: (1) The Consent Decree shall be revised only for the purpose of making it appropriate for submission to the District Court; (2) Plaintiffs agree that they will not seek to prosecute the Action in any way or to lift the automatic stay provided for in 11 U.S.C. § 362(a) until the Bankruptcy Court has decided whether or not to confirm the Plan; and (3) All provisions of this Agreement that are contingent or rely on Bankruptcy Court entry of the Consent Decree in the adversary proceeding created in the Bankruptcy Court shall instead be made contingent or rely on District Court approval of the Consent Decree in the Action.

(B)    The Parties agree that, subject to all of the terms and conditions in this Agreement, Defendants shall stipulate to and timely submit to the Bankruptcy Court, as part of its consideration of the Plan, the Consent Decree in the precise form attached to this Agreement as Exhibit "A."  The Parties agree that following the full execution of this Agreement by the Parties, this Agreement shall be incorporated into the Plan.  Plaintiffs agree that they will (1) file such documents and take such actions as may be necessary or appropriate to support confirmation of the Plan in its current form or any modified form submitted by the Debtor to the Bankruptcy Court, so long as the modified form incorporates by reference this Agreement and the Consent Decree, and (2) shall not vote in favor of or support confirmation of any other chapter 11 plan for the Debtor pending the Bankruptcy Court's decision on confirmation of the Plan.  The Parties agree that pending the Bankruptcy Court's decision on confirmation of the Plan, the Adversary Proceeding shall be stayed in all respects as to all of the Parties.  In the event that the Plan is confirmed, (i) the Parties agree to ask the Bankruptcy Court to enter judgment in the adversary proceeding in the precise form of the Consent Decree, and (ii) the Parties shall perform all other terms as may be set forth in the Consent Decree.  In the event that the Bankruptcy Court fails to rule, for any reason, that the Plan should be confirmed, this Agreement and all of its terms (including the Consent Decree), upon such ruling, shall become null and void and of no further force or effect whatsoever and shall not be admissible for any purpose in the Action or Adversary Proceeding or in any other action or proceeding.

(C)    Plaintiffs and Defendants agree that this Agreement in general and the settlement amount in particular represents a compromise of doubtful and disputed claims, and that payment is not necessarily construed as an admission of liability.

- 2 -

EXHIBIT 3

(D)    Plaintiffs acknowledge and agree that the allocation of any settlement amount provided by Defendants under the terms of the Consent Decree, as between Plaintiffs and as between and among Plaintiffs and their counsel of record, Thimesch Law Offices ("Plaintiffs' Counsel"), and/or any other party, is the subject of an agreement between such parties. Plaintiffs and Plaintiffs' Counsel each shall indemnify, defend, and forever hold harmless any and all Defendant Released Parties (as defined below), and each and every person acting by and through, under or in concert with them, and any of them, from and against any and all losses, claims, and/or liability, including attorneys' fees, based upon, relating to, or arising out of any claim by any of them or any third party to any portion of the settlement amount.

(E)    Plaintiffs and Plaintiffs' Counsel expressly agree to be solely responsible for any federal, state, and/or local tax liability that may result from the payment to them of any portion of the settlement amount, including, without limitation, penalties and forfeitures arising from such payment, and each expressly acknowledges that the Defendant Released Parties (as defined below) are not liable in any way for any tax consequences of this settlement. Plaintiffs also acknowledge and agree that Defendants or their agents will provide Plaintiffs, Plaintiffs' Counsel, and the appropriate government agencies (including the United States Internal Revenue Service and the California Franchise Tax Board) with a Form 1099 or other appropriate tax documents regarding the sums paid under this Agreement.

(F)    The Parties acknowledge and agree that the payments to be made to each of the Plaintiffs under the terms and conditions of this Agreement, as set forth in Section 24 of the Consent Decree (namely, $25,000 to be paid to Hugh Marsh and $25,000 to be paid to Neva Lema), are or will be provided for the purpose of releasing claims, including for personal and bodily injury, as provided in Section 3(A), below.

2.    **Covenant Not To Sue**

In consideration of the payment made to Plaintiffs as referenced in Section 1 above, for the obligations undertaken by Defendants pursuant to Section 1, above, and such other consideration as set forth in this Agreement, the receipt and adequacy of which is hereby acknowledged, Plaintiffs, on the one hand, and Defendants, on the other hand, promise, covenant and agree that they will never sue, commence, maintain or pursue any complaint, action or proceeding against each other or any of the others' respective Released Parties (as defined below) arising out of or relating in any way to the claims released in Section 3, below. Nothing in this Section 2 or in this Agreement shall in any way affect or modify the Parties' rights to enforce the terms of this Agreement (including the Consent Decree).

3.    **Release**

(A)    In consideration for the terms and conditions of this Agreement, including without limitation, the payment to Plaintiffs as referenced in Section 1, above, as well as the remediation referenced in Section 1, above, and for such other consideration as set forth in this Agreement, the receipt and adequacy of which is hereby acknowledged by Plaintiffs, Plaintiffs and each of their respective predecessors, heirs, successors and assigns, hereby fully and forever release, discharge and covenant not to sue any of the Defendants, any past or present owners, operators or occupants of the Facility, or any of the Defendants' respective officers, directors,

- 3 -

EXHIBIT 3

7

shareholders, principals, owners, members, partners, managers, employees, agents, representatives, affiliated entities, trustees, predecessors, beneficiaries, successors, assigns, and each and every person acting by, through, under or in concert with them, or any of them (collectively, the "Defendant Released Parties"), of and from any and all manner of actions, claims, causes of action, suits, debts, liens, contracts, agreements, promises, claims, demands, damages, liabilities, costs and/or expenses (including, but not limited to, attorneys' fees), of any nature whatsoever, including, without limitation, any statutory, civil, and/or administrative claims, whether known or unknown, fixed or contingent, which Plaintiffs or either of them now has or may later have against any one or more of the Defendant Released Parties by reason of any matter, cause, or thing whatsoever, from the beginning of time to the effective date of this Agreement, arising out of, based upon, or relating to any of the following: (i) the Action; (ii) any claims or allegations made or that could have been made in the Action (including, but not limited to, any claimed discrimination against Plaintiffs or either of them on the basis of disability, any claimed violations of the Unruh Act, the CDPA, the ADA or any other federal, state or local statute or law prohibiting discrimination on the basis of disability, and any claim under any common law right, including without limitation, negligence, breach of contract, fraud, or intentional or negligent infliction of emotional distress); or (iii) any Defendant Released Party's ownership, operation, lease (to or from), or other form of control of the Facility.

(B)    In consideration for the terms and conditions of this Agreement, including without limitation the release provided by Plaintiffs above, the receipt and adequacy of which is hereby acknowledged by Defendants, Defendants and each of their respective predecessors, heirs, successors and assigns, hereby fully and forever release, discharge and covenant not to sue either of the Plaintiffs or any of the Plaintiffs' respective predecessors, heirs, beneficiaries, successors, assigns, and each and every person acting by, through, under or in concert with them, or any of them (collectively, the "Plaintiff Released Parties"), of and from any and all manner of actions, claims, causes of action, suits, debts, liens, contracts, agreements, promises, claims, demands, damages, liabilities, costs and/or expenses (including, but not limited to, attorneys' fees), of any nature whatsoever, including, without limitation, any statutory, civil, and/or administrative claims, whether known or unknown, fixed or contingent, which Defendants or any of them now has or may later have against any one or more of the Plaintiff Released Parties by reason of any matter, cause, or thing whatsoever, from the beginning of time to the effective date of this Agreement, arising out of, based upon, or relating to the Action or any claims or allegations made or that could have been made in the Action. (The Defendant Released Parties and the Plaintiff Released Parties are sometimes referred to collectively in this Agreement as the "Released Parties.")

(C)    THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES AS FOLLOWS:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

- 4 -

EXHIBIT 3

THE PARTIES, BEING AWARE OF SAID CODE SECTION AND ITS EFFECT, HEREBY EXPRESSLY WAIVE ANY AND ALL RIGHTS HE, SHE OR IT MAY HAVE UNDER CALIFORNIA CIVIL CODE SECTION 1542, AS WELL AS UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT.

(D)     Nothing in this Section 3 or in this Agreement shall constitute a release of any Party's obligations under this Agreement (including the Consent Decree).

4.     **Representations and Warranties**

(A)     Plaintiffs represent and warrant as follows:

(i)     This Agreement, when executed, shall constitute the legal, valid, and binding obligation of Plaintiffs, enforceable in accordance with its terms.

(ii)     Plaintiffs have each had the opportunity to consult with and be advised by counsel, and have done so, and have had the opportunity to make whatever investigation or inquiry he or she may have deemed necessary or desirable in connection with the subject matter of this Agreement prior to its execution. Plaintiffs have voluntarily and knowingly entered into this Agreement with full knowledge and understanding of its contents.

(iii)     Plaintiffs have not sold, assigned, conveyed or otherwise transferred any portion of their respective interests in any of the claims released in this Agreement.

(iv)     Plaintiffs have not filed or submitted any complaint, grievance or administrative action of any kind with any governmental agency or body (including without limitation the U.S. Department of Justice, the California Attorney General, or the California Department of Fair Employment and Housing) relating in any way to the Facility or any of the Released Parties.

(B)     Defendants represent and warrant that this Agreement, when executed, shall constitute the legal, valid and binding obligation of Defendants in accordance with its terms.

5.     **Indemnity for Breach**

Plaintiffs, on the one hand, and Defendants, on the other hand, shall indemnify, defend and forever hold each other, the others' respective Released Parties and each and every person acting by, through, under or in concert with them, and any of them, harmless from and against any and all losses, claims, and/or liability, including attorney's fees, based upon, relating to, or arising out of any breach of any warranty, representation, promise, covenant and/or condition contained in this Agreement. It is the intention of the Parties that this indemnity shall not require payment to a third party as a condition precedent to any recovery under this indemnity.

6.     **Costs and Attorneys' Fees**

Defendants shall be responsible for paying any filing fees charged for the referral of the Action to the Bankruptcy Court or for the Bankruptcy Court's assignment of a separate adversary proceeding number for the Action. Except as expressly set forth in this Section 6 or as may be

- 5 -

EXHIBIT 3                    9

expressly set forth in the Consent Decree, the Parties to this Agreement shall each bear their own costs and expenses (including attorneys' fees) incurred in connection with the litigation of the Action, the Adversary Proceeding and the creation of this Agreement.

### 7.    Cost of Enforcement

If any party to this Agreement brings an action or proceeding to enforce his, her or its rights under this Agreement, the prevailing party may be entitled to recover his, her or its costs and expenses, including, without limitation, reasonable attorneys' fees, incurred in connection with such action or proceeding from the party or parties whose conduct or omissions caused or necessitated the enforcement of rights under this Agreement. Any determination of whether a Party is a "prevailing party" for purposes of this Section 7 shall be made under the same standards for civil rights actions that applied during the pendency of the Action and as set forth in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).

### 8.    Waiver of Breach

If any of the Parties does not enforce any of the provisions set forth in this Agreement with respect to a breach of this Agreement, in any one or more instance, it shall not be construed as a general relinquishment or waiver of such provision or provisions, and the same shall nevertheless be and remain in full force and effect.

### 9.    No Publication, Non-Disparagement

Each of the Parties agrees that he, she or it will take no actions not expressly authorized by this Agreement (or the Consent Decree) to publicize or disseminate information about the Action, the allegations underlying the Action or this Settlement Agreement (including the Consent Decree) to any third party, including any media outlet (including print, broadcast, social network and internet-based media). To the extent any Party is asked for comment by a third party about the Action, the allegations underlying the Action or this Settlement Agreement (including the Consent Decree), the Party shall respond that the Parties reached an amicable resolution of their dispute, or words to that effect. Except as expressly authorized by this Agreement (or the Consent Decree), under no circumstance shall any Party disparage or comment negatively to any third party on any other Party's actions or omissions in negotiating this Agreement (or the Consent Decree), in the allegations underlying the Action or in the prosecution or defense of the Action. Notwithstanding anything in this Section 9 or in this Agreement (or the Consent Decree), the Parties agree that each Party may disclose information about the monetary and remediation relief portions of this Agreement (including the Consent Decree) in confidential settlement negotiations with third parties and that Defendants may cite to the Consent Decree (but only if that Consent Decree is duly entered by a court of law) in any other action or proceeding concerning the accessibility of the Facility to the disabled, provided that the disclosing Party does not identify Crestline as having had any responsibility for any of the monetary or remediation relief provided for by the Agreement or Consent Decree.

EXHIBIT 3

### 10.    Provisions Severable

The provisions of this Agreement are severable, and, if any one or more of these provisions are held to be invalid or unenforceable, in whole or in part, the remaining provisions and any partially enforceable provisions shall be binding and enforceable.

### 11.    Headings

The section headings of this Agreement have been provided solely for convenience of reference and are not a part of, nor are they intended to govern, limit, or aid in the construction or interpretation of any term or provision of this Agreement.

### 12.    Governing Law

This Agreement, and the rights and obligations of the parties to this Agreement, shall be governed by and construed in accordance with the laws of the State of California.

### 13.    Entire Agreement

(A)    This Agreement (including the Consent Decree and the Plan) shall constitute the entire agreement between the Parties, and the provisions of this Agreement supersede any and all prior or contemporaneous agreements, understandings, and discussions between the Parties or their counsel relating to the subject matter of this Agreement, except for the Stipulation.  The Parties acknowledge and agree that, other than the Stipulation, no other promises, covenants, representations, or warranties have been made, or understandings or agreements reached between the Parties to this Agreement with respect to the subject matter of this Agreement (including the Consent Decree and the Plan) or with respect to any other matters.

(B)    This Agreement, and each of its provisions, has been jointly drafted and/or reviewed and accepted by Plaintiffs and Defendants prior to its execution; therefore, no Party shall be deemed to have been the drafting party.  Any rules of law (including California Civil Code Section 1654) or legal decisions that would require that any ambiguities in this Agreement be interpreted against the party that drafted it are not applicable and are hereby waived by the Parties.

(C)    Plaintiffs acknowledge and agree that Defendants have not made any promises, covenants, representations, or warranties to Plaintiffs, Plaintiffs' Counsel, or anyone else other than the promises, covenants, representations and warranties contained in this Agreement, and Plaintiffs further acknowledge and agree that each has not received, relied upon, or been induced to enter into this Agreement by any promises, covenants, or representations other than the ones set forth in this Agreement.  Plaintiffs have executed this Agreement voluntarily, on the advice of counsel, and with full knowledge and understanding of its contents.

(D)    Defendants acknowledge and agree that Plaintiffs have not made any promises, covenants, representations, or warranties to Defendants other than the promises, covenants, representations and warranties contained in this Agreement, and Defendants further acknowledge and agree that they have not received, relied upon, or been induced to enter into this Agreement by any promises, covenants or representations other than the ones set forth in this Agreement.

- 7 -

EXHIBIT 3                                11

Defendants have each executed this Agreement voluntarily, on the advice of counsel, and with full knowledge and understanding of its contents.

14.    **Execution in Counterparts**

The Parties agree that this Agreement may be executed in counterparts and separate signature pages, all of which, when taken together, shall constitute one agreement, with the same force and effect as if all signatures had been entered on one document. This Agreement may also be executed by facsimile or electronic mail signatures, which shall be deemed to be original signatures. In the event that a Party's signature is provided by facsimile or electronic mail, such Party agrees to transmit to the other Parties' counsel of record in the Action the original signature page signed by such Party within a reasonable time after the Party has transmitted such signature by facsimile or electronic mail. The Parties further agree to cooperate in good faith in any way necessary to effectuate the execution, completion and implementation of the terms of this Agreement.

    IN WITNESS WHEREOF, the Parties to this Agreement have executed this Agreement effective on the day and year set forth above.

**HUGH MARSH**

By: _Hugh Marsh_                    Dated: _20 Sept_, 2010
Hugh Marsh

**NEVA LEMA**

By: _____                Dated: _____, 2010
Neva Lema

**LITTLE TOKYO PARTNERS, L.P.**

    **LITTLE TOKYO PARTNERS, LLC**
    **Its Managing Partner**

By: _____                Dated: _____, 2010

    Its: _____

**[Additional Signatures on Next Page]**

- 8 -

EXHIBIT 3                                12

Defendants have each executed this Agreement voluntarily, on the advice of counsel, and with full knowledge and understanding of its contents.

14.    **Execution in Counterparts**

The Parties agree that this Agreement may be executed in counterparts and separate signature pages, all of which, when taken together, shall constitute one agreement, with the same force and effect as if all signatures had been entered on one document. This Agreement may also be executed by facsimile or electronic mail signatures, which shall be deemed to be original signatures. In the event that a Party's signature is provided by facsimile or electronic mail, such Party agrees to transmit to the other Parties' counsel of record in the Action the original signature page signed by such Party within a reasonable time after the Party has transmitted such signature by facsimile or electronic mail. The Parties further agree to cooperate in good faith in any way necessary to effectuate the execution, completion and implementation of the terms of this Agreement.

        IN WITNESS WHEREOF, the Parties to this Agreement have executed this Agreement effective on the day and year set forth above.


**HUGH MARSH**


By: _____        Dated: _____, 2010
        Hugh Marsh


**NEVA LEMA**

By: _____        Dated: _Sept. 20_____, 2010
        Neva Lema


**LITTLE TOKYO PARTNERS, L.P.**

        **LITTLE TOKYO PARTNERS, LLC**
        **Its Managing Partner**

By: _____        Dated: _____, 2010

        Its: _____


**[Additional Signatures on Next Page]**

- 8 -

EXHIBIT 3                                                                13

**LITTLE TOKYO PARTNERS, LLC**


By: _____            Dated: _____, 2010

    Its:


**CRESTLINE HOTELS & RESORTS, INC.**


By: _____            Dated: _____, 2010

    Its:


**APPROVED AS TO FORM:**

Dated: September 20, 2010            THIMESCH LAW OFFICES
                                     TIMOTHY S. THIMESCH, ESQ.
                                     GENE A. FARBER, ESQ. – Of Counsel


                                     _____
                                     Attorneys for Plaintiffs
                                     HUGH MARSH and NEVA LEMA

Dated: September __, 2010            EISENBERG RAIZMAN THURSTON & WONG
                                     LLP
                                     DAVID H. RAIZMAN, ESQ.

                                     BRADLEY & GMELICH


                                     _____
                                     Attorneys for Defendants
                                     LITTLE TOKYO PARTNERS, L.P. dba KYOTO
                                     GRAND HOTEL AND GARDENS erroneously
                                     named and sued as Grand Kyoto Hotel; LITTLE
                                     TOKYO PARTNERS, LLC; AND CRESTLINE
                                     HOTELS & RESORTS, INC.


- 9 -


EXHIBIT 3                                                            14



TIMOTHY S. THIMESCH, ESQ., No. 148213
  tim@thimeschlaw.com
GENE A. FARBER, ESQ., No. 44215 – Of Counsel
  genefarber@gmail.com
158 Hilltop Crescent
Walnut Creek, CA 94597-3452
Tel: 925/588-0401
Fax: 888/210-8868

Attorneys for Plaintiff HUGH MARSH and NEVA LEMA

[Additional Counsel Listed on Next Page]

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-39113-BR |
| LITTLE TOKYO PARTNERS, L.P., a Delaware limited partnership, | Chapter 11 |
| Debtor. | |
| HUGH MARSH and NEVA LEMA, | Adv. Proc. No._____ |
| Plaintiffs, | **[Proposed] CONSENT DECREE ORDER AND JUDGMENT** |
| v. | |
| GRAND KYOTO HOTEL; LITTLE TOKYO PARTNERS, L.P.; LITTLE TOKYO PARTNERS, LLC; CRESTLINE HOTELS AND RESORTS, INC.; and DOES 1 THROUGH 50, Inclusive, | |
| Defendants. | |

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Exhibit A

CONSENT DECREE ORDER AND JUDGMENT

EXHIBIT 3

15

1   THOMAS P. GMELICH, ESQ. State Bar No. 166562
    G. DEAN GUERRERO, ESQ., State Bar No. 228625
2   BRADLEY & GMELICH
    700 North Brand Boulevard, 10th Floor
3   Glendale, California 91203-1422
    Telephone: (818) 243-5200
4   Facsimile: (818) 243-5266

5   DAVID H. RAIZMAN, ESQ., No. 129407
    EISENBERG RAIZMAN THURSTON & WONG LLP
6   10880 Wilshire Blvd 11FL
    Los Angeles, CA 90024
7   Telephone: (310) 445-4400
    Facsimile: (310) 445-4410

8
    Attorneys for Defendants LITTLE TOKYO PARTNERS, L.P. dba KYOTO
9   GRAND HOTEL AND GARDENS erroneously named and sued as Grand Kyoto Hotel; LITTLE
    TOKYO PARTNERS, LLC; AND CRESTLINE HOTELS & RESORTS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gilaresh Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

Exhibit A

—2—

EXHIBIT 3

**FULL CONSENT DECREE JUDGMENT AND ORDER**

1.    Each of Plaintiffs HUGH MARSH and NEVA LEMA ("Plaintiffs") is a person with a disability whose condition requires use of a wheelchair for mobility.  Defendant LITTLE TOKYO PARTNERS, L.P. owns the Kyoto Grand Hotel & Gardens located at 120 South Los Angeles Street, Los Angeles, California (erroneously named and sued as Grand Kyoto Hotel – the "Hotel"), and defendant CRESTLINE HOTELS & RESORTS, INC. ("Crestline") operates the Hotel. Defendant Little Tokyo Partners, LLC ("LTP LLC") is the managing partner of Little Tokyo Partners ("LTP").  LTP, LTP LLC and Crestline are collectively referred to in this Consent Decree as "Defendants."

2.    Plaintiffs HUGH MARSH and NEVA LEMA filed this action and adversary proceeding for themselves and on behalf of all other similarly situated members of the general public to vindicate their rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and corresponding California law, including enforcement of Title 24 of the California Code of Regulations.

3.    Plaintiffs allege that Defendants violated these statutes by failing to provide full and equal access and related facilities at the Hotel, including, but not limited to, the parking facilities, passenger unloading, entrance and porte-cochere facilities, the accessible route from the public right of way and throughout the Hotel, the registration desk, the bar, the restaurant, the Japanese Garden, the conference room and banquet facilities, and the guestrooms themselves.  Specific identification of the facilities and their deficiencies has been identified informally by the parties through Plaintiffs' inspection, an exchange of information and consultation.

4.    Plaintiffs allege that the subject buildings have undergone construction triggering the requirement of full compliance with regulations for altered facilities, and that further Defendants could easily afford to makes the Hotel accessible without significant difficulty or expense.

Shinesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3652
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

—3—

Exhibit A

EXHIBIT 3

17

## STIPULATIONS

5.    **Plaintiffs' Qualified Disability.**  For purposes of this action and adversary proceeding only, each of the Plaintiffs qualifies as a person with a physical disability and requires the use of a wheelchair for mobility.

6.    **Plaintiffs' Residence and Status as Aggrieved and Potentially Aggrieved.** Each of the Plaintiffs alleges that he or she has standing, that he or she is a frequent traveler to downtown Los Angeles and the general location of this Hotel, that he or she has stayed at the Hotel, that he or she has each been deterred on specific occasions from returning to the Hotel by the subject barriers, and that he or she would like to stay at the Hotel again when it is made fully accessible as outlined herein.  While the Defendants do not admit all of the foregoing allegations, they agree that sufficient undisputed facts exist to support each Plaintiff's qualification as "aggrieved and potentially aggrieved" under the relevant statutes, and to qualify each to have full standing under Article III of the U.S. Constitution.

7.    **Ownership, Operation and Lease of the Hotel.** LTP owns, and Crestline operates, the Hotel, and LTP also leases portions of the Hotel to third parties, which together comprise the business of the Hotel and which includes the scope of facilities identified in paragraph 11 below.

8.    **Qualified Facilities.** The business and its facilities and services each qualify as a "public accommodation" and "commercial facility" under all applicable statutes and regulations.

9.    **Construction History.**  For purposes of this action and adversary proceeding only, the parties stipulate that all facilities in issue have undergone sufficient and recent alteration and/or new construction to require at least some level of compliance with the requirements of the 2008 Edition of Title 24, Part 2, of the California Code of Regulations and the Americans With Disabilities Act Accessibility Guidelines published in 1992. The scope of facilities to be corrected under this Consent Decree Judgment and Order are identified in paragraph 11.

Shimoda Law Offices
159 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

Exhibit A

—4—

EXHIBIT 3                                                                18

10.  **Admission of Liability.**  In entering this Consent Decree, LTP admits liability to some degree on certain of the claims for relief and to a portion of the remedies sought by Plaintiffs, and that this action and adversary proceeding vindicates to a material degree Plaintiffs' rights under the Unruh Civil Rights Act at Civil Code Section 51 and the Disabled Persons Act at Section 54.1.  The Parties agree that Crestline was in no way responsible for the construction of any of the architectural features or conditions of the Hotel and has no responsibility for the Hotel's architectural remediation.

11.  **Scope of Facilities in Issue.**  The following are the facilities affected by this Consent Decree Judgment and Order:

(a)  The continuous accessible route from the public right of way and boundary of the site to the main entrance and connecting with all elements, facilities and services offered at the Hotel;

(b)  The parking;

(c)  The registration desk;

(d)  The lobby bar;

(e)  The Hotel restaurant;

(f)  The banquet and conference facilities;

(g)  The Japanese Garden; and

(h)  The designated accessible guestrooms; and

All of the foregoing facilities are facilities available for use by guests of the Hotel under the terms and conditions by which guests otherwise have access to such facilities.

**JURISDICTION**

12.  The facts requisite to federal jurisdiction and venue are admitted.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 for the alleged violations of the ADA, 42 U.S.C. §§ 12101, *et seq.*  Article III jurisdiction is proper due to each Plaintiff's allegations of continued exposure and use of the Hotel and general downtown Los Angeles area for leisure and business purposes.  Supplemental jurisdiction of the state law claims arises from a common

CONSENT DECREE ORDER AND
JUDGMENT

—5—

Exhibit A

EXHIBIT 3

19

1  nucleus of fact and is proper.  Venue and intra-district jurisdiction is proper as the property in

2  issue is located in Los Angeles County.

3      13.    This Consent Decree Judgment and Order is contingent upon Court approval

4  and acceptance of its terms, and full retention of jurisdiction to interpret and enforce terms.

5      14.    The parties agree to entry of this Consent Decree Judgment and Order in order

6  to resolve the below listed allegations raised in the Complaint filed with this Court on March 1,

7  2010.  Accordingly, they agree to the entry of this Consent Decree Judgment and Order without

8  trial or further adjudication of any issues of fact or law concerning the issues specified herein.

9      WHEREFORE, the parties hereby agree and stipulate to the Court's entry of this

10  Consent Decree Judgment and Order, which provides as follows:

11

12  **RESOLUTION OF ISSUES:**

13      15.    This Consent Decree Judgment and Order shall be a full, complete, and final

14  disposition and settlement of the below claims that have been or could have been alleged in the

15  Complaint, including for injunctive relief, declaratory relief, statutory and compensatory

16  damages, and including personal and bodily injury.  This Consent Decree Judgment and Order

17  was negotiated and reached through negotiations between the parties.  The Court shall retain

18  jurisdiction of this action to enforce and interpret this Consent Decree Judgment and Order.

19  The parties agree that if they or any of them seek Court enforcement of this Consent Decree

20  Judgment and Order, any such enforcement will be by noticed motion, application or other

21  appropriate request for an order for specific performance, and/or through contempt citation.

22      16.    This Consent Decree Judgment and Order is expressly conditioned on the

23  Bankruptcy Court's full and unconditional approval and confirmation of LTP's Plan of

24  Reorganization submitted to the Bankruptcy Court on or about August 31, 2010 (the "Plan or

25  Reorganization").  Any failure of the Bankruptcy Court to provide its full and unconditional

26  approval and confirmation of LTP's Plan of Reorganization shall render this Consent Decree

27  Judgment and Order null and void and of no further force or effect, and inadmissible for any

28

Shimazu Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

Exhibit A

— 6 —

EXHIBIT 3                                                                      20

1  and all purposes in this Action or adversary proceeding or in any other action or proceeding.

2  **INJUNCTIVE RELIEF**

3      17.    As a part of a compromise of global liability, Defendants agree that, except

4  where noted (it being recognized and acknowledged by all parties that certain of the Defendants

5  have no legal capacity or ability to effect some of the relief ordered below), each shall be

6  jointly and severally responsible to perform the following work to provide disabled access at

7  the Hotel:

8          1)    **Parking:**  To meet Plaintiffs' demand that the Hotel provide additional

9          disabled accessible parking spaces in the garage, and considering the

10          dates of construction and alteration of the Hotel and the difficulty and

11          expense associated with such relief, the Parties agree that LTP shall

12          cause Hotel staff to valet park and retrieve properly-tagged vehicles with

13          disabled parking placards or license plates carrying Hotel guests with

14          disabilities in the Hotel garage, provided that the operators of such

15          vehicles agree that the valet parkers are authorized and qualified to park

16          and retrieve such vehicles.  The Hotel shall charge no fee for such valet

17          parking and retrieval services beyond the amount that would otherwise

18          be charged had these guests self-parked in the garage.

19          2)    **Porte-Cochere:**

20              i)    **Accessible Route from Public Right of Way and Boundary:**

21                LTP shall construct a compliant walkway proceeding in an

22                approximate right angle from the public sidewalk on Los Angeles

23                Street across the drive aisle of the porte-cochere and to the front

24                entrance such that its slope is no greater than 5% maximum with

25                level landings, if otherwise required, every 30 feet, or the greater

26                slope of 8.33% maximum if the required elements of a ramp are

27                provided.  The location of this accessible route shall be

28

*Thimesch Law Offices*
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

Exhibit A

— 7 —

EXHIBIT 3

21

designated by signage placed at the street access point to the Hotel on both First Street and Los Angeles Streets.

ii) **Smoking Area.** LTP and Crestline will place "No Smoking" signage in the area in the Porte Cochere where an ash receptacle is currently placed and will remove the ash receptacle.

iii) **High Top Van Storage.** LTP shall paint an area of the Porte Cochere drive aisle for storage of a single high-top van for self-parking by a disabled Hotel guest with a properly-tagged vehicle with disabled parking placards or license plates. This parking area shall be on an accessible route of travel to and from the Hotel's front entrance. LTP shall create and implement a written policy (backed by staff training) to regulate the availability of this parking for qualified disabled guests who arrive in qualified high-topped vans. The parties expressly agree that this item is a compromise on disputed liability, and that the area for high-topped van storage need not comply with the requirements for van accessible parking.

3) **Registration Desk:** LTP shall provide ISA signage on the registration desk designating the location and availability of the existing roll-out registration counter. The parties agree that the roll-out registration counter provides "equivalent facilitation" within the meaning of ADAAG 7.2(2)(iii).

4) **Guestrooms:**

i) **Number and Range of Accommodation:** LTP shall modify the amenities and designs of eight (8) guestrooms at the Hotel to make them fully accessible and usable by disabled persons, as further specified herein. Two (2) of these eight (8) guestrooms

Shimoch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

Exhibit A

— 8 —

EXHIBIT 3

22

shall each be equipped with a roll-in shower.  One of these guestrooms will be among those classified as suites on the Twenty-First (21st) floor.

ii) **Strike Edge Clearance.**  LTP shall modify all designated disabled guestrooms entrances by installing automatic door openers that are activated from the exterior by the slide reader (Ving Brand Card Readers or equivalent), or similar door-opening device, and on the interior by a push paddle installed in an accessible location and at an accessible height, or similar device.

iii) **Closets.**  LTP shall ensure that the shelves in the designated disabled guestroom closets shall be lowered to a height of no more than 48 inches above the finished floor.  LTP shall also modify all such closets that are over 24 inches deep so that the clear opening of the door width is at least 32 inches.  LTP shall also lower the iron set and all other amenities in such closets so that they are set at no more than 48 inches above the finished floor.

iv) **Peep Holes.**  LTP shall ensure that all designated disabled guestrooms shall be equipped with a peephole set at no more than 48 inches above the finished floor.

v) **HVAC Controls.**  LTP shall ensure that any HVAC thermostat or control in a designated disabled guestroom shall be relocated to a position that provides clear floor space at the front of 30 x 48 inches, and mounted no higher than 48 inches above the finished floor, or 54 inches if placed in the hallway where a side approach may be achieved.

Shinesch Law Offices
158 HILLTOP CRESCENT,
WALNUT CREEK,
CA 94597-3452
(925) 588-0101

CONSENT DECREE ORDER AND
JUDGMENT

Exhibit A

— 9 —

EXHIBIT 3

23

vi)     **Lamp Fixtures.**   LTP shall ensure that all lamp fixtures in designated disabled guestrooms shall be touch type, or provided with activating switches that do not require grasping, pinching or twisting of the wrist.

vii)    **Batons.**  LTP shall ensure that all batons on window dressing in designated disabled guestrooms shall be extended or replaced so that the bottom is set no higher than 48 inches above the finished floor.

viii)   **Desk.**   LTP shall ensure that the desks provided in designated disabled guestrooms shall have a minimum knee clearance space of 27 inches above the finished floor.

ix)     **Accessible Route.** LTP shall ensure that the path of travel to all usable areas of each designated disabled guestroom shall have a minimum clear width of 36 inches, and shall connect to the clear floor spaces serving all elements, facilities, controls and amenities within the room.   The parties agree that such path of travel need not be provided to areas of the guestrooms that have no such elements, facilities, controls and amenities.

x)      **Refrigerators.**  LTP shall ensure that the refrigerators located within cabinets in the designated disabled guestrooms shall provide swing clear hinges for cabinet doors, or such other means or mechanisms, that will provide a clear floor space in front of the refrigerator.

xi)     **Bathrooms.**

a)      **Entrance Doors.** LTP shall ensure that all designated disabled guestrooms equipped with pocket doors serving the bathroom shall be modified to provide a minimum

Monson Law Offices
155 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

— 10 —

Exhibit A

EXHIBIT 3                                                                      24

clear opening of 32 inches. The pocket doors shall be provided with D handles or push plates for operating, and shall also be provisioned with locking mechanisms that do not require pinching, grasping, or turning of the wrist to operate. For rooms equipped with swinging doors, LTP shall switch the outward swing of the hinged door to the opposite side if necessary to allow a side approach from the bedroom.

b)    **Lavatory.** LTP shall ensure that the lavatories in designated disabled guestrooms shall be modified to provide a minimum knee clearance space of 11 inches of depth at 9 inches above the finished floor and 8 inches of depth at 27 inches above the finished floor. LTP shall also ensure that the drain pipes and hot water feeds of the lavatories in designated disabled guestrooms are properly insulated and/or configured to prevent human contact associated with ordinary use of the lavatory.

c)    **Lavatory Clear Floor Space.** LTP shall ensure that the lavatory in each of the designated disabled guestrooms shall provide a minimum clear floor space in front of the front face of the lavatory that is a minimum of 30 x 48 inches.

d)    **Water Closets.** LTP shall ensure that the water closets in the designated disabled guestrooms shall be mounted such that the centerline of the water closet is 18 inches from the side wall, the seat is at a height of between 17 and 19 inches above the finished floor, and have a minimum of

Thomsen Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0101

CONSENT DECREE ORDER AND JUDGMENT

Exhibit A

— 11 —

EXHIBIT 3

25

48 inches of clear transfer space in front of the toilet.

e)      **Grab Bars.**  LTP shall ensure that all toilets in the designated disabled guestrooms shall have compliant grab bars mounted in the correct position behind and on the wall side of the toilet.  House phones and other amenities that are mounted less than 12 inches above the grab bar (and obstruct use of the grab bar) shall be relocated to another accessible location.

f)      **Roll-in Showers.** All roll-in showers in those designated disabled guestrooms containing roll-in showers shall be equipped with a fixed drop down seat that is mounted adjacent to the shower mixing valve and wand (*i.e.,* mounted within 12 inches of the front face of the fixed seat).  Mixing valves shall be located below the grab bar.  The shower wand shall have adjusting mechanisms that do not require grasping, pinching or turning of the wrist.

g)      **Tubs.** LTP shall ensure that all bathrooms in designated disabled guestrooms that are equipped with tubs shall have compliant grab bar configuration consisting of double 36 inch bars on the back wall centered, with the bottom bar being 8-10 inches above the tub rim, and the second being 33-36 inches above the finished floor.  LTP shall ensure that all designated disabled guestrooms equipped with tubs shall be provided with transfer benches.

5)      **Bar in Registration Lobby:**

i)      **Access Ramp:** LTP shall ensure that the slope of the access ramp

Shimoch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

– 12 –

Exhibit A

EXHIBIT 3

26

serving the bar in the Hotel lobby shall be corrected so that its slope is no more than 8.33%. The handrails shall be replaced to provide a compliant cross-section that is between 1 1/4 inches and 2 inches in diameter or another compliant variation allowed by code.

ii) **Table:** LTP shall ensure that the table surface of at least one booth in the Hotel lobby bar shall be extended outward from the pedestal base to provide knee clearance space of 8 inches in depth at 27 inches above the finished floor.

6) **Restaurant:**

i) **Access Ramp:** LTP shall ensure that the handrails in the restaurant currently known as the "Azalea" shall have a cross-section that is between 1 1/4 inches and 2 inches in diameter or another compliant variation allowed by code.

ii) **Table Count:** LTP shall ensure that the restaurant currently known as the "Azalea" shall provide at least four tables (but no more than the number of tables accounting for 5% of all restaurant seating) with knee clearance space of 8 inches of depth at 27 inches in height above the finished floor. Pedestal bases shall not be permitted to extend into this area unless they provide a minimum 30 inches of width of toe clearance and 8 inches of knee clearance at 27 inches in height above the finished floor.

7) **Japanese Garden:**

**Lower Stone Deck.** LTP shall ensure that there is a ramp or other vertical means of access to the lower stone deck in the Hotel's Japanese Garden and shall provide provide one compliant table with required knee clearance space of 8 inches of depth at

Morsch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0101

CONSENT DECREE ORDER AND
JUDGMENT

Exhibit A

— 13 —

EXHIBIT 3

27

1    27 inches in height above the finished floor.

2    8)    **Business Center:** LTP shall ensure that the business center in the Hotel

3    has at least one accessible computer desk with compliant knee clearance

4    space of 8 inches of depth at 27 inches in height above the finished floor.

5    18.    **Performance Standards.** Except where the parties have otherwise expressly

6    agreed above, all of the foregoing work shall be performed in material compliance with the

7    performance standards for altered facilities of the California Code of Regulations, Title 24-2

8    (2008), and Americans with Disabilities Act Accessibility Guidelines, effective January 26,

9    2012. Defendants shall comply with the requirements of these standards, and hereby release all

10    alleged defenses to full compliance such as hardship, legal and physical constraint, technical

11    infeasibility, cost-cap, etc. The parties expressly agree that Defendants need not undertake any

12    work under this Consent Decree Order and Judgment that is not required under any of the

13    performance standards noted above.  Where the agreed performance standards have departed

14    from the literal standards of the applicable design guidelines and codes, the parties agree that

15    such departures are justified under the facts and circumstances of this case as the compromise

16    of a disputed claim.

17    19.    **Conflict in Performance Standards.** The parties acknowledge that each of the

18    architectural features specified in paragraph 17 are regulated in near parallel fashion as

19    "barriers to disabled access" under both Title 24 and the Americans With Disabilities Act

20    Accessibility Guidelines, and the corresponding statutory remedies. However, in the event of a

21    conflict between the two sets of regulations identified in the proceeding paragraph, the

22    provisions that supply maximum protection and accessibility to the disabled shall apply.

23    20.    **Option to Close/Alter Facilities or Feature.** In lieu of making modification to

24    any particular facility or amenity called for by this decree, the Defendants may choose to

25    permanently close such facility or amenity from public use.  Such facilities shall not be

26    reopened for public use without provision of full disabled access pursuant to the terms of

27    paragraph 17. . Nothing in this Consent Decree shall prevent Defendants from making future

28

Hubnach Law Offices
150 HILLTOP CRESCENT
WALNUT CREEK
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT                                                      — 14 —

**Exhibit A**

EXHIBIT 3

28

1   modifications or alterations to the Hotel that may impact, modify or remove or close one or

2   more of the facilities or features of the Hotel identified in paragraph 17, provided that any such

3   modification or alteration shall result in compliance with then applicable standards and

4   guidelines for disability access under both federal and California law and provided further that

5   the removal or closure of any feature or facility shall also be removed and closed for persons

6   who are not disabled.

7        21.    **Time for Compliance.** As to all other work, LTP shall submit plans and apply

8   for any necessary permits for this work within 60 days of the entry of this Order on the docket

9   of the Court, and complete all such work within one year of receiving permits, allowing for

10  good faith interruptions due to inclement weather, permitting or certificate of occupancy

11  delays, contractor unavailability, and other causes under the common law doctrine of *force*

12  *majeure.* Permits from the building department shall be secured for all work where required.

13  LTP shall  provide written notice regarding the status of completion by the later of 15 months

14  after entry of this order and 13 months after the issuance of the last necessary building permit.

15  Within 30 days of completion of the work called for by this Consent Decree, LTP shall provide

16  Plaintiffs, their attorneys and consultants with physical access to inspect, measure and

17  photograph the facilities to verify the completed work complies with the terms herein.

18       22.    **Enforcement.** Should Plaintiffs in the future become aware of any facts or

19  conditions relating to the subject Hotel that may give rise to a claim that Defendants have failed

20  to comply with any of the injunctive relief provisions set forth herein, Plaintiff shall be

21  permitted to file a noticed motion under the current case number of this action or adversary

22  proceeding seeking enforcement of this Consent Decree Judgment and Order, as well as

23  contempt of Court, provided that Defendants reserve all of their rights to contest any relief

24  sought by Plaintiffs by way of such motion or proceeding.  The "prevailing party" in such

25  motion proceedings, whether in full or in part, <u>may</u> be entitled to an award of reasonable

26  attorney fees, litigation expenses and costs for such motion, i.e., the fee recovery shall be

27  pursuant to the normal prevailing party standards that applied under the subject statutes before

28

Sklensack Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND                                          — 15 —
JUDGMENT

                        Exhibit A

EXHIBIT 3                                                    29

1  entry of this decree, under the subject fee shifting statutes named in the complaint and

2  Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978). Defendants may be entitled to

3  recovery of attorney's fees on such a motion or in such a proceeding only upon proof that

4  Plaintiffs' motion is frivolous, without basis in fact or law or brought in bad faith.

5

6  **DECLARATORY RELIEF**

7       23.    In resolution of Plaintiff's claim for declaratory relief, Defendants hereby

8  stipulate, that by this Consent Decree Judgment and Order, the barriers identified herein for

9  correction, at paragraph 17, supra, constitute past and present violations of Plaintiffs' rights

10 under Title III of the Americans with Disabilities Act of 1990, and/or California Civil Code

11 Sections 51 and 54.1.

12

13 **STATUTORY DAMAGES.**

14      24.    LTP agrees to pay each of the Plaintiffs the total amount of $25,000 (for an

15 aggregate payment to Plaintiffs of $50,000) in full and final satisfaction of each of his or her

16 claims for bodily and personal injury and for the statutory damages applicable thereto, under

17 Civil Code Sections 52 and 54.3. Separate checks for $25,000 each shall be made payable to

18 "HUGH MARSH" and "NEVA LEMA," respectively, and delivered to the office of counsel of

19 record for Plaintiffs by messenger or courier service within seven (7) days of the Court's

20 execution of this Consent Decree Judgment and Order. If a courier service is used, LTP shall

21 supply Plaintiffs' counsel with a tracking number for the delivery of the check. Plaintiffs agree

22 that LTP's payment obligation is expressly contingent on Plaintiffs' delivery to LTP's counsel

23 of record of a completed and executed Forms W-9 for each of the Plaintiffs and further agree

24 that the time for delivery of the check will not start to run until ten (10) days after delivery and

25 receipt of the completed and executed Forms W-9.

26      25.    The parties recognize that no part of this action and judgment seeks to resolve

27 any statutory damage claims of other members of the general public that may exist under Civil

28

Shimasek Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0400

CONSENT DECREE ORDER AND
JUDGMENT                                                          —16—

**Exhibit A**

EXHIBIT 3

30

1    Code Sections 51 and 54.1.

2       26.    The parties stipulate that the foregoing amounts are intended to be paid in full to

3    Plaintiffs, and understand that no part of it shall be received by Plaintiffs' counsel in

4    compensation toward Plaintiffs' separate claim for reasonable statutory attorneys' fees,

5    litigation expenses, and costs.

6

7    **ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

8       27.    LTP agrees to pay Plaintiffs' counsel of record in this action or adversary

9    proceeding the total amount of $100,000 in full and final satisfaction of Plaintiffs' claims for

10   attorneys' fees, expenses and costs (including expert consultant or expert witness costs). A

11   check for this amount shall be made payable to "Thimsesch Law Offices," and delivered to the

12   office of counsel of record for Plaintiffs by messenger or courier service within seven (7) days

13   of the Court's execution of this Consent Decree Judgment and Order. If a courier service is

14   used, LTP shall supply Plaintiffs' counsel with a tracking number for the delivery of the check.

15   Plaintiffs agree that LTP's payment obligation is expressly contingent on Plaintiffs' counsel's

16   delivery to LTP's counsel of record of a completed and executed Form W-9 for each of the law

17   firms and/or lawyers sharing in this payment and further agree that the time for delivery of the

18   check will not start to run until ten (10) days after delivery and receipt of the completed and

19   executed Form(s) W-9.

20

21   **ENTIRE CONSENT DECREE JUDGMENT AND ORDER:**

22      28.    Except for the Settlement Agreement And Release Of Claims entered into by the

23   parties on or about September 13, 2010, this Consent Decree Judgment and Order constitutes

24   the entire agreement between the parties on the matters of injunctive relief, and no other

25   statement, promise, or agreement, either written or oral, made by any of the parties or agents of

26   any of the parties, that is not contained in this written Consent Decree Judgment and Order,

27   shall be enforceable regarding the matters described herein.

28

Thimsesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT

— 17 —

Exhibit A

EXHIBIT 3                                    31

1

2   **CONSENT DECREE JUDGMENT AND ORDER BINDING ON PARTIES AND**

3   **SUCCESSORS IN INTEREST:**

4       29.     The parties agree and represent that they have entered into this Consent Decree

5   Judgment and Order voluntarily, under no duress, and wholly upon their own judgment, belief,

6   and knowledge as to all matters related to this Consent Decree Judgment and Order, after

7   having received full advice from counsel.

8       30.     This Consent Decree Judgment and Order shall be binding on Plaintiffs HUGH

9   MARSH and NEVA LEMA, and on the Defendants; and any successors in interest. During the

10  period of this Consent Decree Judgment and Order and the Court's jurisdiction over this

11  Consent Decree Judgment and Order, the parties have a duty to so notify any of his, her or its

12  successors in interest of the existence and terms of this Consent Decree Judgment and Order.

13

14  **JOINT PREPARATION AND SEVERABILITY:**

15      31.     This Consent Decree Judgment and Order is deemed jointly prepared by all

16  parties and shall not be strictly construed against any party as its drafter.  If any term of this

17  Consent Decree Judgment and Order is determined by any court to be unenforceable, the other

18  terms of this Consent Decree Judgment and Order shall nonetheless remain in full force and

19  effect, except that the Parties agree that any ruling that paragraph 16 is invalid or unenforceable

20  shall render this entire Consent Decree Judgment and Order null, void and of no further force

21  or effect.

22

23  **SIGNATORIES BIND PARTIES:**

24  Signatories on the behalf of the parties represent that they are authorized to bind the parties to

25  this Consent Decree Judgment and Order.  This Consent Decree Judgment and Order may be

26  executed in counterpart signatures, and such signatures may be attached in counterparts, each

27  of which shall be deemed an original, and which together shall constitute one and the same

28

Rhineck Law Offices
150 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND
JUDGMENT                                                        — 18 —

**Exhibit A**

EXHIBIT 3                                                32

1  instrument. Such counterparts may be signed as faxed signatures, which shall have the same

2  force and effect as original signatures.

3

4  Dated: _____

5                                          _____
                                           HUGH MARSH
6  Dated: _____

7                                          _____
                                           NEVA LEMA
8

9  Dated: _____          LITTLE TOKYO PARTNERS, L.P.

10                              BY:    LITTLE TOKYO PARTNERS, LLC,
                                       Its Managing Partner
11
                                Please Print
12                              Officer's Name:

13                              _____

14

15                              Title: _____

16  Dated: _____

17                              LITTLE TOKYO PARTNERS, LLC

18                              Please Print
                                Officer's Name:

19                              _____

20                              Title: _____

21  Dated: _____

22                              CRESTLINE HOTELS & RESORTS, INC.

23                              Please Print
                                Officer's Name:
24

25                              _____

26                              Title: _____

27

28

Olmesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND                              — 19 —
JUDGMENT

                              Exhibit A

EXHIBIT 3                                                        33

**APPROVED AS TO FORM:**

Dated: September ___, 2010

THIMESCH LAW OFFICES
TIMOTHY S. THIMESCH, ESQ.
GENE A. FARBER, ESQ. – Of Counsel

_____
Attorneys for Plaintiffs
HUGH MARSH and NEVA LEMA

Dated: September ___, 2010

EISENBERG RAIZMAN THURSTON & WONG LLP
DAVID H. RAIZMAN, ESQ.

BRADLEY & GMELICH

_____
Attorneys for Defendants
LITTLE TOKYO PARTNERS, L.P. dba KYOTO GRAND HOTEL AND GARDENS erroneously named and sued as Grand Kyoto Hotel; LITTLE TOKYO PARTNERS, LLC; AND CRESTLINE HOTELS & RESORTS, INC.

**ORDER**

    **IT IS SO ORDERED.**

Dated: _____

_____
Honorable Barry Russell
U.S. Bankruptcy Judge

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

CONSENT DECREE ORDER AND JUDGMENT

— 20 —

Exhibit A

EXHIBIT 3                                              34

1  TIMOTHY S. THIMESCH, State Bar No. 148213
2      tim@thimeschlaw.com
   GENE A. FARBER, State Bar No. 44215 – Of Counsel
3      genefarber@gmail.com
4  THIMESCH LAW OFFICES
   158 Hilltop Crescent
5  Walnut Creek, California  94597-3452
6  Telephone:  (925) 588-0401
   Facsimile:  (888) 210-8868
7

8  Attorneys for Plaintiffs HUGH MARSH and NEVA LEMA

9  [Additional Counsel Listed on Next Page]

10

11          **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13

14  HUGH MARSH and NEVA LEMA,       )    CASE NO.  CV10-1511-JST (AGRx)
                                     )
15             Plaintiffs,           )
                                     )
16                                   )    **STIPULATION TO REFER ACTION**
   v.                                )    **TO THE BANKRUPTCY COURT**
17                                   )
                                     )
18  GRAND KYOTO HOTEL; LITTLE        )
   TOKYO PARTNERS, L.P.; LITTLE      )
19  TOKYO PARTNERS, LLC;             )
   CRESTLINE HOTELS AND              )    Judicial
20  RESORTS, INC., and DOES 1        )    Officer:   Hon. Josephine Stanton Tucker
21  THROUGH 50, inclusive,           )
                                     )
22                                   )
               Defendants.           )
23                                   )

24

25

26

27

28

543610v2

                    **Exhibit B**

EXHIBIT 3                                          35

1   THOMAS P. GMELICH, State Bar No. 166562
2   G. DEAL GUERRERO, State Bar No. 228625
    BRADLEY & GMELICH
3   700 North Brand Boulevard, 10th Floor
4   Glendale, California 91203-1422
    Telephone: (818) 243-5200
5   Facsimile:  (818) 243-5266

6
    DAVID H. RAIZMAN, State Bar No. 129401
7      draizman@ertwllp.com
8   EISENBERG RAIZMAN THURSTON & WONG LLP
    10880 Wilshire Boulevard, 11th Floor
9   Los Angeles, California  90024
    Telephone: (310) 445-4400
10  Facsimile:  (310) 445-4410

11

12  Attorneys for Defendants LITTLE TOKYO
    PARTNERS, L.P. dba KYOTO GRAND HOTEL
13  AND GARDENS erroneously named and sued as
14  Grand Kyoto Hotel; LITTLE TOKYO
    PARTNERS, LLC; and CRESTLINE HOTELS
15  AND RESORTS, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

2

543610v2

**Exhibit B**

EXHIBIT 3

36

1         This stipulation by and among plaintiffs, Hugh Marsh and Neva Lema

2  (the "Plaintiffs"), on the one hand, and defendants Little Tokyo Partners, L.P.

3  ("LTP"), Little Tokyo Partners, LLC, and Crestline Hotels and Resorts, Inc.

4  ("Crestline" and collectively with the other defendants, the "Defendants"), on the

5  other hand, by and through their respective counsel of record, is entered into based on

6  the following facts:

7         A.    LTP is the owner of the hotel commonly known as The Kyoto

8  Grand Hotel & Gardens (the "Hotel"). Crestline operates the Hotel pursuant to a

9  management agreement with LTP. The above-captioned action arises from claims by

10  the Plaintiffs relating to their alleged stays at the Hotel.

11         B.    LTP filed a voluntary petition for relief under chapter 11 of the

12  United States Bankruptcy Code before the United States Bankruptcy Court for the

13  Central District of California (the "Bankruptcy Court") on July 15, 2010, commencing

14  Case No. 2:10-39113-BR (the "Chapter 11 Case").

15         C.    LTP and the Plaintiffs have negotiated a settlement agreement to

16  resolve the claims that are the subject matter of the above-captioned action, but the

17  implementation of that settlement agreement is conditioned on confirmation of the

18  "Debtor's Plan of Reorganization (August 30, 2010)" (the "Plan") filed by LTP in the

19  Bankruptcy Court.

20         D.    LTP has estimated that it will take approximately three months to

21  confirm and consummate the Plan.

22         E.    Based on the foregoing facts, the parties have agreed that (i) the

23  above-captioned action should be referred to the Bankruptcy Court, because it is

24  related to the Chapter 11 Case, (ii) the proposed settlement will be reflected by both a

25  Consent Decree in the litigation and the terms of the Debtor's Plan, and (iii) even after

26  the reference of this action to the Bankruptcy Court, this action will be stayed,

27  pending confirmation of the Plan.

28

543610v2

3

Exhibit B

EXHIBIT 3

37

1       NOW, THEREFORE, it is hereby stipulated and agreed as follows:

2       1.    The above-captioned action shall be referred to the Bankruptcy

3  Court pursuant to 28 U.S.C. § 157(a), because it relates to the Chapter 11 Case. The

4  Bankruptcy Court shall assign this action a separate adversary proceeding number in

5  connection with the Chapter 11 Case.

6       2.    The adversary proceeding shall be stayed in all respects with

7  respect to all parties, pending confirmation of the Debtor's proposed Plan. If the

8  Bankruptcy Court confirms the Plan, the proposed settlement agreement will be

9  implemented and the Consent Decree shall be entered in the adversary proceeding. If

10  the Bankruptcy Court does not confirm the Plan, all parties reserve all rights with

11  respect to the adversary proceeding.

12                  Respectfully submitted,

13

14  Dated: September ___, 2010    THIMESCH LAW OFFICES

15

16                    By: _____

17                       Timothy S. Thimesch
                           Attorneys for Plaintiffs

18                       HUGH MARSH and NEVA LEMA

19

20  Dated: September ___, 2010    BRADLEY & GMELICH

21

22                   EISENBERG RAIZMAN THURSTON & WONG LLP

23

24                    By: _____
                       David H. Raizman

25                       Attorneys for Defendants
                       LITTLE TOKYO PARTNERS, L.P. dba KYOTO

26                       GRAND HOTEL AND GARDENS erroneously
                       named and sued as Grand Kyoto Hotel; LITTLE

27                       TOKYO PARTNERS, LLC; and CRESTLINE

28                       HOTELS AND RESORTS, INC.

4

**Exhibit B**

EXHIBIT 3

38